1  STEVENS, O'CONNELL & JACOBS LLP
   GEORGE L. O'CONNELL (SBN 74037)
2  TODD M. NOONAN (SBN 172962)
   400 Capitol Mall, Suite 1400
3  Sacramento, CA  95814
   Telephone: (916) 329-9111
4  Facsimile:  (916) 329-9110

5  Attorneys for Defendants
   JEFF BALLIET, ALLISON HANSLIK,
6  ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK CAPITAL
   MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC;
7  ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL
   SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL
8  FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC;
   ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

9
                    UNITED STATES DISTRICT COURT
10                  EASTERN DISTRICT OF CALIFORNIA

11 MVP ASSET MANAGEMENT (USA) LLC, a        Case No. 2:10-cv-02483-GEB-CMK
   Delaware Limited Liability Company,
12
                    Plaintiffs,            DEFENDANTS' NOTICE OF MOTION
13                                         AND MOTION TO DISMISS PURSUANT
           v.                              TO RULE 12(B); MEMORANDUM OF
14                                         POINTS AND AUTHORITIES IN SUPPORT
   STEVEN VESTBIRK, JEFF BALLIET,          THEREOF
15 ALLISON HANSLIK, JIM GRANAT, ARK
   ROYAL ASSET MANAGEMENT, LTD., a         Date:  April 4, 2011
16 Bermuda Limited Company, VESTBIRK       Time:  9:00 a.m.
   CAPITAL MANAGEMENT, LTD., a             Dept:  Courtroom 10
17 Bermuda Limited Company, ARK ROYAL      Judge: Honorable Garland E. Burrell, Jr.
   ASSET MANAGEMENT, LLC, a Nevada
18 Limited-Liability Company, ARK
   DISCOVERY, LLC, a Business Entity of
19 Unknown Form, ARK ROYAL HOLDINGS,
   LLC, a Nevada Limited-Liability Company,
20 ARK ROYAL SERVICES, LLC, a Nevada
   Limited-Liability Company, ARK ROYAL
21 CAPITAL, LLC, a Nevada Limited-Liability
   Company, ARK ROYAL CAPITAL
22 FUNDING, LLC, a Nevada Limited-Liability
   Company, ARK ROYAL CAPITAL, INC., a
23 Nevada Corporation, ROYAL CAPITAL
   FUNDING, LLC, a Nevada Limited-Liability
24 Company, ARK ROYAL RESOURCES LLC,
   a Nevada Limited-Liability Company, ARK
25 ROYAL ASSURANCE LLC, a Nevada
   Limited-Liability Company, and ARK ROYAL
26 INVESTMENTS, LLC, a Nevada Limited-
   Liability Company,
27                  Defendants.

28

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on April 4, 2010, at 9:00 a.m., in Courtroom 10 of the

3    above-titled Court, located at 501 I Street, Sacramento, California 95814, defendants JEFF

4    BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK

5    CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK

6    DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK

7    ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL

8    CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK ROYAL ASSURANCE LLC;

9    ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will and hereby do move to

10   dismiss the Complaint filed by Plaintiff.

11   As further set forth in the Memorandum of Points and Authorities filed herewith, which

12   is incorporated herein by this reference, the grounds for this motion are as follows.

13   First, Moving Defendants move to dismiss the action under Article III of the United

14   States Constitution and pursuant to Rule 12(b)(1) on the grounds that Plaintiff, as merely an

15   uninjured investment advisor, lacks Article III standing and cannot assert claims on behalf of his

16   client. *See W.R. Huff Asset Management Company, LLC v. Deloitte & Touche LLP*, 549 F.3d

17   100, 111 (2d Cir. 2008). California law also bars this uninjured Plaintiff from asserting these

18   claims as Plaintiff is not the real party in interest. *E.g.,* Cal. Code Civ. Proc. § 367.

19   Second, Moving Defendants move to dismiss the First and Second Causes of Action,

20   which assert alleged violations of the federal securities laws, under Rule 12(b)(6), Rule 9(b), and

21   the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. The

22   Complaint fails to state claims for violations of the federal securities laws for several reasons.

23   First, federal securities law does not have extraterritorial reach, and controlling United States

24   Supreme Court authority bars Plaintiff's claims, which are based upon offshore transactions.

25   *Morrison v. National Bank of Australia Bank Ltd.*, 130 S.Ct. 2869 (2010). Second, Plaintiff has

26   failed to meet the strict pleading requirements applicable to a securities fraud claim under the

27   PSLRA and Rule 9(b). Plaintiff has failed to properly plead an actionable misrepresentation or

28

1

1   scienter, for example, and has failed to allege facts tying each Moving Defendant to the alleged

2   wrongdoing.  Third, Plaintiff's Section 20(a) control person claims must be dismissed once the

3   underlying Section 10(b) claim is dismissed.  In addition, Plaintiff has also failed to plead

4   sufficient facts to establish the Moving Defendants as purported control persons.

5         Moving Defendants also move to dismiss Plaintiff's California common law and

6   statutory claims under Rule 12(b)(6) and Rule 9(b).  Plaintiff has failed to plead the Third

7   (Fraud), Fourth (Negligent Misrepresentation), and Sixth (California Securities Act) claims for

8   relief with the particularity required by Rule 9(b).  Plaintiff's sixth claim under the California

9   Securities Act also fails to state a claim because Plaintiff has (1) failed to specify which statute

10   was allegedly violated, and (2) failed to allege facts establishing a violation of any provision of

11   those laws.  Cal. Corp. Code §§ 25400, *et seq.*

12         Moving Defendants also move to dismiss Plaintiff's fifth claim (Negligence) for failure

13   to state a claim.  Plaintiff has not alleged facts that establish a duty running from any Moving

14   Defendant to Plaintiff.  In addition, Plaintiff's claim for negligence cannot be pursued directly,

15   but instead is a derivative action that should have been brought in the British Virgin Islands

16   under the laws of the British Virgin Islands.

17         Moving Defendants further move to dismiss the entire action pursuant to Rule 12(b)(7)

18   for failure to join a necessary and indispensable party plaintiff under Rule 19.  In addition,

19   Moving Defendants seek the dismissal of the Sixth Claim for improper joinder:  Plaintiff seeks

20   the rescission of a sale of securities, but has failed to join the seller of that security.

21         Finally, Moving Defendants move to dismiss pursuant to Rule 12(b)(2) for lack of

22   personal jurisdiction.   Plaintiff fails to allege sufficient contacts with California to support the

23   exercise of personal jurisdiction over any Moving Defendant, and, upon dismissal of the federal

24   securities claims, this Court should decline to exercise pendent personal jurisdiction over the

25   Moving Defendants. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th

26   Cir. 2004).  Moving Defendants also assert the defense of improper venue under Rule 12(b)(3).

27   An uninjured Plaintiff has purported to assert venue based upon alleged contacts with it in this

28

2

1   state; had the action been filed by a party with standing, however, there would be no conceivable

2   basis for venue within this State.  Therefore, while Moving Defendants request the dismissal of

3   this action with prejudice, they raise venue for the purpose of reserving the right to further

4   advance this defense depending on whether a different plaintiff ultimately attempts to come

5   before this Court.

6         Pursuant to Rule 12(g)(1), these motions may be joined together.  As the defects

7   identified in this motion cannot be cured, Moving Defendants request that the dismissal be with

8   prejudice.

9         This motion will be based upon this Notice of Motion and Motion, Memorandum of

10  Points and Authorities, the Request for Judicial Notice, and Declarations of George O'Connell,

11  Martin Zolnai, and Dino Coppola filed and served herewith, and on such further documents and

12  argument as the Court may permit at the hearing of this motion.

13  Dated:  February 24, 2010                STEVENS, O'CONNELL & JACOBS LLP

14

15                                    By:___/s/ GEORGE L. O'CONNELL_____

16                                        George L. O'Connell
                                         Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS .................................................................. 3

        A.      The True Perpetrator:  Tom Petters and His Massive Ponzi Scheme. ................... 3

        B.      Plaintiff: An Investment Advisor, and not the Purchaser of any Security. ............. 4

        C.      The Investment: Non-Party Ark Discovery Fund (Offshore) Ltd. ....................... 4

        D.      Named Defendants:  Plaintiff's Indiscriminate Pleading Names a Host of
                Innocent Parties. ................................................................................. 5

        E.      The Alleged False Representations and Associated Investments by MVP. .......... 6

        F.      Petters' Fraud Exposed and the Granat Testimony. ............................................ 10

        G.      December 3, 2008 Email From Vestbirk to Stratford ......................................... 12

III.    ARGUMENT ..................................................................................... 12

        A.      Defendants Move to Dismiss on Several Grounds Including Lack of Standing,
                Failure to State a Claim, Failure to Join a Necessary and Indispensable
                Party, and Lack of Personal Jurisdiction. ........................................................ 12

        B.      The Action Must Be Dismissed Because Plaintiff, As Merely The
                Investment Advisor And Not The Actual Investor, Lacks Constitutional
                Standing. ............................................................................................. 13

        C.      The Action Must Be Dismissed Because Plaintiff Has Failed To State
                A Claim. ............................................................................................. 15

                1.      Plaintiff Has Failed to State a Claim for Federal Securities Fraud. ............... 16

                        a.      Plaintiff's Federal Securities Fraud Claim Is Barred by United
                                States Supreme Court Authority Establishing That Foreign
                                Securities Transactions Are Not Subject to United States
                                Securities Laws. ..................................................................... 17

                        b.      Plaintiff's Complaint Fails To Comply With The Heightened
                                Pleading Requirements of Rule 9(b) And The PSLRA. ....................... 20

                                i.      Plaintiff Has Failed To Adequately Allege Material
                                        Misrepresentations. ........................................................ 20

                                ii.     Plaintiff Has Failed to Adequately Allege Scienter as to Each
                                        Named Moving Defendant. ................................................. 23

                                iii.    Plaintiff Has Failed To Adequately Allege A Primary
                                        Violation By Each Moving Defendant. ................................. 27

i

2. Plaintiff Has Failed to Adequately Plead a Claim for Control Person Liability Under Section 20(a). .................................................................. 27

3. Plaintiff Has Failed To Adequately Plead California Law Claims for Securities Fraud, Fraud, Negligent Misrepresentation and Negligence. ........ 28

a. Plaintiff Has Failed to Satisfy Rule 9(b)'s Particularity Requirements With Respect to His Claims for State Securities Fraud, Fraud, and Negligent Misrepresentation. .................................... 28

b. Plaintiff Fails to State a State Law Securities Law Claim Because There Was No Actionable Conduct "In California" and Because Plaintiff Has Not and Cannot Allege Privity Between Plaintiff and Any Moving Defendant ................................................................. 31

i. Plaintiff Cannot State a Claim for Violation of Section 25401, Which Prohibits the Sale of Securities by Means of Written or Oral Communications Containing False Statements or Omissions ..................................................................... 31

ii. Plaintiff Cannot State a Claim for Violation of Section 25400, Which Prohibits Certain Forms of Market Manipulation. ............ 33

c. Plaintiff Has Failed to State a Claim for Negligence ............................. 35

D. Plaintiff Has Failed to Join Necessary and Indispensable Parties, Including the Issuer of the Security in Dispute. ..................................................... 38

E. Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant. ...................................................................................... 39

IV. CONCLUSION .................................................................................................... 44

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ........................................................................... 40

*Allen v. Wright*,
   468 U.S. 737 (1984).......................................................................................... 13

*Apollo Capital Fund LLC v. Roth Capital Partners LLC*,
   158 Cal. App. 4th 226 (2007) ........................................................................... 31

*Arnolds Mgmt. Corp. v. Eischen*,
   158 Cal. App. 3d 575 (1984) ............................................................................ 16

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ............................................................................ 15

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .......................................................................... 41

*Batchelder v. Kawamoto*,
   147 F.3d 915 (9th Cir. 1998) ............................................................................ 36

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... 15, 30

*Bily v. Arthur Young & Co.*,
   3 Cal. 4th 370 (1992) ........................................................................... 35, 36, 37

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ............................................................................ 15

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .......................................................................... 21

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .............................................................................. 15

*Calif. Amplifier, Inc. v. RLI Ins. Co.*,
   94 Cal. App. 4th 102 (2001) ............................................................................. 33

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) ............................................................................ 15

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*,
   511 U.S. 164 (1994).......................................................................................... 27

*Cisneros v. Instant Capital Funding Group, Inc.*,
   263 F.R.D. 595 (E.D. Cal. 2009) ....................................................... 25, 28, 29, 30

iii

*Confederated Tribes v. Lujan,*
    928 F.2d 1496 (9th Cir. 1991) ........................................................................ 38

*Construction Laborers Pension Trust of Greater St. Louis v. Nuerocrine Biosciences, Inc.,*
    2008 WL 2053733, at *9 (S.D. Cal. May 13, 2008) ...................................... 27

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) .......................................................................... 30

*Cornwell v. Credit Suisse Group,*
    729 F. Supp. 2d 620 (S.D.N.Y. 2010) ............................................................ 19

*Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.,*
    276 F.3d 1150 (9th Cir. 2002) ........................................................................ 38

*Desaigoudar v. Meyercord,*
    223 F.3d 1020 (9th Cir. 2000) ........................................................................ 21

*Diamond Multimedia Sys., Inc. v. Sup. Ct.,*
    19 Cal. 4th 1036 (1999) ............................................................................ 32, 34

*Dole Food Co., Inc. v. Watts,*
    303 F.3d 1104 (9th Cir 2002) ......................................................................... 42

*DSAM Global Value Fund v. Altris Software, Inc.,*
    288 F.3d 385 (9th Cir. 2002) .................................................................... 20, 23

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009) ........................................................................... 22

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) ........................................................................................ 35

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) ........................................................................ 21

*Elliot Assoc. v. Porsche Automobil Holdings SE,*
    2010 WL 5463846, at *7 (S.D.N.Y. December 30, 2010) .............................. 19

*Eshelman v. Orthoclear Holdings, Inc.,*
    2009 WL 506864, at *9, 14 (N.D. Cal. Feb. 27, 2009) .................................. 37

*Fisher v. Acuson Corp.,*
    1995 WL 261439, at *8 n.5 (N.D. Cal. Apr. 26, 1995) ................................. 27

*Franchise Tax Bd. of Calif. v. Alcan Aluminum, Ltd.,*
    493 U.S. 331 (1990) ........................................................................................ 36

*Gantman v. United Pac. Ins. Co.,*
    232 Cal. App. 3d 1560 (1991) ........................................................................ 15

*Glazer Capital Management, LP v Magistri,*
    549 F.3d 736 (9th Cir. 2008) .......................................................................... 26

iv

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
    352 F.3d 367 (9th Cir. 2003) ............................................................................ 22

*Glenn K. Jackson Inc. v. Roe,*
    273 F.3d 1192 (9th Cir. 2001) .......................................................................... 37

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ............................................................................ 24

*Hanson v. Denckla,*
    357 U.S. 235 (1958) .......................................................................................... 42

*Healy v. The Beer Institute,*
    491 U.S. 324 (1989) .......................................................................................... 35

*Helicopteros Nacionales v. Hall,*
    466 U.S. 408 (1984) .......................................................................................... 41

*Hoover Group, Inc. v. Custom Metalcraft, Inc.,*
    84 F.3d 1408 (Fed. Cir. 1996) .......................................................................... 40

*In re AstraZeneca Sec. Litig.,*
    559 F. Supp. 2d 453, 468 (S.D.N.Y.2008) ......................................................... 1

*In re Banco Santander Securities-Optimal Litig.,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ............................................................. 19

*In re GlenFed, Inc. Secur. Litig.,*
    42 F.3d 1541 (9th Cir. 1993) ............................................................................ 30

*In re Hansen Natural Corp. Sec. Litig.,*
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................. 24

*In re IMAX Sec. Litig.,*
    2009 WL 1905033, at *2 (S.D.N.Y. Jun. 29, 2009) .......................................... 15

*In re Impac Mortg. Holdings, Inc. Sec. Litig.,*
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................. 22

*In re Metawave,*
    298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003) .............................................. 27

*In re New Century,*
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) ............................................................. 24

*In re Silicon Graphics, Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir.1999) ....................................................................... 20, 23

*In re SLM Corporation Sec. Litig.,*
    258 F.R.D. 112 (S.D.N.Y. 2009) ...................................................................... 15

*In re Societe General Secs. Litig.,*
    2010 WL 3910286, at *6 (S.D.N.Y. Sept. 29, 2010) ........................................ 19

v

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ................................................................... 22

*In re Verifone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) ..................................................................... 27

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1417 (9th Cir. 1994) ................................................................... 22

*Intern'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................ 41

*Kainos Labor., Inc. v. Beacon Diagnostics, Inc.*,
  1998 WL 2016634, at *12-13 (N.D. Cal. Sept. 14, 1998) ...................... 29

*Kamen v. Lindly*,
  94 Cal. App. 4th 197 (2001) .................................................................... 33

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 29

*Kokkenen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) ................................................................................ 13

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................... 15

*Lomayaktewa v. Hathaway*,
  520 F.2d 1324 (9th Cir. 1975) ................................................................... 3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 13

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................... 15

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................. 24

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ................................................................... 16

*Morrison v. National Australia Bank Ltd.*,
  130 S.Ct. 2869 (2010) ...................................................................... passim

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................. 28

*Neubronner v. Milken*,
  6 F.3d 666 (9th cir. 1993) ....................................................................... 30

*North Alaska Salmon Co. v. Pillsbury*,
  174 Cal. 1 (1916) .................................................................................... 34

vi

*Openware Sys., Inc. v. Fuld*,
  2009 WL 1622164, at *9 (N.D. Cal. June 6, 2009) ................................................. 33

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir.1996) ................................................. 28

*Petrie v Electronic Game Card Inc.*,
  2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) ................................................. 24

*Phipps v. Wells Fargo Bank, N.A.*,
  2011 WL 302803, *14 (E.D. Cal. Jan. 27, 2011) ................................................. 28

*Pit River Home and Agr. Co-op. Ass'n v. U.S.*,
  30 F.3d 1088 (9th Cir. 1994) ................................................. 38

*Plumbers' Union v. Swiss Reinsurance Cp.*,
  2010 WL 3860397, at *6 (S.D.N.Y. October 4, 2010) ................................................. 19

*Poindexter v. Wedbush, Noble, Cooke, Inc.*,
  1983 WL 1279 (D. Or. Jan. 24, 1983) ................................................. 40

*Quelamine Co. v. Stewart Title Guaranty Co.*,
  19 Cal. 4th 26 (1998) ................................................. 37

*Ratcliff Architects v. Vanir Construction Management, Inc.*,
  88 Cal. App. 4th 595 (2001) ................................................. 36

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ................................................. 20

*S.E.C. v. Cohmad Sec. Corp.*,
  2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010) ................................................. 26

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ................................................. 1

*Schuster v. Gardner*,
  127 Cal. App. 4th 305 (2005) ................................................. 36

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................. 39, 41, 42, 43

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ................................................. 41

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ................................................. 21

*South Cherry Street LLC v. Hennesee Group LLC*,
  573 F.3d 98 (2d Cir. 2009) ................................................. 26

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008) ................................................. 14

vii

*Steckman v. Hart Brewing Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .............................................................. 16

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
  128 S. Ct. 761 (2008)........................................................................... 27

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .............................................................. 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).......................................................................... 23, 24

*Tolentino v. Mossman*,
  2007 WL 4404447 (E.D. Cal., Dec. 13, 2007) ...................................... 40

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
  34 F.3d 901 (9th Cir. 1994) ................................................................. 38

*U.S. v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) ........................................................... 40

*U.S. v. Stonehill*,
  83 F.3d 1156 (9th Cir. 1996) ............................................................... 36

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ............................................................... 15

*Vinci v. Waste Management*,
  80 F.3d 1372 (9th Cir. 1996) ............................................................... 36

*Virginia Sur. Co. v. Northrop Grumman Corp.*,
  144 F.3d 1243 (9th Cir. 1998) ............................................................. 39

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ............................................................... 15

*W.R. Huff Asset Management Company, LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ...................................................... 1, 14, 15

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................ 20, 26


**Statutes**

15 U.S.C. § 78.................................................................................... 39, 40
15 U.S.C. § 78t(a) .................................................................................. 28
15 U.S.C. § 78u-4 ............................................................................. passim
28 U.S.C. § 1332 .................................................................................... 41
28 U.S.C. § 1367 .................................................................................... 41
Cal. Code Civ. Proc. § 367 ..................................................................... 15
Cal. Corp. Code § 25008......................................................................... 32
Cal. Corp. Code § 25400.............................................................. 33, 34, 35

viii

Cal. Corp. Code § 25401................................................................................. 31, 32, 33
Cal. Corp. Code § 25500................................................................................. 33
Cal. Corp. Code § 25501................................................................................. 31

**Rules**

Federal Rules of Civil Procedure, Rule 9(b)........................................................ passim
Federal Rules of Civil Procedure, Rule 12(b)...................................................... passim
Federal Rules of Civil Procedure, Rule 12(g)...................................................... 13
Federal Rules of Civil Procedure, Rule 19 .......................................................... 12, 38

## I.    INTRODUCTION

This case involves the wrong plaintiff suing the wrong parties in the wrong country. Plaintiff's sprawling complaint alleges federal and state securities fraud claims as well as common law fraud, negligent misrepresentation, and negligence claims.  Indiscriminately naming more than a dozen defendants, Plaintiff seeks to advance the claims of another entity that allegedly suffered losses linked to foreign purchases of shares in an offshore hedge fund. Plaintiff's lawsuit should never have been filed, and having been filed, it should be dismissed with prejudice.

Moving Defendants recognize that dismissal with prejudice is rarely granted at the outset of litigation.  Rarely, however, are the defects of an initial pleading so deep and incurable.  For example, the named plaintiff, MVP Asset Management ("MVPAM" or "Stratford"),[1] lacks Article III standing:  It is not the party that suffered the alleged loss.  MVPAM is just the uninjured investment advisor for an offshore hedge fund based in the British Virgin Islands, MVP Fund of Funds, Ltd. ("MVP").  It is bedrock law that being an investment advisor or an attorney-in-fact for a client does not confer constitutional standing to assert the client's claims. *See W.R. Huff Asset Management Company, LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (reversing denial of motion to dismiss) ("[Plaintiff's] status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its clients' investment decisions does not confer on [Plaintiff] Article III standing to sue in a representative capacity on its clients' behalf.").  Article III standing requires that the plaintiff, not some other party, have suffered the injury for which relief is sought.  *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 224 n.14 (1974) ("to satisfy the Art. III prerequisite the complaining party . . . [must] allege a specific invasion of [a] right suffered *by him*" (emphasis added)).  Because the alleged injury in this case was suffered by the Plaintiff's client, not the Plaintiff, Plaintiff's case must be dismissed with prejudice.

---

[1]     Plaintiff alleges that its principal is Michael Stratford.   (Complaint, ¶ 29.)

1

1    Plaintiff's lack of standing is not the only fatal defect with the Complaint.  Plaintiff's

2    claims are based upon an offshore transaction.  The alleged British Virgin Islands investor,

3    MVP, allegedly used yet another offshore entity, the Netherlands-based bank, Citco Global Bank

4    NV ("Citco Global"), to purchase shares in an offshore fund, Ark Discovery Fund (Offshore)

5    Ltd. ("Ark Discovery (Offshore)"), also an entity in the British Virgin Islands.  Recently, in

6    *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), the United States Supreme

7    Court held that federal securities laws do not have extraterritorial reach, and instead cover only

8    purchases and sales of securities listed on domestic exchanges or securities purchased or sold

9    within the United States.  Under *Morrison,* § 10(b) of the Securities Exchange Act of 1934 and

10   Rule 10b-5 do not provide a cause of action for the entirely offshore transactions at issue in this

11   case.

12   Additionally, Plaintiff has failed to comply with the strict pleading requirements of the

13   Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and Rule 9(b) of the

14   Federal Rules of Civil Procedure.  For example, and in direct contravention of controlling law,

15   Plaintiff has indiscriminately sued numerous individuals and entities based upon boilerplate

16   allegations without alleging *any* specific wrongdoing on their part.  Plaintiff has also failed to

17   plead the alleged misrepresentations and omissions, and the required element of scienter, with

18   the particularity required by the PSLRA and Rule 9(b), a defect that attaches to all of the federal

19   and state law claims that sound in fraud.

20   Plaintiff's California law claims must be dismissed for several additional reasons.  Not

21   only does Plaintiff, as a mere uninjured investment advisor to the actual investor, lack standing,

22   but California securities laws, like their federal counterparts, simply do not reach these offshore

23   transactions.  A further bar to Plaintiff's state securities fraud claims is the lack of privity

24   between any named defendant and the named plaintiff:  California requires the purchaser to sue

25   the seller.  Yet, neither is a party in this case.  As for the negligence claim, Plaintiff fails to allege

26   facts establishing a duty of care owed by any Moving Defendant to the Plaintiff.

27

28

2

1    Plaintiff has also failed to include necessary and indispensable parties to this action.  For

2   example, Plaintiff has failed to sue the actual entity, Ark Discovery (Offshore), that sold shares

3   to Citco Global (allegedly for MVP).  This omission is fatal as a matter of law given that

4   Plaintiff seeks to rescind the sale, *see* Complaint, ¶ 94, but has not sued the other party to the

5   sales contract.  "No procedural principle is more deeply imbedded in the common law than that,

6   in an action to set aside a lease or a contract, all parties who may be affected by the

7   determination of the action are indispensable."  *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325

8   (9th Cir. 1975).  Finally, Plaintiff fails to allege the facts necessary to establish personal

9   jurisdiction over Moving Defendants in California:  None is alleged to be located in this state

10   and none of the alleged conduct was targeted at this forum.  Indeed, Plaintiff fails to link all but

11   one of the Moving Defendants even to the wrongdoing, much less to California.

12    Moving Defendants respectfully request that their motion be granted, and that Plaintiff's

13   Complaint be dismissed with prejudice.

14    ## II.    STATEMENT OF FACTS

15   **A.    The True Perpetrator:  Tom Petters and His Massive Ponzi Scheme.**

16    This lawsuit arises from the collapse of Tom Petters' Ponzi scheme, which unraveled in

17   the fall of 2008 when federal agents arrested the Minnesota businessman.  *See* Complaint, ¶¶ 25-

18   26; Request for Judicial Notice ("RJN"), Exs. A-E.  The fraud of Petters and his confederates

19   reached back over a decade and caused billions in losses.  In 2009, a federal jury convicted

20   Petters of 20 counts of wire and mail fraud, money laundering and conspiracy.  He was

21   sentenced to fifty years in prison and is in bankruptcy.[2]

22    Petters' scam relied upon luring investors to lend money to his companies, which would

23   then supposedly use these funds to acquire and re-sell merchandise, such as appliances and

24   electronic equipment, to big-box retailers like Costco and Wal-Mart.  In reality, as Petters

25   victims later learned, there were few genuine transactions.  As described in Petters' criminal

26

27   [2]    Plaintiff's Complaint alleges that underlying investments in Petters' companies are what
led to the alleged investment losses.  (Complaint, ¶¶ 25-62.)  For background and a fuller

28

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   proceedings, there was instead an elaborate charade of real companies, shell companies,

2   financing transactions, and extensive false documentation – all designed to create the illusion of

3   legitimacy and allow the Ponzi scheme to continue.  Petter's fraud was sophisticated, massive,

4   and perpetrated on over 500 victims, ranging from individual investors to sophisticated hedge

5   funds.  Petters is the true perpetrator in this case.  His actions harmed untold thousands,

6   including Moving Defendants.  Plaintiff's lawsuit is entirely misdirected, with an uninjured

7   Plaintiff targeting other victims of Petter's scheme, not its perpetrators.

8   **B.      Plaintiff: An Investment Advisor, and not the Purchaser of any Security.**

9           Plaintiff MVPAM concedes in the Complaint that it is not the actual purchaser of the

10  securities at issue.  (Complaint, ¶ 3.)  MVPAM is simply the investment manager for the alleged

11  purchaser, non-party MVP, an offshore British Virgin Islands hedge fund.[3]  *Id.*  Plaintiff alleges

12  that it is the "attorney-in-fact" for MVP with respect to the investments at issue and any

13  litigation related thereto.  *Id.*  Plaintiff further alleges that "the investments of MVP" were not

14  actually made by MVP, but instead by yet another offshore entity, Citco Global.  (Complaint,

15  ¶¶ 28, 36, 43, 50.)  Plaintiff's own complaint therefore establishes that the named Plaintiff was

16  not a purchaser of the securities in question and did not suffer the alleged investment losses.

17  **C.      The Investment: Non-Party Ark Discovery Fund (Offshore) Ltd.**

18          Plaintiff alleges that the losses in this case arise out of MVP's investments in Ark

19  Discovery (Offshore).  (Complaint, ¶ 24.)  Ark Discovery (Offshore), in turn, was solely a

20  creditor to a separate entity, Ark Discovery II, LP ("Ark Discovery II), which is the entity that

21  loaned funds to the Petters' entities.  (Complaint, ¶33, 34; RJN, Exs. G-I.)  Plaintiff has failed to

22  name either Ark Discovery (Offshore) or Ark Discovery II as defendants.  Ark Discovery

23

24  context, Petters' criminal indictment, and associated verdict and judgment are attached for the
    Court's reference to the Request for Judicial Notice as Exhibits A to C.

25  [3]      Plaintiff's forum shopping is blatant.  The underlying fund, MVP, is a British Virgin

26  Islands company purporting (through Plaintiff) to complain about its investment in a British
    Virgin Islands fund, Ark Discovery (Offshore).  The British Virgin Islands, quite obviously, is

27  the most appropriate forum for any matter related to that alleged dispute, and, in fact, Plaintiff
    alleges that Ark Discovery (Offshore) is in liquidation in the British Virgin Islands.  Complaint,

28  ¶ 60.

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

(Offshore) is in receivership in the British Virgin Islands.  (Complaint, ¶ 60.)  Ark Discovery II is in bankruptcy.[4]

**D.    Named Defendants:  Plaintiff's Indiscriminate Pleading Names a Host of Innocent Parties.**

As noted, Plaintiff has not named Ark Discovery (Offshore), which is the entity that issued the shares MVP allegedly purchased.  Plaintiff has instead named Ark Royal Asset Management Ltd. ("ARAM"), alleged to be a Bermuda company, which acted as the investment manager for Ark Discovery (Offshore).[5]  (Complaint, ¶¶ 8, 27.)  Also named as defendants are the alleged managing partners of ARAM, Steven Vestbirk, alleged to be a resident of Bermuda, and Jeff Balliet, alleged to be a resident of Texas.[6]  (Complaint, ¶ 4-5.)  The Complaint alleges no misrepresentations by Balliet, and, as to Vestbirk, alleges only one, supposedly made in a telephone discussion over six months before MVP made it first investment in Ark Discovery (Offshore).  (Complaint, ¶ 31.)

Plaintiff further names a host of individuals and entities with no discernable or alleged link to the alleged fraud.  For example, Plaintiff names Allison Hanslik, a resident of Texas, in her alleged capacity as Chief Operating Officer for ARAM, but alleges no misrepresentations or involvement by her.  (Complaint, ¶ 6.)  Plaintiff also names Ark Royal Asset Management, LLC, and Ark Discovery LLC, as involved in the investment activities of Ark Discovery (Offshore) in the United States, which activities allegedly took place through Ark Royal Holdings, LLC, and its several subsidiaries.  (Complaint, ¶¶ 10-20.)[7]  The Complaint completely fails to specify the purported role of these entities.

---

[4]      Ark Discovery II, LP's bankruptcy proceeding is venued in the Northern District of Illinois, Case No. 09-BK-17079.

[5]      Defendant Vestbirk Capital Management is alleged to have been the predecessor to ARAM.  Complaint, ¶ 9.  ARAM and Vestbirk Capital Management are referred to as ARAM.

[6]      Defendant Steven Vestbirk has not been served and does not make an appearance through this motion.  The remaining individual defendant, Jim Granat, of Illinois, is alleged to be part of the ARAM management team and a portfolio manager.  (Complaint, ¶ 7.)  Granat is not represented by undersigned counsel and is not a moving party.

[7]      These alleged affiliates or subsidiaries are Moving Defendants:  Ark Royal Services, LLC; Ark Royal Capital, LLC; Ark Royal Capital Funding, LLC; Ark Royal Capital Inc; Ark Royal Resources, LLC; Ark Royal Assurance, LLC; and Ark Royal Investments, LLC.  All of

5

1    **E.       The Alleged False Representations and Associated Investments by MVP.**

2         *September 24, 2007 Phone Call*

3         Plaintiff's first substantive allegation relates to an alleged September 24, 2007 conference

4    call between Stratford, Dino Coppola, and Steven Vestbirk.[8]  According to Plaintiff, Vestbirk

5    allegedly discussed a potential future fund, Ark Discovery (Offshore), Vestbirk's experience in

6    this type of investment, the established history of the underlying company (Petters), the expected

7    safety of the investment, and the due diligence to be conducted. (Complaint, ¶ 31.)  Plaintiff

8    alleges no <u>facts</u> to suggest that these statements were known to be false when made.

9         Plaintiff also acknowledges that Stratford knew then, that is, *over six months before the*

10   *first alleged investment by MVP*, that the Petters Companies would be involved.  (Complaint,

11   ¶ 31, at 12:13-14.)  Plaintiff, himself an experienced hedge fund manager, therefore had over six

12   months to conduct whatever due diligence he saw fit on Petters *before* he directed MVP to make

13   any investment.  Plaintiff's failure to uncover the Petters' fraud during this six-month period

14   stands in stark contrast to his charge that Moving Defendants should have done so.  Plaintiff's

15   willingness to point the finger of blame at others is particularly inappropriate since the Plaintiff

16   had already placed MVP in Petters investments *before* the alleged conversation of September 24,

17   2007, and before MVP invested in Ark Discovery (Offshore).  Plaintiff's allegations, for

18   example, disclose that Plaintiff had placed MVP in a different Petters fund, the Palm Beach

19   Fund, before it placed MVP in Ark Discovery (Offshore).  (Complaint, ¶ 32, citing to November

20   7, 2007 email; RJN, Ex. F.)[9]  Not only was Plaintiff familiar with Petters from these earlier

21   investments, Plaintiff had actively promoted them, prior to the call with Vestbirk.  *Id.*

22

23   these entities, as well as Ark Royal Asset Management, LLC, and Ark Discovery LLC, will be
     referred to herein as "Ark Entities (US)."

24   [8]       Dino Coppola has not been named as a defendant.

25   [9]       Plaintiff's identification in Paragraph 32 of MVP's investment in Palm Beach highlights
     its conflict of interest.  Plaintiff was searching for more Petters' investments and is responsible

26   for MVP's losses.  MVPAM should be as much of a defendant in a claim brought by MVP as
     any other party.  For example, while Plaintiff appears to complain that Coppola was steering him

27   to Ark Discovery (Offshore) "instead of making a new investment in Palm Beach," Complaint,
     ¶ 32, any such investment would similarly have been lost.  Plaintiff fails to disclose that not only

28   was Palm Beach a Petters' investor, its managers have been sued by the SEC for fraud in

6

*Ark Discovery Summary Sheet*

After the Palm Beach email exchange in November 2007, the Complaint skips several months to February 7, 2008.  Plaintiff alleges that at that time, and again on February 26, 2008, Coppola emailed him a one-page summary describing the Ark Discovery investment.  (Complaint, ¶¶ 33, 34.)  Plaintiff quotes extensively from but does not attach this document to the Complaint, which has instead been supplied by Moving Defendants as part of the Request for Judicial Notice.  Plaintiff alleges misstatements concerning the investment's structure, expected due diligence, and the experience of fund management.  (Complaint, ¶ 34; *see* RJN, Ex. G.) Again, no facts are alleged to show that these statements were false, that any statement was even made by Balliet, Hanslik or any of the Ark Entities (US), or that any Moving Defendant knew any alleged misstatements were false when made.

Plaintiff also fails to disclose, but the Court may properly take judicial notice of, the fact that the information sheet included substantial disclaimers and made express reference to a more complete offering memorandum.  *E.g.*, RJN, Ex. G ("Other terms apply.  Investors should carefully review the Fund Information Memorandum.")  Moreover, the one-page summary sheet concluded with the following express disclaimer:  "*This is neither an offer to sell nor a subscription of any offer to purchase* interests in Ark Discovery II, LP or Ark Discovery Fund (Offshore) Limited (the "Funds")."  *Id.* (emphasis added.)  By its very terms, this one-page sheet is *not* an offer to sell, and Plaintiff alleges no facts suggesting to the contrary.

*Confidential Information Memorandum*

The Confidential Information Memorandum ("CIM") referenced in the document quoted in the Complaint is attached to the RJN as Exhibit I.  This is the operative document through which investments would be made.  As set forth therein, Ark Discovery (Offshore) was *only*

---

connection with their role in aiding and abetting Petters.  *See SEC v. Prevost, Harrold, Palm Beach Capital Management LP, et al.*, filed October 14, 2010, Case No. 10-CV-04235 (D. Minn.).  The SEC, in contrast, has not sued defendants.  Rather, as described above, the government's lengthy investigation demonstrated that Ark Discovery was one of the hundreds of innocently defrauded Petters' investors.

1    made available outside of the United States to *non-US* Professional Investors.[10]  (Ex. I, at 3, 13-

2    14.)  Plaintiff does not allege that MVP was a US investor, or that any MVP purchase was made

3    within the United States.

4           The CIM included substantial warnings and disclaimers, including as follows:

5           **THE FUND IS DESIGNED FOR PERSONS WHO CAN WITHSTAND A**
            **HIGH DEGREE OF INVESTMENT RISK.  THERE IS NO GUARANTEE**
6           **THAT ANY OF THE RETURNS INDICATED WILL BE ACHIEVED AND**
            **INVESTORS ARE SPECIFICALLY REMINDED THAT AN**
7           **INVESTMENT OF THE TYPE BEING EFFECTED BY THE FUND ARE**
            **[SIC] HIGHLY SPECULATIVE AND INVESTORS COULD LOSE ALL**
8           **OR A SIGNIFICANT PROPORTION OF THEIR CAPITAL INVESTED.**
            **PLEASE SEE SECTION V RISK FACTORS.**

9
10   *Id.* at 19; *see also id.* at 21-28 (disclosing risk of loss of capital and default).  The CIM also

11   specifically warns of the risk of fraud:

12          While the Fund seeks to deal at all times with reputable counterparties, there is an
            inherent risk in any private debt transaction of fraud on the lender through the
13          misappropriation of monies otherwise due to be collected or repaid by the
            borrower.  Whether steps are taken to reduce such risk or not, they cannot be
14          wholly mitigated since they rely upon the veracity and honesty of the borrower or
            those in control of the borrower.

15   *Id.* at 24.  This disclosed risk is the one that was ultimately suffered, and no facts are alleged to

16   suggest that any Moving Defendant knew of Petters' fraudulent scheme at the time this statement

17   was made.

18          Further, unlike the typical open market purchase, in this case each investor in Ark

19   Discovery (Offshore) also had to complete a Subscription Agreement.  *Id.* at 30, and Appendix A

20   thereto.  The investor therein agreed, by way of an integrated contract, that, among other things,

21   (1) the CIM constituted the sole offering document; (2) the investor had not relied upon

22   information outside of the CIM; and (3) this was a speculative, high-risk investment, the entirety

23

24   _____

25   [10]     A "Professional Investor" was defined as a person whose ordinary business involved
     investing in the same type of property as the Fund, and whose net worth exceeded $1 million.
26   *Id.* at 14.  The offering, in other words, was only extended to sophisticated investors capable of
     handling risk.  A "U.S. Person" was defined expansively to include all manner of natural and
27   corporate persons resident in, or organized under, the laws of the United States.  *Id.* at 14.  Such
     U.S. persons were excluded from investing.  *Id.* at 13-14.
28
                                                    8

1    of which might be lost.  *Id.* at 39, 45.  Plaintiff ignores this plain limiting language, language that

2    bars Plaintiff from claiming reliance on purported misrepresentations outside of the CIM.

3            *First Two Alleged Investments*

4            Plaintiff alleges MVP's first investment of $1 million in 10,000 shares of Ark Discovery

5    (Offshore) was made on April 1, 2008, through Citco Global.  (Complaint, ¶ 36.)  Following this

6    first investment, Plaintiff alleges a series of communications on the investment's performance.

7    (Complaint, ¶¶ 37-42.)  Plaintiff alleges a second investment on July 1, 2008, in the amount of

8    $500,000, again through Citco Global.  (Complaint, ¶ 43.)  Plaintiff alleges no facts to establish

9    that either purchase was made in the United States, or that the shares were sold in the United

10   States, nor could it, given that the offshore purchase was made by an offshore entity (Citco

11   Global) for an offshore entity (MVP) from an offshore entity (Ark Discovery (Offshore)).

12           *Ark Discovery Fund Presentation*

13           Plaintiff alleges that soon after the second MVP investment, MVPAM received a

14   presentation entitled "Ark Discovery Fund."  (Complaint, ¶ 47; RJN, Ex. H.)  This presentation

15   covered aspects of the investment's structure and expected performance.  (Complaint, ¶¶ 47-53;

16   RJN, Ex. H, at 10, 17.)  Plaintiff does not allege facts demonstrating the contemporaneous

17   knowledge of any Moving Defendant that these representations were not true, or even that

18   Balliet, Hanslik, or the Ark Entities (US) made these statements.  The presentation also included

19   an express and detailed "Disclaimer," which provided, among other things, that the presentation

20   was not an offer to sell any security, and that no such offer would be made except through the

21   formal offering materials (reviewed above).  *Id* at 1.

22           *Remaining Investment*

23           Plaintiff alleges that subsequent to receiving this Presentation, he received two more

24   monthly performance reports.  (Complaint, ¶¶ 48, 49.)  Plaintiff alleges that he directed the final

25   $500,000 investment to be made by MVP on August 1, 2008, again through Citco Global.

26   (Complaint, ¶ 50.)

27

28

                                                    9

**F.      Petters' Fraud Exposed and the Granat Testimony.**

On September 19, 2008, federal investigators filed an affidavit with the United States District Court of Minnesota exposing that "Petters had been engaged in a massive multi-billion dollar Ponzi scheme and that most of the purported transactions underlying this scheme did not exist." (Complaint, ¶ 26.) Plaintiff alleges that on or about October 16, 2008, Ark Discovery (Offshore) was placed in liquidation. (Complaint, ¶¶ 26, 60.)

Plaintiff then refers to the November 10, 2009, testimony of James Granat, who was called by the prosecution during the criminal trial of Petters. According to Plaintiff, in this testimony, Granat supposedly "admitted under oath" that ARAM (1) never spoke with the alleged purchasers in the Petters transactions; (2) never spoke with the companies from whom Petters' supposedly buying goods; (3) never visited any warehouses purportedly containing the collateral; (4) knew the alleged insurers had not been able to gain access to warehouses and confirm the existence of collateral; and (5) loaned money to Petters entities despite knowing the foregoing and knowing that ARAM had done nothing to independently verify the transactions or collateral. (Complaint, ¶ 62.)

Plaintiff has misleadingly summarized Granat's testimony, which is attached to the Request for Judicial Notice as Exhibit E. Granat testified that he was initially employed by a company that invested in the Petters' Group and that ultimately became affiliated with Ark Discovery II. (RT, at 1634, 1639, 1640.) Granat did not testify that he was speaking for ARAM, any Moving Defendant, or anyone apart from himself. *E.g.* RT, at 1654.

In his testimony, Granat reviewed his company's early investment history in the Petters entities, the representations made to him by Petters representatives, as well as the obstacles that began to be raised to Granat's efforts to conduct due diligence on the underlying transactions. (RT, at 1635-36; 1649-50.) Granat stated that he understood that the insurance companies had in fact been making efforts to inspect warehouses. (RT, at 1651.) Granat also described how Petters' background and reputation as a successful businessman was important to his decision to do business with him. (RT, at 1636-37.) Granat reviewed how Petter's acquisition of well-

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   known, legitimate companies such as Polaroid, Sun Country Airlines, and Fingerhut gave

2   validity to Petters' business dealings.  (RT, at 1636-37.)  All of these early representations took

3   place months before Granat became associated with ARAM.

4          Granat noted that incoming payments from the Petters' investment were monitored and

5   timely received.  (RT, at 1637, 1656, 1660.)  No problems with incoming payments were seen

6   through late 2007 or into 2008.  (RT, at 1640, 1642.)  Granat also described the extensive

7   documentation supplied by the Petters' team, including purchase orders, invoices, loan

8   documentation – documentation that was reviewed by outside counsel prior to execution – as

9   well as UCC filings.  (RT, at 1641-42; 1653-54; 1655.)  Granat stated that this documentation

10  convinced him that the underlying transactions had in fact occurred.  (RT, at 1654.)

11         Granat testified that he first noticed a delay in payments in mid-summer 2008.  Granat

12  stated that he followed up on this delay by contacting Petters' representatives, who assured him,

13  repeatedly, that the delays were temporary, resulting from the slowing economy, and that

14  payments would be made.  (RT, at 1644-45; 1656.)  Granat also stated that when news of the

15  search warrant broke in September 2008, the owners of Ark Royal requested that he immediately

16  return from a business trip in Switzerland to investigate.  He did so that very day.  (RT, at 1645.)

17  Upon his return, Granat managed to speak with Petters, who again reiterated that all was fine and

18  that "everything would be cleared up."  (RT, at 1646.)[11]

19         Granat testified that had he had been repeatedly lied to concerning these transactions, and

20  that if he had known of any problem, he would have immediately alerted Ark Fund to make no

21

22  [11]  Granat also testified about one early instance in 2007 when a Petters representative rebuffed
    an effort to inspect merchandise at supplier warehouses in part because of logistical concerns.
23  RT, at 1635-36, 1650.  Granat noted that Petters representatives informed him that they did not
    want investors speaking to the retailers. *Id.* at 1651.  Granat further testified, however, that he
24  believed the insurance companies were still involved in trying to check the warehouses, *id.* at
    1650-51, and Granat did not conclude prior to the disclosure of the search warrant in September
25  2008 that the transactions were not legitimate.  *Id.* at 1645.  Further, Granat did not testify that he
    conveyed the information concerning access to the warehouses or retailers to any Moving
26  Defendant at any time period relevant to this lawsuit.  And the contacts with Petters that
    involved certain Moving Defendants were all ones in which Petters' representatives provided
27  assurances.  These contacts were not "red flags" of ongoing fraud.  *Id.* at 1645, 1659.  In any
    event, there are no facts alleged that Granat passed on information concerning his other
28  interactions with the Petters' group to any Moving Defendant.  *See* Complaint, ¶ 62.

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1    further investments.  (RT, at 1658-59.)  Granat further disclosed that the Ark Fund investors lost

2    approximately $125 million and that he personally lost $250,000 as a result of Petters' fraud.

3    (RT, at 1646.)[12]

4    **G.      December 3, 2008 Email From Vestbirk to Stratford**

5           Plaintiff closes by citing a December 3, 2008 email from Vestbirk to Stratford, in which

6    Vestbirk purportedly "admits" that he was "unaware" of any transaction financed by Ark

7    Discovery Fund that was "real."  This email, which has not been linked to any Moving

8    Defendant in any way, was sent months after Petters was exposed as a fraud.  It amounts to

9    nothing more than an acknowledgement of what was by then public knowledge, as well as the

10   plain reality that Ark Discovery (Offshore) had been victimized by Petters.  It proves nothing as

11   to Vestbirk's state of mind prior to the exposure of the fraud.

12                                **III.      ARGUMENT**

13   **A.      Defendants Move to Dismiss on Several Grounds Including Lack of Standing,
             Failure to State a Claim, Failure to Join a Necessary and Indispensable Party, and**
14   **Lack of Personal Jurisdiction.**

15           Moving Defendants bring this motion to dismiss under several provisions of Rule 12(b).

16           First, Moving Defendants move to dismiss the action under Article III and pursuant to

17   Rules 12(b)(1) on the grounds that Plaintiff, as merely an uninjured investment advisor, lacks

18   Article III standing and cannot assert claims on behalf of his client.

19           Second, Moving Defendants move to dismiss each claim under Rule 12(b)(6) for failure

20   to state a claim.

21           Third, Moving Defendants move to dismiss pursuant to Rule 12(b)(7) for failure to join a

22   necessary and indispensable party under Rule 19.

23           Fourth, and finally, Moving Defendants move to dismiss pursuant to Rule 12(b)(2) for

24   lack of personal jurisdiction.

25   _____

26   [12]      The United States Department of Justice identified hundreds of victims and $2.5 billion
     in losses in its proposed order of restitution in the Petters criminal matter, including those of Ark

27   Discovery II, whose identified losses alone exceed $100 million.  RJN, Ex. D.  The district court
     overseeing the Petters matter ultimately determined to allow the bankruptcy courts to address
28   victim compensation, and declined to expressly award restitution.

                                            12

Pursuant to Rule 12(g)(1), these motions may be joined together.  The standards governing each motion have been set forth in the respective portions of the argument, below.

**B.    The Action Must Be Dismissed Because Plaintiff, As Merely The Investment Advisor And Not The Actual Investor, Lacks Constitutional Standing.**

Moving Defendants first move pursuant to Article III of the United States Constitution and Rule 12(b)(1) to dismiss the action on the grounds that Plaintiff lacks standing to maintain this action as it alleges that it is merely MVP's investment advisor and attorney in fact.  Standing to sue is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The question of standing is premised upon the "careful judicial examination of a complaint's allegations to ascertain" whether "the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984).  Federal courts are limited in jurisdiction, and it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise. *See Lujan*, 504 U.S. at 561; *Kokkenen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

Plaintiff in this case lacks constitutional standing because he has not suffered an injury-in-fact.  The operative allegation in the Complaint provides as follows:

> Plaintiff MVP Asset Management (USA) LLC ("MVPAM"), is a Limited Liability Company organized and existing under the laws of Delaware with its principal place of business until October 2009 in Tahoe City, California and since October 2009 in San Francisco, California.  At all relevant times mentioned herein, MVPAM has been the investment manager to the MVP Fund of Funds Ltd. ("MVP"), an Investment Company organized and existing under the laws of the British Virgin Islands, with unrestricted decision making authority to control and act as MVP's attorney-in-fact with respect to all investments and litigation relating thereto.  In making each of the investments and investment decisions alleged herein, MVPAM was acting pursuant to its authority on behalf of MVP.

(Complaint, ¶ 3.)

13

1     Plaintiff, in other words, was not an investor in Ark Discovery (Offshore).  MVPAM was

2  merely the investment advisor who claims to have directed the investments of MVP, who,

3  allegedly, is the actual investor.  This status does not suffice to establish Article III standing.

4     When faced with an identical situation, the Second Circuit reversed the denial of a

5  motion to dismiss and held that an investment advisor with attorney-in-fact authority and

6  "unfettered discretion to make investment decisions," nevertheless lacked Article III standing to

7  bring a lawsuit on behalf of its investors.  *W.R. Huff Asset Management Co., LLC v. Deloitte &*

8  *Touche LLP*, 549 F.3d 100, 104-06 (2d Cir. 2008).  The plaintiff in *W.R. Huff* was an investment

9  adviser purporting to sue as an attorney-in-fact for clients who were the beneficial owners of

10 debt securities purchased from Adelphia Communications Corporation.  Plaintiff alleged that

11 defendants were responsible for the inclusion of inaccurate and misleading disclosures in

12 Adelphia's financial statements, thus violating federal securities laws and causing plaintiff's

13 clients to suffer financial losses.

14    Citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008), for the

15 proposition that the minimum requirement for an injury-in-fact is that the plaintiff have legal title

16 to, or a proprietary interest in, the claim, the court in *W.R. Huff* held that "a mere power-of-

17 attorney" does not confer standing to sue in the holder's own right because a power-of-attorney

18 does not transfer an ownership interest in the claim.  *W.R. Huff*, 549 F.3d at 108.  Plaintiff's

19 status as an investment advisor and attorney-in-fact did not satisfy the Article III standing

20 requirement:

21        In the instant case, Huff's clients have not transferred ownership of, or title to,
          their claims to Huff, as required by both *Sprint* and *Advanced Magnetics*.  Rather,
22        Huff claims it is "empowered by powers of attorney" to bring a lawsuit "in its
          representative capacity."  Huff's power-of-attorney permits it to serve as an agent
23        of its clients and to conduct litigation on behalf of its clients as their attorney-in-
          fact, but, like the relationship at issue in *Advanced Magnetics*, Huff's power-of-
24        attorney is not purported to be a valid assignment and does not confer a legal title
          to the claims Huff brings.  While Huff enjoys the authority to make some
25        decisions concerning the litigation, it does not have an ownership stake in any
          claims its clients might pursue against defendants.

26

27

28
                                          14

1  *Id.* at 109; *see also In re SLM Corporation Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009)

2  (following *W.R. Huff*); *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *2 (S.D.N.Y. Jun. 29, 2009)

3  (same).

4  Accordingly, Plaintiff does not have Article III standing to sue for injuries suffered and

5  claims owned by its client, and the action must be dismissed with prejudice.[13]

6  **C.    The Action Must Be Dismissed Because Plaintiff Has Failed To State A Claim.**

7  When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual

8  allegations as true, and must construe them and normally draw all reasonable inferences from

9  them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th

10  Cir. 1996).  It need not, however, accept as true unreasonable inferences or conclusory legal

11  allegations cast in the form of factual allegations.  *W. Mining Council v. Watt,* 643 F.2d 618, 624

12  (9th Cir. 1981); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Moreover, in

13  order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough

14  facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550

15  U.S. 544, 570 (2007).  Dismissal is proper where there is either a "lack of a cognizable legal

16  theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

17  *Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).

18  The court may properly consider exhibits submitted with the complaint, documents

19  whose contents are alleged or relied on in the complaint, and matters subject to judicial notice.

20  *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001); *Van Buskirk v. Cable News*

21

22  [13]    Article III's standing requirements apply to the entire action, including Plaintiff's alleged
state law claims.  *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 n.4 (9th Cir. 2009) (party

23  asserting state law claims in federal court must meet Article III's standing requirements), *citing
Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). In addition, Plaintiff also

24  lacks standing under California law, as MVPAM is not the real party in interest.  The real party
in interest is the person who holds title to the claim, not merely someone who may be interested

25  in, or benefit from the litigation; being an attorney-in-fact does not suffice.  Cal. Code Civ. Proc.
§ 367; *Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991).  The holder of a

26  power of attorney is merely an agent of the party who appointed him or her, is <u>not</u> the real party
in interest as to rights belonging to the principal, and cannot sue to enforce those rights.  Nor can

27  the holder sue derivatively for damages suffered by the owner.  *Arnolds Mgmt. Corp. v. Eischen*,
158 Cal. App. 3d 575, 581 (1984).

28

**15**

1   *Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002).  Taking judicial notice of these matters does

2   not convert the motion to dismiss into a motion for summary judgment.  *MGIC Indem. Corp. v.*

3   *Weisman,* 803 F.2d 500, 504 (9th Cir. 1986).  The court is not required to accept as true

4   conclusory allegations that are contradicted by judicially noticed facts.  *Steckman v. Hart*

5   *Brewing Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

6         In addition to these general rules, the more stringent requirements of the Private

7   Securities Litigation Reform Act ("PSLRA") and Rule 9(b) apply to certain of Plaintiff's claims.

8   These standards are addressed in more detail below in Section C(1)(b).

9         **1.      Plaintiff Has Failed to State a Claim for Federal Securities Fraud.**

10        Plaintiff's first cause of action is based on an alleged violation of Section 10(b) of the

11   Securities Exchange Act of 1934 ("Exchange Act") and Rule 10(b)(5) promulgated thereunder.

12   The second cause of action alleges that "by virtue of their positions as control persons," the

13   defendants are jointly liable for securities law violations under Section 20(a) of the Act.  The

14   Complaint fails to state a claim under the federal securities law for several reasons.  First, federal

15   securities law does not have extraterritorial reach, and controlling United States Supreme Court

16   authority bars Plaintiff's claims, which are based upon offshore transactions.  Second, Plaintiff

17   has failed to meet the strict pleading requirements applicable to a securities fraud claim.  Plaintiff

18   has failed to properly plead an actionable misrepresentation or scienter, for example, and has

19   failed to allege facts tying each named defendant to the alleged wrongdoing.  Third, Plaintiff's

20   Section 20(a) claims falls along with the underlying Section 10(b) claim.  Finally, Plaintiff has

21   also failed to plead sufficient facts to hold certain named defendants in as purported control

22   persons.  The core deficiency with Plaintiff's securities law claim – its reliance on an offshore

23   transaction – cannot be cured through amendment.  Accordingly, Moving Defendants

24   respectfully request the dismissal of the federal securities claims with prejudice.

25

26

27

28

16

1          **a.**     **Plaintiff's Federal Securities Fraud Claim Is Barred by United States Supreme Court Authority Establishing That Foreign Securities Transactions Are Not Subject to United States Securities Laws.**

3      Plaintiff's client, MVP, is an offshore hedge fund located in the British Virgin Islands.

4 (Complaint, ¶ 3.)  The investments at issue were made in a fund that itself is offshore, Ark

5 Discovery (Offshore), also located in the British Virgin Islands.  (Complaint, ¶ 24; RJN, Exs.

6 G-I.)  The actual purchase of the securities was made by another offshore entity, Citco Global.

7 (Complaint, ¶¶ 28, 36, 43, 50.)  The alleged investment manager of Ark Discovery (Offshore) is

8 a Bermuda based company, defendant ARAM.  (Complaint, ¶ 8.)  Thus, a foreign buyer using a

9 foreign custodian is alleged to have made a foreign purchase of a foreign security – a security,

10 that by the terms of its own offering memorandum could not be sold to US persons – and the

11 foreign buyer's uninjured investment advisor is complaining in this action of a foreign entity's

12 management of that foreign security.  The securities laws do not provide a cause of action for

13 Plaintiff's extraterritorial claims.

14      A recent United States Supreme Court case, *Morrison v. National Australia Bank Ltd.*,

15 130 S.Ct. 2869 (2010), specifically holds that an offshore transaction such as this falls outside

16 the reach of the federal securities laws.  *Morrison* held that Section 10(b) of the Exchange Act

17 does not apply extraterritorially.  Rather, it "reaches the use of a manipulative or deceptive

18 device or contrivance only in connection with the purchase or sale of a security listed on an

19 American stock exchange, and the purchase or sale of any other security in the United States."

20 130 S.Ct. at 2888.  Explaining its holding, the Court held that the focus of the Exchange Act is

21 *not* on where the alleged deception originated or occurred, "but upon purchases and sales of

22 securities in the United States . . . .  Those purchase-and-sale transactions are the objects of the

23 statute's solicitude."  *Id.* at 2884.

24      Moreover, after reiterating that "it is the foreign location of the transaction that

25 establishes (or reflects the presumption) of the Act's inapplicability," the Court explicitly

26 rejected the argument that Section 10(b)(5) is applicable "when the fraud involves significant

27 conduct in the United States that is material to the fraud's success."  *Id.* at 2885-86.  In so

28

1  holding, the Court forcefully rejected the "conduct" or "effects" tests in favor of the above-

2  described "transactional test":  that is, "whether the purchase or sale is made in the United

3  States, or involves a security listed on a domestic exchange."  *Id.* at 2886.

4       *Morrison* imposes a bright-line test:  a federal securities claim cannot be based upon a

5  security purchased or sold abroad, regardless of the plaintiff's location or citizenship, the place

6  from where the order might have been placed, or any alleged fraud occurring within the United

7  States.  *See id.*  Thus, for example, as *Morrison* itself makes clear, it does not matter that the

8  offshore defendant company in which the plaintiff invests may, in turn, have invested in the

9  United States.  *Id.* at 2883-84.  Indeed, the alleged fraud at issue in *Morrison* included a

10  substantial United States component:  The claims arose from National Australia Bank's purchase

11  of a Florida-based bank, Homeside.  *Id.* at 2875-76, 2883-84.  The plaintiff also alleged

12  manipulation of financial models by Homeside in the United States, as well as the dissemination

13  of misleading statements within the United States concerning Homeside's performance.  *Id.*

14  Notwithstanding this United States connection, the Supreme Court stated definitively that the

15  offshore transaction was not within the scope of United States securities laws:

16         For it is a rare case of prohibited extraterritorial application that lacks *all* contact
       with the territory of the United States.  But the presumption against

17         extraterritorial application would be a craven watchdog indeed if it retreated to its
       kennel whenever *some* domestic activity is involved in the case.

18

19  *Id.* at 2884*; see also id.* at 2885 ("Finally, we reject the notion that the Exchange Act reaches

20  conduct in this country affecting exchanges or transactions abroad . . . .").

21       Similarly, the Southern District of Florida, applying *Morrison* on a motion to dismiss,

22  held that plaintiffs, who had purchased shares of an offshore investment fund based in the

23  Bahamas, could not state a claim for violations of Rule 10b-5 despite the fact that plaintiffs'

24  investment in defendants' offshore fund was allegedly made for the purpose of investing

25  domestically in funds involved in the Madoff scheme.  "The funds at issue in this case are

26  registered under the laws of the Bahamas, and the Plaintiffs purposefully went off-shore to

27  invest.  Adjudicating the Plaintiff's securities fraud claims would therefore entail the type of

28

**18**

1    interference with foreign securities regulation that *Morrison* sought to avoid."  *In re Banco*

2    *Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305, 1317 (S.D. Fla. 2010).

3         Courts applying *Morrison* have further emphasized that it is the place of the transaction

4    that is relevant, and not the location of the buyer or the placing of a buy order from within the

5    United States that controls.  *E.g. Plumbers' Union v. Swiss Reinsurance Co.,* 2010 WL 3860397,

6    at *6 (S.D.N.Y. October 4, 2010) (granting motion to dismiss with prejudice and holding that "as

7    a general matter, a purchase order in the United States for a security that is sold on a foreign

8    exchange is insufficient to subject the purchase to the coverage of section 10(b) of the Exchange

9    Act"); *In re Societe General Secs. Litig.,* 2010 WL 3910286, at *6 (S.D.N.Y. Sept. 29, 2010)

10   (granting motion to dismiss with prejudice and holding that: "By asking the Court to look to the

11   location of the 'the act of placing a buy order' and to . . . 'the place of the wrong,' Plaintiffs are

12   asking the Court to apply the conduct test specifically rejected in *Morrison* ); *Cornwell v. Credit*

13   *Suisse Group,* 729 F. Supp. 2d 620, 628 (S.D.N.Y. 2010) (awarding judgment on the pleadings,

14   and holding that *Morrison* "foreclose[d] the application of § 10(b) to any claims related to

15   foreign securities trades executed on foreign exchanges even if purchased by American

16   investors."); *see also Elliot Assoc. v. Porsche Automobil Holdings SE*, 2010 WL 5463846, at *7

17   (S.D.N.Y. December 30, 2010) (dismissing federal securities claims with prejudice and holding

18   that plaintiff could not base federal securities claim on offshore swap agreements); *In re Banco*

19   *Santander,* 732 F. Supp. 2d at 1317 (Section 10(b) of the Securities Exchange Act did not apply

20   extraterritorially to offshore purchases made in Bahamian investment funds by non-United States

21   investors; stocks were not listed on American stock exchanges, and investment funds were

22   closed to United States investors).

23         *Morrison* mandates the dismissal of Plaintiffs' federal securities law claims.  The

24   complaint does not (and cannot) allege that (1) Ark Discovery (Offshore) is a security listed on

25   any American stock exchange; or (2) that any of the actual purchase or sale transactions occurred

26   in the United States.  This defect cannot be cured by amendment as the offshore nature of the

27   transaction is expressly alleged.  (Complaint, ¶¶ 3, 28, 36, 43, 50.)  These allegations are also

28

**19**

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   consistent with the requirements of the offering document for Ark Discovery (Offshore), which

2   states that the security was not to be sold to U.S. persons.  RJN, CIM, Ex. I, at 13-14 (fund

3   offered only to Professional Investors who "are not U.S. Persons . . . .")

4          Plaintiff's client is a British Virgin Islands company that allegedly invested in a British

5   Virgin Island fund that is in liquidation in the British Virgin Islands.  Based on the Supreme

6   Court's holding in *Morrison*, Moving Defendants respectfully request the dismissal with

7   prejudice of Plaintiff's federal securities law claims.

8          **b.      Plaintiff's Complaint Fails To Comply With The Heightened Pleading
                     Requirements of Rule 9(b) And The PSLRA.**
9

10         To state a federal securities fraud claim, a plaintiff must allege five elements:  (1) a

11  material misrepresentation or omission of fact, (2) scienter, (3) in connection with the purchase

    or sale of a security, (4) transaction and loss causation, and (5) economic loss.  *Zucco Partners,*
12
    *LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); *DSAM Global Value Fund v. Altris*
13
    *Software, Inc.,* 288 F.3d 385, 388 (9th Cir. 2002).  In this case, Plaintiff has failed adequately to
14
    allege a misstatement or omission of fact, scienter, or even the purported role of each Moving
15
    Defendant in the alleged fraud.  For these additional reasons, Plaintiff's federal securities claims
16
    should be dismissed.
17
                   **i.       Plaintiff Has Failed To Adequately Allege Material
18                           Misrepresentations.**

19         The PSLRA, 15 U.S.C. § 78u-4, significantly strengthened pleading requirements in

20  private securities litigation for the express purpose of eliminating meritless claims such as those

21  alleged here.  *See In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 988 (9th Cir.1999).

22  Congress sought "to put an end to the practice of pleading 'fraud by hindsight.'"  *Id.*  In private

23  securities law claims, plaintiffs must "plead with particularity both falsity and scienter."

24  *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  As to each defendant, the plaintiff must

25  "specify *each* statement alleged to have been misleading, the reason or reasons why the

26  statement is misleading, and, if an allegation regarding the statement or omission is made on

27

28
                                              **20**

1  information and belief, the complaint shall state with particularity all facts on which that belief is

2  formed." 15 U.S.C. § 78u-4(b) (emphasis added).

3      Further, in addition to the requirements of the PSLRA, traditional Rule 9(b) requirements

4  for pleading fraud remain.  Rule 9(b) provides that in all "averments of fraud or mistake, the

5  circumstances constituting fraud or mistake shall be stated with particularity," that is, "with a

6  high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir.

7  2000); Fed.R.Civ.P. 9(b).  The allegations must "identify the time, place and content of the

8  alleged misrepresentation so that the defendant can identify the statement.  Second, the plaintiff

9  must plead facts explaining why the statement was false when it was made." *Smith v. Allstate

10 Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (internal citations omitted).

11     This latter requirement requires the inclusion of specific, concrete facts showing a

12 contemporaneous falsehood; the plaintiff "is precluded from simply pointing to a defendant's

13 statement, noting that the content of the statement conflicts with the current state of affairs, and

14 then concluding that the statement in question was false when made." *Id.*; *see also Edwards v.

15 Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004) (Rule 9(b)'s specificity requirements

16 include an account of the "time, place, and specific content of the false representations as well as

17 the identities of the parties to the misrepresentation.").[14]

18     Plaintiff in this case does not come close to meeting the heightened pleading standard

19 applicable to federal securities fraud claims.  Over the course of 12 pages of pleading, Plaintiff

20 cuts and pastes substantial portions of investment overviews and presentations, and identifies a

21 number of alleged statements, phone calls and emails ranging in time from September 17, 2007,

22 to December 3, 2008.  Plaintiff, however, then simply alleges:

23     *Most* of the representations made by and on behalf of Defendants as alleged in
       Paragraphs 29, 31-35, 37-42, 44-49 and 51-59 were materially false and
24     misleading.

25 ──────────────
   [14]     "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct
26 against which they must defend, but also 'to deter the filing of complaints as a pretext for the
   discovery of unknown wrongs, to protect [defendants] from the harm that comes from being
27 subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the
   parties and society enormous social and economic costs absent some factual basis.'" *Bly-Magee
28 v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001).

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   (Complaint, ¶ 64, emphasis added.)

2     This generic catch-all allegation does not meet Plaintiff's pleading burden under the

3   PSLRA and Rule 9(b).  Plaintiff has not even met the threshold pleading requirement of

4   specifying *each* statement alleged to have been misleading, let alone alleging as to *each*

5   statement the reason or reasons why the statement is misleading, or linking each statement to

6   each Moving Defendant.  Plaintiff's allegations concerning the supposed falsity of the statements

7   are also expressly based upon information and belief, Complaint, ¶ 64, yet Plaintiff has not

8   stated with particularity facts on which that belief is formed, as it is required to do.  15 U.S.C.

9   § 78u-4(b)

10     Plaintiff is alleging nothing more than fraud by hindsight, and Moving Defendants are

11   not required to guess which statements Plaintiff claims are misleading.  Many of the statements

12   identified in the Complaint are non-actionable opinion, mere puffery or protected forward-

13   looking statements.  *See In re Impac Mortg. Holdings, Inc. Sec. Litig.,* 554 F. Supp. 2d 1083,

14   1096 (C.D. Cal. 2008) ("[V]ague, generalized assertions of corporate optimism or statements of

15   'mere puffing' are not actionable material misrepresentations under federal securities laws."),

16   citing *Glen Holly Entm't, Inc. v. Tektronix, Inc.,* 352 F.3d 367, 379 (9th Cir. 2003); *ECA & Local*

17   *134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 205-06 (2d

18   Cir. 2009) (holding that statements such as that the defendant had "risk management processes

19   that are highly disciplined and designed to preserve the integrity of its risk management process"

20   are too general to be actionable) (internal quotation omitted).

21     Similarly, Plaintiff wholly ignores the prominent and express disclaimers in the

22   investment overview and presentation and seeks to bypass entirely the disclaimers and

23   limitations of the CIM and related Subscription Agreement.  Under the "bespeaks caution"

24   doctrine, such limitations, disclaimers and warnings preclude Plaintiff as a matter of law from

25   establishing that the alleged misstatements would be material to a reasonable investor.  *See, e.g.*,

26   *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996); *In re Worlds of Wonder Sec.*

27   *Litig.*, 35 F.3d 1417, 1414 (9th Cir. 1994).

28

22

Plaintiff seeks to escape these rules through his undifferentiated pleading technique, but such obfuscation is just what the reforms to the federal securities law and Rule 9(b) were designed to prevent.  Plaintiff's failure to comply with the PSLRA and Rule 9(b) mandates the dismissal of these claims.

> ### ii.      Plaintiff Has Failed to Adequately Allege Scienter as to Each Named Moving Defendant.

The PSLRA imposes a significant pleading burden with respect to the required state of mind of each Moving Defendant.  Plaintiff here has not met that burden.  While Plaintiff has included each Moving Defendant in its primary Section 10(b) securities fraud claim, Plaintiff has failed to adequately allege scienter as to *each* of the Moving Defendants.

Under the PSLRA, a plaintiff must, "with respect to *each* act or omission alleged to violate this chapter state *with particularity* facts giving rise to a *strong inference* that *the defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007).  The required state of mind is the making of the false or misleading statements either intentionally or with "deliberate recklessness." *Silicon Graphics,* 183 F.3d at 974 ("We hold that a private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct").  Deliberate recklessness is "a form of intentional or knowing misconduct." *Id.* at 976.  "To allege a 'strong inference of deliberate recklessness,' [the plaintiff] 'must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity.'" *DSAM Global Value Fund,* 288 F.3d at 388, *quoting Silicon Graphics,* 183 F.3d at 974).  "[A]lthough facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness." *Silicon Graphics*, 183 F.3d at 974.

Further, to qualify as "strong" within the meaning of the statute, the inference of scienter must be more than merely plausible or reasonable.  The inference must be cogent and at least as compelling to a reasonable person as any opposing inference of non-fraudulent intent. *Tellabs,*

23

551 U.S. at 314, 324-25.  When assessing a complaint for compliance with this standard, "courts

must consider the complaint in its entirety . . . [and inquire] whether *all* of the facts alleged,

taken collectively, give rise to a strong inference of scienter, not whether any individual

allegation, scrutinized in isolation, meets that standard."  *Metzler Investment GMBH v.*

*Corinthian Colleges, Inc.,* 540 F.3d 1049, 1066 (9th Cir. 2008) (internal citation omitted); *see*

*also Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) ("[T]he court must

consider *all* reasonable inferences to be drawn from the allegations, including inferences

unfavorable to the plaintiffs.").

Lastly, Plaintiff must tailor its scienter allegations not only to each misstatement, but

each Moving Defendant.  So called group pleading, whereby scienter may be implied for one or

more defendants based upon the actions of another, is no longer a viable doctrine given the

enactment of the PSLRA.  15 U.S.C. § 78u-4(b)(2) (requiring plaintiff, with respect to *each* act

or omission, to allege with particularity facts giving rise to a strong inference that *the defendant*

acted with the required state of mind); *Petrie v Electronic Game Card Inc.*, 2011 WL 165402, at

\*3 (C.D. Cal. Jan. 12, 2011), *citing In re Hansen Natural Corp. Sec. Litig.,* 527 F. Supp. 2d

1142, 1153-54 (C.D. Cal. 2007) (holding that "the group pleading doctrine can no longer be used

in pleading cases under the PSLRA" and noting that "[t]his view is shared by numerous district

courts within this circuit."); *In re New Century,* 588 F. Supp. 2d 1206, 1223 (C.D. Cal.

2008) ("All of the Circuit courts that have expressly considered whether group pleading is

compatible with the PSLRA have concluded that it is not."); *see also Tellabs*, 551 U.S. at 326

n.6 ("The Seventh Circuit held that allegations of scienter made against one defendant cannot be

imputed to all other individual defendants. . . .  the Shareholders do not contest the Seventh

Circuit's determination, and we do not disturb it.").

Similarly, *"*Rule 9(b) does not allow a complaint to merely lump multiple defendants

together but 'require[s] plaintiffs to differentiate their allegations when suing more than one

defendant . . . and inform each defendant separately of the allegations surrounding his alleged

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1    participation in the fraud.'" *Cisneros v. Instant Capital Funding Group, Inc.,* 263 F.R.D. 595,

2    606-07 (E.D. Cal. 2009), *citing Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

3        Accordingly, as to each Moving Defendant and each alleged misrepresentation, Plaintiff

4    must allege specific facts that give rise to a strong inference of scienter.  Plaintiff does not meet

5    this standard.  Plaintiff's few, generalized and conclusory allegations of scienter fall well short of

6    the specific facts necessary to demonstrate a strong inference that each Moving Defendant

7    intended to defraud Plaintiff.  Plaintiff, for example, alleges no contemporaneous contradictory

8    facts, and no "red flags," purportedly known to Moving Defendants at the time the alleged

9    misrepresentations were made.  Instead, Plaintiff relies only upon a mischaracterization of

10   Granat's testimony – testimony that it then also fails to tie to the contemporaneous state of mind

11   of any – let alone *each* – of the Moving Defendants.

12       Moreover, in his testimony, Granat did not purport to speak for any of the Moving

13   Defendants.  Granat's testimony, to the extent it suggests anything, suggests only that he, like

14   hundreds of others, was victimized by a sophisticated, multi-billion dollar scheme to defraud.

15   RJN, Exs. E (Transcript), A (Indictment.)  Prior to his exposure as a fraud, Petters' was a well-

16   known businessman who had acquired legitimate companies.  His investment structure had a

17   successful history spanning years.  The hallmark of Petters' scheme was the use of seemingly

18   legitimate third parties and the provision of extensive documentation to make the transactions

19   appear genuine.  As set forth in the Granat testimony, this documentation was also vetted by

20   outside lawyers prior to Ark Discovery II's provision of loans to the Petters' entities.  Further,

21   the Granat testimony reveals a rapid follow up to investigate at the first "red flag."  The delays in

22   payments, once experienced for the first time, were not ignored; they were aggressively run

23   down, a pursuit, in fact, which likely contributed to the downfall of the scheme.  RJN, Ex. E

24   (Granat Testimony); *see also* RJN, Exs. A to D.

25       Boiled down to its essence, the complaint is that Moving Defendants defrauded Plaintiff

26   by not discovering sooner that they themselves were being victimized by Petters,

27   notwithstanding the fact that Plaintiff, a prior and ongoing investor in Petters through other

28

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   funds, failed to do so.  Such is not the stuff of which securities fraud claims are made.  *See*

2   *S.E.C. v. Cohmad Sec. Corp.,* 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010) (rejecting scienter

3   allegations because "the complaint supports the reasonable inference that Madoff fooled the

4   defendants as he did individual investors, financial institutions, and regulators").  Plaintiff's

5   allegations that Moving Defendants did not conduct the level of due diligence allegedly

6   represented does not mean that they intended to defraud Plaintiff.  *South Cherry Street LLC v.*

7   *Hennesee Group LLC,* 573 F.3d 98, 111-13 (2d Cir. 2009) (terming allegation that defendant's

8   due diligence fell short of what was represented to be "hardly a cogent or compelling

9   suggestion" of scienter in a case also involving an investment fund victimized by a Ponzi

10  scheme).[15]

11          Plaintiff's pleading burden in a securities fraud case is a high one, and Plaintiff does not

12  remotely come close to the level of detail required.  Plaintiff's allegations fail to fairly suggest

13  any complicity by Moving Defendants in Petters' fraud.  Indeed, the opposite inference arises; as

14  noted, the fund lost substantial money, and Petters was convicted by a federal jury for defrauding

15  Ark Discovery II, among others.  RJN, Ex. B.  Plaintiff alleges <u>no</u> facts demonstrating scienter

16  on the part of any Moving Defendant, or even participation in the alleged fraud as to most

17  Moving Defendants, for example, Balliet, Hanslik, and the Ark Entities (US).  Plaintiff's

18  Complaint as a whole is devoid of specific factual allegations demonstrating that any Moving

19  Defendant knew of Petters' fraud or was complicit in it.  For this reason, Plaintiff's federal

20  securities claims should be dismissed.

21

22

---

23  [15]       As for motive, Plaintiff alleges nothing more than a supposed intent to increase assets
    under management.  If such a motive sufficed, merely being an investment manager would
24  establish scienter. The law is clear, however, that simply demonstrating a profit motive is not
    enough.  *E.g., Zucco Partners,* 552 F.3d at 1005 (simple allegations of pecuniary motive do not
25  suffice); *Glazer Capital Management, LP v Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (merely
    establishing a profit motive does not suffice to create a strong inference of scienter); *In re*
26  *AstraZeneca Sec. Litig.,* 559 F. Supp. 2d 453, 468 (S.D.N.Y.2008) (holding that in pleading
    scienter, "arguing that the motive for defrauding investors was to increase the company's profits
27  or to increase officer compensation is not sufficient"); *Stephenson v. Citco Grp. Ltd.,* 700 F.
    Supp. 2d 599, 620-21 (S.D.N.Y. 2010) (economic interest in retaining clients not probative of
28  motive to ignore Madoff's fraud).

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

### iii. Plaintiff Has Failed To Adequately Allege A Primary Violation By Each Moving Defendant.

As set forth above, Plaintiff was required to allege specific misrepresentations by each Moving Defendant and has not done so.  Plaintiff was also required to establish scienter as to each Moving Defendant and has not done so.  Indeed, there are *no* substantive allegations at all concerning defendants Jeff Balliet, Allison Hanslik or the Ark Entities (US).  Aiding and abetting liability, group or collective action liability, and alter ego liability are no longer viable doctrines for establishing a federal securities claim.  *E.g. Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 171-78, 191 (1994); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761, 768, 771 (2008).  As stated in Section III(C)(1)(b), *supra*, Plaintiff was required to allege particular facts establishing the elements of a federal securities law claim against each Moving Defendant.  Plaintiff has failed to do so.

### 2. Plaintiff Has Failed to Adequately Plead a Claim for Control Person Liability Under Section 20(a).

Plaintiff has failed to properly plead a Section 10(b) claim against any Moving Defendant, not the least reasons for which being the bar of *Morrison* and Plaintiff's lack of Article III standing.  A Section 20(b) claim may be dismissed summarily if a plaintiff fails to establish a primary violation of Section 10(b).  *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993); *see also In re Metawave*, 298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003).  As such, the Section 20(b) claims must be dismissed as a matter of law.  *See also Construction Laborers Pension Trust of Greater St. Louis v. Nuerocrine Biosciences, Inc.*, 2008 WL 2053733, at *9 (S.D. Cal. May 13, 2008) (where 10(b) claims are dismissed for failure to comply with PSLRA, "plaintiffs' claims under Sections 20(b) fail without an underlying violation of Section 10(b)"); *Fisher v. Acuson Corp.*, 1995 WL 261439, at *8 n.5 (N.D. Cal. Apr. 26, 1995) ("Plaintiffs' additional theories of a 'fraudulent scheme' and 'Section 20(b) Indirect Fraud' do not allow them to circumvent Rule 9(b)'s requirements").

In addition, Plaintiff's indiscriminate inclusion of multiple defendants with no alleged connection to the alleged fraud provides a secondary basis for dismissal of these claims.  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

In this case, plaintiff alleges no facts and simply offers vague conclusions in an effort to plead a viable case against defendants Balliet, Hanslik, or the Ark Entities (US).  The mere conclusions alleged by Plaintiff, however, do not show that these Moving Defendants exercised control over either ARAM or Ark Discovery (Offshore) for purposes of establishing control person liability.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1162 (9th Cir. 1996).

### 3. Plaintiff Has Failed To Adequately Plead California Law Claims for Securities Fraud, Fraud, Negligent Misrepresentation and Negligence.

As set forth in Section III(B), *supra*, Plaintiff lacks standing to pursue any of the claims alleged in this action, federal or state.  While that defect alone requires the dismissal of this action, Plaintiff's state law claims suffer from a host of additional defects that require dismissal of such claims.

### a. Plaintiff Has Failed to Satisfy Rule 9(b)'s Particularity Requirements With Respect to His Claims for State Securities Fraud, Fraud, and Negligent Misrepresentation.

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."  *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803, *14 (E.D. Cal. Jan. 27, 2011); *Cisneros*, 263 F.R.D. at 606, both citing *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).[16]  Similarly, Rule 9(b) governs

---

[16]     The elements of a cause of action for fraud in California are:  "(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."

plaintiff's state law securities fraud claim.  *Kainos Labor., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at \*12-13 (N.D. Cal. Sept. 14, 1998).  In general, where a complaint alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of that claim, the claim is said to be "grounded in fraud" or to "sound in fraud."  In such cases, the pleading as a whole must satisfy the particularity requirement of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Here, Plaintiff's state securities fraud claim, as well as the common law fraud and negligent misrepresentation claims, are all directly premised upon the same allegedly fraudulent conduct as his federal securities fraud claim.  *See* Complaint, ¶¶ 74, 81, 92 (incorporating all prior allegations to support claims for fraud, negligent misrepresentation and securities fraud).  Accordingly, Rule 9(b) applies to each of these three state law claims.

Plaintiff's pleading of his state law claims does not meet Rule 9(b)'s strict requirements.  This Court in *Cisneros,* 263 F.R.D. at 606-07, reviewed Rule 9(b)'s requirements in detail in the context of a state law claim for fraud.  As set forth therein and as reviewed earlier with respect to the federal securities claim, Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud:

> The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

---

*Kearns*, 567 F.3d at 1126.  Under California law, both fraud and negligent misrepresentation are forms of deceit, and the elements for each are similar.  *Platt Elec. Supply, Inc. v. EEOF Elec., Inc.*, 522 F.3d 1049, 1056 (9th Cir. 2008).  Negligent misrepresentation, however, lacks the element of intent to deceive.  "[W]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit."  *Id.,* citing *Intrieri v. Superior Court*, 117 Cal. App. 4th 72, 85 (2004).

**29**

1    *Id.* at 606, quoting *In re GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1993);

2    further *citing Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be

3    accompanied by "the who, what, when, where, and how" of the misconduct

4    charged); *Neubronner v. Milken,* 6 F.3d 666, 672 (9th cir. 1993) ("The complaint must specify

5    such facts as the times, dates, places, benefits received and other details of the alleged fraudulent

6    activity.").

7           Further, when there are multiple defendants, a plaintiff must provide *each* defendant with

8    enough information to enable them to know which misrepresentations are attributable to them

9    and their specific fraudulent conduct.  *Cisneros*, 263 F.R.D. at 606-07 (*"*Rule 9(b) does not

10   allow a complaint to merely lump multiple defendants together . . . .").  The role of each

11   defendant in the fraudulent scheme must be alleged with specificity.  *Id.*  Where the defendant is

12   also a corporation, the plaintiff must also allege "the names of the persons who made the

13   allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said

14   or wrote, and when it was said or written." *Id.*

15          As set forth above in Section III(C)(1)(b), *supra*, Plaintiff's Complaint does not comply

16   with Rule 9(b).  Plaintiff has failed to specify what specific misrepresentations were false or why

17   the statements were false when made.  Plaintiff has also failed to allege specific facts

18   establishing scienter.  Further, Plaintiff has engaged in the worst form of "shotgun" pleading,

19   failing entirely to link each Moving Defendant to the alleged misrepresentations, both with

20   respect to the making of the statement and the required state of mind.  Indeed, as to all Moving

21   Defendants apart from ARAM, Plaintiff's Complaint does not even satisfy the plausibility

22   requirement set forth in *Twombly*, as the alleged role of Balliet, Hanslik, or the Ark Entities (US)

23   is left entirely opaque.  Accordingly, for these reasons, Plaintiff's claims for fraud, negligent

24   misrepresentation, and state securities fraud must be dismissed.

25

26

27

28

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

b.  **Plaintiff Fails to State a State Law Securities Law Claim Because There Was No Actionable Conduct "In California" and Because Plaintiff Has Not and Cannot Allege Privity Between Plaintiff and Any Moving Defendant.**

Symptomatic of Plaintiff's lack of compliance with Rule 9(b), Plaintiff fails even to specify which code provisions of the California Securities Law Plaintiff contends Defendants violated.  *See* Complaint, ¶ 93.  While this failure alone mandates dismissal, Moving Defendants review below the reasons why Plaintiff cannot state a claim for violation of the California securities laws under any set of facts, such that the Sixth Claim for Relief should be dismissed with prejudice.

i.  **Plaintiff Cannot State a Claim for Violation of Section 25401, Which Prohibits the Sale of Securities by Means of Written or Oral Communications Containing False Statements or Omissions.**

Section 25401 of the California Securities Law makes it unlawful for any person to offer or sell a security *in this state* by means of any written or oral communication that includes an untrue statement of material fact or omission.  Cal. Corp. Code § 25401.  Section 25501 establishes the civil cause of action for an alleged violation of Section 25401, providing that "any person who violates Section 25401 shall be liable to the person who purchases a security from him . . ., who may sue either for rescission or for damages . . . ."  Cal. Corp. Code § 25501.

Accordingly, on its face and as construed by the California courts, there is a strict privity requirement for any alleged violation of Section 25401.  Cal. Corp. Code §§ 25401, 25501; *Apollo Capital Fund LLC v. Roth Capital Partners LLC,* 158 Cal. App. 4th 226, 253 (2007).  Plaintiff in this case does not and cannot allege the requisite privity.  None of the Moving Defendants were the seller.  The seller was Ark Discovery (Offshore), which is not a named defendant.  Nor was Plaintiff the purchaser; MVP (allegedly) was.  As such, this claim must be dismissed with prejudice.  *Apollo Capital,* 158 Cal. App. 4th at 255 ("In sum, we are persuaded by the authorities and by the structure of the California statute that the trial court correctly concluded that liability under section 25501 attaches only to the actual seller of the securities, who, if he violates section 25401 'shall be liable to the person who purchases a security from

**31**

1    him. . . .' (§ 25501)"); *see also Kainos*, 1998 WL 2016634 at *14 (Section 25401 liability does

2    not extend beyond the actual vendor).

3         Even had the correct plaintiff sued the correct defendant, any purported claim under

4    Section 25401 would still fail because of the offshore nature of this transaction.  Plaintiff does

5    not allege, and cannot allege, a purchase or even an offer of sale "in this state."  Corporations

6    Code Section 25008 defines an Offer or Sale of Security as follows:

7              (a)      An offer or sale of a security is made in this state when an offer to sell is
              made in this state, or an offer to buy is accepted in this state, or (if both the seller
8              and the purchasers are domiciled in this state) the security is delivered to the
              purchaser in this state. . . .

9
              (b)      An offer to sell or to buy is made in this state when the offer either
10            originates from this state or is directed by the offeror to this state and received at
              the place to which it is directed.  An offer to buy or to sell is accepted in this state
11            when acceptance is communicated to the offeror in this state; and acceptance is
              communicated to the offeror in this state when the offeree directs it to the offeror
12            in this state reasonably believing the offeror to be in this state and it is received at
              the place to which it is directed.

13            . . . .

14

15   Cal. Corp. Code § 25008.

16        The issuer, Ark Discovery (Offshore) Ltd., is an offshore fund located in the British

17   Virgin Islands.  The alleged purchase in this case was purportedly made on behalf of MVP, also

18   a British Virgin Islands company, through a Netherlands-based bank, Citco Global.  (Complaint,

19   ¶¶ 3, 24,36, 43, 50.)  Further, the offering materials themselves confirm that no offer for sale or

20   sale was being made either in California or anywhere within the United States.  RJN, Ex. I, at 5,

21   13-14.

22        Accordingly, as there was no offer to sell and no sale of a security in California, there can

23   be no liability under Section 25401.  *See also Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal.

24   4th 1036, 1053 (1999) (Section 25401 expressly limited to offers to buy or sell "in this state" and

25   Corporate Securities Act "quite specific in describing those unlawful practices in which a

26   purchase or sale must occur in California").

27

28

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

ii.     **Plaintiff Cannot State a Claim for Violation of Section 25400, Which Prohibits Certain Forms of Market Manipulation.**

As noted, the Complaint does not expressly identify those provisions of the California Securities Act that Defendants purportedly violated.  However, as with Section 25401, Plaintiff also fails to state a securities fraud claim under Corporations Code section 25400.

Among other things, Corporations Code section 25400 prohibits the making of false or misleading statements by sellers in order to induce the purchase of a security.  Cal. Corp. Code § 25400(d).  By its plain language, the statute applies only to the actual sellers, or those offering to sell, the security; there is no secondary liability available.  *Kamen v. Lindly*, 94 Cal. App. 4th 197, 204-06 (2001); *Calif. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001); *Openware Sys., Inc. v. Fuld*, 2009 WL 1622164, at *9 (N.D. Cal. June 6, 2009).  The only seller here, and the only one extending the offer to sell, was Ark Discovery (Offshore), which is not a named defendant.  (RJN, Exs.G-I.)  In addition, Section 25500 limits the civil remedy to those who have purchased the security.  Plaintiff, as demonstrated above, was not the purchaser of any security.

In addition, Section 25400 also does not have the extraterritorial reach required to reach the offshore transaction here, and any such extension would not only exceed the power of the California Legislature to enact, but would also violate the United States Constitution.  As a preliminary matter, the reach of Section 25400 is expressly limited by its prefatory provision to allegedly unlawful acts within California:

> It is unlawful for any person, directly or indirectly, *in this state:* . . . (d) If such person is a broker-dealer or other person selling or offering for sale . . . the security, to make, for purpose of inducing the purchase . . . of such security by others . . ., any statement which was, at the time and in light of the circumstances under which it was made, false or misleading with respect to any material fact . . .

Cal. Corp. Code § 25400.

In this case, both the buyer and seller of the securities in this action are offshore entities.  They do not reside in California and the offer to sell and the sale occurred offshore.  (Complaint, ¶¶ 3, 24,36, 43, 50; RJN, Ex. I).  Further, while Plaintiff alleges certain defendants had a few

33

1   contacts with him in California, Plaintiff is not a party with standing to sue.  There has not been,

2   in other words, any conduct in this state that can support a violation of Section 25400.

3          The California Supreme Court recognized these limits in upholding application of

4   Section 25400 to an out-of-state purchaser where the alleged market manipulation was

5   undertaken by a California issuer.  *See Diamond Multimedia*, 19 Cal. 4th at 1059-63.  In holding

6   that a California-based issuer that made fraudulent representations could be liable to out-of-state

7   purchasers, the California Supreme Court expressly recognized the presumption that California

8   statutes do not extend extraterritorially.  *Id.* at 1059, *citing North Alaska Salmon Co. v. Pillsbury*,

9   174 Cal. 1 (1916).  Noting that the maker of the alleged statements in *Diamond Multimedia* was

10  a California company, the California Supreme Court found "no potential . . . for a clash between

11  California law and that of any other state or of the United States."  *Id.* at 1060 n.20.

12         Here, of course, the potential for such a clash is apparent.  The issuer in this case is not a

13  California company, and no named defendant is alleged to be affiliated with California.

14  Similarly, the seller and buyer are both companies residing in the British Virgin Islands, and the

15  purchase was allegedly made by a Netherlands bank.  There is no connection to California

16  whatsoever except for the fact that Plaintiff, who is not the purchaser but merely an uninjured

17  investment advisor, claims to have formerly resided in Lake Tahoe and now lives in San

18  Francisco.  (Complaint, ¶ 3.)

19         In such circumstances, applying Section 25400 to reach the conduct at issue here would

20  directly violate the presumption against extraterritorial application of statutes.  Investors from

21  around the world would be able to sue in California for purchases made throughout not only the

22  United States but around the globe, so long as they retained an investment advisor in this State.

23  Nothing in Section 25400, *Diamond Multimedia*, or California law, suggests such a broad reach

24  of California securities law is appropriate or could survive scrutiny under the Due Process

25  Clause or the Commerce Clause.  *See Diamond Multimedia*, 19 Cal. 4th at 1063 (rejecting

26  commerce clause arguments in that case because issuer and maker of statements was located in

27  California, and thus application of statute was not purporting to regulate any transaction in

28

34

1   securities occurring outside of California), citing *Healy v. The Beer Institute*, 491 U.S. 324, 336

2   (1989) (commerce clause precludes application of state statute to commerce that takes place

3   wholly outside state's borders, whether or not commerce has effects within state), and *Edgar v.*

4   *MITE Corp.*, 457 U.S. 624, 641-44 (1982) (invalidating Illinois law that purported to regulate

5   transactions outside of state lines); s*ee also Morrison*, 130 S.Ct. 2869, 2883-88 (2010).

6       Here, an uninjured Plaintiff, who does not even have standing, is the only connection to

7   California.  The underlying investment could not be sold to Californians, and neither the

8   purchaser, seller, nor any alleged maker of any alleged false statement reside in California or

9   have a connection to this State.  In such circumstances, Section 25400 does not apply, and the

10   claim must be dismissed.

11                    **c.        Plaintiff Has Failed to State a Claim for Negligence.**

12       Plaintiff's Fifth Claim for Relief is for negligence.  Plaintiff alleges that *each* Moving

13   Defendant had a duty to (1) make careful investment decisions; (2) conduct adequate due

14   diligence; (3) take all reasonable steps to acquire security interests relating to the underlying

15   Petters transactions; and (4) report accurately to Plaintiff on the results of the due diligence and

16   on the value of shares in the Fund and returns and losses therein.  (Complaint, ¶ 89.)  Plaintiff,

17   however, does not allege the facts necessary to establish a duty running from any Moving

18   Defendant to Plaintiff.  Indeed, as will be discussed, to the extent Plaintiff bases his claim on

19   management of Ark Discovery (Offshore), the claim is entirely derivative in nature, and should

20   have been brought, if anywhere, in the British Virgin Islands.

21       As an overarching matter, Plaintiff has failed to allege facts to establish any duty running

22   from any Moving Defendant to Plaintiff. "The threshold element of a cause of action for

23   negligence is the existence of a duty to use due care toward an interest of another that enjoys

24   legal protection against unintentional invasion." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397

25   (1992) (internal citation omitted).  Whether a duty exists is a question of law. *Id.*  Here,

26   Plaintiff's only alleged losses are economic.  No personal injury is alleged.  In such

27   circumstances, and absent a "special relationship," the general rule in California is that there is

28

                                                    35

1    no duty to prevent economic loss to third parties in negligence actions at common law, and the

2    courts are reluctant to impose such duties.  *Id.* at 403; *Ratcliff Architects v. Vanir Construction*

3    *Management, Inc.*, 88 Cal. App. 4th 595, 605 (2001).

4            Plaintiff alleges no facts establishing a special relationship.  Accordingly, under the

5    "economic loss rule," the claim must be dismissed.  Moreover, those facts that Plaintiff does

6    allege demonstrate that amendment would be futile, such that the claim should be dismissed with

7    prejudice.

8            More specifically, Plaintiff's first alleged premise for his negligence claim relates to the

9    management of Ark Discovery (Offshore) with respect to its investment decisions.  Plaintiff

10   alleges no facts, however, to establish a duty running from any Moving Defendant *to Plaintiff* on

11   management related issues.  Plaintiff is not even a shareholder; he is just an investment advisor

12   to the alleged shareholder, MVP.

13           Further, even if a proper plaintiff were before the Court, Moving Defendants' duties, if

14   such duties were owed, would run to Ark Discovery (Offshore), and not to its shareholders.

15   MVP's potential claim as a shareholder is no different from any other shareholder claiming that

16   the directors or officers of a company mismanaged its affairs, causing a diminution in share

17   value.  Such claims *cannot* be asserted directly by the shareholder, but instead must be brought

18   as a derivative action on behalf of the corporation.  *E.g. Schuster v. Gardner*, 127 Cal. App. 4th

19   305, 312 (2005) (shareholder cannot bring a direct action for damages against management on

20   the theory their alleged wrongdoing decreased the value of his or her stock).  Similarly, a

21   shareholder cannot use the diminution of share value as the basis for bringing an action against a

22   third party for harm to the corporation.  *E.g. U.S. v. Stonehill*, 83 F.3d 1156, 1160-61 (9th Cir.

23   1996); *Vinci v. Waste Management*, 80 F.3d 1372, 1375 (9th Cir. 1996).[17]  Neither Plaintiff nor

24

25   _____
     [17]      This doctrine is rooted in standing and real party in interest requirements.  A shareholder
     cannot directly initiate actions to enforce the rights of a corporation.  *Franchise Tax Bd. of Calif.*
26   *v. Alcan Aluminum, Ltd.,* 493 U.S. 331, 335-36 (1990).  Furthermore, the company at issue, Ark
     Discovery (Offshore), is a British Virgin Islands company.  Under the "internal affairs" doctrine,
27   the rights of shareholders in a foreign company, including the right to sue derivatively, are
     determined by the law of the place where the company is incorporated.  *Batchelder v.*
28   *Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998).  Plaintiff alleges no compliance with the

                                                   36

1   MVP has purported to bring a derivative claim here; indeed, in this case Ark Discovery

2   (Offshore) is not a party and is in liquidation in the British Virgin Islands.  (Complaint, ¶ 60.)

3          As for Plaintiff's allegation that Moving Defendants failed accurately to report to him,

4   this claim, in addition to being entirely redundant of the fraud and negligent misrepresentation

5   claims, also falters on a lack of duty.  Again, Plaintiff is not even a shareholder, and no facts are

6   alleged to establish a duty to report running to a shareholder's investment advisor.  Plaintiff also

7   alleges no facts establishing why any Moving Defendant – including, for example, individuals

8   such a Jeff Balliet or Allison Hanslik or the Ark Entities (US) – had any independent duty to

9   report either to Plaintiff or to MVP on Ark Discovery (Offshore)'s investing practices or results.

10  Under the economic loss rule discussed above, it is clear that no such duty exists.  *See Ratcliff*

11  *Architects*, 88 Cal. App. 4th at 605; *see also Quelamine Co. v. Stewart Title Guaranty Co.*, 19

12  Cal. 4th 26, 57 (1998); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196-99 (9th Cir. 2001).

13         Moving Defendants' duties concerning the management of Ark Discovery (Offshore), if

14  any such duties exist, run only to Ark Discovery (Offshore).  The named Plaintiff is not even a

15  shareholder of Ark Discovery (Offshore).  Plaintiff is a hedge fund manager who dealt at arms

16  length with another hedge fund manager in deciding to invest in an offshore hedge fund.  There

17  is no basis in law or in fact for the extension of a duty of care from any Moving Defendant to

18  Plaintiff for purposes of establishing a negligence claim.  *Bily*, 3 Cal. 4th at 403 (courts are

19  reluctant to impose duties to prevent economic harm to third parties because "[a]s a matter of

20  economic and social policy, third parties should be encouraged to rely on their own prudence,

21  diligence and contracting power, as well as other informational tools.").  Accordingly, this claim

22  should be dismissed with prejudice.

23

24

25

---

26  requirements of British Virgin Islands law in asserting this claim, which must be dismissed.  *See*
    *Eshelman v. Orthoclear Holdings, Inc.,* 2009 WL 506864, at *9, 14 (N.D. Cal. Feb. 27, 2009)
27  (dismissing claims for failure to adhere to law of British Virgin Islands governing derivative
    claims).

28

MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

**D.    Plaintiff Has Failed to Join Necessary and Indispensable Parties, Including the Issuer of the Security in Dispute.**

Plaintiff's claims are also subject to dismissal under Rule 12(b)(7) for failure to join necessary and indispensable parties, both on the plaintiff's side and the defendant's side.  Federal Rule of Civil Procedure 19 governs whether a party is necessary and indispensable to an action. When applying Rule 19, the court must determine "(1) whether an absent party is necessary to the action; and if the party is necessary but cannot be joined, (2) whether the party is indispensable such that in 'equity and good conscience' the suit should be dismissed." *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1154-55 (9th Cir. 2002); *Confederated Tribes v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991).

A party is necessary if the court determines that complete relief cannot be accorded in the absence of the missing party, or if (a) the absent party has a legally protected interest in the outcome of the action or (b) whether without the absent party the already named parties would be (i) impeded in protecting their interests or (ii) left subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations.  Fed.R.Civ.P. 19; *Dawavendewa*, 276 F.3d at 1155; *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994).

If the party is necessary, the next step is for the court to determine if the party is indispensable.  *Pit River Home and Agr. Co-op. Ass'n v. U.S.*, 30 F.3d 1088, 1099 (9th Cir. 1994):

> Rule 19(b) provides that the factors to be considered to determine whether an action should be dismissed because a non-party is indispensable are: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum.

*Lujan*, 928 F.2d at 1499.

In this case, Plaintiff has failed to join necessary and indispensable plaintiffs *and* defendants.  As set forth above, the named Plaintiff, MVPAM, does not have standing to pursue these claims.  The correct plaintiff should be the purchaser of the shares, as that is the entity (or entities) that, presumably, suffered the alleged harm.  Given the named and uninjured Plaintiff's

38

1    lack of standing, complete relief cannot be accorded among the parties, and the absence of the

2    correct plaintiff both impairs that the unnamed plaintiffs' ability to protect their interests and

3    exposes defendants to multiple or inconsistent obligations.

4           Plaintiff, however, has also failed to join a necessary and indispensable defendant.

5    Plaintiff seeks the remedy of rescission in the Sixth Claim.  (Complaint, ¶ 94.)  All parties

6    affected by that determination are indispensable, including, most obviously, the other party to the

7    contract Plaintiff seeks to rescind, that is, the seller, Ark Discovery (Offshore).  *See Virginia Sur.*

8    *Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248 (9th Cir. 1998).  However, in this case,

9    joinder is not feasible, as Ark Discovery (Offshore) is in a liquidation proceeding in the British

10   Virgin Islands, and there is no way to mitigate or avoid the need to join Ark Discovery

11   (Offshore).[18]  As such, Plaintiff's sixth claim for relief must be dismissed.

12   **E.      Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant.**

13

14          Moving Defendants also move to dismiss Plaintiff's Complaint for lack of personal

     jurisdiction.[19]  In filing this action in the Eastern District of California, Plaintiff apparently has
15
     tried to establish personal jurisdiction based on the nationwide service of process available under
16
     the federal securities laws.  *See* 15 U.S.C. § 78aa (providing that minimum contacts with the
17
     United States may be used to establish personal jurisdiction).  However, the Ninth Circuit has
18
     clarified that a court should not automatically continue to exercise personal jurisdiction over
19
     defendants if the "anchor claims," that is the federal claims that provide a wider basis for
20
     personal jurisdiction, are dismissed.
21

22

23   _____

     [18]     Section 175(1)(c) of the British Virgin Islands Insolvency Act, 2003 provides that, from
24   the commencement of liquidation, and unless the court orders otherwise, no person may
     commence or proceed with an action against the company or in relation to its assets, or exercise
25   of enforce, or continue to exercise or enforce any right or remedy over the assets of the company.
     RJN, Ex. J.
26   [19]     Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to
27   dismiss for lack of personal jurisdiction.  The plaintiff then bears the burden of demonstrating
     that jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.
28   2004).

                                                      **39**

1    Instead, under a doctrine referred to as "pendent personal jurisdiction," a District Court is

2    vested with discretion upon dismissal of the anchor claims to determine whether to continue to

3    exercise personal jurisdiction over the defendants on the remaining claims.  Further, when the

4    federal claims are dismissed before trial, a court should typically decline to exercise personal

5    jurisdiction, unless there is an independent basis outside of the dismissed claims to establish such

6    jurisdiction.  *U.S. v. Botefuhr,* 309 F.3d 1263, 1273-74 (10th Cir. 2002); *Action Embroidery*

7    *Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).[20]  Accordingly, with

8    the dismissal of the federal "anchor claims" in this case, the Court should then assess whether

9    there remains any basis, under traditional forum-specific standards, for maintaining personal

10   jurisdiction over the Moving Defendants on the remaining California state law claims.[21]

11

12   _____

[20]    Moving Defendants apprise the Court that in researching this issue, they located one
13   ruling from this Court, *Tolentino v. Mossman*, 2007 WL 4404447 (E.D. Cal., Dec. 13, 2007), in
     which a party moving to dismiss argued that the Court should not exercise personal jurisdiction
14   over a defendant once a federal claim is dismissed.  Citing to an Oregon district court case,
     *Poindexter v. Wedbush, Noble, Cooke, Inc.*, 1983 WL 1279 (D. Or. Jan. 24, 1983), the Court
15   held that it could continue to exercise personal jurisdiction over defendants on the state claims
     even if the federal securities law claims were dismissed *without prejudice*.  *Tolentino*, 2007 WL
16   4404447, at *3.  Here, of course, the dismissal should be *with prejudice*.  Furthermore, none of
     the parties in *Tolentino* appear to have identified for the Court the *Botefur* or *Action Embroidery*
17   cases cited herein, or to the doctrine of pendent personal jurisdiction more generally.  In
     addition, *Poindexter* did not involve the issue of personal jurisdiction with respect to state law
18   claims remaining after the dismissal of a federal claim.  Instead, only a federal securities claim
     was involved, and the court concluded that its dismissal of that claim under Rule 12(b)(6) did
19   not, in and of itself, mean that there was no personal jurisdiction under 15 U.S.C. § 78aa on that
     *same* federal claim.  *Poindexter*, 1983 WL 1279, at *3.  Moving Defendants do not argue that
20   Plaintiff's failure to state a federal securities claim in and of itself means that there is no personal
     jurisdiction over defendants on that federal claim.  Instead, Moving Defendants are relying upon
21   the doctrine of pendent personal jurisdiction as to the separate state claims once the federal
     claims are dismissed.  Lastly, the *Poindexter* case well predates *Action Embroidery* and *Botefur*.
22   Moving Defendants respectfully suggest, therefore, that the Court's analysis in *Tolentino* is not
     controlling here.
23   [21]    In addition, venue must be established by Plaintiff as to each Moving Defendant and as to
24   each claim.  *E.g., Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir.
     1996).  Much as with personal jurisdiction, Plaintiff's choice of venue in the Eastern District
25   appears based upon his invalid federal securities law claims and his purported status as a
     plaintiff.  Moving Defendants have requested the dismissal of this action with prejudice.  Should
26   an amended pleading be filed, however, that asserts only state law claims, or should MVP or the
     actual purchaser of the shares attempt to assert claims, Moving Defendants reserve the right to
27   move to dismiss for improper venue as well.  F.R.Civ.Proc. 12(b)(3).  MVPAM's status as an
     uninjured investment advisor does not provide a sufficient link to this District for venue
28   purposes.

**40**

1       There is not.  As a starting point, Plaintiff's own allegations demonstrate that each of the

2   Moving Defendants is a non-resident of California.  (Complaint, ¶¶ 4-19.) The exercise of

3   jurisdiction over a non-resident defendant violates the protections created by the due process

4   clause unless the defendant has "minimum contacts" with the forum state so that the exercise of

5   jurisdiction "does not offend traditional notions of fair play and substantial justice."[22]  *Intern'l*

6   *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

7       A defendant's contacts with a state may be evaluated under the separate doctrines of

8   general or specific jurisdiction.  In order to establish general jurisdiction, a plaintiff must

9   establish that *each* defendant has "continuous and systematic general business contacts" with

10  California, such that the exercise of jurisdiction is "reasonable and just."  *Helicopteros*

11  *Nacionales v. Hall*, 466 U.S. 408, 415 (1984).  The standard for establishing general jurisdiction

12  is high:  A plaintiff must demonstrate that the defendant's contacts approximate physical

13  presence in the forum.  *Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086

14  (9th Cir. 2000).  "This is an exacting standard, as it should be, because a finding of general

15  jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its

16  activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at 801.

17      Plaintiff's Complaint alleges no facts whatsoever to establish that any Moving Defendant

18  should be subject to general jurisdiction within California.  Accordingly, if the Court is to find

19  that it may constitutionally exercise personal jurisdiction over any of the Moving Defendants, it

20  must be through the alternative doctrine of specific jurisdiction.  Establishing specific

21  jurisdiction requires a showing of sufficient contacts with the forum state in relation to the

22  ――――――――――――――――

23  [22]       Plaintiff alleges subject matter jurisdiction over the state law claims under this Court's
supplemental jurisdiction, 28 U.S.C. § 1367, and under diversity jurisdiction, 28 U.S.C. § 1332.

24  While supplemental jurisdiction would not suffice to hold in the state law claims upon the
dismissal of the federal claims, *see* 28 U.S.C. § 1367(c)(3), Moving Defendants at this time do
not challenge diversity jurisdiction.  Accordingly, as Moving Defendants assert that no federal

25  jurisdictional statute should control for purposes of personal jurisdiction if the federal claims are
dismissed, the Court will apply California law.  *Schwarzenegger v. Fred Martin Motor Co.*, 374

26  F.3d at 800-01.  However, because California's long-arm jurisdictional statute is coextensive
with federal due process requirements, the analyses under state law and federal due process are

27  the same.  *Id.*

28

1   remaining state causes of action.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The

2   Ninth Circuit has established a three-prong test to analyze whether a defendant should be subject

3   to specific personal jurisdiction:

4          (1) The non-resident defendant must purposefully direct his activities or
           consummate some transaction with the forum or resident thereof; or perform
5          some act by which he purposefully avails himself of the privilege of conducting
           activities in the forum, thereby invoking the benefits and protections of its laws;

6          (2) the claim must be one which arises out of or relates to the defendant's forum-
7          related activities; and

8          (3) the exercise of jurisdiction must comport with fair play and substantial justice,
           i.e. it must be reasonable.
9

10  *Schwarzenegger*, 374 F.3d at 802.

11         A showing that a defendant "purposefully availed" himself of the privilege of doing

12  business in a forum state typically consists of evidence of the defendant's actions in the forum,

13  such as executing or performing a contract there.  By taking such actions, a defendant

14  "purposefully avails itself of the privilege of conducting activities within the forum State, thus

15  invoking the benefits and protections of its laws."  *Id., citing Hanson v. Denckla,* 357 U.S. 235,

16  253 (1958).  A showing that a defendant "purposefully directed" his conduct toward a forum

17  state usually consists of evidence of the defendant's actions outside the forum state that are

18  directed at the forum.  *Id.* at 803.  Purposeful direction is evaluated under a separate three part

19  test, with the court examining whether the defendant have (1) committed an intentional act, (2)

20  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

21  suffered in the forum state.  *Id.*, citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th

22  Cir 2002).

23         In this case, the Plaintiff cannot even meet the first element required to establish personal

24  jurisdiction.  Plaintiff does not, and cannot, allege any facts to establish purposeful availment or

25  purposeful direction by any Moving Defendant.  As a starting point, Plaintiff does not allege any

26  facts whatsoever as to moving defendants Balliet, Hanslik, or any of the Ark Entities (US) that

27  show purposeful availment or purposeful direction toward California.  As to defendant ARAM,

28  Plaintiff alleges one phone call by defendant Steven Vestbirk and a number of emails from

**42**

1   nonparties alleged to be agents of ARAM, directed to Plaintiff, who alleges he resides within

2   California (either in Tahoe City or San Francisco).

3          However, as demonstrated above, the uninjured Plaintiff in this case lacks standing.[23]

4   The actual investor in Ark Discovery (Offshore) was a completely different entity – allegedly

5   MVP or Citco Global.  None of these entities are alleged to be California residents.  MVP, for

6   example, is alleged to be a British Virgin Islands company, and Citco Global is a Netherlands

7   based bank.  (Complaint, ¶3.)  Plaintiff does not allege that any purchase or sale of securities

8   occurred within California, or that any California resident invested in Ark Discovery (Offshore).

9          Plaintiff, in other words, has not and cannot allege activity by any Moving Defendant that

10   was "expressly aimed" at California.  Indeed, as noted, the CIM expressly prohibited U.S.

11   persons from investing in Ark Discovery (Offshore).  This was not an investment targeted at

12   residents of California, and there is no allegation that MVP is a California resident.  To the

13   contrary, Plaintiff concedes MVP is a resident of the British Virgin Islands.  Plaintiff, therefore,

14   cannot establish either conduct "expressly aimed" at the forum state or harm suffered within the

15   forum state, never mind conduct causing harm that any Moving Defendant *knew* would likely to

16   be suffered in California.  *See Schwarzenegger*, 374 F.3d at 802-03.  To the contrary, Plaintiff's

17   own allegations make clear that Moving Defendants knew that only non-Californians, in fact

18   non-US Persons, would be investing via offshore transactions, and that there could therefore be

19   no harm at all suffered within the California.

20          Plaintiff's Complaint establishes no basis for the exercise of personal jurisdiction over

21   Balliet, Hanslik, or any of the Ark Entities (US).  As to ARAM, the alleged contacts are not

22   directed at California.  Accordingly, the Complaint should be dismissed on this ground as well.

23

24                        **IV.    CONCLUSION**

25          Accordingly, for the reasons set forth above, Moving Defendants respectfully request the

26   dismissal of this action with prejudice.

27   _____

28   [23]       In addition, Plaintiff is itself a Delaware, not California, company.  (Complaint, ¶ 3.)

**43**

1    Dated:  February 24, 2010              STEVENS, O'CONNELL & JACOBS LLP

2
                                           By:   /s/ GEORGE L. O'CONNELL
3                                                George L. O'Connell
                                                 Attorneys for Defendants
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                       44