1  STEVENS, O'CONNELL & JACOBS LLP
   GEORGE L. O'CONNELL (SBN 74037)
2  TODD M. NOONAN (SBN 172962)
   400 Capitol Mall, Suite 1400
3  Sacramento, CA  95814
   Telephone: (916) 329-9111
4  Facsimile:  (916) 329-9110

5  Attorneys for Defendants
   JEFF BALLIET, ALLISON HANSLIK,
6  ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK CAPITAL
   MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC;
7  ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL
   SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL
8  FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC;
   ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

9
                UNITED STATES DISTRICT COURT
10               EASTERN DISTRICT OF CALIFORNIA

11 MVP ASSET MANAGEMENT (USA) LLC, a        Case No. 2:10-cv-02483-GEB-CMK
   Delaware Limited Liability Company,
12
                  Plaintiffs,              DEFENDANTS' REPLY MEMORANDUM
13                                         IN SUPPORT OF MOTION TO DISMISS
           v.                              PURSUANT TO RULE 12(B)
14
   STEVEN VESTBIRK, JEFF BALLIET,          Date:  April 4, 2011
15 ALLISON HANSLIK, JIM GRANAT, ARK        Time:  9:00 a.m.
   ROYAL ASSET MANAGEMENT, LTD., a         Dept:  Courtroom 10
16 Bermuda Limited Company, VESTBIRK       Judge: Honorable Garland E. Burrell, Jr.
   CAPITAL MANAGEMENT, LTD., a
17 Bermuda Limited Company, ARK ROYAL
   ASSET MANAGEMENT, LLC, a Nevada
18 Limited-Liability Company, ARK
   DISCOVERY, LLC, a Business Entity of
19 Unknown Form, ARK ROYAL HOLDINGS,
   LLC, a Nevada Limited-Liability Company,
20 ARK ROYAL SERVICES, LLC, a Nevada
   Limited-Liability Company, ARK ROYAL
21 CAPITAL, LLC, a Nevada Limited-Liability
   Company, ARK ROYAL CAPITAL
22 FUNDING, LLC, a Nevada Limited-Liability
   Company, ARK ROYAL CAPITAL, INC., a
23 Nevada Corporation, ROYAL CAPITAL
   FUNDING, LLC, a Nevada Limited-Liability
24 Company, ARK ROYAL RESOURCES LLC,
   a Nevada Limited-Liability Company, ARK
25 ROYAL ASSURANCE LLC, a Nevada
   Limited-Liability Company, and ARK ROYAL
26 INVESTMENTS, LLC, a Nevada Limited-
   Liability Company,
27                 Defendants.

28

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   DISCUSSION .................................................................................................... 3

      A.    Plaintiff MVPAM Lacks Article III Standing. ..................................... 3

            1.    Plaintiff, an Uninjured Investment Advisor, Alleges Only That It Is
                  an Attorney-in-Fact for MVP, Which Does Not Suffice to Confer
                  Article III Standing. ................................................................ 3

            2.    Stratford's Vague Reference to A Purported Assignment – Mentioned
                  Nowhere in the Complaint – Does Not Suffice to Cure the
                  Constitutional Standing Issue. ................................................ 5

      B.    Plaintiff Mischaracterizes its Own Status in an Effort to Evade the Bar of the
            Supreme Court's Holding in *Morrison* That Offshore Transactions Are Not
            Subject to United States Securities Laws. .............................................. 7

      C.    Plaintiff's Impermissible Introduction of Evidence From Outside of Its Own
            Pleading Confirms That the Complaint Does Not Comply with Rule 9(b) or
            the PSLRA. ......................................................................................... 10

            1.    Plaintiff Does Not Address Its Failure to Specify Which Allegations
                  Are Allegedly False. .............................................................. 11

            2.    Plaintiff Has Failed to Include Specific Allegations Linking Each
                  Moving Defendant to the Allegedly False Statements. ............ 12

            3.    Plaintiff's Submission of Materials Outside of the Pleadings Confirms
                  That Plaintiff Has Not and Cannot Allege Moving Defendants Acted
                  With The Requisite Scienter. .................................................. 14

      D.    Plaintiff Has Failed to State a Claim for Control Person Liability Under
            Section 20(a). ..................................................................................... 19

      E.    Plaintiff's Opposition Brief Confirms That It Cannot State a California
            Securities Law Claim. .......................................................................... 19

      F.    Plaintiff Has Failed to State California State Law Claims for Fraud and
            Negligent Misrepresentation ................................................................. 22

      G.    Plaintiff Has Failed to State a Claim For Negligence:  Plaintiff Cannot
            Establish a Duty Owed to It Under the Economic Loss Rule, and any Action
            Is Required to Be Pursued Derivatively in the British Virgin Islands ............. 22

      H.    Plaintiff Essentially Concedes That Dismissal of Its Sixth Claim for Relief Is
            Required to the Extent That Claim Seeks Rescission. .............................. 23

      I.    Plaintiff Essentially Concedes That If The Federal Claims Are Dismissed,
            This Court Will Lack Personal Jurisdiction Over The Moving Defendants
            as They Lack the Requisite California Contact. ....................................... 24

i

III.     CONCLUSION ............................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,*
    106 F.3d 11 (2nd Cir. 1997) ............................................................................. 4

*Anwar v. Fairfield Greenwich Ltd.,*
    728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010)..................................................... 8

*Berry v. Valence Technology, Inc.,*
    175 F.3d 699 (9th Cir. 1999) ......................................................................... 14

*Britton v. Co-op Banking Group,*
    4 F.3d 742 (9th Cir. 1993) ............................................................................... 6

*Cornwell v. Credit Suisse Group,*
    729 F. Supp. 2d 620 (S.D.N.Y. 2010)............................................................. 8

*Diamond Multimedia Systems, Inc. v. Sup. Ct.,*
    19 Cal. 4th 1036 (1999) ................................................................................ 21

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982)....................................................................................... 21

*Elliot Assoc. v. Porsche Automobil Holdings SE,*
    2010 WL 5463846, *7 (S.D.N.Y. Dec. 30, 2010) .......................................... 8

*Glazer Capital Management, LP v. Magistri,*
    549 F.3d 736 (9th Cir. 2008) ............................................................ 2, 15, 16

*Hall v. Superior Court,*
    150 Cal. App. 3d 411 (1983) ............................................................ 9, 10, 21

*Healy v. Beer Institute,*
    491 U.S. 324 (1989)....................................................................................... 21

*In re Banco Santander Securities-Optimal Litig.,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ........................................................ 8, 9

*In re BP Prudhoe Bay Royalty Trust Securities Litigation,*
    2007 WL 3171435 .......................................................................................... 13

*In re Dura Pharmaceuticals, Inc. Secur. Litig.,*
    452 F. Supp. 2d 1005 (S.D. Cal. 2006).......................................................... 13

*In re Glenfed, Inc. Secur. Litig.,*
    60 F.3d 591 (9th Cir. 1995) ..................................................................... 12, 13

*In re Hansen Natural Corp. Securities Litigation,*
    527 F.Supp.2d 1142 (C.D. Cal. October 16, 2007) ....................................... 13

*In re Marvell Technology Group Ltd. Secur. Litig.,*
    2008 WL 4544439 (N.D. Cal. Sep. 29, 2008) .......................................... 13, 14

iii

*In re Omnivision Technologies, Inc.*,
    2005 WL 1867717, *5 (N.D. Cal. Jul. 29, 2005).................................................................. 14

*In re Pfizer, Inc. Secur. Litig.*,
    584 F. Supp. 2d 621 (S.D.N.Y. 2008)........................................................................................ 14

*In re Societe Generale Secs. Litig.*,
    2010 WL 3910286, *6 (S.D.N.Y. Sept. 29, 2010)..................................................................... 8

*In re Wash. Mut., Inc. Securities, Derivative & ERISA Litig.*,
    2010 WL 1734848, *1, 3 (W.D. Wash. Apr. 28, 2010)........................................................... 13

*Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau*,
    701 F.2d 1276 (9th Cir. 1983)..................................................................................................... 6

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir. 1975) ................................................................................................... 24

*Lopes v. Viera*,
    488 F. Supp. 2d 1000 (E.D. Cal. 2007)............................................................................... 14, 23

*Los Angeles Fisheries v. Crook*,
    47 F.2d 1031 (9th Cir. 1931) ..................................................................................................... 20

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir.2006) ...................................................................................................... 13

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.*,
    534 F.3d 1068 (9th Cir. 2008) ................................................................................................... 15

*North Alaska Salmon Co. v. Pillsbury*,
    174 Cal. 1 (1916) ....................................................................................................................... 21

*Plumbers' Union v. Swiss Reinsurance Co.*,
    2010 WL 3860397, *6 (S.D.N.Y. October 4, 2010)................................................................... 8

*Robinson v. Cupples Container Co.*,
    316 F. Supp. 1362 (N.D. Cal. 1970) .......................................................................................... 20

*S.E.C. v. Cohmad Sec. Corp.*,
    2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)............................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................................................... 25

*Shipping Corp. of India Ltd. v. Jaidhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir. 2009) .......................................................................................................... 9

*Smith v. Ayres*,
    977 F.2d 946 (5th Cir. 1992) ....................................................................................................... 6

*South Cherry Street LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009) ........................................................................................................ 15

iv

*South Ferry LP, No. 2 v. Killinger,*
  542 F.3d 776 (9th Cir. 2008) .................................................................. 2, 15, 16

*Sparling v. Daou,*
  411 F.3d 1006 (9th Cir. 2005) ............................................................................. 16

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
  554 U.S. 269 (2008) ................................................................................... 3, 4, 5

*Stackhouse v. Toyota Motor Co.,*
  2010 WL 3377409, *1-2 (C.D. Cal. Jul. 16, 2010).............................................. 8

*State Farm Mut. Auto Ins. Co. v. Davis,*
  7 F.3d 180 (9th Cir. 1993) ................................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007).................................................................................. 13, 14

*Virginia Sur. Co. v. Northrop Grumman Corp.,*
  144 F.3d 1243 (9th Cir. 1998) ........................................................................ 24

*Viterbi v. Wasserman,*
  191 Cal. App. 4th 927 (2011) ......................................................................... 24

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP,*
  549 F.3d 100 (2d Cir. 2008) ...................................................................... 1, 3, 4, 5

*Winer Family Trust v. Queen,*
  503 F.3d 319 (3d Cir.2007) ............................................................................. 13

*Wulff v. CMA, Inc.,*
  890 F.2d 1070 (9th Cir. 1989) ........................................................................... 6

**Statutes**

15 U.S.C. § 78u-4 ................................................................................. 2, 10, 11, 14
Cal. Corp. Code § 25008 .................................................................................... 20
Cal. Corp. Code § 25017(b) ............................................................................... 20
Cal. Corp. Code § 25400 .................................................................................... 19
Cal. Corp. Code § 25401 .............................................................................. 19, 21
Cal. Corp. Code § 25504 .............................................................................. 19, 24
Cal. Corp. Code § 25504.1.................................................................................. 24

**Other Authorities**

6A Wright & Miller, § 1545 ............................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ passim
Fed. R. Civ. P. 12(b)(1) ................................................................................................ 3
Fed. R. Civ. P. 17(a) ................................................................................................ 4

## I.      INTRODUCTION

Plaintiff MVPAM's heavy reliance on a new affidavit (executed just days ago) and documents and transcripts extrinsic to its Complaint – exhibits that are not otherwise attached, referenced, or incorporated into Plaintiff's Complaint – provides the first clear sign that Defendants' Motion to Dismiss should be granted.  Plaintiff implicitly recognizes that the operative Complaint cannot stand.

Plaintiff's Complaint falls short even at the level of establishing Plaintiff's constitutional standing to bring this action.  Plaintiff, as merely an uninjured investment advisor, does not have Article III standing and cannot assert the claims of its investment client.  *See W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008).  Plaintiff offers no cogent response to the *Huff* decision, other than to criticize the Second Circuit for supposedly "misreading" case law, and instead now seeks to establish standing as a purported assignee of the claims of non-party MVP Fund of Funds ("MVP"), the alleged underlying investor.  No allegations of assignment appear in the Complaint, however, and the vague and conclusory declaration of Michael Stratford does not suffice.  The lack of Article III standing requires that the entire Complaint be dismissed.

This dismissal should be with prejudice in light of the fact that Plaintiff has not and cannot otherwise state a claim even if it did have standing.  Plaintiff's federal securities law claims must be dismissed pursuant to *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), because they are based upon an offshore transaction, a fact established by the express allegations of Plaintiff's Complaint.  Indeed, in attempting to argue otherwise, Plaintiff wrongly conflates itself, the uninjured investment advisor, with the alleged actual investor, MVP, a British Virgin Islands hedge fund.

Since Plaintiff is now purporting to bring a claim as the purported assignee of MVP, it stands in MVP's shoes – and those shoes are firmly planted in the British Virgin Islands.  MVP went offshore to incorporate, presumably because of perceived benefits in the laws or tax systems of the British Virgin Islands, and then went offshore again to invest in Ark Discovery

1

1  (Offshore), and did so through an offshore entity, Citco Global.  (Complaint, ¶¶ 24, 28, 36, 43,

2  50.)  There is no allegation in the Complaint of any offer of sale being made to MVPAM, the

3  investment advisor, for it to make any purchase on its own behalf.  Having consciously

4  structured MVP's transactions and business operations to stay wholly outside of the laws of the

5  United States (and California), and in light of *Morrison*, Plaintiff cannot claim now that MVP is

6  entitled to the protection of United States securities laws.

7       Plaintiff's Complaint also does not meet the strict pleading requirements of the Private

8  Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and Rule 9(b) of the Federal

9  Rules of Civil Procedure, a fact well illustrated by Plaintiff's reliance on extrinsic evidence in an

10  effort to resuscitate its insufficiently pled claims.  Plaintiff fails to confront the fact that the

11  Complaint does not even specify which statements are allegedly false, or the connection between

12  each Moving Defendant and each allegedly false statement.  With respect to scienter, as to which

13  Plaintiff is required to include specific factual allegations raising a "cogent and compelling"

14  inference that each Moving Defendant acted with the requisite state of mind, Plaintiff offers only

15  conclusions and vague references to what Moving Defendants should have known given their

16  alleged management positions in defendant Ark Royal Asset Management Ltd. ("ARAM").  Yet,

17  the very Ninth Circuit cases cited by Plaintiffs, *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776

18  (9th Cir. 2008), and *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008),

19  hold that generic allegations of the type made by Plaintiff in this case do not suffice.  In addition,

20  the extrinsic transcripts submitted by Plaintiff, far from establishing scienter, instead show that

21  Moving Defendants were caught by surprise by the Petters Ponzi scheme.

22       With respect to Plaintiff's California claims, those too should be dismissed with

23  prejudice.  Upon the dismissal of the federal claims, this Court will lack the basis to exercise

24  personal jurisdiction over the Moving Defendants.  No tortious conduct was directed at

25  California – the alleged victim and newly purported assignor of claims, MVP, is a British Virgin

26  Islands company.  Plaintiff has also failed to allege facts sufficient to support extension of

27  California securities laws to this offshore transaction.  In fact, given the lack of any connection

28

2

1    to California, any such extraterritorial application would violate Moving Defendants' due

2    process rights.  As with the federal claims, Plaintiff has also failed to plead its state law fraud

3    claims with particularity, and has separately also failed to allege facts sufficient to establish a

4    duty running from any Moving Defendant to Plaintiff for purposes of its negligence claim.

5         Plaintiff's federal claims are based upon offshore transactions not subject to the federal

6    securities laws, and Plaintiff does not have a basis to hale Moving Defendants into California on

7    the state law claims.  Moving Defendants respectfully request that their Motion to Dismiss be

8    granted with prejudice.

9                                    **II.      DISCUSSION**

10   **A.      Plaintiff MVPAM Lacks Article III Standing.**

11        **1.     Plaintiff, an Uninjured Investment Advisor, Alleges Only That It Is an
              Attorney-in-Fact for MVP, Which Does Not Suffice to Confer Article III
12            Standing.**

13        Among other grounds, Moving Defendants moved for dismissal under Rule 12(b)(1),

14   asserting that an uninjured investment advisor such as plaintiff MVPAM cannot rely solely upon

15   an alleged "attorney-in-fact" status to advance the claims of the actual investor, alleged here to

16   be MVP.  With citation to *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,

17   549 F.3d 100, 104-06 (2d Cir. 2008), Moving Defendants established that MVPAM did not have

18   standing because "a mere power-of-attorney" does not confer standing to sue in the holder's own

19   right because a power-of-attorney does not transfer an ownership interest in the claim.  *Id.* at

20   108.

21        In response, Plaintiff first argues that *W.R. Huff* was wrongly decided, and that its status

22   as an attorney-in-fact suffices to provide it with Article III standing.  Plaintiff suggests that

23   Judge José Cabranes' unanimous opinion in *W.R. Huff* misapplied the United States Supreme

24   Court case of *Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008).  According

25   to Plaintiff, *Sprint* stands for the proposition that the mere grant of a power of attorney alone is

26   sufficient to transfer legal title of a cause of action.  In other words, Plaintiff suggests that by

27   merely hiring a lawyer, a client has necessarily, as a matter of law, transferred legal title to its

28

                                            3

1    cause of action to its lawyer.   This argument is absurd, no case law so holds, and under

2    Plaintiff's reasoning, the proper party with Article III standing in this action would not still be

3    the Plaintiff – it would be Sullivan Johnson LLP, whom Plaintiff hired to litigate its cause of

4    action.

5          *Sprint,* certainly, does not support Plaintiff's argument, and in fact holds just to the

6    contrary.  *See Sprint*, 554 U.S. at 276-77 (reviewing practice in 17th century England and noting

7    that assignment *and* a power of attorney were required to allow an assignee to bring suit).[1]  At

8    no point does *Sprint* suggest that an underlying assignment is not required.  *See id.*  Instead,

9    *Sprint* makes clear that the constitutional minimum for standing is injury-in-fact, and that the

10   plaintiff must therefore have legal title to, or a proprietary interest in, the claim.  *Id.* at 289

11   ("There is an important distinction between simply *hiring* a lawyer and assigning a claim to a

12   lawyer . . . . The latter confers a property right (which creditors might attach) the former does

13   not.") (emphasis added).

14         *Huff*, in other words, did not "misread" *Sprint*, as Plaintiff contends, and *Huff*'s holding

15   that a power of attorney will not suffice for standing purposes is well grounded in the law.  A

16   grant of a power of attorney establishes a mere agency.  *Huff*, 549 F.3d at 108; *see also*

17   *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 17-18 (2nd Cir. 1997) ("The

18   grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and,

19   standing alone, a power of attorney does not enable the grantee to bring suit in his own name.").

20   This fact is confirmed by Wright & Miller in the same section cited by the Supreme Court in

21   *Sprint*:

22            At common law the assignee of a chose in action did not hold legal title to it and
              could not qualify as the real party in interest.  Indeed, in large measure the real-
23            party-in-interest concept developed as a means of eliminating this restrictive rule.
              Under present law an assignment passes the title to the assignee so that the
24            assignee is the owner of any claim arising from the chose and should be treated as
              the real party in interest under Rule 17(a).  Thus, federal courts have held that an

25

26   [1]     Plaintiff does not cite to any cases holding that a grant of a power of attorney is the same
     as the transfer of ownership of a claim; instead, Plaintiff cites to an inapposite case relating to a
27   trust *res*, which has no relevance here, and to a case standing for the principle that an agent is a
     fiduciary for his principal, which again says nothing of ownership of a claim.  *See* Opposition, at
28   10 n.9.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

assignee for purposes of collection who holds legal title to the debt according to the governing substantive law is the real party in interest even though the assignee must account to the assignor for whatever is recovered in the action.  Similarly, an assignee who holds a security interest in a chose has been allowed to sue in his own name.  *On the other hand, the mere transfer of a general power of attorney or a transfer without consideration, but merely for the convenience of the parties does not create a sufficient interest or right in the chose and the grantor of the power remains the only real party in interest.*

6A Wright & Miller, § 1545, at 490-93, (emphasis added, internal footnotes omitted), portions cited in *Sprint*, 554 U.S. at 284-85.

The law is clear in rejecting Plaintiff's contention that a mere power of attorney suffices to confer Article III standing.  As the Complaint alleges nothing more than a mere power of attorney, the action must be dismissed for lack of standing.  *See Huff*, 549 F.3d at 104-06.

**2.      Stratford's Vague Reference to A Purported Assignment – Mentioned Nowhere in the Complaint – Does Not Suffice to Cure the Constitutional Standing Issue.**

Plaintiff argues in the alternative that MVP's claims were assigned to MVPAM as set forth in the March 21, 2011 Stratford Declaration.  This new contention, however, does not appear in the Complaint, is not a fact properly subject to judicial notice, and does not provide a basis to deny the Motion to Dismiss.

In addition, Stratford's declaration on this purported assignment is nothing more than a vague, legal conclusion that should not be accepted by the Court.  As described by Stratford, the purported assignment appears invalid on its face.  There is no mention of any consideration supporting the assignment, or other identification of the benefits accruing to MVP from the assignment.  There is no suggestion of a Board of Directors' resolution or management vote, for example, or reference to how this purported assignment complies with the corporate and contractual law of the British Virgin Islands.  Indeed, Stratford's declaration, which mentions only a "vote" by him, appears to be an end run around corporate governance.  Moreover, one cannot create through assignment what did not exist in the first place:  Stratford nowhere explains in his Declaration how MVP, a British Virgin Islands company that invested in a British

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1  Virgin Islands investment fund, even held a right to sue in the United States (or California for

2  that matter) that it could assign to anyone.

3     As set forth by Wright & Miller, in an action involving an assignment, the court typically

4  must consider two issues.  "First, it must determine exactly what has been assigned to make

5  certain that the plaintiff-assignee is the real party in interest with regard to the particular claim

6  involved in the action." 6A Wright & Miller, § 1545, at 493.  "Second, the court must assure

7  itself that a valid assignment has been made.  In this sense, the question whether a party

8  purporting to hold an assigned claim is a real party in interest ultimately rests on the substantive

9  law governing the assignability of the particular chose in action."  *Id.* at 494-95.

10    The issue of the validity of the assignment, particularly in light of the fact that it was

11 never previously alleged to exist, may prove dispositive of the entire case.  The Ninth Circuit has

12 held, for example, that an assignment may not be used to circumvent the bar of a statute of

13 limitations, and the statute has since run on MVP's claims.  *Wulff v. CMA, Inc.*, 890 F.2d 1070,

14 1075 (9th Cir. 1989).  Moreover, securities claims are not automatically assignable, and an

15 assignment may be rejected, such as "where the assignment appeared to have been made for the

16 purpose of creating standing and pursuing a vexatious lawsuit."  *See, e.g.*, *Smith v. Ayres*, 977

17 F.2d 946, 951 (5th Cir. 1992).

18    Here, however, it is premature to make these required assessments or even to evaluate the

19 law governing them (as noted, MVP being a British Virgin Islands entity), pending Plaintiff's

20 inclusion of detailed allegations concerning the nature and scope of the assignment.  Moving

21 Defendants suggest, for the reasons set forth in the balance of this Memorandum and in the

22 original moving papers, that the case should be dismissed with prejudice.  To the extent the

23 Court allows amendment, however, and given Plaintiff's burden of establishing a valid

24 assignment, the Court should require Plaintiff to include detailed allegations concerning the

25 scope and circumstances of the assignment and to attach it as an exhibit to any amended

26 complaint.  *See Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau*, 701

27 F.2d 1276, 1282-83 (9th Cir. 1983) (evaluating validity of assignment); *Britton v. Co-op*

28

6

1 *Banking Group,* 4 F.3d 742, 746 (9th Cir. 1993) (burden of proving the validity of an assignment

2 rests with the purported assignee).

3 **B.     Plaintiff Mischaracterizes its Own Status in an Effort to Evade the Bar of the Supreme Court's Holding in *Morrison* That Offshore Transactions Are Not Subject to United States Securities Laws.**

4

5       Plaintiff's entire argument to somehow avoid the holding of *Morrison v. National*

6 *Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), is premised upon there being a *domestic* investor.

7 *See* Opposition, at 11-12.  There is *no* domestic investor in this case.  Plaintiff MVPAM is only

8 the uninjured investment advisor for, and purported assignee of, MVP.  As alleged in the

9 Complaint, and as confirmed by Plaintiff's Opposition, MVP is the relevant investor, *not*

10 MVPAM, and MVP, the purported assignor, is a British Virgin Islands company.  (Complaint,

11 ¶ 3.)  Moreover, Plaintiff also alleges that MVP was not even actually the purchaser – that was

12 Citco Global, a Netherlands bank.

13       At best, Plaintiff now claims that it may be an assignee of a foreign investor's causes of

14 action (although that has yet to be expressly alleged in a complaint), but an assignee takes its

15 claims subject to all defenses applicable to the assignor.  *State Farm Mut. Auto Ins. Co. v. Davis*,

16 7 F.3d 180, 183 (9th Cir. 1993) (assignees stand in the shoes of assignor and are subject to any

17 defenses that could be asserted against assignor).  MVP and MVPAM are distinct entities, with

18 MVP being a British Virgin Islands company.  Complaint, ¶ 3.  An assignment of claims does

19 not operate to retroactively convert MVPAM from an investment advisor into the investor.[2]

20 Further, the assignment does not erase the fact that the actual purchase was made by Citco

21 Global, which is also offshore.

22       As a starting point, therefore, Plaintiff cannot escape its own allegations:  The purchase

23 was of a foreign security, Ark Discovery (Offshore), and was made by a foreign bank, Citco

24 Global, allegedly on behalf of an offshore hedge fund, MVP, located in the British Virgin

25 

26 [2]     Indeed, even Stratford's declaration, which goes outside of the pleadings, confirms that it was MVP that was the investor.  *See* Stratford Decl., ¶ 5 ("Citco effectuated each of MVPFoF's Ark Discovery Fund purchases . . . .").  In a similar vein, Plaintiff's Opposition is notably silent on the requirements of the Confidential Information Memorandum, which as described in the moving papers, make abundantly clear that investors had to be non-US persons.

27

28

7

1   Islands. (Complaint, ¶¶ 24, 28, 36, 43, 50.)  No domestic investor is implicated by Plaintiff's

2   allegations.  Plaintiff's reliance on *Stackhouse v. Toyota Motor Co.*, 2010 WL 3377409, *1-2

3   (C.D. Cal. Jul. 16, 2010), is therefore misplaced as *Stackhouse* supports dismissal in these

4   circumstances.  *Id.* ("It is clear that *Morrison* forecloses § 10(b) claims by foreign plaintiffs

5   based on securities bought or sold outside of the United States.").  Indeed, the court in

6   *Stackhouse* found even the presence of a *domestic* investor to be inadequate under *Morrison*,

7   when the security was purchased on a foreign exchange.  Here, there is no domestic investor;

8   only a foreign investor purchasing a foreign security through a foreign custodian.

9   Further, as discussed at length in Moving Defendants' motion, and in cases entirely

10  ignored by Plaintiff, a United States buyer (which is not present here), involvement of a United

11  States bank, or even alleged fraud directed at the United States do *not* suffice under *Morrison*.

12  Motion, at 19, citing *Plumbers' Union v. Swiss Reinsurance Co.,* 2010 WL 3860397, *6

13  (S.D.N.Y. October 4, 2010); *In re Societe Generale Secs. Litig.,* 2010 WL 3910286, *6

14  (S.D.N.Y. Sept. 29, 2010); *Cornwell v. Credit Suisse Group,* 729 F. Supp. 2d 620, 628 (S.D.N.Y.

15  2010); *see also Elliot Assoc. v. Porsche Automobil Holdings SE*, 2010 WL 5463846, *7

16  (S.D.N.Y. Dec. 30, 2010); *In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d

17  1305, 1317 (S.D. Fla. 2010).  Plaintiff ignores this weight of authority; Plaintiff's failure even to

18  attempt to distinguish these cases demonstrates that Plaintiff is on the wrong side of the law and

19  facts on this issue.[3]

20  In addition, Plaintiff's rank speculation (that appears nowhere in the Complaint)

21  concerning disposition of funds it claims were wired to the United States does not convert this

22  foreign transaction into a domestic one.  *See* Stratford Decl., ¶ 5 (suggesting funds never left the

23  United States and were used to make loans in the United States).  Stratford lacks foundation to

24  _____

25  [3]     *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010), cited by
    Plaintiff, does not compel a contrary conclusion.  *Anwar* was a highly complex class action,
    involving a mix of funds and domestic and foreign investors.  *Id.* at 388-89.  Here, there is only

26  one offshore fund, Ark Discovery (Offshore), and one foreign investor, MVP, at issue.
    Moreover, while the court in *Anwar* termed the record before it to be incomplete, in this case,

27  Plaintiff's own allegations compel dismissal of the Complaint under *Morrison.  See id.* at 405.

28

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1    make this assertion, which also lies outside of the pleadings and is not a fact subject to judicial

2    notice (and Plaintiff does not request judicial notice of the testimony provided in the new

3    declaration).  Moving Defendants object to its consideration on a motion to dismiss.

4            In addition, it does not matter what the issuer ultimately does with the money; it is the

5    location of the transaction that is dispositive.  *See* Motion, at 18, citing *Morrison*, 130 S.Ct. at

6    2883-84 ("For it is a rare case of prohibited extraterritorial application that lacks *all* contact with

7    the territory of the United States.  But the presumption against extraterritorial application would

8    be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is

9    involved in the case."); *see also In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. at

10   1317 ("The funds at issue in this case are registered under the laws of the Bahamas, and the

11   Plaintiffs purposefully went offshore to invest.  Adjudicating the Plaintiffs' securities fraud

12   claims would therefore entail the type of interference with foreign securities regulation that

13   *Morrison* sought to avoid.").

14           Accordingly, Plaintiff's incorrect and un-alleged speculation concerning the use of the

15   funds does not suffice to transform this offshore transaction into an onshore one.[4]

16           Plaintiff's reliance on the California case of *Hall v. Superior Court*, 150 Cal. App. 3d

17   411, 417 (1983), is also misplaced.  *Hall* is not a case involving the federal securities laws, and it

18   pre-dates *Morrison*.  In addition, Plaintiff's contention that *Hall* supports its arguments that an

19   offer to sell was made in California in this case is incorrect.  In advancing this argument,

20   Plaintiff wrongly conflates MVPAM, the investment advisor and purported assignee, with the

21   actual investor and purported assignor, MVP.  MVP, the investor, is a British Virgin Islands

22   company, and it used yet another foreign entity, Citco Global, to make the purchase.  Neither is

23   in California.  This is to be contrasted with the situation in *Hall*, where the plaintiff investor was

---

[4]       As cited above, the asserted involvement of a United States bank does not render the
transaction a domestic one.  Moreover, possession of funds by an intermediary bank is not the
same as possession by the beneficiary, here Ark Discovery (Offshore).  *See Shipping Corp. of
India Ltd. v. Jaidhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009) (beneficiary has no
property interest in an electronic funds transfer until transfer is completed by acceptance by the
beneficiary's bank; electronic fund transfers "are neither the property of the originator nor the
beneficiary while briefly in the possession of an intermediary bank").

9

1  a California resident *and* the defendant seller's principal place of business and its officers and

2  shareholders were in California.  In this case, the purchaser (Citco Global allegedly for MVP)

3  and the seller are foreign entities, and no offer was made to *any* California investor.  *Compare*

4  *Hall*, 150 Cal. App. 3d at 414.  Moreover, as set forth in the host of authorities cited above, the

5  mere presence of a domestic purchaser will not suffice to cause the matter to be subject to United

6  States securities laws, when the transaction takes place offshore.

7      Plaintiff's federal claims depend *entirely* upon this being a domestic transaction subject

8  to the federal securities laws.[5]  Yet Plaintiff offers only a mischaracterization of its own

9  allegations and misdirection as to the identity of the underlying purchaser in an effort to escape

10  the plain holding of *Morrison*.  Plaintiff's own allegations demonstrate that this was an offshore

11  transaction.  Plaintiff's federal securities claims must therefore be dismissed with prejudice.

12  **C.  Plaintiff's Impermissible Introduction of Evidence From Outside of Its Own Pleading Confirms That the Complaint Does Not Comply with Rule 9(b) or the PSLRA.**

13

14      In requesting dismissal, Moving Defendants established that Plaintiff's Complaint fails to

15  meet the stringent pleadings standards of the PSLRA, 15 U.S.C. § 78u-4, and Rule 9(b).  Moving

16  Defendants reviewed the fact that Plaintiff had failed properly to specify the misstatements or

17  omissions of facts it was claiming were false, failed to tie each Moving Defendant to each

18  alleged misrepresentation, and failed to include specific facts establishing scienter, again as to

19  *each* Moving Defendant.  In response, Plaintiff ignores several of the arguments advanced by

20  Defendants, much of the cited law, and relies instead upon mere conclusions and extensive

21  documentation that is not attached to the Complaint nor incorporated by reference into it.

22

---

[5]      To the extent Plaintiff is arguing that only transactions that take place on foreign stock
23  exchanges are excluded from Section 10(b)'s coverage, Plaintiff is mistaken.  *Morrison* holds
that Section 10(b) "reaches the use of a manipulative or deceptive device or contrivance *only* in
24  connection with the purchase or sale of a security listed on an American stock exchange, and the
purchase or sale of any other security *in* the United States." 130 S.Ct. at 2888 (emphasis added).
25  The focus of the Exchange Act is *not* on where the alleged deception originated or occurred, "but
upon purchases and sales of securities in the United States . . . .  Those purchase-and-sale
26  transactions are the objects of the statute's solicitude." *Id.* at 2884.  Here, irrespective of
whether Plaintiff alleges that the "deception originated or occurred" in the United States, the
27  purchase and sale did not, and that is the only relevant fact under *Morrison*.

28

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

Plaintiff's Opposition thereby only confirms the deficiencies in the operative pleading.  While the Court need not reach these issues, as the federal claims must be dismissed under *Morrison*, should it do so, Plaintiff's failure to plead with particularity provides an independent basis for dismissal.

  **1. Plaintiff Does Not Address Its Failure to Specify Which Allegations Are Allegedly False.**

  As a starting point, and as set forth in the Motion, Plaintiff must as to *each* Defendant "specify *each* statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b) (emphasis added); *see also* Fed.R.Civ.Proc. 9(b).  In this case, however, Plaintiff's lengthy cut and paste allegations are followed by this allegation:

> *Most* of the representations made by and on behalf of Defendants as alleged in Paragraphs 29, 31-35, 37-42, 44-49 and 51-59 were materially false and misleading.

(Complaint, ¶ 64, emphasis added.)  This allegation does not suffice under the PSLRA and Rule 9(b), a fact that Plaintiff tacitly admits by ignoring this argument in its entirety.[6]

  Furthermore, Plaintiff's Opposition demonstrates why it is particularly critical in this case to require Plaintiff to be precise about the statements it contends were false and the source of those statements.  Plaintiff's summary of allegations in its Opposition is largely unmoored from the actual allegations in the Complaint and replete with conclusions about what Moving Defendants supposedly said or knew with respect to transactions and diligence, for example.

  Yet the Complaint does not include any allegations that Moving Defendants such as Balliet or Hanslik made any direct statements at all.  And while Plaintiff alleges numerous broad statements by Vestbirk in an alleged September 2007 call, the Complaint fails to specify which

---

[6] Moving Defendants' "bespeaks caution" and puffery arguments were advanced in the context of Plaintiff's failure to specify which representations it was actually claiming were false. Plaintiff's generic allegation that essentially every statement in the materials was false necessarily means that most are not actionable under these doctrines.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1    specific statements were allegedly false, why these statements were allegedly false when made,

2    or how these statements, which were allegedly made before the fund was even established and

3    *six months* before any investment by MVP, should have been known by Vestbirk to have been

4    false when made.  In addition, while Plaintiff in the *Opposition* makes repeated reference to

5    representations of intended "constant contact" with the retailers involved in the underlying

6    transactions, the Complaint is notably devoid of specific factual allegations on this purported

7    representation.  The Ark Discovery Summary Sheet and Presentation, for example, do *not*

8    contain such statements.  At most, these documents make apparent that the contact was to be

9    with the "client," which were the Petters' entities, and not with the underlying retailers.  *See*

10   RJN, Exs. G and H.

11          The PSLRA and Rule 9(b) bar a plaintiff from relying on sweeping generalizations of

12   fraud.  Plaintiff is required to state the exact statements it contends were false and why they were

13   false when made.  Plaintiff has not done so here, and on this ground as well the Complaint

14   should be dismissed.

      **2.**      **Plaintiff Has Failed to Include Specific Allegations Linking Each Moving Defendant to the Allegedly False Statements.**

17          As a starting point, the failure of Plaintiff to adequately identify which specific

18   statements it alleges are false necessarily precludes Plaintiff from establishing which Defendants

19   should be responsible for which statements.  Setting aside that dispositive defect for the moment,

20   Plaintiff also argues that it need not specify the role each Moving Defendant played in the

21   making of the allegedly false representations.  Plaintiff instead contends that it can rely on

22   "collective action" or group pleading doctrine to rope all Moving Defendants into the making of

23   the alleged misrepresentations.  Plaintiff is incorrect.

24          Citing to *In re Glenfed, Inc. Secur. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995), Plaintiff

25   suggests that the mere allegation of a defendant's position in a company will suffice to tie a

26   defendant to the company's alleged misrepresentations.  As a starting point, however, such a

27   theory has no bearing on Vestbirk's alleged September 24, 2007 telephone conference, which is

28

12

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1    not under any measure a prospectus, registration statement, annual report, press release or the

2    like.  Even if still viable after the PSLRA, the group pleading doctrine would not suffice to tie

3    the Moving Defendants (with the possible exception of ARAM, Ltd.) to these alleged Vestbirk

4    statements (statements which Plaintiff, as set forth above, has not adequately pled as false when

5    made).

6         Further, Plaintiff is incorrect in asserting that the group pleading doctrine has survived

7    the enactment of the PSLRA.  *See* Opposition, at 15-16.  It has not.  As stated in *In re Marvell*

8    *Technology Group Ltd. Secur. Litig.*, 2008 WL 4544439, *3-4 (N.D. Cal. Sep. 29, 2008):

> The group pleading doctrine allows a presumption that false and misleading
> information disseminated through documents were made by the collective action
> of the corporation's officers.  *In re GlenFed, Inc.,* 60 F.3d 591, 593(9th Cir.1995).
> The Ninth Circuit has not said whether this doctrine remains viable after the
> enactment of the PSLRA.  In fact, two recent cases to consider the matter came to
> conflicting decisions regarding the continued survival after the PSLRA.  *Cf. In re*
> *BP Prudhoe Bay Royalty Trust Securities Litigation,* 2007 WL 3171435 at *7
> (W.D.Wash. October 26, 2007) (joining "those majority of Ninth Circuit district
> courts that have ruled on the issue" to find that the group pleading doctrine
> survives the PSLRA) *with In re Hansen Natural Corp. Securities Litigation,* 527
> F.Supp.2d 1142, 1153-54 (C.D. Cal. October 16, 2007) (concluding that the group
> pleading doctrine can no longer be used in cases under the PSLRA).

> The court finds the reasoning in *In re Hansen* to be persuasive.  There, the court
> based its decision on the Supreme Court's recent refusal to overturn the Seventh
> Circuit's determination in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 437 F.3d
> 588, 602-03 (7th Cir.2006), that the group pleading doctrine did not survive the
> PSLRA and joined courts in this district finding that the group pleading doctrine
> is contrary to the PSLRA.  *Hansen*, 527 F.Supp.2d at 1153-54 (citing *Tellabs, Inc.*
> *v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2511 n. 6, 168
> L.Ed.2d 179 (2007)).  The court in *In re BP Prudhoe Bay,* by contrast, did not
> consider *Tellabs.*  Accordingly, the court finds that plaintiffs may not rely on the
> group pleading doctrine. *See also Winer Family Trust v. Queen,* 503 F.3d 319,
> 335 (3d Cir.2007) (interpreting *Tellabs* to abolish the group pleading doctrine).

22   *Id.*; *see also In re Dura Pharmaceuticals, Inc. Secur. Litig.*, 452 F. Supp. 2d 1005, 1031 (S.D.

23   Cal. 2006) ( "The Ninth Circuit has not opined whether this doctrine remains viable after the

24   enactment of the PSLRA.  However, this Court has joined other courts in this district and

25   concluded the group pleading doctrine did not survive the PSLRA.").

26        The cases cited by Plaintiff do not require a different result.  For example, while Plaintiff

27   primarily cites to *In re Wash. Mut., Inc. Securities, Derivative & ERISA Litig.*, 2010 WL

28

13

1734848, *1, 3 (W.D. Wash. Apr. 28, 2010), that case addressed *only* a motion directed at California state law claims.  There was no discussion of, or citation to, the PSLRA.  Similarly unavailing is *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 706 (9th Cir. 1999), which only applied Rule 9(b) and not the PSLRA.  *See also In re Omnivision Technologies, Inc.*, 2005 WL 1867717, *5 (N.D. Cal. Jul. 29, 2005) (citing only to *Berry*, which as mentioned above, has nothing to do with the PSLRA or even federal securities law claims).  As for *Lopes v. Vieira*, the District Court's analysis on the remaining viability of the doctrine is unclear, but the court in any event required evidence of direct involvement before statements would be attributed to the defendant.  488 F. Supp. 2d 1000, 1034 (E.D. Cal. 2007).[7]

Plaintiff has not alleged which statements it contends are false, and has not alleged facts implicating the Moving Defendants, including Balliet, Hanslik, or any of the Ark Entities (US) in the making of those statements.  For this reason, as well, the claims must be dismissed.

### 3. Plaintiff's Submission of Materials Outside of the Pleadings Confirms That Plaintiff Has Not and Cannot Allege Moving Defendants Acted With The Requisite Scienter.

Plaintiff is required to allege specific facts that demonstrate a "cogent and compelling" inference of scienter with respect to each defendant.  15 U.S.C. § 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007); Motion, at 23.  In their moving papers, Moving Defendants demonstrated that Plaintiff fell well short of this standard. Plaintiff's Complaint offers only generalized and conclusory allegations of scienter, mischaracterizations of Granat's testimony (which it failed to tie, in any event, to the Moving Defendants), and vanilla profit motive allegations that fell short as a matter of law.  Motion, at 23-26.

Moving Defendants also cited to cases holding that allegations of the same type as made by Plaintiff do not suffice.  *E.g., see S.E.C. v. Cohmad Sec. Corp.,* 2010 WL 363844, *2

---

[7]     As for Plaintiff's remaining case, *In re Pfizer, Inc. Secur. Litig.*, 584 F. Supp. 2d 621, 638 (S.D.N.Y. 2008), it is contra to the reasoning of *Marvell*, as set forth above, and is not controlling on this Court.

1   (S.D.N.Y. Feb. 2, 2010) (rejecting scienter allegations because "the complaint supports the

2   reasonable inference that Madoff fooled the defendants as he did individual investors, financial

3   institutions, and regulators"); *South Cherry Street LLC v. Hennessee Group LLC,* 573 F.3d 98,

4   111-13 (2d Cir. 2009) (terming allegation that defendant's due diligence fell short of what was

5   represented to be "hardly a cogent or compelling suggestion" of scienter in a case also involving

6   an investment fund victimized by a Ponzi scheme).

7        Plaintiff fails to address these cases.  Instead, Plaintiff tries to make an end-run around

8   the requirement of individualized scienter allegations by relying on the "core operations

9   inference" as described in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-86 (9th Cir.

10  2008).  However, despite lengthy quotations from this case, Plaintiff omits several key passages,

11  wherein the Ninth Circuit set forth a significant limitation on use of the doctrine, which is that

12  the core-operations inference is not by itself, as a matter of law, a sufficient basis to allege

13  scienter:

14       A question remains, however, about reliance on the core-operations inference
         when it is the only basis for scienter in the complaint.  Where a complaint relies
15       on allegations that management had an important role in the company but does
         not contain additional detailed allegations about the defendants' actual exposure
16       to information, it will usually fall short of the PSLRA standard.  In such cases the
         inference that defendants had knowledge of the relevant facts will not be much
17       stronger, if at all, than the inference that defendants remained unaware.  *As a
         general matter, "corporate management's general awareness of the day-to-day*
18       *workings of the company's business does not establish scienter – at least absent*
         *some additional allegation of specific information conveyed to management and*
19       *related to the fraud" or other allegations supporting scienter.*

20  *Id.* at 784 (emphasis added), citing *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 534 F.3d

21  1068, 1087 (9th Cir. 2008).  Plaintiff here offers nothing more then "general awareness," and

22  does not include additional allegations of specific information conveyed to management related

23  to the fraud or otherwise supporting scienter.  Its allegations, in other words, do not suffice under

24  the PSLRA.

25       Plaintiff also cites to *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir.

26  2008), but *Glazer* strongly supports Moving Defendants' arguments.  In *Glazer,* the Ninth

27  Circuit affirmed a district court's dismissal of a securities claim and, in so doing, confirmed the

28

**15**

1    necessity of pleading scienter on an individual basis and underscored the need for specific facts

2    even when a plaintiff elects to rely upon the core operations inference.  *Id.* at 742-49.  As here,

3    the plaintiff in *Glazer* had not pled any facts demonstrating personal knowledge of the allegedly

4    improper underlying transactions.  The plaintiff, however, sought to establish an inference of

5    scienter through factors such as the defendant's role as CEO in what was a small company, the

6    financial incentives allegedly accruing to the defendant from ignoring the fraud, and the fact that

7    the fraud was quickly discovered later by a third party during due diligence preceding an

8    acquisition.  *Id.* at 745.

9         The Ninth Circuit comprehensively reviewed and then rejected each of the plaintiff's

10   asserted grounds – grounds that, it should be noted, were far more substantial than the mere

11   conclusions and speculation offered by Plaintiff in this case.  *See id.* at 745-49.  The Ninth

12   Circuit held that, absent "specific admissions" from officers that they were involved in "every

13   detail of the company," general allegations that an officer "must have known" of the fraud as a

14   result of his position in the company or "hands-on management style" are not sufficient.  *Id.*,

15   citing *Sparling v. Daou*, 411 F.3d 1006, 1022 (9th Cir. 2005).  Similarly, responsibility for "day-

16   to-day operations" was not enough to establish scienter, absent additional specific factual

17   allegations showing that the improper activities were of such prominence that it would be

18   "absurd" to suggest that top management could have been unaware.  *Glazer*, 549 F.3d at 746.

19        In *Glazer*, the Ninth Circuit found that the plaintiff had not alleged sufficient facts to

20   establish scienter.  Despite the company's small size, and the defendant's prominent role as

21   CEO, the illegal payments at issue were not of the nature that awareness of them by senior

22   management could be assumed.  *Id.* at 746-747.  "To the contrary, the surreptitious nature of the

23   transactions creates an equally strong inference that the payments would have deliberately been

24   kept secret – even within the company."  *Id.*  Similarly, the fact that a third party (which

25   evaluated the company as part of due diligence leading up to an acquisition) discovered the fraud

26   early on in its due diligence, did not support a strong inference of scienter.  *Id.* at 748 ("The mere

27

28

16

1   fact that GE was able to discover the FCPA violations does not create a direct inference that

2   Magistri personally knew about the violations.").

3       *South Ferry* and *Glazer* confirm the inadequacy of Plaintiff's scienter allegations under

4   the PSLRA.  Plaintiff's Complaint has no allegations relating to the "core operations" inference

5   upon which it now seeks to rely, and instead makes only generic references to the individual

6   Defendants' alleged management positions.  (Complaint, ¶¶ 5-6.)  And Plaintiff in its Opposition

7   relies solely upon speculation about what Moving Defendants (and non-moving defendant

8   Vestbirk for that matter) were supposed to have known.  Plaintiff alleges no specific,

9   contemporaneous facts that were known to any defendant at the time of the alleged statements  –

10  not as to non-moving party Vestbirk, who is the heavy focus of Plaintiff's Opposition, and

11  certainly not as to the actual Moving Defendants such as Balliet, Hanslik, or any of the Ark

12  Entities (US).[8]  Indeed, Hanslik appears nowhere in the transcripts attached by Plaintiff.

13  Further, notwithstanding Plaintiff's list of Vestbirk's purported statements, not only has Plaintiff

14  not alleged specific facts demonstrating that Vestbirk knew the statements were false when

15  made, it has alleged no facts tying these statements to the Moving Defendants, and no facts

16  showing that Moving Defendants were contemporaneously on notice of these same issues.

17  Under the PSLRA, one defendant cannot be equated with another.

18      Moreover, in going outside of its own pleading, Plaintiff only succeeds in corroborating

19  that Moving Defendants were not previously aware of the Petters fraud or of any fact that

20  suggested anything was amiss.  Plaintiff, for example, cites to a lengthy transcript of a telephone

21  discussion involving Jim Granat and Jeff Balliet in September 2008.  (Plaintiff's Request for

22  Judicial Notice, Ex. B.)  This telephone discussion, which took place only days before the Petters

23  scheme unraveled and well *after* the statements and investments at issue in this case, is preceded

24  by an interchange between actual participants in the Petters fraud conniving on how to lie to

25  ----
[8]     The Ark Entities (US) are Ark Royal Asset Management, LLC, Ark Discovery LLC, Ark

26  Royal Holdings, LLC, Ark Royal Services, LLC; Ark Royal Capital, LLC; Ark Royal Capital
    Funding, LLC; Ark Royal Capital Inc; Ark Royal Resources, LLC; Ark Royal Assurance, LLC;

27  and Ark Royal Investments, LLC.  *See* Motion, at 6 n.7

28                                             **17**

1  Balliet when he joins the call.  *Id.* at 1-2.  Such planning to deceive Balliet would hardly be

2  required if he and the Ark-related Moving Defendants were "in" on Petters' scheme.

3   Once on the call, Balliet repeatedly expressed concern over delays in payment, requested

4  independent verification of transactions, and demonstrated outright surprise to learn that the

5  underlying payment structure was not as he had understood it was.  *Id.* at 5-11, *e.g.,* 9 ("And I

6  think that we've now learned that well, in fact, those funds don't flow back to the bank account

7  of the SPV.  It actually flows to a Petters Company account. . . .")  This transcript only supports

8  one inference:  Balliet had no idea that Petters was running a massive Ponzi scheme and did not

9  know any of the statements concerning the structure of the transactions were inaccurate when

10  made.[9]  As with the Granat testimony, this transcript shows only an immediate investigation by

11  ARAM, Vestbirk and Balliet upon the "red flag" of a delay of payment, and not a defendant

12  ignoring such red flags while making contrary public statements.[10]  *See also* Ex. D to Johnson

13  Declaration, at 11-12 (reference to Ark Royal email requesting access to warehouses).

14   The Ark Discovery fund lost substantial money as a result of being defrauded by Petters.

15  Moving Defendants were victims of a complex, sophisticated fraud that extended over years and

16  involved hundreds of victims and billions in losses, including by very sophisticated entities.  As

17  the Granat testimony relied upon by Plaintiff in the Complaint discloses, the Petters' fraud relied

18  upon the extensive creation and circulation of false documentation designed for the very purpose

19  of convincing sophisticated investors that the underlying transactions had happened and were

20  legitimate.  In such a circumstance, there can be no "strong inference" that it would have been

21  "absurd" for Moving Defendants not to have known of Petters' secret schemes and false

22

23

---

[9]   Plaintiff establishes no foundation for these transcripts, which are also hearsay.  The transcripts are not part of Plaintiff's Complaint and not properly relevant to the determination whether Plaintiff has stated a claim for securities fraud.  To the extent the transcripts are considered, they support rather than contradict Moving Defendants' arguments, and demonstrate that Plaintiff is alleging nothing more than fraud by hindsight.

[10]   As for the remaining transcripts, there are undoubtedly reams of evidence demonstrating the depths of Petters' fraud and deceit. He was convicted and sentenced to prison for this billion-dollar Ponzi scheme.  What Plaintiff has not done, however, and what these transcripts do not do, is implicate any Moving Defendant in Petters' scheme.

**18**

1   documents.[11]  Plaintiff's speculation and mere conclusions do not come close to meeting its

2   pleading burden, and the claim must be dismissed.

3   **D.    Plaintiff Has Failed to State a Claim for Control Person Liability Under Section 20(a).**

4

5           As set forth in the Moving Papers, with the dismissal of Plaintiff's Section 10(b) claims,

6   the claim for control person liability under Section 20(a) should also be dismissed.  Motion, at

7   27-28.

8   **E.    Plaintiff's Opposition Brief Confirms That It Cannot State a California Securities Law Claim.**

9

10          As set forth in the motion, Plaintiff's California securities law claim should be dismissed

11  for failure to specify what provisions were allegedly violated and how.  Motion, at 31.  Moving

12  Defendants maintain that this should still be the result, despite Plaintiff's attempted clarification

13  in the Opposition, so that Moving Defendants can fairly be put on notice of the alleged basis for

14  a claim prior to bringing a motion to dismiss.

15          Even as now clarified by Plaintiff in its opposition brief – though not in its Complaint –

16  the claim still should be dismissed.  In seeking to maintain the claim, Plaintiff now contends that

17  by using the Latin phrase "et seq.," it is actually alleging a violation of Corporations Code

18  section 25504.1, which imposes joint and several liability on any person who materially assists

19  in a violation of Corporations Code section 25401, and Corporations Code section 25504, which

20  imposes joint and several liability on certain persons who control a person that violates Section

21  25401.  Section 25401 makes it unlawful for any person to offer or sell a security *in this state* by

22  means of any written or oral communication that includes an untrue statement of material fact or

23

24  _____

    [11]     Plaintiff's citation to portions of the Trustee's claw-back complaint is misleading, at best.
25  The document is hearsay, relates only to a loan extended in September 2008, and does not
    establish any contemporaneous red flags known to the Moving Defendants at the time the
26  alleged statements were made.  In addition, Plaintiff only includes a brief excerpt, and this
    complaint is not referenced or attached to Plaintiff's Complaint, and is therefore not proper for
27  consideration in evaluating Plaintiff's allegations.  All told, it has been reported that the Petters'
    Trustee has filed over 200 claw-back suits, and no meaningful inference can therefore be drawn
28  from this one suit.

                                                   19

1   omission. [12]  Plaintiff disclaims reliance on Corporations Code section 25400, which was a

2   statute also reviewed in Moving Defendants' Motion.

3        Plaintiff's state law securities law claim must be dismissed because there has been no

4   offer to sell or sale of a security "in this state."[13]  In arguing otherwise, Plaintiff continues to

5   conflate itself, the uninjured investment advisor and purported assignee, with the actual investor

6   and purported assignor, MVP.  MVP, the alleged investor, is a British Virgin Islands company.

7   There was no California seller, no California buyer, no offer to a California investor, no sale to a

8   California investor, and no offer to sell any share of Ark Discovery (Offshore) in California; nor

9   does the Complaint so allege.  Citco Global purchased the securities, allegedly on behalf of

10  MVP, from Ark Discovery (Offshore).  (Complaint, ¶¶ 28, 36, 50.)  All are offshore entities, and

11  none is alleged to be located in the State of California.

12       The very authorities relied upon by Plaintiff make clear that liability cannot attach under

13  California law for this foreign securities transaction.  For example, Plaintiff cites to California

14  Corporations Code section 25017(b), which sets forth a definition of a sale or offer to sell.[14]

15  Cases applying Section 25017(b), however, hold that it does not apply extra-territorially, and

16  certainly would not apply in a case such as this one, where an offshore investor, MVP, uses

17  another offshore agent, Citco Global, to purchase shares of a foreign hedge fund, Ark Discovery

18  (Offshore).  *See, e.g.*, *Los Angeles Fisheries v. Crook*, 47 F.2d 1031, 1034-35 (9th Cir. 1931)

19  (where California purchaser requested that Nevada bank acquire stock of Nevada company on

20  his behalf, no offer for sale was made in California for purposes of application of California

21  securities laws); *Robinson v. Cupples Container Co.*, 316 F. Supp. 1362, 1368 (N.D. Cal. 1970)

22  (purchase of stock not subject to California securities laws, despite presence of California

23

24  [12]    Plaintiff alleges no facts demonstrating that any Moving Defendant "materially assisted" the sale of Ark Discovery (Offshore) to MVP.

25  [13]    Plaintiff contends that the "privity" requirement is met as between MVP and Ark
26  Discovery (Offshore).  However, this argument depends on, among other things, Plaintiff asserting MVP's claims as an assignee, and no such assignment is alleged in the Complaint.

27  [14]    Moving Defendants in their motion cited to California Corporations Code § 25008, which contains the specific definition of when an offer or sale of a security is made "in this state."
28  Motion, at 32.  Plaintiff ignores this controlling provision.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 210-CV-02483-GEB-CMK

1   purchaser and negotiations in California, where contract for sale and exchange of stock took

2   place in Missouri).  Indeed, Plaintiff continues to ignore the fact that it expressly alleges that the

3   relevant transaction took place between Citco Global, a Netherlands bank, and Ark Discovery

4   (Offshore).  Plaintiff's own allegations therefore place the offer to sell and purchase offshore,

5   and a purported assignment of claims from the offshore investor to Plaintiff does not somehow

6   transform the offshore, non-cognizable claim into an onshore, cognizable claim.  Similarly, *Hall*

7   *v. Superior Court*, 150 Cal. App. 3d 411 (1983), for the reasons set forth earlier in the *Morrison*

8   discussion at page 7, supports Moving Defendants' arguments, not Plaintiff's.  In *Hall,* the seller

9   and buyer were both in California, thus bringing the transaction under California law despite

10  recitals in the offering materials to the contrary.  *Id.* at 413-14.  Here, *no* parties to the original

11  transaction are located in California, and no sale in California was contemplated or effectuated.

12       Plaintiff also fails to distinguish or limit *Diamond Multimedia Systems, Inc. v. Sup. Ct.*,

13  19 Cal. 4th 1036 (1999), cited by Moving Defendants, which held that (1)  Section 25401 is

14  expressly limited to offers to buy or sell "in this state," and (2) the Corporate Securities Act is

15  "quite specific in describing those unlawful practices in which a purchase or sale must occur in

16  California," and (3) expressly recognized the presumption that California statutes do not extend

17  extraterritorially.  *Id.* at 1053, 1059, *citing North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1

18  (1916).  Plaintiff also fails to confront the fact that the broad reach of California securities law

19  advocated by Plaintiff could not survive scrutiny under the Due Process Clause or the Commerce

20  Clause.  *See Diamond Multimedia*, 19 Cal. 4th at 1063 (rejecting commerce clause arguments in

21  that case because issuer and maker of statements was located in California, and thus application

22  of statute was not purporting to regulate any transaction in securities occurring outside of

23  California), citing *Healy v. Beer Institute,* 491 U.S. 324, 336 (1989) (commerce clause precludes

24  application of state statute to commerce that takes place wholly outside state's borders, whether

25  or not commerce has effects within state), and *Edgar v. MITE Corp.*, 457 U.S. 624, 641-44

26  (1982) (invalidating Illinois law that purported to regulate transactions outside of state lines); s*ee*

27  *also Morrison*, 130 S.Ct. at 2883-88.

28

**21**

1        Accordingly, as Plaintiff has failed to allege facts establishing the sale or offer of sale of

2   stock in California, this claim must be dismissed with prejudice:  The underlying defects are not

3   subject to cure through amendment nor assignment.

4   **F.**    **Plaintiff Has Failed to State California State Law Claims for Fraud and Negligent Misrepresentation.**

5

6        As set forth in the moving papers at 28-30, the same defects with respect to Plaintiff's

7   pleading of securities fraud mandate the dismissal of its state law fraud and negligent

8   misrepresentation claims.[15]

9   **G.**    **Plaintiff Has Failed to State a Claim For Negligence:  Plaintiff Cannot Establish a Duty Owed to It Under the Economic Loss Rule, and any Action Is Required to Be Pursued Derivatively in the British Virgin Islands.**

10

11        In moving to dismiss this claim, Moving Defendants identified California's Economic

12   Loss Rule, which provides that absent a "special relationship," the general rule in California is

13   that there is no duty to prevent economic loss to third parties in negligence actions at common

14   law.  Motion, at 35-36.  In opposition, Plaintiff does not address the Economic Loss Rule at all.

15   Instead, Plaintiff asserts that the alleged representations concerning the steps unspecified

16   "Defendants" would take to ensure the legitimacy and safety of Ark Discovery (Offshore)'s

17   loans, and their alleged undertaking to render "specific services" to protect Plaintiff and

18   safeguard its investments, means that Plaintiff was the "client" or equivalent of the client of

19   these unspecified Defendants.  Plaintiff's argument fails under both the law and in light of the

20   actual allegation of the Complaint.

21        As a starting point, Plaintiff's argument appears to be one advanced on behalf of MVP.

22   As has been noted, however, there are no allegations in the Complaint establishing Plaintiff as

23   the assignee of MVP to bring its claims.  In addition, Plaintiff's arguments far outstrip its actual

24   allegations.  No facts are alleged to suggest that Moving Defendants entered into any agreement

25   with Plaintiff, or agreed to take any steps whatsoever on its specific behalf.  Indeed, there is no

26   

----

[15]    If Plaintiff in fact seeks to proceed as an assignee, and the Court allows amendment for it

27   to attempt to so allege, important choice of law issues will also come into play with respect to

28   

**22**

1  indication that any Moving Defendant (apart perhaps from ARAM, through non-moving party

2  Vestbirk) was even aware of MVP or its potential purchase of shares, and Plaintiff alleges no

3  facts establishing that individual defendants such as Jeff Balliet or Allison Hanslik or the Ark

4  Entities (US) owed any duty to Plaintiff.  Plaintiff's allegations certainly do not establish an

5  investment advisor-client relationship between MVPAM or MVP and any Moving Defendant.

6  MVPAM is an investment manager.  It runs a hedge fund.  (Complaint, ¶ 3.)  This was an arms-

7  length acquisition of shares of one hedge fund by another hedge fund.[16]

8       Plaintiff also fails to address and thereby concedes that Moving Defendants' duties, if

9  such duties were owed, would run to Ark Discovery (Offshore), and not to its shareholders.

10  MVP is in no different position than a shareholder of General Motors, unhappy that the

11  management of the company may have led to a diminution of share value.  Such claims need to

12  be brought derivatively, in this case in the British Virgin Islands.  Motion, at 36.[17]

13

14

15  the viability of Plaintiff's California law claims, given that MVP is a British Virgin Islands

16  company.

[16]      Plaintiff also cites to the provision of the Confidential Information Memorandum that

17  provides for the indemnification of defendant ARAM (the investment advisor to Ark Discovery
(Offshore)) and limits liability to acts of gross negligence and intentional misconduct, such as

18  fraud.  Opp. at 28.  As an initial matter, Plaintiff has objected to the Court taking judicial notice
of this document.  Plaintiff cannot have it both ways:  either the Court may consider the

19  document in ruling on the motion or it may not.  Further, the cited provision limits liability, it
does not affirmatively establish any duty running from the investment advisor to any shareholder

20  of Ark Discovery (Offshore), and does not alter the fact that any claim that ARAM mismanaged
Ark Discovery (Offshore)'s investments needs to be brought derivatively in the British Virgin

21  Islands.  See RJN, Ex. I.

[17]      Lopes v. Viera, 488 F. Supp. 2d 1000, 1045-46 (E.D. Cal. 2007), is not to the contrary.

22  In Lopes, plaintiffs, who were dairy farmers, agreed to forego cash payment for milk in exchange

23  for shares in the company that purchased the milk.  Those shares became worthless when the
company was exposed as merely one component of a larger criminal enterprise.  Plaintiffs sued

24  several defendants, and included a professional malpractice claim against the company's
accountants.  Id. at 1003-07.  In denying a motion to dismiss this claim, the district court

25  expressly noted that specific allegations had been made that the accountants directly provided
accounting services to the plaintiffs in connection with the transaction, and to the limited liability

26  company that plaintiffs were induced to join in forming as part of the fraudulent transaction.  Id.
at 1006-07, 1045-47.  Plaintiffs also asserted a derivative claim on part of that limited liability

27  company against the same accountants.  Id.  In these circumstances, the court concluded that
plaintiffs stated a claim for negligence.  Plaintiff alleges nothing remotely analogous to this

28  direct retention and connection in this case.

**H.**     **Plaintiff Essentially Concedes That Dismissal of Its Sixth Claim for Relief Is Required to the Extent That Claim Seeks Rescission.**

Moving Defendants raised joinder issues as to the entire action with respect to the absent plaintiff, MVP, and, as to the rescission claim brought under the California securities law, with respect to an absent defendant, Ark Discovery (Offshore).

With respect to the absent plaintiff MVP, MVPAM argues that as an assignee, it can pursue the claim in its own name without joining the assignor.  However, no allegations concerning assignment appear in the Complaint.

With respect to the rescission claim brought under the California securities laws, Moving Defendants first note that the Court need not reach this ground because Plaintiff has otherwise failed to state a claim under these provisions.  In addition, Plaintiff fails to confront the basic reality of its claim for rescission:  Moving Defendants cannot "rescind" the transaction because it was Ark Discovery (Offshore) that received the funds in exchange for the shares.  That is why Ark Discovery (Offshore) is necessary and indispensable and why this claim cannot be maintained against the Moving Defendants.  *See Viterbi v. Wasserman*, 191 Cal. App. 4th 927 (2011) (non-seller defendants not liable as "control persons" or "aiders and abettors" for claim for rescission under Sections 25504 or 25504.1; privity of contract is required, as only direct seller can place buyer in original position); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248 (9th Cir. 1998).

Plaintiff's contention that the claim should not be dismissed merely because the remedy may be improper is inapposite:  If Plaintiff is pursuing a claim for rescission, which the Complaint in fact expressly alleges, Ark Discovery (Offshore) is a necessary and indispensable party to that claim and Moving Defendants cannot be liable for it.  At least to this juncture,

1    Plaintiff has not voluntarily agreed to dismiss the claim for rescission, thereby requiring this

2    Court to dismiss it, as Ark Discovery (Offshore), which is in liquidation, cannot be joined.

3    **I.**     **Plaintiff Essentially Concedes That If The Federal Claims Are Dismissed, This**
             **Court Will Lack Personal Jurisdiction Over the Moving Defendants as They Lack**
4            **the Requisite California Contact.**

5           Plaintiff does not contest Moving Defendants' recitation of the law governing whether

6    this Court can exercise personal jurisdiction over the Moving Defendants, and in particular the

7    fact that Plaintiff must establish conduct directed at California in the event its federal securities

8    claims are dismissed.  Plaintiff rests the entirety of its showing in that regard, however, on the

9    alleged violations of California securities laws and the alleged offers to sell securities in

10   California.  As set forth above, there have been no offers to sell in California, and Plaintiff has

11   not adequately alleged violations of the California securities laws.

12          Moreover, Plaintiff is again conflating MVPAM, the uninjured investment advisor, with

13   MVP, the British Virgin Islands alleged investor.  As set forth in the Moving Papers, Plaintiff

14   does not allege any facts that show purposeful availment or purposeful direction toward

15   California by defendants Balliet, Hanslik, or any of the Ark Entities (US).  As to defendant

16   ARAM, Plaintiff asserts just one alleged phone call by defendant Steven Vestbirk and a number

17   of emails from nonparties (alleged to be agents of ARAM), all directed to MVPAM.

18          But MVPAM is not MVP, and MVPAM is not alleged to be an injured party.   The actual

19   investors – allegedly MVP or Citco Global – are not alleged to be California residents.  Plaintiff

20   does not allege that any purchase or sale of securities occurred within California, or that any

21   California resident invested in Ark Discovery (Offshore).  Plaintiff, therefore, cannot establish

22   either conduct "expressly aimed" at California or harm suffered within California, never mind

23   conduct causing harm that any Moving Defendant *knew* would likely be suffered in California.

24   *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802-03 (9th Cir. 2004).  In such

25   circumstances, this Court may not exercise personal jurisdiction over the Moving Defendants.

26

27

28
                                              **25**

1

### III.   CONCLUSION

2

Accordingly, for the reasons set forth above and in their initial moving papers, Moving

3

Defendants respectfully request the dismissal of this action with prejudice.

4

5

Dated:  March 28, 2011                              STEVENS, O'CONNELL & JACOBS LLP

6

7

By:   /s/ GEORGE L. O'CONNELL

8

George L. O'Connell
Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26