1  GEORGE L. O'CONNELL (SBN 74037)
   TODD M. NOONAN (SBN 172962)
2  DLA PIPER LLP (US)
   400 Capitol Mall, Suite 2400
3  Sacramento, CA  95814-4428
   Tel:  916.930.3200
4  Fax:  916.930.3201

5  Attorneys for Defendants
   JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.;
6  VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT,
   LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL
7  SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING,
   LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; ARK ROYAL
8  ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11 | MVP ASSET MANAGEMENT (USA) LLC, a | CASE NO.  2:10-cv-02483-GEB-CMK
   | Delaware Limited Liability Company, |
12 | | DEFENDANTS' NOTICE OF MOTION
   | Plaintiff, | AND MOTION TO DISMISS PURSUANT
13 | | TO RULE 12(B)(1); MEMORANDUM OF
   | v. | POINTS AND AUTHORITIES IN SUPPORT
14 | | THEREOF
   | STEVEN VESTBIRK, JEFF BALLIET, |
15 | ALLISON HANSLIK, JIM GRANT, ARK | Date:   June 20, 2011
   | ROYAL ASSET MANAGEMENT, LTD., a | Time:  9:00 a.m.
16 | Bermuda Limited Company, VESTBIRK | Dept:  Courtroom 10
   | CAPITAL MANAGEMENT, LTD., a Bermuda | Judge: Honorable Garland E. Burrell, Jr.
17 | Limited Company, ARK ROYAL ASSET |
   | MANAGEMENT, LLC, a Nevada Limited- |
18 | Liability Company, ARK DISCOVERY, LLC, a |
   | Business Entity of Unknown Form, ARK |
19 | ROYAL HOLDINGS, LLC, a Nevada Limited- |
   | Liability Company, ARK ROYAL SERVICES, |
20 | LLC, a Nevada Limited-Liability Company, |
   | ARK ROYAL CAPITAL, LLC, a Nevada |
21 | Limited-Liability Company, ARK ROYAL |
   | CAPITAL FUNDING, LLC, a Nevada Limited- |
22 | Liability Company, ARK ROYAL CAPITAL, |
   | INC., a Nevada Corporation, ARK ROYAL |
23 | RESOURCES LLC, a Nevada Limited-Liability |
   | Company, ARK ROYAL ASSURANCE LLC, a |
24 | Nevada Limited-Liability Company, and ARK |
   | ROYAL INVESTMENTS, LLC, a Nevada |
25 | Limited-Liability Company, |
   | |
26 | Defendants. |

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on June 20, 2011, at 9:00 a.m., in Courtroom 10 of the

3    above-titled Court, located at 501 I Street, Sacramento, California 95814, defendants JEFF

4    BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK

5    CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK

6    DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK

7    ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL

8    CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK ROYAL ASSURANCE LLC;

9    ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will and hereby do move to

10   dismiss the First Amended Complaint filed by plaintiff, MVP Asset Management (USA) LLC

11   ("MVPAM"), under Article III of the United States Constitution and Rule 12(b)(1) of the Federal

12   Rules of Civil Procedure on the grounds that Plaintiff lacks constitutional standing to maintain

13   this action because it has failed to properly allege its putative standing as an assignee to assert

14   claims purportedly held by MVP.

15   In the alternative, Moving Defendants seek dismissal on the ground that the alleged

16   assignment does not suffice to confer Plaintiff with constitutional standing to assert its Section

17   10(b) and Section 20(a) federal securities fraud claims given the heightened scrutiny applicable to

18   purported assignments of securities fraud claims.  Upon dismissal of these federal claims for lack

19   of standing (or upon their dismissal pursuant to the contemporaneously filed Rule 12(b)(6)

20   motion), the Court will lack diversity jurisdiction over the remaining state law claims.  Federal

21   law requires the Court to look through the collusive assignment between MVPAM and MVP, and

22   thereby use MVP's citizenship for purposes of determining whether complete diversity exists.  28

23   U.S.C. § 1359.  When MVP's citizenship is considered, complete diversity is defeated because

24   there will be both a foreign assignor as the effective plaintiff and a foreign defendant.  *See* 28

25   U.S.C. § 1332.  Accordingly, upon dismissal of the two federal claims, the Court should decline

26   to exercise supplemental jurisdiction over the remaining state law claims, and dismiss them.  28

27   U.S.C. §1367(c).

28

-1-

1      This motion will be based upon this Notice of Motion and Motion, Memorandum of

2  Points and Authorities, the Request for Judicial Notice, and Declarations of Martin Zolnai and

3  Michael Fay filed and served herewith, and on such further documents and argument as the Court

4  may permit at the hearing of this motion.

5  Dated:  May 12, 2011                   DLA PIPER LLP

6

7

8                              By:   /s/ GEORGE L. O'CONNELL
                                 George L. O'Connell

9                                   Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 2

III. ARGUMENT ................................................................................................................. 4

    A. Standards Governing This Rule 12(b)(1) Motion .................................................. 4

    B. Plaintiff MVP Has Failed to Allege an Assignment Sufficient to Confer
       Article III Standing ................................................................................................ 6

        1. The Alleged Power of Attorney Did Not Provide MVPAM With
           Authority to Assign to Itself MVP's Claims............................................. 6

           a. Plaintiff's Conclusory Allegations Do Not Suffice to Allow
              the Court to "Determine Exactly What Was Assigned." ............... 7

           b. Plaintiff's Conclusory Allegations Do Not Allow the Court
              to "Assure Itself that a Valid Assignment Has Been Made." ......... 8

        2. Plaintiff's Alleged Assignment Cannot Withstand the Heightened
           Scrutiny to Which Assignments Of Section 10(b) Federal Securities
           Fraud Claims Must Be Subjected Because There Is No Clear and
           Direct Evidence of an Informed, Express and Intentional
           Assignment.............................................................................................. 9

        3. Stratford's Purported Ratification Does Not Suffice To Save The
           Assignment.............................................................................................. 11

    C. Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of
       Assessing Diversity Jurisdiction .......................................................................... 13

    D. If It Chooses Not to Dismiss the Action at this Time, The Court Should Set
       an Evidentiary Hearing and Grant Leave to Defendants To Conduct
       Limited Discovery Concerning The Purported Assignment................................. 17

IV. CONCLUSION ............................................................................................................. 18

WEST\223446290.1 DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

## <u>TABLE OF AUTHORITIES</u>

<small>CASES</small>

*Airlines Reporting Corp. v. S&N Travel, Inc.*,
  58 F.3d 857 (2d Cir. 1995)................................................................................ 15

*Allen v. Wright*,
  468 U.S. 737 (1984) ........................................................................................... 5

*AmeriFirst Bank v. Bomar*,
  757 F. Supp. 1365 (S.D. Fla. 1991) ........................................................... 10, 11

*Attorney's Trust v. Videotape Computer Products, Inc.*,
  93 F.3d 593 (9th Cir. 1996)....................................................................13, 14, 15

*Batchelder v. Kawamoto*,
  147 F.3d 915 (9th Cir. 1998).............................................................................. 12

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)................................................................................ 5

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)....................................................................................... 9, 10

*Britton v. Co-op Banking Group*,
  4 F.3d 742 (9th Cir. 1993).................................................................................... 7

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001)................................................................................ 5

*Commodity Trend Service, Inc. v Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) ............................................................................... 6

*Craig v. Atlantic Richfield Co.*,
  19 F.3d 472 (9th Cir. 1994)................................................................................ 16

*Dist. Distrib., Inc. v. Heublein*,
  1971 WL 559 (D.D.C. May, 28, 1971) ............................................................. 12

*Dobyns v. Trauter*,
  552 F. Supp. 2d 1150 (W.D. Wash. 2008) ............................................. 10, 11, 12

*Dweck v. Japan CBM Corp.*,
  877 F.2d 790 (9th Cir. 1989)......................................................................... 15, 16

*Eshelman v. Orthoclear Holdings, Inc.*,
  2009 WL 506864 (N.D. Cal. Feb. 27, 2009)..................................................... 12

DLA PIPER LLP (US)
SACRAMENTO

-ii-

WEST\223446290.1        DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

*Faysound Ltd. v. United Coconut Chem., Inc.*,
    878 F.2d 290 (9th Cir. 1989)............................................................................................................ 16

*Harrell & Sumner Contracting Co., Inc. v. Peabody Petersons Co.*,
    546 F.2d 1227 (5th Cir. 1977).......................................................................................................... 15

*Kokkenen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994) ........................................................................................................................... 5

*Kramer v. Caribbean Mills, Inc.*,
    394 U.S. 823 (1969) .................................................................................................................. 14, 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................................... 5

*McEwen v. Digitran Sys., Inc.*,
    49 F. Supp. 2d 1293 (D. Utah 1999) ...................................................................................... 10, 11

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988).......................................................................................................... 12

*Savage v. Glendale Union High School*,
    343 F.3d 1036 (9th Cir. 2003).......................................................................................................... 6

*Simpson v. Alaska State Comm'n for Human Rights*,
    608 F.2d 1171 (9th Cir. 1979)........................................................................................................ 15

*Smith v. Ayres*,
    977 F.2d 946 (5th Cir. 1992).......................................................................................................... 11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ................................................................................................................. 6, 7, 8

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981)................................................................................................ 5, 8, 12

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)................................................................................................ 1, 6, 9, 11

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003).......................................................................................................... 5

*Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989)........................................................................................................ 12

**STATUTES**

28 U.S.C. § 1332 ....................................................................................................................... 2, 13, 14

28 U.S.C. § 1359 .......................................................................................................................... passim

-iii-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

28 U.S.C. § 1367(c) ........................................................................................... 2, 17

Fed. R. Civ. Pro. 12(b)(1) ............................................................................... 4, 5, 12

Fed. R. Civ. Pro. 12(b)(6) .............................................................................. 13, 17


**OTHER AUTHORITIES**

6A Wright & Miller, § 1545 ................................................................................. 6, 8

Rest.2d, Contracts, § 324 ....................................................................................... 9

Article III of the United States Constitution ...................................................... passim

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1

2

**I.**
**INTRODUCTION**

3      The Court previously dismissed Plaintiff MVP Asset Management's ("MVPAM")

4  original complaint on the ground that Plaintiff, who is merely an uninjured investment advisor,

5  lacks standing to assert claims on behalf of its client, MVP Fund of Funds ("MVP").  Plaintiff

6  had not alleged that it was bringing the claims as the assignee of MVP, and Plaintiff's mere

7  possession of a power of attorney from MVP did not suffice to provide MVPAM with Article III

8  standing.  Order, filed April 14, 2011, at 4, citing *W.R. Huff Asset Management Co., LLC v.*

9  *Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008).

10      Despite its failure to mention its status as an assignee in the original complaint, Plaintiff

11  now alleges that it has been an assignee all along.  Supposedly, MVPAM, using the same power

12  of attorney that was insufficient to provide it with standing, allegedly caused MVP to assign its

13  claims to MVPAM for purposes of collection.  Thus, having assigned MVP's claims to itself,

14  MVPAM alleges it has standing to sue for injuries suffered by MVP.

15      Plaintiff's attempted end-run around *Huff* is ineffective.  Even as alleged, the purported

16  power of attorney does not reach so far as to authorize Plaintiff to assign its investor's property to

17  itself.  As such, the alleged assignment is invalid, and cannot sustain Plaintiff's constitutional

18  standing.  Moreover, heightened scrutiny attached to this assignment as it relates to Plaintiff's

19  federal securities fraud claims, because federal law requires that assignments of Section 10(b)

20  claims be express and knowing.  Here, Plaintiff's allegations demonstrate that this element cannot

21  be met

22      Plaintiff's purported assignment also raises a related issue with respect to diversity

23  jurisdiction.  Plaintiff alleges both federal question and diversity jurisdiction.  FAC, ¶ 1.  Title 28

24  U.S.C. section 1359, however, bars a plaintiff from entering into a collusive assignment in order

25  to manufacture jurisdiction.  Partial assignments between related persons for purposes of

26  collection represent prototypical collusive assignments.  As will be discussed, the assignment

27  alleged in this case bears all of the hallmarks of a collusive assignment.

28

-1-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  As such, Section 1359 provides that the Court must disregard the citizenship of the

2  assignee and look to that of the assignor for purposes of evaluation of diversity jurisdiction.  28

3  U.S.C. § 1359.  When plaintiff MVPAM's Delaware citizenship is disregarded, complete

4  diversity is lost.  There will both the foreign assignor/plaintiff (MVP) and foreign defendants

5  (Vestbirk and Ark Royal Asset Management, Ltd.).  Diversity jurisdiction does not exist when a

6  foreign citizen or subject is named on both sides of a lawsuit.  *See* 28 U.S.C. § 1332.

7  Accordingly, to the extent that the Court concludes that the assignment fails to establish

8  Plaintiff's standing only as to the federal Section 10(b) and Section 20(a) securities fraud claims,

9  or dismisses these federal claims pursuant to the Rule 12(b)(6) motion, the remaining state law

10  claims should still be dismissed for lack of subject matter jurisdiction.  There is no basis for this

11  Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state

12  law claims.

13  For these reasons, Moving Defendants herein request the dismissal of this entire action.

14  In the alternative, and because these issues go to the Court's very power to adjudicate this action

15  on the merits, Moving Defendants request that the Court stay the action, save and except for

16  setting an evidentiary hearing on the assignment issue.  In connection with such a hearing,

17  Moving Defendants request time to conduct limited jurisdictional discovery concerning the

18  purported assignment, such that its bona fides can be properly evaluated by the Court in

19  determining whether subject matter jurisdiction exists.  Provided plaintiff cooperates in the

20  production of documents and witnesses on an expedited basis, this evidentiary hearing could be

21  set 30-45 days out.

## II.
## STATEMENT OF FACTS

23  Plaintiff MVPAM in its original complaint relied solely upon an alleged power of attorney

24  for its purported authority to sue on the claims of the alleged actual investor, MVP.  Complaint,

25  ¶ 3; *see also* Order, filed April 14, 2011.  Now, after the Court determined that Plaintiff's mere

26  status as the holder of a power of attorney is insufficient to confer Plaintiff with Article III

27  standing, Plaintiff for the first time alleges that it "brings this action as an assignee pursuant to an

-2-

1   assignment by MVP for collection . . . ."  (First Amended Complaint ("FAC"), ¶ 3.)  Plaintiff at

2   no time explains why this obviously critical status was overlooked and not previously alleged in

3   the original complaint.

4           Plaintiff's allegations also disclose that MVP and its Directors were kept out of the loop of

5   this purported assignment:

6       In February 2009, pursuant to its power of attorney . . . , *MVPAM caused MVP* to
        enter into an agreement with MVPAM under which MVP assigned its claims
7       arising out of and relating to the Ark Discovery Fund ("MVP Claims") to
        MVPAM for collection in return for MVPAM's agreement to account to MVP for
8       any recovery obtained, net the cost of prosecuting the MVP Claims.

9

10  FAC, ¶ 87, emphasis added.

11          MVPAM, the uninjured investment manager, was the sole actor in this process, allegedly

12  utilizing its claimed authority under a power of attorney to assign to itself the claims held by its

13  client, MVP.  No separate corporate action of MVP is alleged with respect to this transfer of

14  MVP's property.  *See* FAC, ¶ 87.  Instead, MVPAM alleges that its principal, Michael Stratford,

15  at a time undisclosed, "as the sole voting shareholder of MVP with the authority to bind MVP,

16  confirmed and approved on behalf of MVP the assignment of the MVP Claims for collection to

17  MVPAM."  *Id.*

18          Not only were MVP and its Directors excluded from the process, but Plaintiff's

19  allegations concerning the scope of the alleged power of attorney reveal that, even as alleged, it

20  does *not* include a grant of authority sufficient to allow MVPAM to transfer MVP's assets to

21  itself.  Plaintiff describes the scope of the alleged power of attorney as follows:

22      At all relevant times mentioned herein, MVPAM has been the investment manager
        to [MVP], an investment company organized and existing under the laws of the
23      British Virgin Islands, with unrestricted decision making authority to control, and
        act as MVP's attorney-in-fact with respect to, all investments and litigation
24      relating thereto.

25

26  FAC, ¶ 3.  The alleged power of attorney speaks to investments, and says <u>nothing</u> of MVPAM's

27  authority to assign to itself MVP's property, as would be required for any assignment of MVP's

28  claims to MVPAM to be effective.

-3-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
                              RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

The foregoing constitutes the entirety of Plaintiff's allegations concerning the basis for its alleged standing to proceed in this action.  Plaintiff does not attach any document purporting to be the assignment, does not attach any purported shareholder resolution ratifying the assignment, does not attach the power-of-attorney, and does not attach the investment management contract between MVP and MVPAM, which would presumably sets forth the terms and limitations of the parties' relationship and the governing law therefor.

In addition, Plaintiff concedes that MVP was not the actual purchaser of the shares.  FAC, ¶¶ 51, 59, 71.  Instead, the actual purchaser was a Netherlands-based bank, Citco Global, Plaintiff, however, does not attach any of the documentation governing the relationship between Citco Global and MVP, nor allege any assignment by Citco Global of any rights to MVP or MVPAM.

Extrinsic evidence (which may be considered on this Rule 12(b)(1) motion as discussed below) suggests why Plaintiff has not included this detail.  Contrary to Plaintiff's allegations, MVP may *not* be the beneficial owner of the shares purchased by Citco Global.  Plaintiff alleges that Citco Global, acting as its custodian, purchased the shares through Account Number 190023.  FAC, ¶ 51.  According to records on file with Ark Discovery (Offshore) Ltd.'s administrator, Beacon Fund Services (Bermuda) Ltd, the beneficial owner of the shares purchased through Account 190023 is a Lichtenstein bank known as VP Bank.  According to Citco Global itself, VP Bank, not MVP, is the beneficial owner listed for this account.  Zolnai Decl., ¶ 10, and Exhibit G, thereto.  Plaintiff fails to include any allegations concerning VP Bank's role, or concerning any assignments as between Citco Global and VP Bank, or VP Bank and MVP.  Plaintiff has failed at the most basic level to support its alleged standing.

### III.
### ARGUMENT

### A.     Standards Governing This Rule 12(b)(1) Motion.

Moving Defendants move pursuant to Article III of the United States Constitution and Rule 12(b)(1) to dismiss the action on the grounds that Plaintiff lacks standing to maintain this

-4-

action.  Standing to sue is an "essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Federal courts are limited in jurisdiction, and it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise.  *See Lujan*, 504 U.S. at 561; *Kokkenen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").[1]

A Rule 12(b)(1) motion may be based on the face of the pleadings or extrinsic evidence.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Moving Defendants' motion is, in the first instance, based on the face of Plaintiff's First Amended Complaint.  For such a facial review, the question of standing is premised upon the "careful judicial examination of a complaint's allegations to ascertain" whether "the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984).  To the extent Moving Defendants' motion is construed as a facial attack, the Court will accept as true Plaintiff's allegations, except any unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  *Warren,* 328 F.3d at 1139; *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

Should the Court conclude that Moving Defendants' showing on the face of plaintiff's pleading does not suffice, Moving Defendants have also offered evidence through the Declaration of Martin Zolnai.  This evidence demonstrates that Plaintiff may not be the beneficial owner of the shares in question, which instead are held by a Lichtenstein bank, VP Bank.  Accordingly, Plaintiff cannot satisfy its burden to prove that the alleged assignor (MVP, *not* VP Bank) is the real party in interest that owned any assignable cause of action against Moving Defendants.

---

[1]    Article III's standing requirements apply to the entire action, including Plaintiff's alleged state law claims.  *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 n.4 (9th Cir. 2009) (party asserting state law claims in federal court must meet Article III's standing requirements), *citing Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001).

A district court may consider such extrinsic evidence on a motion to dismiss, without converting it to a motion for summary judgment, because the Court's very ability to adjudicate the case is at stake. When such evidence is offered, no presumptive truthfulness attaches to the plaintiff's allegations: "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v Commodity Futures Trading Comm'n,* 149 F.3d 679, 685 (7th Cir. 1998); *see Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (plaintiff must furnish evidence or affidavits to satisfy its burden of establishing jurisdiction).

**B.    Plaintiff MVP Has Failed to Allege an Assignment Sufficient to Confer Article III Standing.**

       **1.    The Alleged Power of Attorney Did Not Provide MVPAM With Authority to Assign to Itself MVP's Claims.**

Plaintiff's original allegation in support of its standing fell short because an investment advisor, even one with attorney-in-fact authority and "unfettered discretion to make investment decisions," lacks Article III standing to bring a lawsuit on behalf of its investors. Order, filed April 14, 2011, at 4, citing *Huff,* 549 F.3d at 111. As recognized by the Supreme Court in *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 284 (2008), however, a proper assignment may provide the basis for one person to sue on the injuries allegedly suffered by another.

Plaintiff in this case has not alleged the requisite proper assignment. A court typically must consider two issues in determining whether the assignee may properly assert the claim of the assignor. "First, it must determine exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest with regard to the particular claim involved in the action." 6A Wright & Miller, § 1545, at 493. "Second, the court must assure itself that a valid assignment has been made. In this sense, the question whether a party purporting to hold an assigned claim is a real party in interest ultimately rests on the substantive law governing the assignability of the particular chose in action." *Id.* at 494-95. The plaintiff bears the burden of

1  proving the validity of its purported assignment. *Britton v. Co-op Banking Group,* 4 F.3d 742,

2  746 (9th Cir. 1993).  In this case, the Court cannot determine from the pleadings (or, in the

3  alternative, based on extrinsic evidence) what, in fact, was assigned, and cannot conclude that the

4  alleged assignment was valid.  Accordingly, Plaintiff has not met his burden of establishing its

5  Article III standing to bring this action.

6          a.      **Plaintiff's Conclusory Allegations Do Not Suffice to Allow the Court to**
                   **"Determine Exactly What Was Assigned."**

7

8          As to the first issue, Plaintiff's vague allegations do not suffice to allow the Court

9  determine exactly what has been assigned.  Plaintiff includes only the sparsest description of the

10 purported assignment, and fails to attach any written assignment, much like it failed to even

11 mention this assignment in the original complaint.  There is no conceivable legitimate explanation

12 for these omissions, which prevent the Court from evaluating what has purportedly been

13 assigned; whether the assignment is sufficient to confer standing on MVPAM; or even the proper

14 law to apply to the assignment.

15         Plaintiff's omissions are to be contrasted with the assignment upheld in *Sprint*, where the

16 Supreme Court had before it on the motion to dismiss the specific language of the assignment.

17 *Sprint*, 554 U.S. at 272.  Because the plaintiffs in that case had supplied the assignment itself, the

18 Supreme Court was able to confirm that the assignment had transferred all "rights, title, and

19 interest" in the claims, a fact central to its determination that the assignees were advancing "legal

20 rights of their own," and "confers a property right (which creditors might attach). . . ."  *Id*. at 289-

21 90.  Notably, the assignment in Sprint expressly provided that the assignment could not be

22 revoked without the consent of the assignee, and the agreement to remit the proceeds from the

23 lawsuit was set forth in an entirely separate agreement, which also provided that the assignee

24 would be paid a fee for its collection efforts.  *Id*. at 272.  With this level of detail, the Court had a

25 basis to conclude that the claims had been assigned "lock, stock, and barrel."  *Id*. at 286.

26         In contrast, MVP offers only the brief, conclusory allegation that MVPAM "caused MVP

27 to enter" an agreement pursuant to which "MVP assigned its claims arising out of and relating to

28

WEST\223446290.1                 DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
                                 RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  Ark Discovery Fund" to MVP for collection.  FAC, ¶ 87.  This allegation is simply a legal

2  conclusion that need not be accepted by the Court.  *W. Mining Council*, 643 F.2d at 624.  The

3  conclusory allegation, and the fact that Plaintiff has not alleged separate agreement such as was

4  present in *Sprint*, do not allow the Court to confirm that MVP has transferred all "rights, title, and

5  interest" in the claims or that Plaintiff is holding, as it must be, "a property right (which creditors

6  might attach)."  *See Sprint*, 554 U.S. at 289-90.

7         In addition to this facial defect, there is an additional factual defect raised by Plaintiff's

8  deliberately vague allegations regarding assignment and its omission of any relevant

9  documentation.  As set forth in the Zolnai Declaration, VP Bank is the beneficial owner of the

10  account at issue, not MVP.  Zolnai Decl., ¶ 10.  As such, there is no factual basis for the Court to

11  find that MVP had anything at all to assign to MVPAM.  On this dispositive issue, Plaintiff's

12  First Amended Complaint is entirely silent, precluding any inference that MVP had anything even

13  to assign to MVPAM.[2]

14         As Plaintiff has, again, failed adequately to allege the basis for its standing, or, in the

15  alternative, cannot factually prove it has any such standing, Moving Defendants request the

16  dismissal of the action, this time with prejudice.

17                **b.      Plaintiff's Conclusory Allegations Do Not Allow the Court to "Assure
                          Itself that a Valid Assignment Has Been Made."**
18

19         Plaintiff's failure to allege the nature and circumstances of the assignment also prevents

20  the Court from concluding that a valid assignment has been made, and even from determining

21  appropriate "substantive law governing the assignability of the particular chose in action."  *See*

22  6A Wright & Miller, § 1545, at 494-95.  Moreover, to the extent they show anything, Plaintiff's

23  allegations reveal the assignment to be an invalid one.

24

25  _____

26  [2]      In addition, in the *Sprint* case, the Supreme Court noted that additional procedural
        concerns would be implicated had the assignments been made in bad faith.  *Sprint*, 554 U.S. at
27  292.  Below, Defendants discuss the fact that Plaintiff's alleged assignment is collusive, designed
        to generate federal diversity jurisdiction where such jurisdiction would not otherwise exist.  *See*
28  28 U.S.C. § 1359; Section III(c), *supra*.

Noteworthy at the outset is the fact that MVP is nowhere alleged to have been part of the transaction.  Instead, Plaintiff vaguely alleges MVPAM, pursuant to an undisclosed power of attorney, assigned MVP's claims to itself.  But, the power of attorney, *even as alleged by MVP*, does not grant MVPAM the authority to transfer MVP's property, or specifically a chose in action, from MVP to MVPAM.  Instead, it merely provides that MVPAM has "unrestricted decision making authority to control, and act as MVP's attorney-in-fact with respect to, all investments and litigation."  FAC, ¶ 3.  The alleged power of attorney speaks only to control over investments and litigation, not rights to transfer property, such as a chose in action.  The power of attorney is entirely silent with regard to MVPAM's authority to transfer property of MVP to itself and does not suffice to permit MVPAM to cause MVP to assign to MVPAM MVP's claims.  *See* Rest.2d of Contracts, § 324 ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.").

Indeed, Plaintiff's allegations simply expose Plaintiff's efforts to obtain standing by boot-strapping its power of attorney into an assignment.  As *Huff* made clear, a power of attorney, even one that  "permits [the investment advisor] to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact," is not sufficient to provide standing because it is not in fact a valid assignment conferring legal title to the claims.  *Huff,* 549 F.3d at 104-06.  The power of attorney at issue in *Huff,* which did not suffice to confer standing, essentially mirrors that alleged by MVPAM in this case.  For this reason as well, this Court should find that Plaintiff lacks standing, and therefore dismiss the action.

> **2.     Plaintiff's Alleged Assignment Cannot Withstand the Heightened Scrutiny to Which Assignments Of Section 10(b) Federal Securities Fraud Claims Must Be Subjected Because There Is No Clear and Direct Evidence of an Informed, Express and Intentional Assignment.**

Plaintiff's purported assignment fails for an additional reason with respect to its core federal securities fraud claims.  As noted, MVP was not the purchaser, Citco Global was.  FAC, ¶ 51.  Given the strict purchaser-seller rule set forth in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), which provides that only a purchaser or seller who was personally

-9-

1  defrauded has standing to assert a Section 10(b) federal securities fraud claim, there remains

2  significant uncertainty whether MVP even held a Section 10(b) claim, and if it did, whether it

3  assignable at all.  *See, e.g., Dobyns v. Trauter*, 552 F. Supp. 2d 1150, 1154 (W.D. Wash. 2008)

4  (collecting cases).

5          Where assignments of Section 10(b) claims have been permitted, courts have required

6  clear evidence of the knowing and informed assignment by the underlying harmed investor.  For

7  example, in *McEwen v. Digitran Sys., Inc.*, 49 F. Supp. 2d 1293, 1301 (D. Utah 1999), an

8  investment advisor purported to rely upon an "Investment Advisory Agreement" and "Trading

9  Authorization" to provide it with the authority to assign to itself the right to recover on the

10  underlying investors' federal securities law claims.  *Id.* at 1303-04.  In relevant part, the

11  Investment Advisory Agreement provided investment advisor "full power to supervise and direct

12  the investment of the Account, making and implementing investment decisions all without

13  consultation with Client . . . ."  *Id.* at 1304.  Similarly, the Trading Authorization provided the

14  investment advisor "authority to buy, sell and trade in securities . . . and to do all acts . . .

15  necessary or incidental thereto."  *Id.*  The advisor, much as MVPAM does here, contended that

16  this agreement and authorization provided it with authority to transfer its clients' rights to the

17  recovery from a lawsuit.

18          The district court flatly rejected this proposition.  *Id.*  Raising the purchaser-seller rule of

19  *Blue Chip Stamps*, the court held that federal securities fraud claims are not "automatically

20  assignable," and instead found that there must be a "purposeful, informed release or assignment"

21  or other evidence of the "informed and purposeful intention to transfer . . . ."  *Id.*  The court

22  required "clear and direct evidence" that the injured investor has "voluntarily and expressly"

23  assigned its personal rights in the statutory cause of action.  *Id.* at 1304-05, citing *Blue Chip*

24  *Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), and *AmeriFirst Bank v. Bomar*, 757 F. Supp.

25  1365, 1371 (S.D. Fla. 1991).  The "assignment of rights to a Section 10(b) claim must be

26  expressly made by the person owning the underlying rights, and shown to have been voluntarily

27  and intentionally made"; the purported "assignments and transfers of such rights are invalid in the

28

-10-

1   absence of informed, express and intentional assignment by the original purchasers . . . ." *Id.* at

2   1305.

3         Because evidence of such intent could not be inferred from the essentially self-authorized

4   assignment at issue in *McEwen*, the Court found the assignment to be "ultra vires and

5   unauthorized." *Id.* at 1303-05.  The same result should follow in this case where MVPAM, much

6   like the investment advisor in *McEwen*, is attempting to convert an authorization to make

7   investments into one to convey property such as a chose in action.  Plaintiff's allegations fall well

8   short of meeting the requirement of establishing the "informed, express and intentional

9   assignment by the original purchasers."  *See id.* at 1305.  Plaintiff alleges no knowing assignment

10  by MVP; by Citco Global, the alleged purchaser of the shares; or by VP Bank, the entity

11  identified by Citco Global as the beneficial owner of the shares of Ark Discovery (Offshore) at

12  issue in this case.  In such a circumstance, where there has been no knowing and intentional

13  assignment of the Section 10(b) claim by the purchaser, MVPAM, as merely the uninjured

14  investment advisor, lacks standing.  *See Huff*, 549 F.3d at 104-06; *cf. Smith v. Ayres*, 977 F.2d

15  946, 950 (5th Cir. 1992) (rejecting on motion to dismiss former principal of company's efforts, as

16  assignee, to assert company's Section 10(b) claims, as assignment was used to advance strike or

17  nuisance suit motivated by personal animus); *Dobyns*, 552 F. Supp. 2d at 1156-57 (dismissing

18  claims, and finding that case did not present one of the "unique situations in which an express

19  assignment of a 10b-5 claim should be recognized").

20        Accordingly, as Plaintiff's allegations do not suffice to establish a valid assignment of the

21  federal securities laws claims, these claims must be dismissed for lack of standing.[3]

22        **3.**     **Stratford's Purported Ratification Does Not Suffice To Save The Assignment.**

23        Plaintiff MVPAM alleges that Michael Stratford, a non-party to this action, is the sole

24  voting shareholder of MVP.  (FAC, ¶ 87.)  Plaintiff alleges that Stratford, in this capacity, had the

25  

26  [3]     Should the Court conclude that the assignment is insufficient to establish Plaintiff's
constitutional standing only as to the federal securities law claims, it should then proceed to

27  dismiss the state law claims for lack of diversity jurisdiction, as the assignment in this case is
collusive, entered into to create complete diversity where it would not otherwise exist.  *See*

28  Section III(c), *supra.*

-11-

1    "authority to bind MVP," and that Stratford confirmed and approved of the assignment on behalf

2    of MVP. *Id.*

3         As with the alleged power of attorney and the alleged assignment, Plaintiff has again

4    failed to attach to its complaint any of the allegedly operative documents relating to this supposed

5    confirmation and approval.  There is, for example, no shareholder resolution.  Moreover, no

6    timeframe for this alleged confirmation is alleged, a particularly glaring omission given that

7    Ninth Circuit has held, for example, that an assignment may not be used to circumvent the bar of

8    a statute of limitations, and the statute has since run on MVP's claims. *Wulff v. CMA, Inc.*, 890

9    F.3d 1070, 1075 (9th Cir. 1989).

10        Further, this purported shareholder ratification is not premised upon allegations of fact,

11   but instead on conclusions of law that need not be accepted as true. *See W. Mining Council v.*

12   *Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th

13   Cir. 1988).[4]  And, in fact, this allegation runs contrary to MVP's governing documents as well as

14   the law of the British Virgin Islands.  MVP's Articles of Association provide that its business is

15   to be conducted through its Directors, not its shareholders.  Request for Judicial Notice, ¶ J;

16   Declaration of Michael Fay in Support of Rule 12(b)(1) Motion, ¶ 17-22.  Similarly, the law of

17   the British Virgin Islands requires a company's business be conducted through its directors, not

18   its shareholders. *Id.*[5]  As such, the alleged Stratford ratification avails MVPAM nothing and will

19   not save the defective assignment. *See Dist. Distrib., Inc. v. Heublein*, 1971 WL 559, *3-4

20   (D.D.C. May, 28, 1971) (finding assignment of claim invalid where not approved by company's

21   Board of Directors).

22

23   _____

24   [4]     Plaintiff's remaining allegation, that "MVPAM holds legal title and MVP holds beneficial
     title to the assignment MVP Claims" is similarly a pure allegation of law that may be disregarded.

25   [5]     Under the "internal affairs" doctrine, the rights of shareholders in a foreign company are
     determined by the law of the place where the company is incorporated. *Batchelder v. Kawamoto*,

26   147 F.3d 915, 920 (9th Cir. 1998).  MVP is a British Virgin Islands company.  Yet, Plaintiff
     alleges no compliance with the requirements of British Virgin Islands law in claiming this

27   authority as an alleged voting shareholder. *See Eshelman v. Orthoclear Holdings, Inc.,* 2009 WL
     506864, *9, 14 (N.D. Cal. Feb. 27, 2009) (dismissing claims for failure to adhere to law of British

28   Virgin Islands governing derivative claims).

**C.     Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of Assessing Diversity Jurisdiction.**

If the Court does not dismiss all of the claims for lack of standing, but instead only the federal ones (whether because of the lack of clear and direct evidence of a voluntary assignment, or pursuant to the arguments raised in the Rule 12(b)(6) motion filed herewith), the entire action should still be dismissed because Court will lack diversity jurisdiction over the remaining state law claims.  While Plaintiff alleges diversity jurisdiction, FAC, ¶ 1 (citing 28 U.S.C. § 1332(a)(3)), federal law bars district courts from exercising jurisdiction over a civil action where a party has used an improper or collusive assignment to join a party for purposes of creating jurisdiction:

> **§ 1359.     Parties collusively joined or made**
>
> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359.

Controlling United States Supreme Court and Ninth Circuit authority provides that an assignment of the type at issue in this case, a partial assignment between related parties for collection purposes only, is presumptively collusive for purposes of application of Section 1359, thereby requiring a district court to look through the alleged assignment and to the citizenship of the alleged assignor, in this case MVP, for purposes of assessing diversity jurisdiction.

For example, in *Attorney's Trust v. Videotape Computer Products, Inc.,* 93 F.3d 593 (9th Cir. 1996), a Chinese corporation, CMC Magnetics ("CMC")claimed that a California corporation, Videotape Products ("VTP"), owed it a debt.  CMC assigned its claim to a California citizen, Attorneys Trust ("AT"), for purposes of collection, which in turn sued VTP in federal court.  *Id.* at 594.  VTP then filed cross-complained against CMC, asserting a breach of warranty claim on the underlying product supplied by CMC and associated with the debt owed to CMC. *Id.*

-13-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1    The case proceeded to trial, and the district court found in favor of VTP on its cross claim.

2    Having lost, CMC and AT challenged jurisdiction on appeal, claiming that the district court

3    lacked diversity jurisdiction because the assignee, AT, and the defendant-cross complainant,

4    VTP, were both California citizens.  *Id.*  The Ninth Circuit rejected this argument, piercing

5    through the assignment to the residence of the assignor, CMC, to uphold diversity jurisdiction.

6    *Id.* at 599-600.

7    In so holding, the Ninth Circuit relied in part on the leading case applying Section 1359,

8    *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969).  The dispute in *Kramer*, like the

9    underlying dispute in this case, was between citizens of foreign states, thus precluding a finding

10   of diversity jurisdiction.  *Kramer*, 394 U.S. at 824; *see also* 28 U.S.C. § 1332(a)(2).  Accordingly,

11   the plaintiff, a Panamanian company, assigned its interest to a Texas attorney for collection.  The

12   original assignment was supported by the payment of $1, and by separate agreement, the attorney

13   also agreed to remit 95% of any recovery back to the Panamanian company.  *Id.*

14   The Supreme Court held that these facts could not support diversity jurisdiction given the

15   mandate of Section 1359.  The Supreme Court held that the assignment was made just "for

16   purposes of collection," *id.* at 828, which, as will be discussed has been identified as a primary

17   indicator of whether an assignment is collusive.  Moreover, the Supreme Court noted that it was

18   not basing its holding on any conclusion that the assignment was illegal or improper under Texas

19   law.  *Id.* at 829.  Instead, the Court held that the question was whether the assignment was being

20   used to manufacture diversity jurisdiction where it would not otherwise exist.  *Id.*

21   The Ninth Circuit then identified the following factors as relevant to the collusion inquiry:

22   whether there were good business reasons for the assignment, whether the assignee had a prior

23   interest in the item, whether the assignment coincided with the commencement of the litigation,

24   whether consideration was paid, whether the assignment was partial or complete, and whether

25   there was any admission that the assignment was made to create jurisdiction.  *Attorney's Trust*, 93

26   F.3d at 595-96 (collecting cases).

27

28

-14-

Partial assignments, such as the one at issue in this case, that are for collection purposes and where the assignor retains a significant interest in the outcome of the case, are nearly always found to be collusive. *Id.*:

> On the other hand, where an assignment is partial, the courts are very likely to find that there is an improper or collusive transfer because the prior owner still has an interest. . . In fact, research has not disclosed a single case where an assignment for collection (however framed or disguised) has been held to be anything but collusive.

*Id.*, citing *Kramer*, 394 U.S. at 827-30 (assignor retained 95% of the proceeds); *Airlines Reporting Corp. v. S&N Travel, Inc.*, 58 F.3d 857, 859, 861-62 (2d Cir. 1995) (multiple airlines were the "real and substantial" parties; collection agency was mere conduit for a remedy owing to them); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersons Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977) (assignment of 50% interest in net proceeds of recovery, after payment of attorney's fees and costs, coupled with assignment effected for legal and tactical reasons, supported finding that collusive).

*Attorney's Trust*, *Kramer*, and the cases cited therein make clear that the alleged assignment in this case must be ignored for purposes of assessment of diversity jurisdiction. MVPAM's alleged assignment of MVP's claims to itself was for collection only. The assignment for that reason is a partial one: It was not supported by any independent consideration; instead, MVPAM alleges that all of the funds will be returned to MVP net of collection costs. The timing of the assignment, allegedly following as it did the disclosure of the Petters' Ponzi scheme and liquidation of Ark Discovery (Offshore), demonstrates that it was for purposes of collection and litigation.

These factors alone demonstrate that this assignment "has almost all of the classic elements of an assignment which does not affect jurisdiction." *See id.* Indeed, Ninth Circuit law holds that such an assignment is *presumptively* collusive. *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989) (assignment between a parent and a subsidiary, or a corporation and one of its officers or directors, is "presumptively ineffective to create diversity jurisdiction"), citing *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir. 1979).

1   "Unless there is a legitimate business reason which justifies such an assignment, it cannot create

2   diversity jurisdiction." *Id.* (finding assignment from corporation to officer to be collusive for

3   purposes of application of Section 1359).

4           In this case, the collusive nature of the assignment is even more apparent as there is only

5   one real actor, Michael Stratford.  MVPAM, with Stratford as its alleged principal, alleges that it

6   is the one that caused MVP to assign the claims to MVPAM, through an alleged power of

7   attorney.  No independent corporate action by MVP itself is even alleged.  FAC, ¶¶ 3, 87.  Then,

8   Michael Stratford, now allegedly acting as the sole voting shareholder of MVP, purportedly

9   approved the assignment to MVPAM at some later undisclosed date.  *Id.*[6]  The only common

10  player in this entire set of alleged transactions is Stratford.

11          No legitimate business interest supporting the assignment has been alleged.  If, in fact,

12  MVP was an investor in the Ark Discovery Fund (Offshore), it could have filed the suit in its own

13  name.  And, as in the *Dweck* case, Plaintiff here has failed even to put any of the relevant

14  documentation before the Court, casting further doubt on the *bona fides* of the alleged

15  assignment.  *See Dweck*, 877 F.2d at 792 (noting as one relevant factor that the plaintiff had failed

16  to offer any documentation relating to the assignment).

17          Accordingly, as the alleged assignment was a collusive one, the citizenship of the alleged

18  real party in interest, MVP, is the only relevant citizenship for purposes of assessing diversity

19  jurisdiction.  MVP is alleged to be a British Virgin Islands company.  FAC, ¶ 3.  On the

20  defendants' side, both defendants Vestbirk and Ark Royal Asset Management Ltd. are alleged to

21  be Bermuda citizens.  As a citizen or subject of a foreign state is on both sides of the litigation,

22  the requirement of complete diversity cannot be met.  *Craig v. Atlantic Richfield Co.*, 19 F.3d

23  472, 476 (9th Cir. 1994), citing *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294-

24  95 (9th Cir. 1989).

25

26

27  _____
    [6]       Stratford alleges that he acted as the sole "voting" shareholder."  He does not allege,
    however, that he holds any position or financial interest in MVP.  Those interested
28  shareholders, presumably, were not consulted on the assignment.

-16-

1   The implication of this lack of diversity is straightforward.  Moving Defendants herein

2   have argued not only that the assignment is insufficient to establish Plaintiff's Article III standing

3   on all of the claims, but also that the assignment is insufficient in particular with respect to

4   Plaintiff's federal securities law claims.  Moving Defendants have also argued in their separate

5   motion filed herewith that Plaintiff cannot state a claim for federal securities fraud because

6   (among several grounds asserted) that transaction took place entirely offshore and is therefore not

7   subject to Section 10(b).

8   Upon the dismissal of the federal claims upon either of these two bases, federal question

9   subject matter jurisdiction will be lost.  Diversity jurisdiction will not salvage Plaintiff's

10  remaining state law claims given the collusive assignment.  28 U.S.C. § 1359.  As such, the Court

11  could and should decline to exercise supplemental jurisdiction over these state law claims.  28

12  U.S.C. § 1367(c)(3).

13  **D.     If It Chooses Not to Dismiss the Action at this Time, The Court Should Set an**
       **Evidentiary Hearing and Grant Leave to Defendants To Conduct Limited Discovery**
14     **Concerning The Purported Assignment.**

15  Moving Defendants submit that Plaintiff's allegations and evidence alone demonstrate

16  that no valid assignment has been made and that Plaintiff therefore lacks Article III standing.  In

17  addition, as set forth in the Rule 12(b)(6) Motion to Dismiss filed contemporaneously herewith,

18  ample alternative grounds exist for dismissing this action with prejudice.  Given the importance

19  of issues surrounding the Court's subject matter jurisdiction, however, if this Court does not

20  conclude that Plaintiff's allegations and the evidence submitted does not demonstrate its lack of

21  standing, Moving Defendants request that the Court stay the action except for the limited purpose

22  of conducting a prompt evidentiary hearing on the issue of the validity and scope of the

23  assignment, where witnesses can be examined under oath and the authenticity, meaning and

24  import of documentary evidence fully explored.

25  Defendants further request that they be granted leave to conduct limited jurisdictional

26  discovery in advance of this evidentiary hearing on the issues implicated by this motion,

27  including on the alleged assignment, power of attorney, shareholder approval, and on the

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
       RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1   relationship between Citco Global, VP Bank, and MVP, such that the validity and scope of the

2   alleged assignment can be fully assessed.  Provided that Plaintiff cooperates in the production of

3   witnesses and documents on an expedited basis, such a hearing could be held in 30-45 days.

4                                               **IV.**
                                          **CONCLUSION**
5

6        Accordingly, for the reasons set forth above, Moving Defendants respectfully request the

7   dismissal of this action with prejudice.

8

9   Dated:  May 12, 2011                          DLA PIPER LLP (US)

10

11                                               By:___/s/ GEORGE L. O'CONNELL_____

12                                                    George L. O'Connell
                                                     Attorneys for Defendants
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-