GEORGE L. O'CONNELL (SBN 74037)
TODD M. NOONAN (SBN 172962)
DLA PIPER LLP (US)
400 Capitol Mall, Suite 2400
Sacramento, CA  95814-4428
Tel:  916.930.3200
Fax:  916.930.3201

Attorneys for Defendants
JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company,<br><br>           Plaintiff,<br><br>     v.<br><br>STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, JIM GRANT, ARK ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company, VESTBIRK CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company, ARK ROYAL ASSET MANAGEMENT, LLC, a Nevada Limited-Liability Company, ARK DISCOVERY, LLC, a Business Entity of Unknown Form, ARK ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company, ARK ROYAL SERVICES, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, INC., a Nevada Corporation, ARK ROYAL RESOURCES LLC, a Nevada Limited-Liability Company, ARK ROYAL ASSURANCE LLC, a Nevada Limited-Liability Company, and ARK ROYAL INVESTMENTS, LLC, a Nevada Limited-Liability Company,<br><br>           Defendants. | CASE NO.  2:10-cv-02483-GEB-CMK<br><br>DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)<br><br>Date:  June 20, 2011<br>Time:  9:00 a.m.<br>Dept:  Courtroom 10<br>Judge: Honorable Garland E. Burrell, Jr. |

DLA PIPER LLP (US)
SACRAMENTO

WEST\223656375.1      DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 2

    A. Plaintiff Has Failed To Meet Its Burden Of Establishing Article III Standing ................................................................................................................... 3

        1. Plaintiff Does Not Allege A Valid Assignment. ........................................ 3

        2. Plaintiff's New "Evidence" Does Not Provide MVPAM With Standing: The MVP Board of Directors Cannot By Mere Fiat Rewrite History Or The Content Of Past Legal Instruments ..................... 5

        3. MVP's May 2011 Ratification Of The Alleged Assignment Does Not Retroactively Provide MVPAM With Article III Standing ................ 7

            a. MVP's Belated Ratification Cannot Create Standing Where None Existed At The Outset Of Litigation ..................................... 7

            b. Plaintiff Is Barred From Relying Upon Rule 17 In Any Event Because Its Decision To File In The Name Of MVPAM Rather Than MVP Was Made For Tactical Reasons ...................................................................................... 10

        4. Plaintiff's Belated Disclosure Of VP Bank Only Serves To Heighten The Concerns Relating To Its Supposed Standing ................... 11

    B. Plaintiff Has Failed To Respond To Defendants' Contention That This Court Will Lack Diversity Jurisdiction Upon Dismissal Of The Federal Claims ................................................................................................................ 12

III. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Advanced Magnetics, Inc. v. Bayshore*,
  106 F.3d 11 (2d Cir. 1997) .................................................................................... 4, 9

*AmeriFirst Bank v. Bomar*,
  757 F. Supp. 1365 (S.D. Fla. 1991) ............................................................................ 5

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ..................................................................................................... 5

*Britton v. Co-op Banking Group*,
  4 F.3d 742 (9th Cir. 1993) ........................................................................................... 3

*Commodity Trend Service, Inc. v Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) ....................................................................................... 2

*Craig v. Atlantic Richfield Co.*,
  19 F.3d 472 (9th Cir. 1994) ....................................................................................... 12

*Dunmore v. United States*,
  358 F.3d 1107 (9th Cir. 2004) ............................................................................... 8, 10

*Faysound Ltd. v. United Coconut Chem., Inc.*,
  878 F.2d 290 (9th Cir. 1989) ..................................................................................... 12

*Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc.*,
  528 U.S. 167 (2000) ..................................................................................................... 8

*Kent v. Northern California Regional Office of the American Friends Serv. Committee*,
  497 F.2d 1325 (9th Cir. 1974) ..................................................................................... 8

*Kokkenen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) ..................................................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 7, 8

*McEwen v. Digitran Sys., Inc.*,
  49 F. Supp. 2d 1293 (D. Utah 1999) ........................................................................... 4

*Morrison v. National Australia Bank Ltd.*,
  130 S.Ct. 2869 (2010) ................................................................................................ 11

*Mutuelles Unies v. Kroll & Linstrom*,
  957 F.2d 707 (9th Cir. 1992) ....................................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Savage v. Glendale Union High School*,
    343 F.3d 1036 (9th Cir. 2003) ................................................................................................ 2

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100, 104-06 (2d Cir. 2008) ................................................................................. 3, 4

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................................................................ 2

*Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989) .............................................................................................. 10

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002) .................................................................................................. 8


**STATUTES**

18 U.S.C. § 1359 ........................................................................................................................ 12

28 U.S.C. § 1367(c)(3) ............................................................................................................... 12

28 U.S.C. § 1746 .......................................................................................................................... 6

28 U.S.C. § 2072(b) ..................................................................................................................... 8


**OTHER AUTHORITIES**

Rest.2d of Contracts, § 324 ........................................................................................................... 4

F.R.Evid. 801 ............................................................................................................................... 6

F.R.Evid. 803 ............................................................................................................................... 6

Fed.R.Civ.Proc., Rule17 ....................................................................................................... passim

Fed.R.Civ.Proc., Rule 10(b) ....................................................................................................... 11

Fed.R.Civ.Proc., Rule 12(b)(6) .................................................................................................. 12

Fed.R.Civ.Proc., Rule 15(d) ....................................................................................................... 10

Fed.R.Civ.Proc., Rule 82(a) ......................................................................................................... 8

# I.
# INTRODUCTION

With each new filing from plaintiff MVP Asset Management ("MVPAM") comes a new revelation. In its original complaint, MVPAM, merely an uninjured investment advisor, claimed the authority to sue on behalf of its investment client, MVP Fund of Funds ("MVP"), pursuant to an alleged power of attorney. Defendants moved to dismiss the case, noting that a power of attorney did not provide MVPAM with Article III standing, as an actual assignment of the claim was required. Not to worry claimed Plaintiff in opposition, not only does MVPAM hold a power of attorney, it is also an assignee – although no written assignment was disclosed.

Noting that Plaintiff had, in fact, failed to allege its claimed assignee status in the Complaint, the Court dismissed the action, but provided Plaintiff leave to amend. Plaintiff amended, and yet again, no written assignment was attached.

Plaintiff's amended complaint, however, remained deficient. There were no details concerning the alleged assignment, the alleged power of attorney did not authorize the actions Plaintiff claimed to have taken, and extrinsic facts suggested that MVP had not fully disclosed the chain of title of the shares. Moving Defendants therefore filed the motion now before the Court. And once again in Opposition, MVPAM comes forward with previously undisclosed evidence, including a brand new Board of Director resolution from the MVP Fund of Funds dated from just a few weeks ago that purports to authorize MVPAM's entire set of actions from the beginning. Yet, even now, Plaintiff continues to play its game of hide the ball, raising in one hand its alleged authority under a power of authority derived from an Investment Management Agreement, while using the other hand to conceal from view the Investment Management Agreement, the associated power of attorney, and the purported assignment.

Also strikingly missing from both the Original and First Amended Complaints is any mention of VP Bank. VP Bank is a Lichtenstein Bank that Plaintiff now admits holds shares of Ark Discovery for its benefit in *VP Bank's* account at Citco Global. Previously, Plaintiff had alleged Citco Global was *MVP*'s custodian. (FAC, ¶ 51, "Pursuant to its power of attorney for MVP, [MVPAM] caused MVP to make investments in Ark Discovery Fund . . . through MVP's

-1-

WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

DLA PIPER LLP (US)
SACRAMENTO

custodian Citco Global Custody NV ("Citco"), Account Number 190023.")  No explanation has been provided for this shift.

Plaintiff's ongoing sleight of hand cannot change that Plaintiff lacked Article III standing at the time this action was filed.  No subsequent action, ratification, or joinder can remedy this federal jurisdictional defect.  This is not a mere "hyper-technical" issue as Plaintiff complains.  Standing goes to the heart of this Court's ability to adjudicate this action.  Absent Article III standing, this court lacks subject matter jurisdiction to proceed, and the action must be dismissed.

## II.
## ARGUMENT

Moving Defendants based their Motion to Dismiss on both the face of the pleadings and extrinsic evidence.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Moving Defendants established that Plaintiff's allegations, on their face, did not suffice to establish that it was a proper assignee possessing Article III constitutional standing.  The alleged power of Attorney, even as alleged by Plaintiff, did not provide Plaintiff with the authority to transfer MVP's property to itself.  (Motion, at 6-9.)  Moving Defendants also showed that the alleged power of attorney fell particularly short with respect to the federal Section 10(b) claim, because of the heightened scrutiny that attaches to the assignment of such claims.  (Motion at 9-11.)  In addition, Moving Defendants relied upon extrinsic evidence to reveal that Plaintiff had failed to disclose the full chain of title with respect to its shares, casting in doubt its entire series of allegations regarding the purported assignment. (Motion, at 8.)  *See Commodity Trend Service, Inc. v Commodity Futures Trading Comm'n,* 149 F.3d 679, 685 (7th Cir. 1998) ("The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question.").

Plaintiff, accordingly, bore the burden of coming forward with evidence to demonstrate this Court's subject matter jurisdiction.  *See Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (plaintiff must furnish evidence or affidavits to satisfy its burden

DLA PIPER LLP (US)
SACRAMENTO

-2-

WEST\223656375.1     DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

of establishing jurisdiction).  Plaintiff attempted to do so though the Declaration of Colin Haddock, Chairman of the Board of the MVP Fund of Funds.  As will be discussed, Mr. Haddock's declaration confirms only that this case must be dismissed.

**A.     Plaintiff Has Failed To Meet Its Burden Of Establishing Article III Standing.**

**1.      Plaintiff Does Not Allege A Valid Assignment.**

Establishing the validity of the assignment is Plaintiff's burden.  *Britton v. Co-op Banking Group,* 4 F.3d 742, 746 (9th Cir. 1993).  In the First Amended Complaint, Plaintiff premises the validity of the purported assignment on an alleged power of attorney.  MVPAM claims to have taken upon itself to assign MVP's claims to itself for collection in February 2009 pursuant to a power of attorney entered into between MVPAM and MVP.  (FAC, ¶ 3.).  There is no allegation or direct evidence of MVP's express consent to the assignment at the time it was allegedly made.[1]

With respect to this critical power of attorney, Plaintiff alleges as follows:

> At all relevant times mentioned herein, MVPAM has been the investment manager to [MVP], an investment company organized and existing under the laws of the British Virgin Islands, with unrestricted decision making authority to control, and act as MVP's attorney-in-fact with respect to, all investments and litigation relating thereto.

(FAC, ¶ 3.)

This alleged power of attorney simply does not speak to MVPAM's right to convey to itself the right, title, or ownership of MVP's chose in action.  That silence is the end of the matter.  For while Plaintiff argues that this alleged grant of authority included the power to bind MVP "to contracts governing investments and litigation," and "[c]learly, the assignment of MVPFofF's Ark Discovery claims for collection is a contract relating to the Ark Discovery Investments and related litigation," Opp., at 4:6-8, such arguments are mere legal conclusions that contradict case law and are inconsistent with the scope of the power of attorney as actually alleged.

---

[1]  The alleged assignment has also not been presented to the Court, despite its critical importance.  This omission suggests that, in fact, there never was any assignment at all.  Instead, MVPAM proceeded forward pursuant to its perceived authority under the alleged power of attorney, and only after the filing of this lawsuit, and the review of the *Huff* case, did Plaintiff determine that an assignment was required.

DLA PIPER LLP (US)
SACRAMENTO

-3-
WEST\223656375.1     DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

Plaintiff, in other words, is engaged in mere bootstrapping. As set forth in the moving papers, the right to pursue a claim is not the same as conveyance of title to a claim. The Second Circuit case of *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008), for example, involved a power of attorney indistinguishable from the one alleged by Plaintiff here. As held by *Huff*, a power of attorney, even one that "permits [the investment advisor] to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact," is not sufficient to provide constitutional standing because it is not in fact a valid assignment conferring legal title to the claims. *Huff,* 549 F.3d at 104-06.

Of similar effect is the case cited by Plaintiff, *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, which held that "[i]n order to make a valid assignment, the owner must manifest an intention to make the assignee the owner of the claim." 106 F.3d 11, 17 (2d Cir. 1997). The grant of authority through a power of attorney – even one granting the power to sue and collect on a claim – is not the same as the actual assignment of the claim. *Id.* at 17-18. There must be an actual transfer of title or ownership. *Id.* at 17-18; *see also* Rest.2d of Contracts, § 324 ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.").

Moreover, and with respect to the federal claim, Moving Defendants have shown that Plaintiff faces an even more substantial burden on its federal claims. The purchaser or seller requirement of Section 10(b) means that assignments of such claims must be subjected to heightened scrutiny. Motion, at 9, citing *McEwen v. Digitran Sys., Inc.*, 49 F. Supp. 2d 1293, 1301 (D. Utah 1999).[2] For such claims, there must be "clear and direct evidence" that the injured investor has "voluntarily and expressly" assigned its personal rights in the statutory cause of

---

[2] Plaintiff spends several pages attempting to distinguish *McEwen* on its facts. Plaintiff fails, however, to establish that *McEwen's* analysis of the law was incorrect as it relates to the need to show a "voluntary and express" assignment in Section 10(b) claims, and fails to demonstrate that *McEwen* was incorrect in finding that the power of attorney in that case, which is essentially the same as the one at issue here, did not suffice to provide the plaintiff with the right of assignment. *McEwen*, 49 F. Supp. 2d 1303-05. As for the "evidence" that Plaintiff contends distinguishes this case from *McEwen*, that is addressed elsewhere in this brief.

DLA Piper LLP (US)
Sacramento

-4-
WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  action. *Id.* at 1304-05, citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), and

2  *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1371 (S.D. Fla. 1991).

3        The fundamental defect with Plaintiff's allegations concerning the purported power of

4  attorney is that they do not establish that MVP "manifested an intention" to transfer its choses of

5  action to MVPAM. Absent such a showing, MVPAM's purported assignment is simply an *ultra*

6  *vires* action. Similarly, as set forth in the moving papers, the allegation concerning Stratford's

7  alleged ratification of the assignment, "as the sole voting shareholder," has no legal effect under

8  the governing law of the British Virgin Island. (Motion, at 11.) Plaintiff offers no contrary

9  interpretation of the governing law, and therefore no basis for this Court to conclude that this

10 alleged individual action by Stratford was of any legal effect to the company.

11       Because the power of attorney as alleged by Plaintiff fails to establish that the assignment

12 was valid, Plaintiff's allegations fall short of meeting its burden of establishing standing. The

13 question remains, however, whether Plaintiff's new "evidence" meets Plaintiff's burden where its

14 allegations have failed to do so.

15/16     **2.**     **Plaintiff's New "Evidence" Does Not Provide MVPAM With Standing: The MVP Board of Directors Cannot By Mere Fiat Rewrite History Or The Content Of Past Legal Instruments.**

17       Filed in support of Plaintiff's Opposition is the Declaration of Colin Haddock, who states

18 that he is the Chairman of the Board of MVP Fund of Funds. Mr. Haddock attaches to his

19 Declaration as Exhibit A the Written Resolution of the Directors of the MVP Fund of Funds

20 Limited, dated May 27, 2011 – dated, in other words, just a couple of weeks ago. (Haddock

21 Decl., ¶ 3.) Mr. Haddock also attaches a letter from VP Bank, of similarly recent vintage, dated

22 May 30, 2011. (*Id.*, ¶ 4.) Finally, Mr. Haddock claims that as Chairman of the Board, he affirms

23 that Stratford has the authority to bind the fund by mere virtue of Stratford's ownership of 100%

24 of the voting shares. Thus, Mr. Haddock continues, Stratford's earlier ratification of the

25 assignment was indeed sufficient for MVP's purposes. (*Id.*, ¶ 5.)

26

27

28

DLA PIPER LLP (US)
SACRAMENTO

-5-
WEST\223656375.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1    Mr. Haddock's Declaration fails to establish that MVPAM had Article III standing at the
2 time this action was filed, which is the time that Plaintiff was required to have constitutional
3 standing.

4    The Written Resolution first tackles the issue of MVPAM's authority to cause MVP to
5 enter into the purported assignment. According to the recitals and the accompanying resolutions,
6 MVPAM's purported authority stems from an Investment Management Agreement ("IMA").
7 (Haddock Decl., Ex. A at 1, 3.) The IMA itself, however, has not been provided to the Court.

8    The board resolution, therefore, is mere hearsay and impermissible secondary evidence as
9 to the content of the IMA. F.R.Evid. 801; 1002. The resolution is simply a specifically
10 engineered out-of-court statement on issues in dispute being offered for its truth. The IMA says
11 whatever it says, but that evidence is *not* before the Court. The MVP Board cannot establish what
12 the IMA says through a board resolution. Similarly, the board's "confirmation" in Resolution
13 Nos. 1 and 2 that (1) MVPAM was authorized by the IMA to assign the claims, and (2) MVPAM
14 did not need to seek further authorization to do so, is mere hearsay, and an inadmissible legal
15 opinion and conclusion. The validity of these "confirmations" depends not on the Board
16 declaring its present view of what happened in the past, but on the language of the IMA, which
17 Plaintiff is still concealing.[3]

18    Finally, Mr. Haddock's purported confirmation in his Declaration of Stratford's supposed
19 authority as a voting shareholder is also irrelevant. Mr. Haddock's status as Chairman of the
20 Board does not give him the power to opine on the requirements of British Virgin Islands law.
21 Mr. Haddock testifies that he is an accountant. (Haddock Decl., ¶ 2.) He does not assert that he

---

[3]    Resolution No. 3 cannot save Plaintiff's claims for much the same reason. This new resolution states that board members were aware of the potential for litigation, and that the Board, through the Chairman, "orally confirmed" to MVPAM that it was authorized to take whatever action was deemed necessary. No resolution from a time period contemporaneous with the events showing board approval or delegation of authority has been presented. (*See* RJN, J; Fay Decl., ¶¶ 17-22.) If such a resolution existed, it would have been produced, and this new one falls well short. The statement concerning the alleged state of mind of the board members is also not made under penalty of perjury, as required by 28 U.S.C. § 1746 if it is to be considered as evidence by the Court. Further, the statements concerning the alleged actions of the board members are mere hearsay. F.R.Evid. 803. And, again, MVPAM's power will be limited by whatever the IMA provides, and that document remains hidden.

DLA PIPER LLP (US)
SACRAMENTO

-6-
WEST\223656375.1     DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

is an expert in the law of the British Virgin Islands, and his Declaration establishes no foundation for his conclusions concerning the supposed validity of Stratford's powers. As set forth in the unrebutted Declaration of Mr. Fay, a British Virgin Islands corporation may only act through its Board of Directors, rendering Stratford's purported ratification of his own actions a legal nullity.

Accordingly, the vast majority of the content of the Haddock Declaration is inadmissible and irrelevant to the issue before the Court. However, the Board Resolution also purports to ratify the past actions of MVPAM. The remaining question, therefore, is whether this ratification, and/or MVP's offer to join the action, can satisfy, after-the-fact, the Article III standing issues that have plagued this case from the start. The answer to that question is no, it cannot.

### 3. MVP's May 2011 Ratification Of The Alleged Assignment Does Not Retroactively Provide MVPAM With Article III Standing.

#### a. MVP's Belated Ratification Cannot Create Standing Where None Existed At The Outset Of Litigation.

Plaintiff argues that MVP's ratification of MVPAM's past actions and offer to join the lawsuit suffices to cure the standing issues pursuant to Federal Rule of Civil Procedure 17, which sets forth a procedure for curing defects relating to whether the named plaintiff is the real party in interest. Plaintiff's argument, however, is premised upon the conflation or at least confusion of two distinct concepts: Article III standing and the prudential real-party-in-interest doctrine. These are different concepts. Moving Defendants did *not* move to dismiss Plaintiff's claims because Plaintiff was not the real party in interest. (Defendants' Notice of Motion and Motion to Dismiss, at 1.) Moving Defendants moved to dismiss because MVPAM lacks Article III (or constitutional) standing. *Id.* This distinction is a critical one with respect to the potential application of Rule 17.

As set forth in the moving papers, standing to sue is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Federal courts are limited in jurisdiction, and it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise. *See Lujan*, 504 U.S. at 561; *Kokkenen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) ("Federal courts

DLA Piper LLP (US)
Sacramento

-7-

WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

Rule 17 does not allow a party to cure defects in Article III standing, and indeed, the Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of the U.S. Constitution. 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right."); Fed.R.Civ.Pro. 82(a) ("These rules do not extend or limit the jurisdiction of the district courts . . . ."); *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). For this reason, Rule 17 "must be read with the limitation that a federal district court must, at a minimum, arguably have subject matter jurisdiction *over the original claims.*" *Zurich*, 297 F.3d at 531-32 (emphasis added); *see also Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (distinguishing between the "irreducible constitutional minimum of standing" and the prudential requirement that the plaintiff be the "real party in interest," and holding that a party *with* standing, but who was not the real party in interest, could rely upon Rule 17 and the ratification of the real party in interest, to allow the suit to proceed); *Kent v. Northern California Regional Office of the American Friends Serv. Committee*, 497 F.2d 1325, 1329 (9th Cir. 1974) ("There is no doubt that as to the trust fund, the trustees are the real party in interest by virtue of Fed.R.Civ.Pro. 17(a). But Rule 17(a) means only that the trustees have a real interest in the trust fund. Rule 17(a) does not give them standing; 'real party in interest' is very different from standing.").

MVPAM lacks Article III standing because it suffered no injury itself, and it has not properly alleged (or met its burden of establishing) that it had standing as a proper assignee of MVP at the outset of the action. This defect is not subject to later cure. Article III standing is judged at the time the original complaint was filed. *Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc.,* 528 U.S. 167, 189 (2000). Actions taken subsequent to filing cannot retroactively confer federal jurisdiction when there was none existing at the start. *See Lujan*, 504

DLA Piper LLP (US)
Sacramento

-8-

WEST\223656375.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

U.S. at 571 (later joinder of parties cannot cure standing issue that existed at time of filing: "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*" It cannot be that, by later participating in the suit, the State Department and AID retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.").

Neither of the cases cited by Plaintiff, *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir. 1992), or *Advanced Magnetics, Inc. v. Bayshore*, 106 F.3d 11 (2d Cir. 1997), compel a different result. In *Advanced Magnetics*, a plaintiff brought suit on behalf of itself and certain of its shareholders. As previously discussed, the plaintiff did not hold a valid assignment, and thus could not pursue the claims of the other shareholders. *Advanced Magnetics*, 106 F.3d at 16-18. The Second Circuit nonetheless concluded that joinder under Rule 17 should have been allowed. *Id.* at 20. However, unlike the circumstance in this case, it was undisputed that standing existed at the outset of the case, as the original plaintiff was pursuing its own claims at well. *Id.* at 14. Accordingly, the district court had jurisdiction to consider joinder under Rule 17, something that is not the case here.

The *Mutuelles* case it similarly unavailing to Plaintiff. That case was a legal malpractice case brought by an insurer against a law firm. *Mutuelles*, 957 F.2d at 709. The named plaintiff, Mutuelles, had paid a total of $3,115,381 to settle the underlying action, some of which was paid by two other insurance companies. *Id.* at 710. The action was initially filed just by Mutuelles, and during the proceeding, the district court ruled that at least one of the other insurers was also a real party in interest. *Id.* Pursuant to Rule 17, the district court allowed the other insurer to file a Rule 17(a) ratification, allowing the action to proceed on that portion of the action as to which it was the real party in interest. *Id.* The Ninth Circuit affirmed this joinder, over the objection that the claims of the insurers would otherwise have been time barred, because the action had also been filed by Mutuelles, the lead insurer, on its own behalf. *Id.* at 712. *Mutuelles*, in other words, is a case involving the straightforward application of Rule 17. It is not an Article III standing case because Mutuelles *had* standing at the time the action was filed and the Court thus had jurisdiction to act under Rule 17.

DLA Piper LLP (US)
Sacramento

-9-
WEST\223656375.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

In contrast, MVPAM did not have constitutional standing at the time this action was filed, and Rule 17 cannot in and of itself provide the Court with subject matter jurisdiction. Rule 17 as a Federal Rule of Civil Procedure cannot provide Article III standing where it was lacking at the outset, and does not allow MVP's belated action to try to change this defect.[4] The action must therefore be dismissed.

### b. Plaintiff Is Barred From Relying Upon Rule 17 In Any Event Because Its Decision To File In The Name Of MVPAM Rather Than MVP Was Made For Tactical Reasons.

Even where the original filing party had constitutional standing (and here MVPAM did not), ratification or joinder under Rule 17, and an associated relation back to the original date of filing, will not be allowed, unless MVPAM's decision to sue in its own name was an "understandable mistake and not a strategic decision." *Dunmore,* 358 F.3d at 1112-13. Here, neither MVPAM nor its attorney have submitted a declaration stating that the decision to file in MVPAM's name was a mere mistake. Nor could they have validly done so. MVP could have brought this action directly in its own name. That it did not was an obvious tactical move from the outset designed to create the appearance of US and California connections where there are in fact none. Throughout, MVPAM has sought to conflate itself, the uninjured investment advisor, with MVP, the purchaser, for the purpose of (1) creating the appearance of a United States transaction, when there was none, and (2) creating the appearance of a California connection,

---

[4] In seeking to distinguish *Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989), Plaintiff misses one of its main teachings. In *Wulff*, the plaintiff had filed a Miller Act claim, which provides protection to persons supplying materials and labor for federal projects. However, the plaintiff had not performed any work in connection with the project that was the subject of their lawsuit. Subsequently (after the running of the statute of limitations), the plaintiff obtained an assignment of claims from a contractor who had actually performed work on the project, and then sought rely upon Rule 17 to establish the timeliness of its suit based upon the original filing date. *Id.* at 1071, 1075-76. The Ninth Circuit held Rule 17, and its provision that the action may proceed as if originally filed by the real party in interest, can only apply where the initial action was validly filed. *Id.* at 1075. In *Wulff*, the plaintiff did not have an original, valid claim under the Miller Act to which the later assigned claim related. As such, the Ninth Circuit held that neither Rule 17, nor Rule 15(d) concerning supplemental pleadings, provided a basis for Plaintiff to proceed on the otherwise time-barred claim. *Id.* In short, the later assignment could not serve to ratify the commencement of a suit on a claim that did not exist. So too in this case, where MVPAM lacked standing at the outset of the case, rendering its initial filing a nullity, not subject to later ratification.

-10-

DLA Piper LLP (US)
Sacramento

WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

when there was none. Throughout both sets of its opposition papers, Plaintiff has continued to try to exploit this confusion to evade the holding of *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), which holds that offshore transactions are not subject to Rule 10(b), to contend that offers of sales have been made in California, and to argue that personal jurisdiction exists because Defendants supposedly targeted their actions at California. Had MVP, a British Virgin Islands company, brought this action in its own name, none of these meritless arguments could have been raised in the first instance.[5]

The decision to sue in MVPAM's name was a tactical, calculated move from the start, barring Plaintiff from relying upon Rule 17.

### 4. Plaintiff's Belated Disclosure Of VP Bank Only Serves To Heighten The Concerns Relating To Its Supposed Standing.

Nowhere in Plaintiff's Complaint or First Amended Complaint is there any mention of VP Bank or its role in this series of transactions. From reading these pleadings, no one would be any the wiser on the role of VP Bank, or know that it is even in the chain of title. Nor does Plaintiff's disclosure of VP Bank at this late juncture address the concerns identified by Defendants regarding the effect of these multiple parties in the chain of title on the purported assignment.

First, Plaintiff offers only hearsay evidence in the form of a letter from VP Bank of VP Bank's supposed role in MVP's holdings of Ark Discovery (Offshore). Second, and even more importantly, Plaintiff fails to disclose any of the agreements between VP Bank and MVP, or between Citco Global and VP Bank, documents that would allow evaluation of the respective ownership interests and role of these three separate participants in MVP's alleged purchase. Only one of these three entities, MVP, has agreed to join/ratify this action, raising the spectre of multiple liabilities depending on the potential rights, if any, of VP Bank and Citco Global in the

---

[5] In addition, MVPAM claimed diversity jurisdiction on the residence of MVPAM. (FAC, ¶ 1.)

DLA PIPER LLP (US)
SACRAMENTO

-11-
WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

shares.[6]  By continuing to hide the ball, Plaintiff falls short in meeting its burden of establishing its standing to pursue this action.

### B. Plaintiff Has Failed To Respond To Defendants' Contention That This Court Will Lack Diversity Jurisdiction Upon Dismissal Of The Federal Claims.

Presumably because it has now admitted that MVP – a foreign entity – is the one that should have brought the action in the first place, and/or is a party seeking to join it, Plaintiff has not responded to Moving Defendants argument that diversity jurisdiction is lacking in this case in light of the collusive assignment between MVPAM and MVP.  (Motion, at 13.)  In failing to respond to the argument, Plaintiff concedes it.[7]

Accordingly, whether under 18 U.S.C. § 1359 based upon the collusive assignment, or whether because of the joinder of MVP as a real party in interest, diversity is absent in this action. As such, upon the dismissal of the federal claims, whether under this motion or the Rule 12(b)(6) motion, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

Accordingly, for the reasons set forth above, Moving Defendants respectfully request that their motion be granted.

Dated: June 13, 2011                             DLA PIPER LLP (US)


                                                 By:  /s/ GEORGE L. O'CONNELL
                                                      George L. O'Connell
                                                      Attorneys for Defendants

---

[6] This concern is not idle.  Margin lending by banks such as VP Bank is common, such that loans extended by VP Bank to MVP for purposes of acquiring shares of Ark Discovery (Offshore) could be secured by those shares themselves.

[7] The requirement of complete diversity cannot be met where there is a citizen or subject of a foreign state is on both sides of the litigation.  *Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994), citing *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294-95 (9th Cir. 1989).

DLA Piper LLP (US)
Sacramento

-12-
WEST\223656375.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK