1   GEORGE L. O'CONNELL (SBN 74037)
    TODD M. NOONAN (SBN 172962)
2   DLA PIPER LLP (US)
    400 Capitol Mall, Suite 2400
3   Sacramento, CA  95814-4428
    Tel:  916.930.3200
4   Fax:  916.930.3201

5   Attorneys for Defendants
    JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.;
6   VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT,
    LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL
7   SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING,
    LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; ARK ROYAL
8   ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

9                          UNITED STATES DISTRICT COURT

10                        EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company, | CASE NO.  2:10-cv-02483-GEB-CMK |
| 12 | DEFENDANTS' NOTICE OF MOTION |
| 13            Plaintiff, | AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO |
| 14            v. | RULE 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| 15  STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, JIM GRANT, ARK | THEREOF |
| 16  ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company, VESTBIRK | Date:   December 19, 2011 Time:  9:00 a.m. |
| 17  CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company, ARK ROYAL ASSET | Dept:  Courtroom 10 Judge: Honorable Garland E. Burrell, Jr. |
| 18  MANAGEMENT, LLC, a Nevada Limited-Liability Company, ARK DISCOVERY, LLC, a Business Entity of Unknown Form, ARK | |
| 19  ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company, ARK ROYAL SERVICES, | |
| 20  LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, LLC, a Nevada | |
| 21  Limited-Liability Company, ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited- | |
| 22  Liability Company, ARK ROYAL CAPITAL, INC., a Nevada Corporation, ARK ROYAL | |
| 23  RESOURCES LLC, a Nevada Limited-Liability Company, ARK ROYAL ASSURANCE LLC, a | |
| 24  Nevada Limited-Liability Company, and ARK ROYAL INVESTMENTS, LLC, a Nevada | |
| 25  Limited-Liability Company, | |
| 26            Defendants. | |

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on December 19, 2011, at 9:00 a.m., in Courtroom 10 of

3    the above-titled Court, located at 501 I Street, Sacramento, California 95814, defendants JEFF

4    BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK

5    CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK

6    DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK

7    ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL

8    CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK ROYAL ASSURANCE LLC;

9    ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will and hereby do move to

10   dismiss the Second Amended Complaint filed by plaintiff, MVP Asset Management (USA) LLC

11   ("MVPAM"), under Article III of the United States Constitution and Rule 12(b)(1) of the Federal

12   Rules of Civil Procedure on the grounds that Plaintiff lacks constitutional standing to maintain

13   this action because it has failed to properly allege its putative standing as an assignee to assert

14   claims purportedly held by MVP.

15   In the alternative, and in conjunction with their Rule 12(b)(6) Motion to Dismiss filed

16   herewith, Moving Defendants also seek dismissal of the state law claims on the ground of lack of

17   diversity jurisdiction.  Upon dismissal of Plaintiff's federal claims pursuant to the Rule 12(b)(6)

18   motion, the Court will lack diversity jurisdiction over the remaining state law claims.  Federal law

19   requires the Court to look through the alleged collusive assignment between MVPAM and MVP,

20   and thereby use MVP's citizenship for purposes of determining whether complete diversity exists.

21   28 U.S.C. § 1359.  When MVP's citizenship is considered, complete diversity is defeated because

22   there will be both a foreign assignor as the effective plaintiff and a foreign defendant.  *See* 28

23   U.S.C. § 1332.  Accordingly, upon dismissal of the two federal claims, the Court should decline

24   to exercise supplemental jurisdiction over the remaining state law claims, and dismiss them.  28

25   U.S.C. §1367(c).

26   Pursuant to Rule 44.1, Moving Defendants further provide notice of their intent to rely

27   upon the law of the British Virgin Islands, as further set forth herein, in the Request for Judicial

28   Notice, and in the Declaration of James Corbett, QC.

1        This motion will be based upon this Notice of Motion and Motion, Memorandum of

2    Points and Authorities, the Request for Judicial Notice, and the Declaration of James Corbett QC

3    (which makes reference to the Declaration of Michael Fay, filed May 12, 2011, Dkt. No. 61), all

4    filed and served herewith, and on such further documents and argument as the Court may permit

5    at the hearing of this motion.

6    Dated:  November 14, 2011          DLA PIPER LLP (US)

7

8                        By:___/s/ GEORGE L. O'CONNELL_____

9                           George L. O'Connell

10                          Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     PLAINTIFF'S EVOLVING ALLEGATIONS CONCERNING ITS PURPORTED
        AUTHORITY TO ASSIGN MVP'S CLAIMS TO ITSELF .......................................... 3

        A.      Plaintiff's Original Complaint:  Plaintiff Purports To Bring The Action As
                An Uninjured Investment Advisor Holding A Power of Attorney ........................ 3

        B.      Plaintiff's First Amended Complaint:  Plaintiff Now Claims To Be An
                Assignee, But Does Not Establish A Valid Assignment ...................................... 3

        C.      Plaintiff's Second Amended Complaint:  Plaintiff Adds A Belated Director
                Ratification To The Already Rejected Allegations Concerning The Limited
                Power of Attorney, Invalid Assignment, And Defective Shareholder
                Confirmation ...................................................................................................... 5

III.    DISCUSSION .............................................................................................................. 6

        A.      Standards Governing This Rule 12(b)(1) Motion to Dismiss For Lack of
                Article III Constitutional Standing ...................................................................... 6

        B.      MVPAM Has Alleged Only A Specific Power Of Attorney, The Scope Of
                Which Does Not Include The Authority To Assign MVP's Claims...................... 7

        C.      MVPAM Has Not Alleged a Valid Assignment Under BVI Law, Even
                Assuming That It Had The Requisite Authority Under The Power Of
                Attorney To Attempt Make The Assignment In The First Place .......................... 9

        D.      MVPAM's Contorted Allegations Concerning a Purported Shareholder
                Ratification Do Not Suffice to Salvage the Invalid Assignment ........................ 10

        E.      MVPAM's Allegations Concerning The Alleged Retroactive Ratification
                Do Not Validate the Unauthorized and Unlawful Assignment............................ 12

        F.      MVP's May 2011 Ratification Of The Alleged Assignment Does Not
                Retroactively Provide MVPAM With Article III Standing ................................. 13

                1.      MVP's Belated Ratification Cannot Create Standing Where None
                        Existed At The Outset Of Litigation ........................................................ 13

                2.      Plaintiff Is Also Barred From Relying Upon Rule 17 Because Its
                        Decision To File In The Name Of MVPAM Rather Than MVP Was
                        Made For Tactical Reasons ...................................................................... 17

        G.      MVPAM Has Had Three Bites At The Apple:  Dismissal This Time
                Should Be With Prejudice................................................................................... 17

        H.      Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of
                Assessing Diversity Jurisdiction ........................................................................ 18

IV.     CONCLUSION ........................................................................................................... 22

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# TABLE OF AUTHORITIES

**CASES**

*Advanced Magnetics, Inc. v. Bayshore,*
   106 F.3d 11 (2d Cir. 1997)......................................................................... 15, 16

*Airlines Reporting Corp. v. S&N Travel, Inc.,*
   58 F.3d 857 (2d Cir. 1995)................................................................................. 20

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009).............................................................................. 7, 11, 12

*Attorney's Trust v. Videotape Computer Products, Inc.,*
   93 F.3d 593 (9th Cir. 1996)...................................................................... 18, 19, 20

*Bennet v. Spear,*
   520 U.S. 154 (1997)............................................................................................ 14

*Cetacean Cmty v. Bush,*
   386 F.3d 1169 (9th Cir. 2004)...................................................................... 6, 13, 14

*Craig v. Atlantic Richfield Co.,*
   19 F.3d 472 (9th Cir. 1994).............................................................................. 21

*Dist. Distrib., Inc. v. Heublein,*
   1971 WL 559 (D.D.C. May, 28, 1971) ............................................................. 11

*Dunmore v. United States,*
   358 F.3d 1107 (9th Cir. 2004)...................................................................... 14, 15, 17

*Dweck v. Japan CBM Corp.,*
   877 F.2d 790 (9th Cir. 1989)........................................................................ 20, 21

*Faysound Ltd. v. United Coconut Chem., Inc.,*
   878 F.2d 290 (9th Cir. 1989)............................................................................. 21

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000)...................................................................................... 7, 13

*Gladstone Realtors v. Village of Bellwood,*
   441 U.S. 91 (1979)............................................................................................ 14

*Harrell & Sumner Contracting Co., Inc. v. Peabody Petersons Co.,*
   546 F.2d 1227 (5th Cir. 1977).......................................................................... 20

*Indep. Living Ctr. of S. Cal., Inc. v. Shewry,*
   543 F.3d 1050 (9th Cir. 2008)........................................................................... 13

DLA PIPER LLP (US)
SACRAMENTO

-ii-

WEST\224782247.1      DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

*Kent v. Northern California Regional Office of the American Friends Serv. Committee*,
497 F.2d 1325 (9th Cir. 1974)................................................................. 15

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) ............................................................................ 6

*Kramer v. Caribbean Mills, Inc.*,
394 U.S. 823 (1969) ..................................................................... 19, 20

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)............................................................. 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................... 13, 15, 16

*Morrison v. National Australia Bank Ltd.*,
130 S.Ct. 2869 (2010) ........................................................................ 17

*Mutuelles Unies v. Kroll & Linstrom*,
957 F.2d 707 (9th Cir. 1992) ........................................................ 15, 16

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ............................................................................ 7

*Pratt v. Progressive Casualty Ins. Co.*,
2011 WL 2160863 (W.D. Ky., June 1, 2011) ....................................... 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)............................................................... 7

*Simpson v. Alaska State Comm'n for Human Rights*,
608 F.2d 1171 (9th Cir. 1979)............................................................. 20

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998)............................................................... 7

*Von Wendel v. McGrath*,
180 F.2d 716 (3d Cir. 1950)................................................................. 8

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981).................................................... 7, 11, 12

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)................................................................. 3

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)......................................................... 7, 11

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004)................................................................ 7

-iii-

*Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989)..................................................................................... 16

*Zawadski De Bueno v. Bueno Castro*,
    822 F.2d 416 (3d Cir. 1987)........................................................................................ 8

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002)...................................................................................... 15


**STATUTES**

28 U.S.C. § 1332......................................................................................... 2, 18, 19

28 U.S.C. § 1359.............................................................................................. passim

28 U.S.C. § 1367(c) ........................................................................................... 2, 22

28 U.S.C. § 2072(b) ............................................................................................... 14



**RULES**

Fed.R.Civ.Proc. 10(b) ........................................................................................... 17

Fed.R.Civ.Proc. 12(b)(1)............................................................................... 6, 7, 13

Fed.R.Civ.Proc. 12(b)(6)................................................................................... 2, 18

Fed.R.Civ.Proc. 17 ............................................................................................ passim

Fed.R.Civ.Proc. 44.1 ............................................................................................... 1

Fed.R.Civ.Proc. 82(a) ........................................................................................... 14

-iv-

# I.
## INTRODUCTION

Through its Second Amended Complaint ("SAC"), Plaintiff MVP Asset Management ("Plaintiff" or "MVPAM") definitively confirms what has been apparent from the start of this action.  Plaintiff MVPAM, which is merely the uninjured investment advisor for MVP, did not have Article III standing at the time this action was filed.  As such, the action must be dismissed.

The SAC largely re-pleads the same allegations already found insufficient by the Court in its Order dismissing the action, filed September 22, 2011.  Central to the Court's prior ruling, for example, was the finding that MVPAM had not alleged a valid assignment (and thus lacked standing to pursue MVP's claims) because the underlying power of attorney allegedly granted by MVP to MVPAM did not include the power to assign claims.  Plaintiff's amended allegations add nothing of substance to lead the Court to alter this prior finding.

Instead, Plaintiff merely adds a sprinkling of legal conclusions to generate the appearance that the alleged power of attorney was a general one, and not a specific or limited one.  Mere legal conclusions are irrelevant, however, and the *facts* that are alleged establish only that there was, at most, a specific power of attorney that was insufficient to provide MVPAM with the authority to assign MVP's claims to itself.  Moreover, MVPAM's amended allegations reveal that the assignment did not satisfy the requirements of the law of the British Virgin Islands, and is invalid for that additional reason as well.[1]

Next, MVPAM recycles the same meritless "shareholder ratification" theory rejected by the Court in its prior order.  This time, Plaintiff also attaches to the complaint the corporate documents that affirmatively expose the lack of merit to this theory of ratification.

Finally, MVPAM attaches resolutions allegedly passed by the MVP Board of Directors in May 2011, which was during the briefing process on the last motion to dismiss.  Through these board resolutions, Plaintiff purports to re-write history, through a backwards-looking ratification

---

[1]     Filed in support of this motion is the Declaration of James Corbett QC, an expert in the law of the British Virgin Islands.  Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, the Court may consider Mr. Corbett's Declaration, and the authorities he has supplied in support of his opinions, in determining the law of the British Virgin Islands.

1  by MVP's Board of Directors of the alleged assignment.  As set forth in Mr. Corbett's

2  Declaration, these Resolutions are insufficient under British Virgin Islands law to validate the

3  unlawful assignment at issue in this case.  In addition, Article III standing is judged at the time of

4  filing.  MVPAM did not have standing at the time of filing, and nothing done after that point,

5  including the purported ratification, can remedy that defect.

6      Accordingly, as Plaintiff still has not adequately alleged standing, despite three separate

7  complaints, the case should be dismissed without leave to amend.

8      To the extent the Court does not dismiss the case in its entirety for lack of constitutional

9  standing, Moving Defendants also identify an issue concerning the Court's diversity jurisdiction.

10  Plaintiff alleges both federal question and diversity jurisdiction.  (SAC, ¶ 1.)  Title 28 U.S.C.

11  section 1359, however, bars a plaintiff from entering into a collusive assignment in order to

12  manufacture diversity jurisdiction.  Partial assignments between related persons for purposes of

13  collection represent prototypical collusive assignments.  The assignment alleged in this case bears

14  all of the hallmarks of a collusive assignment.

15      Section 1359 provides that when a collusive assignment has occurred, the Court must

16  disregard the citizenship of the assignee and look to that of the assignor for purposes of

17  evaluation of diversity jurisdiction.  28 U.S.C. § 1359.  When plaintiff MVPAM's Delaware

18  citizenship is disregarded, complete diversity is lost.  There is both a foreign assignor/plaintiff

19  (MVP) and foreign defendants (Vestbirk and Ark Royal Asset Management, Ltd.).  Diversity

20  jurisdiction does not exist when a foreign citizen or subject is named on both sides of a lawsuit.

21  *See* 28 U.S.C. § 1332.  Accordingly, to the extent that the Court dismisses the federal claims

22  pursuant to the Rule 12(b)(6) motion, the remaining state law claims should be dismissed for lack

23  of subject matter jurisdiction.  There is no basis for this Court to exercise supplemental

24  jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims.

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1

2

**II.**
**PLAINTIFF'S EVOLVING ALLEGATIONS CONCERNING ITS PURPORTED AUTHORITY TO ASSIGN MVP'S CLAIMS TO ITSELF.**

3

4

**A.**      **Plaintiff's Original Complaint:  Plaintiff Purports To Bring The Action As An Uninjured Investment Advisor Holding A Power of Attorney.**

5

6

7

8

9

10

11

12

Plaintiff's original complaint, drafted prior to any issue being raised with respect to Plaintiff's standing, alleged that plaintiff MVPAM was merely an uninjured investment advisor purporting to assert the claims of its management client, MVP, pursuant to a power of attorney. Plaintiff did not allege that it was asserting its claims as the assignee of MVP, despite the obvious importance of such a fact.  Instead, MVPAM alleged only that it had been the "investment manager" for MVP, "with unrestricted decision making authority to control and act as MVP's attorney-in-fact with respect to all investments and litigation relating thereto."  (Original Complaint, ¶ 3.)

13

14

15

16

17

18

As found by this Court in its Order of April 14, 2011, MVPAM's mere possession of an alleged power of attorney did not suffice to provide MVPAM with Article III standing.  (Order, filed April 14, 2011, at 4, citing *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008)).  As a mere uninjured investment advisor, MVPAM had suffered no injury-in-fact, and the case therefore was dismissed with leave to amend.  (*See* April 14, 2011 Order, at 4.)

19

20

**B.**      **Plaintiff's First Amended Complaint:  Plaintiff Now Claims To Be An Assignee, But Does Not Establish A Valid Assignment.**

21

22

23

24

25

26

27

Plaintiff filed a First Amended Complaint.  Despite its failure to disclose this central fact earlier, Plaintiff now alleged that it had, in fact, been an assignee all along.  Relying upon the same alleged Power of Attorney that had been insufficient to convey it with standing, Plaintiff alleged that it "brings this action as an assignee pursuant to an assignment by MVP for collection . . . ."  (First Amended Complaint ("FAC"), ¶ 3.)  Plaintiff further disclosed that there had been no separate corporate action by MVP in connection with this purported assignment.  Instead, MVPAM "caused" MVP to assign its claims to MVPAM:

28

1
2
3

> In February 2009, pursuant to its power of attorney . . . , MVPAM caused MVP to enter into an agreement with MVPAM under which MVP assigned its claims arising out of and relating to the Ark Discovery Fund ("MVP Claims") to MVPAM for collection in return for MVPAM's agreement to account to MVP for any recovery obtained, net the cost of prosecuting the MVP Claims.

4    (FAC, ¶ 87.)  MVP also alleged that its principal, Michael Stratford, "as the sole voting

5    shareholder of MVP with the authority to bind MVP, confirmed and approved on behalf of MVP

6    the assignment of the MVP Claims for collection to MVPAM." *Id.*

7        None of the documentation that one would expect to have been generated in connection

8    with such a substantial corporate decision involving an alleged $2 million loss was attached to the

9    First Amended Complaint.  MVPAM did not attach, for example, any assignment, any Power of

10   Attorney, or any "confirmation" by Stratford of the purported assignment.

11       By way of Order filed September 22, 2011, the Court again dismissed MVPAM's claims

12   for lack of Article III standing.  The Court reviewed the governing law of the British Virgin

13   Islands, which provides that a company may, "by an instrument in writing," appoint a person as

14   its attorney either "generally or in relation to a specific matter."  (Order, filed September 22,

15   2011, at 5, citing British Virgin Islands Business Companies Act of 2004 ("BVI Companies

16   Act"), § 106.)  The Court found that Plaintiff's allegations did not demonstrate that it had a

17   general power of attorney; instead, Plaintiff had alleged only that it held a specific power limited

18   to investments and litigation relating to those investments.  This specific and limited power of

19   attorney did not provide MVPAM the right to unilaterally assign MVP's claims to MVPAM.

20   (*See Id.*, at 5.)

21       As for the purported shareholder ratification by Stratford, the Court found that under

22   British Virgin Islands law, only the directors have the power to direct the affairs of MVP unless

23   the Articles of Association provided otherwise.  MVPAM had not alleged that MVP's Articles

24   contained such a modification.  (*Id.*, at 6.)  As such, the Court found that while MVP's directors

25   might have had the power to make the assignment, Stratford's purported confirmation as the "sole

26   voting shareholder" was of no legal effect.  It did not "bind MVP and make MVPAM's

27   assignment valid." (*Id.,* at 7.)

28

-4-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1        Accordingly, since MVPAM still had not alleged a valid assignment, the Court dismissed

2  the complaint, again providing MVPAM leave to amend.

3  **C.**    **Plaintiff's Second Amended Complaint:  Plaintiff Adds A Belated Director Ratification To The Already Rejected Allegations Concerning The Limited Power of Attorney, Invalid Assignment, And Defective Shareholder Confirmation.**

5        Plaintiff filed the SAC on October 3, 2011.  Plaintiff alleges that on March 23, 2004,

6  MVP and MVPAM entered into an Investment Management Agreement ("IMA").  (SAC, ¶ 3.)

7  MVPAM alleges that pursuant to the IMA, MVP delegated to MVPAM a general power of

8  attorney including all powers and discretions to manage the business affairs of MVP.  *Id.*

9  Tellingly, MVPAM does not attach the IMA itself to substantiate this legal conclusion.  Instead,

10  MVPAM, purporting to partially quote the still concealed IMA, alleges as follows:

11        Under the IMA, MVPAM, as attorney in fact for MVP, was and is entitled generally to exercise such powers and discretions as may be necessary in order to
12        perform the duties delegated to it by MVP's directors including, among other things:

13

14           (a)    "[to] manage the investments and reinvestments of the assets of [MVP] with power on behalf of and in the name of [MVP] to purchase, subscribe or otherwise acquire investments and to sell,
15                    redeem, exchange, vary or transpose the same";

16           (b)    to . . . purchase (or otherwise acquire), sell (or otherwise dispose of) and invest money and other assets for the account of the Company
17                    and effect foreign exchange transactions in connection with any such purchase, acquisition, sale or other disposal";

18

19           (c)    "[to] enter into, make and perform such contracts, agreements and other undertakings as may in the opinion of [MVPAM] be
20                    necessary or advisable or incidental to the carrying out of the functions, duties, powers, and discretions conferred on it pursuant
21                    to [the IMA] and its role as Investment Manager of [MVP]";

22  (SAC, ¶ 3, brackets, ellipsis in original.)  Nothing in these allegedly delegated powers speaks to

23  the assignment of MVP's claims.

24        The SAC also repeats MVPAM's prior allegation that it is bringing this action as a

25  purported assignee "pursuant to an assignment by MVP for collection . . . ."  *Id.*  Much like the

26  IMA, the purported assignment still has not been provided.[2]  Instead, MVPAM alleges that

27

28      ---
    [2]       Paragraph 105 of MVP's Articles of Association provides that the company is required to keep copies of the minutes of all meetings of the directors, shareholders, etc. and all associated

    DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

MVPAM "caused MVP to enter into an agreement with MVPAM under which MVP assigned its claims arising out of and relating to the Ark Discovery Fund ("MVP Claims") to MVPAM . . . ." *Id.*, ¶ 87.

MVPAM also repeats its allegations concerning the purported shareholder ratification, alleging, in largely unintelligible fashion, that "Stratford, as the sole voting shareholder of MVP, with the authority under the [Memorandum and Articles of Association] to delegate the management powers of MVP's Board of Directors, confirmed and approved on behalf of MVP the assignment of the MVP Claims for collection to MVPAM." *Id.*

Lastly, MVPAM adds a new allegation to the effect on May 27, 2011 – a date during the pendency of this action, and after the Court had already dismissed the original complaint for lack of standing, after MVPAM had filed the FAC, and after Moving Defendants had again challenged MVPAM's constitutional standing – MVP's Board of Directors allegedly retroactively confirmed the purported assignment. *Id.*  As will be discussed, however, the Board's belated action cannot retroactively create Article III standing when none existed at the time of filing.

**III.**
**DISCUSSION**

A.      **Standards Governing This Rule 12(b)(1) Motion to Dismiss For Lack Of Article III Constitutional Standing.**

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and should be dismissed under Rule 12(b)(1).  *Cetacean Cmty v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see* Order, September 22, 2011, at 2-3.  The plaintiff has the burden of establishing jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").  Among other things, in order to satisfy Article III's standing

---

resolutions.  (SAC, Ex. A, at 21.)  Accordingly, if documents related to the purported assignment existed, they should have been kept, and the failure to produce them suggests that they do not in fact exist.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1   requirements, the plaintiff must show that it suffered an injury-in-fact fairly traceable to the

2   challenged acts of the defendants. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

3   528 U.S. 167, 180-81 (2000). "The existence of federal jurisdiction ordinarily depends on the

4   facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490

5   U.S. 826, 830 (1989).

6         "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

7   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the

8   allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.

9   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

10  themselves would otherwise invoke federal jurisdiction." *Id.*

11        Moving Defendants' present motion presents a facial challenge. Accordingly, the Court

12  should assume that the factual allegations in SAC are true, and all reasonable inferences should

13  be drawn in MVPAM's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). However,

14  the Court need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

15  (2009); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). In addition, where a

16  plaintiff's allegations are contradicted by attachments to the complaint, the contradictory

17  allegations may be disregarded. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

18  (9th Cir. 2003); *Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

19  **B.    MVPAM Has Alleged Only A Specific Power Of Attorney, The Scope Of Which**
20         **Does Not Include The Authority To Assign MVP's Claims.**

21        The Second Amended Complaint adds little but additional legal conclusions to the

22  previously insufficient allegations concerning MVPAM's alleged authority under the undisclosed

23  power of attorney to assign MVP's claims to itself. As set forth above, MVPAM alleged in both

24  the original and first amended complaints that it was the attorney-in-fact for MVP "with

25  unrestricted decision making authority to control and act as MVP's attorney-in-fact with respect

26  to all investments and litigation relating thereto." (Original Complaint, ¶ 3; FAC, ¶ 3.) Yet, as

27  found by the Court on September 22, this alleged power of attorney was not a general power of

28

-7-

1   attorney, it was "specific to investments and litigations relating to those investments." (Order, at

2   5.) Accordingly, it did not establish that MVPAM had the power to assign MVP's claims. *Id.*

3        In the SAC, MVPAM expands but does not substantively alter this previous allegation by

4   alleging that under this purported power of attorney, MVPAM had the power to (a) manage the

5   investments of MVP; (b) purchase, sell or invest money or other assets for MVP; and (c) enter

6   into contracts as may be necessary or incidental MVPAM's to carrying out its duties as

7   Investment Manager.  (SAC, ¶ 3.)  This alleged grant of authority says nothing of initiating

8   lawsuits on MVP's behalf, or of assignments of MVP's property or claims to MVPAM.  As

9   before, in other words, this power of attorney is not a general power of attorney, and instead

10  remains "specific to investments . . . ."  (*See* Order, at 5.)

11        Moreover, when a power of attorney includes specific, express descriptions of authority,

12  the mere inclusion of additional general language relating to the implementation of those specific

13  powers does not convert a specific power into a general one.  Moving Defendants have filed in

14  support of this motion the Declaration of James Corbett QC, a respected authority on the law of

15  the British Virgin Islands.  As set forth in greater detail in his Declaration, Mr. Corbett confirms

16  this basic precept of the law of the British Virgin Islands, as follows.

17        . . . (2) where authority is given to do particular acts followed by general words,
           the general words are restricted to what is necessary for the proper performance of
18         the particular acts. (3) General words do not confer general powers, but are limited
           to the purpose for which the authority was given, and are construed as enlarging
19         the special powers only when necessary for that purpose.

20  Declaration of James Corbett QC., ¶ 42, citing *Bowstead & Reynolds on Agency*, 18th edition

21  (2006), at paragraphs 3-010 – 3-017 (footnotes and references omitted).

22        The same law of construction applies here in the United States.  Where specific provisions

23  are set forth, it is those provisions that define the scope of the power granted.  *See Zawadski De*

24  *Bueno v. Bueno Castro*, 822 F.2d 416, 421-22 (3d Cir. 1987) (general language in a power of

25  attorney is limited by its specific language); *Von Wendel v. McGrath*, 180 F.2d 716, 718-19 (3d

26  Cir. 1950) (same); 3 AmJur.2d, *Agency*, § 29 ("Accordingly, a general clause in a power of

27  attorney given for a specific purpose, authorizing the agent to do 'any and every act' in the

28

-8-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
                        TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  principal's name which he or she could do in person, must be construed to relate to the specific

2  purpose and does not constitute such agent a general agent.").

3          As such, the purported power of attorney does not establish MVPAM's authority to assign

4  MVP's claims.  The only authority granted was that relevant to management of MVP's

5  investments, and nothing more. [3]  As nothing in MVPAM's alleged power of attorney can be read

6  to extend MVPAM's powers beyond the management of MVP's investments in the ordinary

7  course, the alleged assignment was invalid and cannot support Plaintiff's Article III standing.

8  **C.    MVPAM Has Not Alleged a Valid Assignment Under BVI Law, Even Assuming
       That It Had The Requisite Authority Under The Power Of Attorney To Attempt**

9  **Make The Assignment In The First Place.**

10         In his declaration, Mr. Corbett reviews in detail the several requirements necessary for a

11  valid assignment under BVI law.  Among other reasons, the assignment as alleged by MVPAM is

12  invalid and unlawful as follows:

13         •   MVP has purported to assign to MVPAM only a "bare cause of action" (as

14             contrasted with an absolute or complete assignment, which might include all

15             proceeds associated with the claims, for example, or the underlying property – the

16             shares of Ark Discovery (Offshore) – that gave rise to the claims), which would

17             not be lawful under BVI law.  (Corbett Decl., ¶¶ 23-28.)

18         •   Under BVI law, and on the facts alleged, MVPAM is not authorized to sue in its

19             own name on the claims of MVP.  Instead the action needed to be filed in the

20             name of MVP.  (Corbett Decl., ¶ 29-35.)[4]

21         Therefore, even assuming MVPAM had the power to attempt to assign MVP's claims to

22

---

23  [3]    Documents attached by MVPAM to the SAC confirm the limited nature of the alleged
       power of attorney.  MVP's Articles of Association specify and define its "Investment Manager"
24  as follows:  "The person from time to time appointed by the Company to be responsible for the
       management of the Company's investments."  (SAC, Articles of Association, Ex. A, at 2.)  This
25  description is consistent with a construction of MVPAM's powers as limited to investment
       management, and not extending to the assignment of claims, as the Court has previously found.
26  [4]    Moreover, as set forth by Mr. Corbett, it further appears that the purported assignment of
       the remedy of rescission on the Sixth and Seventh Claims for Relief (for violations of the
27  California Securities Laws) is invalid for the reason that there is no allegation of transfer of the
       underlying shares themselves to MVPAM.  (Corbett Decl., ¶ 36-37.)

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1   itself, it failed to do so in a lawful and valid manner.  Accordingly, for this reason as well,

2   MVPAM lacks Article III standing.

3   **D.**     **MVPAM's Contorted Allegations Concerning a Purported Shareholder Ratification**
            **Do Not Suffice to Salvage the Invalid Assignment.**

4

5          Plaintiff previously alleged that Stratford, as the sole voting shareholder of MVP allegedly

6   confirmed and approved on behalf of MVP the assignment of the MVP Claims.  (FAC, ¶ 87.)

7   The Court in rejecting Plaintiff's "shareholder ratification" theory, reviewed the law of the British

8   Virgin Islands, which confirmed that it is a corporation's directors, and not its shareholders, that

9   have the authority to control the affairs of the corporation:

10         (1)     The business and affairs of a company shall be managed by, or under the
                   direction or supervision of, the directors of the company.

11

12         (2)     The directors of a company have all the powers necessary for managing,
                   and for directing and supervising, the business and affairs of the company.

13         (3)     *Subsections (1) and (2) are subject to any modifications or limitations in*
                   *the memorandum or articles.*

14

15   (Order, at 6, quoting BVI Business Companies Act of 2004, § 109(1)-(3), emphasis in original.)

16         In the SAC, presumably with an eye toward the provision of BVI law that the Court

17   emphasized in its Order, MVPAM now alleges that "Stratford, as the sole voting shareholder of

18   MVP, with the authority under the [Memorandum and Articles of Association] to delegate the

19   management powers of MVP's Board of Directors, confirmed and approved on behalf of MVP

20   the assignment of the MVP Claims . . . ."  (SAC, ¶ 87.)  This allegation is largely unintelligible.

21   Further, while MVPAM attaches the Articles of Association as Exhibit A to the SAC, MVPAM

22   does not identify any provision therein as constituting a delegation of management authority to

23   voting shareholders, or any provision providing such a voting shareholder with authority to

24   delegate the director's management duties to someone else.

25         Instead, and quite to the contrary, the Articles of Association establish that such a

26   purported ratification by a shareholder is of no effect.  Paragraph 74 of the Articles provides that

27   "[t]he business of the Company shall be managed by the Directors . . . ."  (Articles, ¶ 74, SAC,

28

-10-

1  Ex. A, at 17.)  Further, the Directors "may exercise all such powers of the Company as are not by

2  the Act or these Articles required to be exercised by the shareholders subject to any delegation of

3  such power as prescribed by resolution of the shareholders."[5]  (*Id.*)  Nothing in the Act or the

4  Articles places company management in the hands of the shareholders, or allows voting

5  shareholders to delegate the powers otherwise reserved to directors.

6        Further, no other provision of the Articles provides voting shareholders with the right to

7  manage the business affairs of the company, or to delegate rights held by the directors.

8  Paragraphs 47-54 and 55-62 of the Articles, for example, cover the rights and procedures for

9  voting by shareholders.  These provisions say nothing of management of the company.  Paragraph

10 65 provides shareholders the right to appoint directors, and Paragraph 72 provides a right of

11 removal.  (See SAC, Ex. A.)  Again, however, these provisions do not speak to company

12 management and do not provide a shareholder with the right to delegate management powers.

13 Paragraph 75 provides that the directors may delegate their power to other directors or officers,

14 and can delegate powers to shareholder committees.  Once again, this section does not speak to a

15 shareholder's right to delegate management powers.  *Id.*

16        Accordingly, this shareholder ratification allegation – the extent it can even be understood

17 – is a mere conclusion of law that is contradicted by the law of the British Virgin Islands and by

18 documents attached to the SAC.  *See also* Declaration of James Corbett QC,  ¶ 45-46.

19 Accordingly, it may be disregarded by the Court.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009);

20 *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981); *Warren v. Fox Family Worldwide,*

21 *Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also* Order, at 6; *Dist. Distrib., Inc. v. Heublein*,

22 1971 WL 559, *3-4 (D.D.C. May, 28, 1971) (finding assignment of claim invalid where not

23 approved by company's Board of Directors).

24

25  [5]    It is not clear from Plaintiff's ambiguous allegation whether MVPAM is relying on
26  Paragraph 74 of the Articles.  If it is, it has grossly misapplied it, as this provision does not
    purport to divest the directors of their management responsibilities.  Instead, it merely states that
27  they may not exercise those powers reserved to the shareholders, unless the shareholders delegate
    the directors such powers via resolution.  Nothing in the Act or the Articles reserves management
28  powers to shareholders, however.

-11-

**E.    MVPAM's Allegations Concerning The Alleged Retroactive Ratification Do Not Validate the Unauthorized and Unlawful Assignment.**

MVPAM's final effort at imbuing this purported and invalid assignment with the hue of legitimacy comes through a belated May 27, 2011, Written Resolution of the MVP Board of Directors.  (SAC, Ex. B.)  This resolution was allegedly passed approximately eight months after the filing of the original complaint by MVPAM, and only after the filing of Moving Defendants' second motion to dismiss, which again raised a standing challenge.  Through it, MVPAM seeks to retroactively create the facts that were not present at the time if filed this action.

Through these Resolutions, seeks to establish that MVPAM had the authority to assign MVP's claims to MVPAM.  (SAC, Ex. B.)  However, the MVP Board, as does MVPAM in the SAC, relies upon the IMA to establish MVPAM's purported authority (and it too fails to attach the IMA to the Resolutions).  As described above in Section III(B), the disclosed portions of the IMA establish that MVPAM did *not* have the authority to assign MVP's claims to itself.  The IMA, as alleged, provides only a grant of specific and limited authority that did not extend to the assignment of MVP's claims to MVPAM.  The alleged backward-looking board resolution cannot change the scope of the IMA as alleged.  *See* Corbett Decl., ¶ 47-60.  Any allegations or resolutions to the contrary are merely irrelevant legal conclusions that may be disregarded by the Court.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).[6]

Following the resolutions is a "Ratification" provision, through which the MVP Board purports to ratify the past actions of MVPAM.  As explained by Mr. Corbett, however, the ratification is ineffective, as the underlying assignment was unlawful and therefore cannot be ratified.  Corbett Decl., ¶¶ 47-60.  Further, even if the ratification is assumed for purposes of

---

[6]    The resolutions also make reference to a purported oral confirmation by the Board Chairman.  (SAC, Ex. B, at 2.)  No time is specified for this alleged confirmation, rendering it wholly irrelevant.  Furthermore, this "oral" confirmation cannot constitute a separate power of attorney to act on behalf of MVP because such appointments must be in writing under BVI law.  BVI Companies Act, § 106.  Corbett Decl., ¶ 59.  Moreover, this alleged oral statement does not purport to modify or expand the powers granted to MVPAM under the written IMA, and does not purport to be a valid corporate action or resolution.

argument to be effective, it cannot, after-the-fact, cure the Article III standing issues that have

plagued this case from the start.

**F.      MVP's May 2011 Ratification Of The Alleged Assignment Does Not Retroactively Provide MVPAM With Article III Standing.**

      **1.      MVP's Belated Ratification Cannot Create Standing Where None Existed At The Outset Of Litigation**.

Standing to sue is an "essential and unchanging part of the case-or-controversy

requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Article III

constitutional standing must exist at the time action is filed.  *Friends of Earth, Inc. v. Laidlaw

Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 189 (2000).  The limits are jurisdictional, cannot be

waived by any party, and a court must resolve doubts about constitutional standing *sua sponte*.

*Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1064-65 (9th Cir. 2008).  A suit

brought by a plaintiff without Article III standing is not a "case or controversy," and should be

dismissed under Rule 12(b)(1).  *Cetacean Cmty.*, 386 F.3d at 1174.  Here, for the reasons set forth

above, Plaintiff did not and cannot establish Article III standing at the time the action was filed.

The Court never had subject matter jurisdiction, and absent subject matter jurisdiction, lacks even

the basis to retain jurisdiction to consider other motions or proposed curative actions.  As such,

the action must be dismissed.

In briefing on the prior motion to dismiss directed at the First Amended Complaint,

Plaintiff argued that the Board's ratification nonetheless should operate under Rule 17 of the

Federal Rules of Civil Procedure to retroactively provide MVPAM with standing.  (*See*

Opposition to Motion to Dismiss FAC, Dkt. No. 64.)  This argument lacks merit, and conflates

Article III (or constitutional) standing, on the one hand, with statutory or prudential standing, on

the other.  Defects in statutory standing are subject to cure, including through Rule 17; defects in

constructional standing are not.

This distinction – between constitutional and prudential or statutory standing– has been

well-developed in the case law.  A party may have constitutional standing, that is, it may have

suffered a cognizable injury-in-fact, but prudential concerns might still weigh against the Court

1   exercising jurisdiction, if, for example, the plaintiff was not be the real party in interest despite

2   having Article III standing.  *See, e.g., Dunmore v. U.S.* 358 F.3d 1107, 1112 (9th Cir. 2004)

3   (debtor had Article III standing, but was not real party in interest when bankruptcy trustee in

4   charge of his bankruptcy estate).

5           Rule 17 allows a party to cure such prudential real party in interest defects.  *Id.*[7]  The

6   Federal Rules, however, do not purport to expand the jurisdiction of the federal courts beyond the

7   limits of the U.S. Constitution.  28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or

8   modify any substantive right."); Fed.R.Civ.Proc. 82(a) ("These rules do not extend or limit the

9   jurisdiction of the district courts . . . .").  Thus, by the express terms and limits of the Federal

10  Rules of Civil Procedure, Rule 17 cannot alter the irreducible constitutional minimum that Article

11  III standing exist at the outset of the litigation.

12          Moreover, even beyond these express statutory limits, when a plaintiff lacks Article III

13  standing, Congress may not confer standing on that plaintiff by statute.  *Cetacean*, 386 F.3d at

14  1174 (noting that Congress can provide for statutory standing for particular plaintiffs so long as

15  Article III standing is independently satisfied); *Bennet v. Spear*, 520 U.S. 154, 162 (1997) (unlike

16  constitutional standing, Congress may modify or abrogate prudential standing concerns)

17  *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no event may Congress

18  abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable

19

20  ─────────────────────────
    [7]      Rule 17 provides as follows:

21
         (a)      **Real Party in Interest**.
22
         (1)      **Designation in General**.  An action must be prosecuted in the name of the
23       real party in interest. . . .

24       . . .

25       (3)      Joinder of the Real Party in Interest.  The court may not dismiss an action
         for failure to prosecute in the name of the real party in interest until, after an
26       objection, a reasonable time has been allowed for the real party to ratify, join, or
         be substituted into the action.  After ratification, joinder, or substitution, the action
27       proceeds as if it had been originally commenced by the real party in interest.

28  Fed.R.Civ.Proc. 17(a).

1   injury to himself" that is likely to be redressed if the requested relief is granted."); *see also Zurich*

2   *Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

3          For this reason, Rule 17 "must be read with the limitation that a federal district court must,

4   at a minimum, arguably have subject matter jurisdiction *over the original claims*." *Zurich*, 297

5   F.3d at 531 (emphasis added); *see also Lujan*, 504 U.S. at 569 n.4 (later joinder of parties cannot

6   cure standing issue that existed at time of filing:  "The existence of federal jurisdiction ordinarily

7   depends on the facts *as they exist when the complaint is filed.*  It cannot be that, by later

8   participating in the suit, the State Department and AID retroactively created a redressability (and

9   hence a jurisdiction) that did not exist at the outset.") (internal citation omitted); *Dunmore v.*

10  *United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (distinguishing between the "irreducible

11  constitutional minimum of standing" and the prudential requirement that the plaintiff be the "real

12  party in interest," and holding that a party *with* standing, but who was not the real party in

13  interest, could rely upon Rule 17 and the ratification of the real party in interest, to allow the suit

14  to proceed); *Kent v. Northern California Regional Office of the American Friends Serv.*

15  *Committee*, 497 F.2d 1325, 1329 (9th Cir. 1974) ("There is no doubt that as to the trust fund, the

16  trustees are the real party in interest by virtue of Fed.R.Civ.Proc. 17(a).  But Rule 17(a) means

17  only that the trustees have a real interest in the trust fund.  Rule 17(a) does not give them

18  standing; 'real party in interest' is very different from standing."); *Pratt v. Progressive Casualty*

19  *Ins. Co.*, 2011 WL 2160863, *2-3 (W.D. Ky., June 1, 2011) (Rule 17 cannot be used to cure

20  defects in Article III standing that exist at time of filing); *cf. Lierboe v. State Farm Mut. Auto Ins.*

21  *Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (class action must be dismissed where named

22  plaintiff lacks constitutional standing; rejecting argument that other members of the class should

23  have been named a class representatives to avoid dismissal).

24         Accordingly, because MVPAM lacked the constitutional standing to file this suit, the

25  action must be dismissed, irrespective of any later effort to cure.  Neither of the cases cited by

26  Plaintiff in the prior motion practice, *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir.

27  1992), or *Advanced Magnetics, Inc. v. Bayshore*, 106 F.3d 11 (2d Cir. 1997), compel a different

28

-15-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  result.  In *Advanced Magnetics*, a plaintiff brought suit on behalf of itself and certain of its

2  shareholders.  The plaintiff did not hold a valid assignment, and thus could not pursue the claims

3  of the other shareholders.  *Advanced Magnetics*, 106 F.3d at 16-18.  The Second Circuit

4  nonetheless concluded that joinder under Rule 17 should have been allowed.  *Id.* at 20.  However,

5  unlike the circumstance in this case, it was undisputed that standing existed at the outset of the

6  case, as the original plaintiff was also pursuing its *own* claims as well.  *Id.* at 14.  Accordingly,

7  the district court had continuing jurisdiction to consider joinder under Rule 17, something that is

8  not the case here.

9      The *Mutuelles* case it similarly unavailing to Plaintiff.  That case was a legal malpractice

10  case brought by an insurer against a law firm.  *Mutuelles*, 957 F.2d at 709.  The named plaintiff,

11  Mutuelles, had paid a total of $3,115,381 to settle the underlying action, some of which was paid

12  by two other insurance companies.  *Id.* at 710.  The action was initially filed just by Mutuelles,

13  and during the proceeding, the district court ruled that at least one of the other insurers was also a

14  real party in interest.  *Id.*  Pursuant to Rule 17, the district court allowed the other insurer to file a

15  Rule 17(a) ratification, allowing the action to proceed on that portion of the action as to which it

16  was the real party in interest.  *Id.*  The Ninth Circuit affirmed this ratification and joinder, over the

17  objection that the claims of the insurers would otherwise have been time barred, because the

18  action had also been filed by Mutuelles, the lead insurer, on its own behalf.  *Id.* at 712.  *Mutuelles*,

19  in other words, is a case involving the straightforward application of Rule 17.  It is not an Article

20  III standing case because Mutuelles *had* standing at the time the action was filed, and the Court

21  thus had jurisdiction to act under Rule 17.

22      In contrast, MVPAM did not have constitutional standing at the time this action was filed,

23  and Rule 17 cannot in and of itself provide the Court with subject matter jurisdiction.  The action

24  must therefore be dismissed.  *See Lujan*, 504 U.S. at 560, 569 n.4.[8]

25

26  _____

[8]      The Ninth Circuit has also held that an assignment may not be used to circumvent the bar
27  of a statute of limitations.  This is precisely what MVPAM seeks to accomplish here through the
ratification, since the statute of limitations has run on MVP's claims.  *Wulff v. CMA, Inc.*, 890
28  F.2d 1070, 1075 (9th Cir. 1989).

-16-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT
TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1
2

      **2.**     **Plaintiff Is Also Barred From Relying Upon Rule 17 Because Its Decision To File In The Name Of MVPAM Rather Than MVP Was Made For Tactical Reasons.**

3

      Even where the original filing party had constitutional standing (and here MVPAM did

4

not), ratification or joinder under Rule 17, and an associated relation back to the original date of

5

filing, will not be allowed, unless MVPAM's decision to sue in its own name was an

6

"understandable mistake and not a strategic decision." *Dunmore,* 358 F.3d at 1112-13.  Here,

7

MVP could have brought this action directly in its own name at the outset.  That it did not was

8

tactical move designed to create the appearance of US and California connections where there are

9

in fact none.  Throughout, MVPAM has sought to conflate itself, the uninjured investment

10

advisor, with MVP, the alleged purchaser, for the purpose of (1) creating the appearance of a

11

United States transaction, when there was none, and (2) creating the appearance of a California

12

connection, when there was none.  Throughout both sets of its opposition papers, Plaintiff has

13

continued to try to exploit this confusion to evade the holding of *Morrison v. National Australia*

14

*Bank Ltd.*, 130 S.Ct. 2869 (2010), which holds that offshore transactions are not subject to Rule

15

10(b), to contend that offers of sales were made in California, and to argue that personal

16

jurisdiction exists because Defendants supposedly targeted their actions at California.  Had MVP,

17

a British Virgin Islands company, brought this action in its own name, none of these meritless

18

arguments could have been raised in the first instance.[9]  The decision to sue in MVPAM's name

19

was a tactical, calculated move from the start, barring Plaintiff from relying upon Rule 17.

20

**G.**     **MVPAM Has Had Three Bites At The Apple:  Dismissal This Time Should Be With Prejudice.**

21

22

      This Court has provided Plaintiff with more than ample opportunity to establish standing.

23

It cannot do so, and Moving Defendants therefore request the dismissal of the action with

24

prejudice.

25

26

27

28

---

[9]     In addition, MVPAM asserted diversity jurisdiction on the residence of MVPAM.  (SAC, ¶ 1.)

-17-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

**H.      Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of Assessing Diversity Jurisdiction.**

If the Court does not dismiss all of the claims for lack of Article III standing, but instead only dismisses the federal claims pursuant to the arguments raised in the Rule 12(b)(6) motion filed herewith, the entire action should nonetheless still be dismissed because Court will lack diversity jurisdiction over the remaining state law claims.  While Plaintiff alleges diversity jurisdiction, SAC, ¶ 1 (citing 28 U.S.C. § 1332(a)(3)), federal law bars district courts from exercising jurisdiction over a civil action where a party has used an improper or collusive assignment to join a party for purposes of creating jurisdiction:

> **§ 1359.          Parties collusively joined or made**
>
> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359.

Controlling United States Supreme Court and Ninth Circuit authority provides that an assignment of the type at issue in this case, a partial assignment between related parties for collection purposes only, is presumptively collusive for purposes of application of Section 1359, thereby requiring a district court to look through the alleged assignment and to the citizenship of the alleged assignor, in this case MVP, for purposes of assessing diversity jurisdiction.

For example, in *Attorney's Trust v. Videotape Computer Products, Inc.,* 93 F.3d 593 (9th Cir. 1996), a Chinese corporation, CMC Magnetics ("CMC") claimed that a California corporation, Videotape Products ("VTP"), owed it a debt.  CMC assigned its claim to a California citizen, Attorneys Trust ("AT"), for purposes of collection, which in turn sued VTP in federal court.  *Id.* at 594.  VTP then filed cross-complained against CMC, asserting a breach of warranty claim on the underlying product supplied by CMC and associated with the debt owed to CMC. *Id.*

The case proceeded to trial, and the district court found in favor of VTP on its cross claim.  Having lost, CMC and AT challenged jurisdiction on appeal, claiming that the district court lacked diversity jurisdiction because the assignee, AT, and the defendant-cross complainant,

-18-

1   VTP, were both California citizens.  *Id.*  The Ninth Circuit rejected this argument, piercing

2   through the assignment to the residence of the assignor, CMC, to uphold diversity jurisdiction.

3   *Id.* at 599-600.

4          In so holding, the Ninth Circuit relied in part on the leading case applying Section 1359,

5   *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969).  The dispute in *Kramer*, like the

6   underlying dispute in this case, was between citizens of foreign states, thus precluding a finding

7   of diversity jurisdiction.  *Kramer*, 394 U.S. at 824; *see also* 28 U.S.C. § 1332(a)(2).  Accordingly,

8   the plaintiff, a Panamanian company, assigned its interest to a Texas attorney for collection.  The

9   original assignment was supported by the payment of $1, and by separate agreement, the attorney

10  also agreed to remit 95% of any recovery back to the Panamanian company.  *Kramer*, 394 U.S.

11  at 824.

12         The Supreme Court held that these facts could not support diversity jurisdiction given the

13  mandate of Section 1359.  The Supreme Court held that the assignment was made just "for

14  purposes of collection," *id.* at 827-28, which, as will be discussed has been identified as a primary

15  indicator of whether an assignment is collusive.  Moreover, the Supreme Court noted that it was

16  not basing its holding on any conclusion that the assignment was illegal or improper under Texas

17  law.  *Id.* at 829.  Instead, the Court held that the question was whether the assignment was being

18  used to manufacture diversity jurisdiction where it would not otherwise exist.  *Id.*

19         The Ninth Circuit then identified the following factors as relevant to the collusion inquiry:

20  whether there were good business reasons for the assignment, whether the assignee had a prior

21  interest in the item, whether the assignment coincided with the commencement of the litigation,

22  whether consideration was paid, whether the assignment was partial or complete, and whether

23  there was any admission that the assignment was made to create jurisdiction.  *Attorney's Trust*, 93

24  F.3d at 595-96 (collecting cases).

25         Partial assignments, such as the one at issue in this case, that are for collection purposes

26  and where the assignor retains a significant interest in the outcome of the case, are nearly always

27  found to be collusive.  *Id.* at 597:

28

-19-

> On the other hand, where an assignment is partial, the courts are very likely to find that there is an improper or collusive transfer because the prior owner still has an interest. . .  In fact, research has not disclosed a single case where an assignment for collection (however framed or disguised) has been held to be anything but collusive.

*Id.*, citing *Kramer*, 394 U.S. at 827-30 (assignor retained 95% of the proceeds); *Airlines Reporting Corp. v. S&N Travel, Inc.*, 58 F.3d 857, 859, 861-62 (2d Cir. 1995) (multiple airlines were the "real and substantial" parties; collection agency was mere conduit for a remedy owing to them); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersons Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977) (assignment of 50% interest in net proceeds of recovery, after payment of attorney's fees and costs, coupled with assignment effected for legal and tactical reasons, supported finding that collusive).

  *Attorney's Trust*, *Kramer*, and the cases cited therein make clear that the alleged assignment in this case must be ignored for purposes of assessment of diversity jurisdiction. MVPAM's alleged assignment of MVP's claims to itself was for collection only.  The assignment for that reason is a partial one:  It was not supported by any independent consideration; instead, MVPAM alleges that all of the funds will be returned to MVP net of collection costs.  The timing of the assignment, allegedly following as it did the disclosure of the Petters' Ponzi scheme and liquidation of Ark Discovery (Offshore), demonstrates that it was for purposes of collection and litigation.

  These factors alone demonstrate that this assignment "has almost all of the classic elements of an assignment which does not affect jurisdiction."  *See Attorney's Trust*, 93 F.3d at 599*.*  Indeed, Ninth Circuit law holds that such an assignment is *presumptively* collusive.  *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989) (assignment between a parent and a subsidiary, or a corporation and one of its officers or directors, is "presumptively ineffective to create diversity jurisdiction"), citing *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir. 1979).  "Unless there is a legitimate business reason which justifies such an assignment, it cannot create diversity jurisdiction."  *Id.* (finding assignment from corporation to officer to be collusive for purposes of application of Section 1359).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1     In this case, the collusive nature of the assignment is even more apparent as there is only

2  one real actor, Michael Stratford.  MVPAM, with Stratford as its alleged principal, alleges that it

3  is the one that caused MVP to assign the claims to MVPAM, through an alleged power of

4  attorney.  No independent corporate action by MVP itself is even alleged to have occurred until

5  well after the filing of this lawsuit.  (SAC, ¶¶ 3, 87.)  The only common player in this entire set of

6  alleged transactions is Stratford.

7     No legitimate business interest supporting the assignment has been alleged.  If, in fact,

8  MVP was an investor in the Ark Discovery Fund (Offshore), it could have filed the suit in its own

9  name.  And, as in the *Dweck* case, Plaintiff here has failed even to put any of the relevant

10  documentation before the Court, casting further doubt on the *bona fides* of the alleged

11  assignment.  *See Dweck*, 877 F.2d at 792 (noting as one relevant factor that the plaintiff had failed

12  to offer any documentation relating to the assignment).

13     Accordingly, as the alleged assignment was a collusive one, the citizenship of the alleged

14  real party in interest, MVP, is the only relevant citizenship for purposes of assessing diversity

15  jurisdiction.  MVP is alleged to be a British Virgin Islands company.  (SAC, ¶ 3.)  On the

16  defendants' side, both defendants Vestbirk and Ark Royal Asset Management Ltd. are alleged to

17  be Bermuda citizens.  As a citizen or subject of a foreign state is on both sides of the litigation,

18  the requirement of complete diversity cannot be met.  *Craig v. Atlantic Richfield Co.*, 19 F.3d

19  472, 476 (9th Cir. 1994), citing *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294-

20  95 (9th Cir. 1989).

21     The implication of this lack of diversity is straightforward.  Moving Defendants have

22  argued in their separate motion filed herewith that Plaintiff cannot state a claim for federal

23  securities fraud because (among several grounds asserted) that transaction took place entirely

24  offshore and is therefore not subject to Section 10(b).  Upon any dismissal of the federal claims,

25  federal question subject matter jurisdiction will be lost.  Diversity jurisdiction will not salvage

26  Plaintiff's remaining state law claims given the collusive assignment.  28 U.S.C. § 1359.  As

27

28

1   such, the Court could and should decline to exercise supplemental jurisdiction over these state

2   law claims.  28 U.S.C. § 1367(c)(3).

3                                            **IV.**
                                       **CONCLUSION**
4

5          Accordingly, Moving Defendants request the dismissal of the action with prejudice.

6   Dated:  November 14, 2011                    DLA PIPER LLP (US)

7

8                                        By:__/s/ GEORGE L. O'CONNELL_____
9                                            George L. O'Connell
                                             Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28