GEORGE L. O'CONNELL (SBN 74037)
TODD M. NOONAN (SBN 172962)
DLA PIPER LLP (US)
400 Capitol Mall, Suite 2400
Sacramento, CA  95814-4428
Tel:  916.930.3200
Fax:  916.930.3201

Attorneys for Defendants
JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, JIM GRANT, ARK ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company, VESTBIRK CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company, ARK ROYAL ASSET MANAGEMENT, LLC, a Nevada Limited-Liability Company, ARK DISCOVERY, LLC, a Business Entity of Unknown Form, ARK ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company, ARK ROYAL SERVICES, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, INC., a Nevada Corporation, ARK ROYAL RESOURCES LLC, a Nevada Limited-Liability Company, ARK ROYAL ASSURANCE LLC, a Nevada Limited-Liability Company, and ARK ROYAL INVESTMENTS, LLC, a Nevada Limited-Liability Company,<br><br>Defendants. | CASE NO.  2:10-cv-02483-GEB-CMK<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)<br><br>Date:   December 19, 2011<br>Time:  9:00 a.m.<br>Dept:   Courtroom 10<br>Judge: Honorable Garland E. Burrell, Jr. |

DLA Piper LLP (US)
Sacramento

WEST\225505848.1     DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. The Investment Management Agreement ("IMA") Confirms That MVPAM's Purported Assignment Was Unauthorized and Invalid ........................ 2

        1. The Court May Take Judicial Notice Of The IMA And Disregard Any Allegations That Are Contrary To Its Provisions ............................... 2

        2. The IMA Establishes That MVPAM Did Not Have The Authority To Assign MVP's Claims ................................................................................ 4

            a. The General Provisions In The IMA Do Not Authorize MVPAM to Assign To Itself MVP's Claims .................................. 4

            b. The Specific Provisions In The IMA Do Not Authorize MVPAM To Assign To Itself MVP's Claims ............................... 6

        3. MVP's Alleged Ratification Of The Purported Assignment, Which Was Made Over Seventh Months After The Filing Of The Action, Cannot Retroactively Establish Article III Standing Where It Was Absent At The Outset ................................................................................. 10

        4. MVPAM Does Not Rebut Moving Defendants' Showing That The Assignment Was Made For Tactical Reasons, Thereby Further Removing Rule 17 As A Viable Route For Plaintiff To Establish Standing ................................................................................................ 13

        5. MVPAM Does Not Attempt To Seriously Defend The Purported Shareholder Ratification As Sufficient To Save the Invalid Assignment .................................................................................................... 13

        6. The Second Amended Complaint Fails To Include Any Allegation Demonstrating That California Law Should Apply To The Construction Of The Purported Assignment ............................................ 14

    B. Plaintiff Has Failed To Respond To Defendants' Contention That This Court Will Lack Diversity Jurisdiction Upon Dismissal Of The Federal Claims ...................................................................................................... 15

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Advanced Magnetics, Inc. v. Bayshore*,
    106 F.3d 11 (2d Cir. 1997) ................................................................................................. 12

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ........................................................................................................ 3

*Bennet v. Spear*,
    520 U.S. 154 (1997) .......................................................................................................... 10

*Cetacean Cmty v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) ........................................................................................... 10

*Cisneros v. Instant Capital Funding Group, Inc.*,
    263 F.R.D. 595 (E.D. Cal. 2009) ......................................................................................... 1

*Dunmore v. United States*,
    358 F.3d 1107 (9th Cir. 2004) ........................................................................................... 11

*Gladstone Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979) ............................................................................................................ 10

*Int'l Audiotext v. American Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) .................................................................................................... 3

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ............................................................................................. 1

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ............................................................................................................ 9

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ........................................................................................... 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................... 10, 13

*Mutuelles Unies v. Kroll & Linstrom*,
    957 F.2d 707 (9th Cir. 1992) ....................................................................................... 11, 12

*Park B Smith, Inc. v. CHF,*
    2011 WL 2714205 (D.R.I August 23, 2011) .................................................................... 12

*Pratt v. Progressive Casualty Ins. Co.*,
    2011 WL 2160863 (W.D. Ky., June 1, 2011) ................................................................... 11

DLA PIPER LLP (US)
SACRAMENTO

-ii-

WEST\225505848.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................................ 4

*Steckman v. Hart Brewing Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ..................................................................................... 4, 5

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ............................................................................................ 1

*VHW, Inv. v. Geostar Corp.*,
  2007 WL 1110664 (E.D. Mich. April 13, 2007) ...................................................... 12, 13

*W. Mining Council v. Watt,*
  643 F.2d 618 (9th Cir. 1981) ............................................................................................ 3

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ............................................................................................. 1

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) .......................................................................................... 4

*Wulff v. CMA, Inc.*,
  890 F.2d 1070 (9th Cir. 1989) ........................................................................................ 12

*Zurich Ins. Co. v. Logitrans, Inc.*,
  297 F.3d 528 (6th Cir. 2002) ....................................................................... 10, 11, 12, 13


**STATUTES**

18 U.S.C. § 1359 ................................................................................................................. 15

28 U.S.C. § 1367(c)(3) ........................................................................................................ 15

28 U.S.C. § 2072(b) ............................................................................................................ 10

Cal. Civ. Code § 1646 ......................................................................................................... 14


**RULES**

Fed.R.Civ.Proc. 82(a) ......................................................................................................... 10

Fed.R.Civ.Proc. 17 ............................................................................................. 10, 11, 12, 13

Fed.R.Civ.Proc. 12 .................................................................................................... 2, 13, 15

Fed.R.Civ.Proc. 15(d) ......................................................................................................... 12

# I.
# INTRODUCTION

With its most recent opposition brief, plaintiff MVPAM continues with its unfortunate practice of injecting new material in an effort to derail Moving Defendants' motion.[1] This time, MVPAM discloses the previously concealed Investment Management Agreement ("IMA"), which is the agreement that it alleges provided it with the authority to assign MVP's claims to itself. The alleged IMA has been submitted by MVPAM as Exhibit B to the Declaration of Arabella Di Iorio. Moving Defendants request that the Court take judicial notice of the IMA for purposes of ruling on this motion.[2]

It is now apparent why MVPAM concealed this agreement. The IMA confirms that this Court's September 22, 2011 Order was correct, that MVPAM had no authority to assign MVP's claims to itself, and that this case must be dismissed for lack of Article III standing. MVPAM's role was limited to investment management, and that role did not include the power to assign MVP's claims to itself. This entire process of three pleadings and three motions to dismiss has been a wasteful exercise. Plaintiff had this document, which exposes the lack of merit of its position, well prior to the filing of this action, but chose to conceal from the Court.

---

[1] In the original complaint, for example, MVPAM relied solely upon its alleged status as the investment advisor and purported attorney in fact for MVP to support its constitutional standing. When Moving Defendants demonstrated that this status did not suffice, citing *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008), MVPAM suddenly disclosed that not only was it supposedly MVP's attorney in fact, it was also allegedly the assignee of MVP's claims. MVPAM had omitted to plead that central fact. Similarly, in opposing the motion to dismiss the First Amended Complaint, MVPAM unveiled a set of MVP Board of Director Resolutions, which had been drafted during this litigation for the sole purpose of rebuffing Moving Defendants' arguments. The most recent disclosure of the IMA is yet another example of Plaintiff's tactics.

[2] The Court may take judicial notice of the IMA offered by MVPAM and disregard any allegations that are contrary to it. Supplemental Request for Judicial Notice, citing *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002) (court may also rely upon the doctrine of "incorporation by reference" to consider documents "that were referenced extensively in the complaint and were accepted by all parties as authentic."); *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005); *Cisneros v. Instant Capital Funding Group, Inc.,* 263 F.R.D. 595, 604 (E.D. Cal. 2009).

-1-
WEST\225505848.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

DLA Piper LLP (US)
Sacramento

As there was no subject matter jurisdiction at the time of filing, the Court has no choice but to dismiss the action in its entirety without leave to amend.  F.R.Civ.Proc. 12(h)(3).  Such defects are not subject to retroactive cure.

**II.**
**ARGUMENT**

**A.     The Investment Management Agreement ("IMA") Confirms That MVPAM's Purported Assignment Was Unauthorized and Invalid.**

      **1.     The Court May Take Judicial Notice Of The IMA And Disregard Any Allegations That Are Contrary To Its Provisions.**

The Court in its Order of September 22, 2011, found that Plaintiff's prior allegations did not demonstrate that it held a general power of attorney; instead, Plaintiff had alleged only that it held a specific power limited to investments and litigation relating to those investments.  This specific and limited power of attorney did not provide MVPAM with the right to unilaterally assign MVP's claims to MVPAM.  (Order, at 5.)

In the Second Amended Complaint, MVPAM seeks to make an end-run around the Court's ruling.  It quotes selective portions of the (previously) undisclosed IMA, and surrounds those specific quotations with legal conclusions – legal conclusions, it should be noted, that are not reasonably inferable from the quoted provisions themselves – to the effect that these provisions constituted a general power of attorney, and provided MVPAM with unrestricted authority to manage all of MVP's business affairs, to and including the assignment of its claims for purposes of litigation.

In their initial moving papers, Moving Defendants requested that the Court look past the legal conclusions to the actual provisions quoted by MVPAM in the SAC.  Next, Moving Defendants demonstrated that under the governing law of the British Virgin Islands, these provisions did not suffice to constitute a general power of attorney.  Moving Defendants set forth the well-established law concerning the construction of such powers of attorney:

> . . . (2) where authority is given to do particular acts followed by general words, the general words are restricted to what is necessary for the proper performance of the particular acts. (3) General words do not confer general powers, but are limited

-2-

>to the purpose for which the authority was given, and are construed as enlarging the special powers only when necessary for that purpose.

Declaration of James Corbett QC., ¶ 42, citing *Bowstead & Reynolds on Agency*, 18th edition (2006), at paragraphs 3-010 – 3-017 (footnotes and references omitted). As such, the language identified by the Plaintiff could only be read, just as the Court had found previously, to provide MVPAM with power to manage MVP's investments, and it did not authorize MVPAM to assign MVP's claims.

Now, in opposition, MVP raises essentially two arguments. First, it argues that the Court should ignore its factual allegations, and consider only its general legal conclusions.[3] MVP cites to no Ninth Circuit authority in support of this proposition, nor could it. The Court need *not* accept as true legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).[4] Here, as set forth in the moving papers, the specific provisions quoted by MVPAM in the SAC demonstrate only that MVPAM did not have authority to assign MVP's claims. The mere legal conclusions to the contrary should be disregarded. (Motion, at 7-9.)

Second, MVP introduces the IMA, arguing that it supports MVPAM's broad claim of power to act for MVP. However, the IMA instead provides the Court with yet a further basis to

---

[3] MVPAM offers the declaration of Arabella di Iorio in support of this argument. Ms. di Iorio is MVP's attorney. Decl. of di Iorio, ¶ 2. Unlike James Corbett QC, she is not an independent expert. In addition, her application of BVI law to the IMA is incurably flawed in that her conclusions are based upon her express acceptance and reliance upon MVP's generalized legal conclusions, and not the actual language of the IMA itself. *See* di Iorio Decl., ¶¶ 10, at 3:17-19; ¶¶ 11-16.

[4] Rather than citing to controlling precedent, MVPAM cites instead to a Second Circuit case, *Int'l Audiotext v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). In fact, *Int't Audiotext* does not assist Plaintiff, as the case's holding is contrary to what Plaintiff recites it to be. Plaintiff cites the case to support its contention that its allegations "of the legal effect of the IMA must be accepted as true . . . ." Opposition, at 3. In *Int't Audiotext*, however, the Second Circuit held that when a plaintiff does not attach the contract upon which the complaint is based, not only may the court take judicial notice of the contract, but it is also "not constrained to accept the allegations of the complaint in respect to the construction of the agreement . . . ." *Id.* While the Second Circuit also held that ambiguities needed to be resolved in a plaintiff's favor at the motion to dismiss stage, a point not subject to dispute, this holding has no relevance to MVPAM's claims in this case, where MVPAM has failed even to offer a reasonable construction of the IMA, and therefore has established no ambiguity to be resolved in its favor.

1  disregard MVPAM's unsupported legal conclusions. Where a plaintiff's allegations are
2  contradicted by attachments to the complaint or matters subject to judicial notice, the
3  contradictory allegations may be disregarded. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d
4  1136, 1139 (9th Cir. 2003); *Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295-96 (9th Cir.
5  1998) (court "not required to accept as true conclusory allegations which are contradicted by
6  documents referenced in the complaint"); *see also Sprewell v. Golden State Warriors*, 266 F.3d
7  979, 988 (9th Cir. 2001) (arbitration award attached to complaint fatally undermined plaintiff's
8  claim). Here, it is the plaintiff that has offered the document, and it may be properly considered
9  by the Court in assessing the adequacy of the MVPAM's pleading.

   **2.   The IMA Establishes That MVPAM Did Not Have The Authority To Assign MVP's Claims.**

12  In contrast to MVPAM's legal conclusions, all of the actual documentary evidence
13  submitted by MVPAM demonstrates that the alleged assignment was invalid. Attached, for
14  example, to the Second Amended Complaint as Exhibit A are MVP's Articles of Association.
15  (Exhibit A, Articles of Association, beginning on page 10 of 34 as reflected on the Court's
16  docket.) These Articles specify and define MVP's "Investment Manager" as follows: "The
17  person from time to time appointed by the Company to be responsible for the management of the
18  Company's *investments*." (SAC, Articles of Association, Ex. A, at 2, emphasis added). This
19  definition is consistent with a construction of MVPAM's powers as limited to investment
20  management, and not extending to the assignment of claims, just as the Court found in its Order
21  of September 22, 2011.
22  As discussed below, MVPAM's belated production of the IMA confirms this
23  construction.

   **a.   The General Provisions In The IMA Do Not Authorize MVPAM to Assign To Itself MVP's Claims.**

26  Throughout each of its three complaints, MVPAM has claimed that it is MVP's attorney
27  in fact. At the outset, therefore, it is important to note that the IMA makes no mention of the
28

-4-

appointment of MVPAM as the attorney in fact for MVP, general, specific, or otherwise. MVPAM's contradictory allegation that the IMA constitutes a general power of attorney, therefore, may be disregarded. *See e.g., Steckman,* 143 F.3d at 1295-96.

Next, the duties and powers ascribed to MVPAM under the IMA do not extend to the assignment of MVP's claims to MVPAM for collection. Clause 2 of the IMA, entitled "Appointment of Manager," makes this clear, and wholly confirms the Court's prior finding concerning the limited scope of MVPAM's authority:

> (1) The Company [MVP] hereby appoints the Manager [MVPAM] to manage the investment affairs of the Company including (but without limiting the generality of the foregoing) all aspects of investment advisory services to the Company and the selection and evaluation of Investment Advisors . . . .

(IMA, Ex. B to the Di Iorio Declaration, at 3.) The clause sets forth the role to be filled by MVPAM, and that role is to "manage the investment affairs of the Company . . . ." The clause cannot reasonably be read, as MVPAM argues in the opposition, to provide "MVPAM with full authority over MVP's business affairs . . . ," *see* Opposition, at 1:9, or constitute "a general power to manage the business and affairs of MVP . . . , *see* Opposition, at 2:11-12. The words simply do not say that.

The limited scope of MVPAM's authority is confirmed yet further by Clause 3, which sets forth MVPAM's authority to "manage the investment affairs of the Company":

> 3. <u>MANAGEMENT OF INVESTMENTS</u>
>
> (1) The Manager shall manage the investment and reinvestment of the assets of the Company with the power on behalf of the Company to purchase, subscribe or to otherwise acquire investments and to sell, redeem, exchange, vary or transpose the same.

(IMA, Ex. B to the Di Iorio Declaration, at 3.)

Again, this grant of authority speaks only to the "investment and reinvestment" of assets. It says nothing of the assignment of claims or causes of action for collection, or with respect to MVPAM's authority to initiate litigation on MVP's behalf with respect to any investment or asset

-5-

of MVP.  It remains, as found by the Court in the September 22, 2011 Order, not a general power of attorney, but instead "specific to investments . . . ."  (*See* Order, at 5.)

Indeed, this limited grant of power may be contrasted with the full breadth of powers available to MVP (not MVPAM) under MVP's Memorandum of Association.  As set forth in that Memorandum at Paragraph 4, MVP may (a) invest and trade in equities, money markets, bonds, derivative instruments, currencies, and any type of financial instrument in respect of any underlying class of assets; (b) buy, sell, underwrite, invest in, exchange or otherwise acquire, etc., bonds, debentures, shares, stocks options, commodities, precious metals, and the like; (c) borrow or raise money through the issuance of debentures, bonds, mortgages, etc.; (d) guarantee loans and lend money; (e) engage in any other business whatsoever, or in any acts or activities not prohibited by the law of the British Virgin Islands; and (f) do all such other things as are incidental to or conducive to the attainment of the above.  (SAC, Ex. A, Memorandum of Association, ¶ 4, at 1-2.)

Notwithstanding Plaintiff's legal conclusions and argument, the IMA does not provide MVPAM with the same breadth of powers available to MVP.  Instead, MVPAM is appointed only Investment Manager, "to manage the investment affairs of the Company" and to "manage the investment and reinvestment of the assets of the Company with the power on behalf of the Company to purchase, subscribe or to otherwise acquire investments and to sell, redeem, exchange, vary or transpose the same."  Broader powers are not included in the IMA.

Under no reasonable construction of the IMA can it be said that MVPAM had the authority to assign MVP's claims for purposes of litigation, as both the general provisions, discussed above, and the specific provisions, discussed below, make apparent.

    **b.**  **The Specific Provisions In The IMA Do Not Authorize MVPAM To Assign To Itself MVP's Claims.**

That the IMA provides MVPAM with only limited authority with respect to investments, and not with respect to assignment of claims for purposes of the filing of lawsuits is further confirmed by the IMA's recitation of MVPAM's specific powers and duties, *none* of which speak

-6-
WEST\225505848.1 DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

remotely to the assignment of claims. These provisions are quoted in full to demonstrate the full scope and context of the delegated duties:

> 5.  POWERS AND DUTIES OF MANAGER
>
> During the continuance of the appointment hereunder the Manager shall be entitled to exercise such powers and discretions as may be necessary in order to perform its duties hereunder. In particular but without prejudice to the generality of the foregoing the Manager shall:
>
> (a)  have authority to select and appoint Investment Advisors in addition to or in substitution of any current Investment Advisor;
>
> (b)  manage the investment and reinvestment of the assets of the Company in accordance with Clause 3 with a view to achieving the then current investment objectives of the Company as laid down in the Confidential Private Placement Memorandum;
>
> (c)  instruct the Bank (as defined in the Confidential Private Placement Memorandum) with regard to the transfer of funds in respect of expenses properly incurred.
>
> (d)  to the extent that this is not undertaken by the Investment Advisor(s), if any, purchase (or otherwise acquire), sell (or otherwise dispose of) and invest money and other assets for the account of the Company and effect foreign exchange transactions in connection with any such purchase, acquisition, sale or other disposal.
>
> (e)  enter into, make and perform such contracts, agreements and other undertakings as may in the opinion of the Manager be necessary or advisable or incidental to the carrying out of the functions, duties, powers and discretions conferred on it pursuant to this Agreement and its role as Investment Manager of the Company;
>
> (f)  negotiate such borrowing arrangements as are sought to be entered into by the Company and supervise the implementation of such arrangements;
>
> (g)  as and when requested by the Company, supply the Company with any information in connection with its affairs as may be in the possession of the Manager or as may reasonably be obtained or provided by it;
>
> (h)  keep or cause to be kept on behalf of the Company at the Manager's offices in New York, United States of America or such other place as the Manager may deem appropriate such books, records and statements expressed in such currencies as may be necessary to give a complete record of all transactions carried out on behalf of the Company and such other books, records and statements as may be required by law and shall permit the Company and its agents to inspect such books, records and statements at all reasonable times;
>
> (i)  carry out regular credit assessment of proposed debtors or guarantors (if any) in respect of investments and proposed investments of the Company and shall (subject to the overall supervision of the Directors) formulate prudent credit limits in relation thereto;

-7-

  (j)  supervise, regulate and direct the activities of any Investment Advisor(s);

  (k)  recommend the manner in which money required for any redemptions of shares in the Company should be realized;

  (l)  prepare material for inclusion in the monthly accounting and Audited financial statements of the Company whenever it shall reasonably require such material; and prepare (and if requested present) reports to the Directors on the activities of the Company.

*Id.*

These provisions *all* relate to management of MVP's investment activities, and make no provision whatsoever for the assignment of MVP's claims to MVPAM. Further, each of these provisions exists as a specific descriptor of MVPAM's powers as set forth by Clauses 2 and 3, which bound the outside scope of MVPAM's authority as limited to investment management.

Implicitly recognizing the above, MVPAM resorts to ignoring the IMA altogether in favor of Plaintiff's generic legal conclusions in the SAC. MVPAM argues that MVP's claims against Moving Defendants constitute MVP's "assets," and since MVPAM is purportedly has unrestricted power to manage MVP's assets, it is entitled to do as it sees fit with these "assets," including assigning them to itself for collection.

Even under MVPAM's construction BVI law, this proposed interpretation fails as a matter of law because it cannot be reconciled with the actual language of the governing agreement.[5] Where, as here, there are no disputed facts relevant to the interpretation of an agreement, the interpretation of a contract is a question of law. Di Iorio Decl., ¶ 6, line 13; Supp. Corbett Decl., ¶¶ 7-13. Further, according to Ms. di Iorio and as confirmed by James Corbett QC, MVPAM must at least offer a reasonable construction of the IMA reconcilable with the actual words used in it. *See* Opposition, at 5; Di Iorio Decl., ¶ 6, and Ex. D, at 838-39 ("The task of ascertaining common intention of the parties must be approached objectively: the question is not what one or other of the parties mean or understood by the words used, but: . . . the meaning which the document would convey to a reasonable person having all the background knowledge which would reasonably have been available to the parties in the situation in which they were at the time

---

[5] The IMA contains a BVI choice of law provision. IMA, Section 19.

-8-

of the contract.") (internal quotation omitted); *id.* at 839 ("The cardinal presumption is that the parties have intended what they have in fact said, so that their words must be construed as they stand."); *see also* Supp. Corbett Decl., ¶¶ 7-15.

MVPAM's proffered construction is not an objectively reasonable construction of the contract; indeed, it is not tied to the language at all. The IMA does not provide MVPAM with unfettered authority to do as it wishes with MVP's assets. It is a contract specific to investments and the management of investments. MVPAM also offers *no* extrinsic evidence from 2004, which is when the IMA was entered according to its face page, that supports its current proffered interpretation, or that suggests anything confusing or ambiguous about the words used or their intended meaning.[6]

The IMA speaks only to MVPAM's authority to manage the "investments and reinvestments" of MVPAM. *See, e.g.* IMA, Clause 3, quoted above. Moreover, as set forth in Clause 5, quoted above, the parties in the IMA took care to specify twelve separate authorized powers of MVPAM, not one of which includes the power to take the action MVPAM did here. Had the parties intended for MVPAM to have more generalized powers, the agreement could and would have so provided. And as the provisions in MVP's Memorandum of Association make clear, MVP knew how to use generalized language when it so intended.

MVPAM has not met its burden of establishing its standing. (Order, filed September 22, 2011, at 2, citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). It has offered only an unreasonable and untenable construction of an agreement that in fact provides MVPAM with none of the powers it now claims.[7] The alleged assignment was invalid at the time it was

---

[6] MVPAM's reliance on the Board Resolutions as supposed extrinsic evidence of the meaning of the IMA is unavailing. The Resolutions state nothing apart from the Board's purported undisclosed subjective intent in 2009 concerning the scope of the IMA, and provide no contemporaneous, admissible evidence relevant to its construction. *See* Supp. Corbett Decl., ¶ 7(3) ("The law excludes from the admissible background the previous negotiations of the parties and their declarations of subjective intent.").

[7] MVPAM's related argument that the assignment was valid because MVPAM supposedly believed it to be valid falters for the same reason. Even accepting MVPAM's statement of BVI law as accurate, MVPAM would had to have offered a "reasonable construction" of the IMA as the basis for its alleged belief, di Iorio Decl., ¶ 16, and it did not do so.

-9-

made.  Furthermore, as set forth in the next section, as all of the subsequent efforts to ratify the assignment post-date the filing of this action by many months, the Court is left with no choice but to dismiss the action for lack of Article III standing.

> **3.    MVP's Alleged Ratification Of The Purported Assignment, Which Was Made Over Seventh Months After The Filing Of The Action, Cannot Retroactively Establish Article III Standing Where It Was Absent At The Outset.**

Moving Defendants reviewed in detail in their moving papers why Rule 17 of the Federal Rules of Civil Procedure cannot be relied upon by Plaintiff to retroactively cure defects with Article III standing that existed at the time of the filing of the action. (Motion at 13-16.)  In opposition, Plaintiff fails adequately to address the central authorities relied upon by Moving Defendants, including those setting forth the distinctions between defects in prudential standing, which may be subject to cure under Rule 17, and Article III standing, which are not. *See* Motion, at 14, citing *Cetacean Cmty v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (noting that Congress can provide for statutory standing for particular plaintiffs so long as Article III standing is independently satisfied); *Bennet v. Spear*, 520 U.S. 154, 162 (1997) (unlike constitutional standing, Congress may modify or abrogate prudential standing concerns) *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no event may Congress abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted."); *see also* 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right."); Fed.R.Civ.Proc. 82(a) ("These rules do not extend or limit the jurisdiction of the district courts . . . ."); *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

In addition, MVPAM ignores the authorities cited by Moving Defendants to the effect that the belated addition of parties to an action after its filing cannot retroactively cure Article III standing defects. *See* Motion at 15, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (later joinder of parties cannot cure standing issue that existed at time of filing: "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*  It cannot be that, by later participating in the suit, the State Department and AID

retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.") (internal citation omitted); *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (distinguishing between the "irreducible constitutional minimum of standing" and the prudential requirement that the plaintiff be the "real party in interest," and holding that a party *with* standing, but who was not the real party in interest, could rely upon Rule 17 and the ratification of the real party in interest, to allow the suit to proceed); *Pratt v. Progressive Casualty Ins. Co.*, 2011 WL 2160863, *2-3 (W.D. Ky., June 1, 2011) (Rule 17 cannot be used to cure defects in Article III standing that exist at time of filing); *cf. Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (class action must be dismissed where named plaintiff lacks constitutional standing; rejecting argument that other members of the class should have been named a class representatives to avoid dismissal).

Furthermore, in relying upon *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir. 1992), and *Advanced Magnetics, Inc. v. Bayshore*, 106 F.3d 11 (2d Cir. 1997), MVPAM fails to address the reasons – reasons discussed in depth by Moving Defendants in their moving papers – regarding why these two cases do not assist MVPAM's arguments: namely, in each, Article III standing at the time of filing was *not* at issue. There was no constitutional impediment to application of Rule 17 in those cases since courts had subject matter jurisdiction at the outset. The same is not true here, given that MVPAM lacked Article III standing at the time this action was filed.

By failing to address these arguments, Plaintiff effectively concedes them. Further, Plaintiff's remaining arguments do not establish a basis for application of Rule 17 to this case. Plaintiff argues, for example, that the case of *Zurich Ins. Co. v. Logitrans*, 297 F.3d 528 (6th Cir. 2002), whose holding squarely refutes Plaintiff's position, was wrongly decided. Rule 17, in Plaintiff's view, exists only to allow a party to circumvent a statute of limitations, and does not purport to expand the jurisdiction of the Court.

Plaintiff's contentions as to *Zurich*, however, falter in view of the fact that there was *no* Article III standing present at the time this action was filed. Unlike the situations in *Mutuelles* or

*Advanced Magnetics*, here the Court lacked subject matter jurisdiction over the action at the time that it was filed. By relying on Rule 17 to retroactively establish such subject matter jurisdiction, Plaintiff is in fact improperly using a congressional enactment, Rule 17, to expand the jurisdictional reach of the Court beyond that permitted by Article III. This, as held by the authorities cited above and in the moving papers, would be an improper use of the Federal Rules of Civil Procedure. *Zurich*, in short, was correct in its analysis.[8]

Lastly, Plaintiff cites to two District Court cases from outside of California, *Park B Smith, Inc. v. CHF,* 2011 WL 2714205 (D.R.I August 23, 2011), and *VHW, Inv. v. Geostar Corp.*, 2007 WL 1110664 (E.D. Mich. April 13, 2007). *Smith* fails to correctly analyze the inherent limits of Rule 17 in light of the differences between constitutional and prudential standing, and, in particular, in light of the bedrock requirement that Article III standing must exist at the time of filing. In addition, the *Smith* case directly acknowledges that a plaintiff cannot cure a jurisdictional defect through a retrospective assignment, which is precisely what MVPAM seeks to accomplish here through the Resolutions. *Smith*, 2011 WL at *4. As for *VHW*, it is inapplicable for much the same reasons as *Mutuelles* or *Advanced Magnetics*, as Article III standing was present in that case at the time of filing. Indeed, the district court in *VHW* held that the original named plaintiff *had* Article III standing at the time of filing, which is the very reason

---

[8] Plaintiff also seeks to distinguish *Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989). In so doing, Plaintiff misses one of its main teachings. In *Wulff*, the plaintiff had filed a Miller Act claim, which provides protection to persons supplying materials and labor for federal projects. However, the plaintiff had not performed any work in connection with the project that was the subject of their lawsuit. Subsequently (after the running of the statute of limitations), the plaintiff obtained an assignment of claims from a contractor who had actually performed work on the project, and then sought rely upon Rule 17 to establish the timeliness of its suit based upon the original filing date. *Id.* at 1071, 1075-76. The Ninth Circuit held Rule 17, and its provision that the action may proceed as if originally filed by the real party in interest, can only apply where the initial action was validly filed. *Id.* at 1075. In *Wulff*, the plaintiff did not have an original, valid claim under the Miller Act to which the later assigned claim related. As such, the Ninth Circuit held that neither Rule 17, nor Rule 15(d) concerning supplemental pleadings, provided a basis for Plaintiff to proceed on the otherwise time-barred claim. *Id.* In short, the later assignment could not serve to ratify the commencement of a suit on a claim that did not exist. So too in this case, where MVPAM lacked standing at the outset of the case, rendering its initial filing a nullity, not subject to later ratification.

that it concluded *Zurich* did not apply.  *VHW*, 2007 WL at *6-7, 10.  Here, MVPAM did not have Article III standing when this case was filed.

Rule 17 cannot provide the basis for a court to bypass the baseline requirement that Article III standing exist at the time of filing.  *See* Order, at 2; *Lujan*, 504 U.S. at 569 n.4 (standing turns on facts as they existed at the time the plaintiff filed the complaint).  Article III standing was not present at the time of filing; in fact, in this case, the Board resolutions were not even drafted until over seven months had passed *after* the filing.  As such, the action must be dismissed without leave to amend.  *See also* F.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**4.    MVPAM Does Not Rebut Moving Defendants' Showing That The Assignment Was Made For Tactical Reasons, Thereby Further Removing Rule 17 As A Viable Route For Plaintiff To Establish Standing**.

Rule 17 is unavailable to a plaintiff unless the original flawed decision by the wrong plaintiff to sue in its own name was an "understandable mistake and not a strategic decision." Motion, at 17.  As set forth in the moving papers, the filing in this case was done in MVPAM's name for tactical reasons:  Plaintiff sought to create the appearance of US and California connections where there are in fact none.  Accordingly, even if Rule 17 provided an option in this case, and it does not, Plaintiff would not be entitled to rely upon it.

**5.    MVPAM Does Not Attempt To Seriously Defend The Purported Shareholder Ratification As Sufficient To Save the Invalid Assignment.**

Moving Defendants established in their Motion that MVPAM's shareholder ratification theory was without merit. (Motion, at 10.)  MVPAM's relegates its response to that argument to footnote 3 of the Opposition, but that response fails to establish the validity of the purported ratification.  First, MVPAM still fails to identify the purported provision in MVP's Articles of Association that would allow a voting shareholder to directly manage the affairs of MVP. Second, Plaintiff's contention that the voting shareholder may override the decisions of the Board (itself unsupported by reference to any specific provision in the Articles) is irrelevant – where, in this case, there is no allegation of any original Board resolution one way or another on the

-13-

WEST\225505848.1    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

assignment. Stratford's purported ratification, even if accepted as true, is irrelevant as a matter of law.

      **6.**      **The Second Amended Complaint Fails To Include Any Allegation Demonstrating That California Law Should Apply To The Construction Of The Purported Assignment.**

In their Moving Papers, Moving Defendants demonstrated that the alleged assignment was invalid in that it failed to comply with the requirements of the law of the British Virgin Islands. Motion, at 9. In response, in yet another example of Plaintiff's willingness to assert as a "fact" whatever it believes is necessary to defeat the motion, Plaintiff baldly asserts that the alleged assignment should be governed by California law. Citing to Cal. Civ. Code § 1646, Plaintiff contends that California law should apply because the contract was purportedly entered into in this State and is being performed in this State, notwithstanding (1) that it was entered into between a British Virgin Islands company (MVP) and a Delaware Company (MVPAM), concerning that MVP's alleged investments in another British Virgin Islands company (Ark Discovery (Offshore)); (2) that the alleged assignment was purportedly entered into under the authority of the IMA, which contains a choice of law provision designating the law of the British Virgin Islands as the governing law; and (3) that the actual assignment, as alleged, does not specify any specific forum for performance, *see* SAC, ¶ 87. No specific allegation is identified by Plaintiff to support its choice of law contention. In fact, not only is there no allegation to the effect that MVP, the BVI company, has also acceded to application of California law to the interpretation of the assignment, MVP appears to be reserving to itself the freedom to argue that the law of the British Virgin Islands applies.[9] Plaintiff also fails to explain how the actual assignment of the claim – which was held by a BVI company and allegedly assigned to a Delaware company – was supposedly performed in this State.

---

[9] Notably, Ms. di Iorio testifies that she is counsel for MVP in the BVI. In that capacity, she does not state that MVP agrees to application of California law, and instead asserts only that she has noted that *MVPAM* has contended that BVI law applies. Di Iorio Decl., ¶ 4:22-25.

-14-

Plaintiff has failed to establish that California law applies to this claim. Accordingly, and for the reasons set forth in the original and supplemental Declarations of James Corbett QC, the assignment is invalid as a matter of the law of the British Virgin Islands.[10]

**B.    Plaintiff Has Failed To Respond To Defendants' Contention That This Court Will Lack Diversity Jurisdiction Upon Dismissal Of The Federal Claims.**

Presumably because it has now admitted that MVP – a foreign entity – is the one that should have brought the action in the first place, and/or is a party seeking to join it, MVPAM has not responded to Moving Defendants' argument that diversity jurisdiction is lacking in this case in light of the collusive assignment between MVPAM and MVP. (Motion, at 18.)

Accordingly, whether under 18 U.S.C. § 1359 based upon the collusive assignment, or whether because of the joinder of MVP as a real party in interest, diversity is absent in this action. As such, should the federal claims be dismissed under the Rule 12(b)(6) motion, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them. 28 U.S.C. § 1367(c)(3).

## III.
## CONCLUSION

Accordingly, for the reasons set forth above, Moving Defendants respectfully request that their motion be granted.

Dated:  December 12, 2011                                    DLA PIPER LLP (US)


                                                             By:  /s/ GEORGE L. O'CONNELL
                                                                  George L. O'Connell
                                                                  Attorneys for Defendants

---

[10]   In addition, as set forth in the original Corbett Declaration, the Board cannot ratify an assignment that was illegal at the time it was made.  Corbett Decl., ¶¶ 47-60.

-15-