1  GEORGE L. O'CONNELL (SBN 74037)
   TODD M. NOONAN (SBN 172962)
2  DLA PIPER LLP (US)
   400 Capitol Mall, Suite 2400
3  Sacramento, CA  95814-4428
   Tel:  916.930.3200
4  Fax:  916.930.3201

5  Attorneys for Defendants
   STEVEN VESTBIRK; JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET
6  MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL
   ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS,
7  LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL
   CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL
8  RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS,
   LLC

9

10                    UNITED STATES DISTRICT COURT

                      EASTERN DISTRICT OF CALIFORNIA
11

12  MVP ASSET MANAGEMENT (USA) LLC, a    CASE NO.  2:10-cv-02483-GEB-CMK
    Delaware Limited Liability Company,
13                                        DEFENDANTS' NOTICE OF MOTION
              Plaintiff,                  AND MOTION TO DISMISS PLAINTIFF'S
                                          THIRD AMENDED COMPLAINT
14       v.                               PURSUANT TO RULE 12(B)(6) AND
                                          12(B)(2); MEMORANDUM OF POINTS
15  STEVEN VESTBIRK, JEFF BALLIET,        AND AUTHORITIES IN SUPPORT
    ALLISON HANSLIK, JIM GRANT, ARK       THEREOF
16  ROYAL ASSET MANAGEMENT, LTD., a
    Bermuda Limited Company, VESTBIRK
17  CAPITAL MANAGEMENT, LTD., a Bermuda   Date:   June 18, 2012
    Limited Company, ARK ROYAL ASSET      Time:   9:00 a.m.
18  MANAGEMENT, LLC, a Nevada Limited-    Dept:   Courtroom 10
    Liability Company, ARK DISCOVERY, LLC, a   Judge: Honorable Garland E. Burrell, Jr.
19  Business Entity of Unknown Form, ARK
    ROYAL HOLDINGS, LLC, a Nevada Limited-
20  Liability Company, ARK ROYAL SERVICES,
    LLC, a Nevada Limited-Liability Company,
21  ARK ROYAL CAPITAL, LLC, a Nevada
    Limited-Liability Company, ARK ROYAL
22  CAPITAL FUNDING, LLC, a Nevada Limited-
    Liability Company, ARK ROYAL CAPITAL,
23  INC., a Nevada Corporation, ARK ROYAL
    RESOURCES LLC, a Nevada Limited-Liability
24  Company, ARK ROYAL ASSURANCE LLC, a
    Nevada Limited-Liability Company, and ARK
25  ROYAL INVESTMENTS, LLC, a Nevada
    Limited-Liability Company,
26
              Defendants.
27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1          DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                          AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
                          Case No. 210-CV-02483-GEB-CMK

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that on June 18, 2012, at 9:00 a.m., in Courtroom 10 of the

3   above-titled Court, located at 501 I Street, Sacramento, California 95814, defendants STEVEN

4   VESTBIRK; JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT,

5   LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET

6   MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK

7   ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL

8   FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK

9   ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will

10   and hereby do move to dismiss the Third Amended Complaint filed by Plaintiff.  As further set

11   forth in the Memorandum of Points and Authorities filed herewith, which is incorporated herein

12   by this reference, the grounds for this motion are as follows.

13   First, Moving Defendants move to dismiss the First and Second Causes of Action, which

14   assert securities fraud claims under Section 10(b) and Section 20(a) of the Securities Exchange

15   Act of 1934, under Rule 12(b)(6), Rule 9(b), and the Private Securities Litigation Reform Act of

16   1995 ("PSLRA"), 15 U.S.C. § 78u-4.  The Complaint fails to state federal securities fraud claims

17   for several reasons.  First, Section 10(b) does not have extraterritorial reach, and controlling

18   United States Supreme Court authority bars Plaintiff's claims, which are based upon offshore

19   transactions.  *Morrison v. Nat'l Bank of Australia Ltd.*, 130 S.Ct. 2869 (2010).  Second, Plaintiff

20   has failed to meet the strict pleading requirements applicable to a securities fraud claim under the

21   PSLRA and Rule 9(b).  Plaintiff has failed to properly plead scienter, for example, and has failed

22   to allege facts establishing each Moving Defendant as the "maker" of the alleged misstatement.

23   Third, Plaintiff's Section 20(a) control person claims must be dismissed once the underlying

24   Section 10(b) claim is dismissed.  In addition, Plaintiff has also failed to plead sufficient facts to

25   establish all of the Moving Defendants as purported control persons.

26   Moving Defendants also move to dismiss Plaintiff's California common law and statutory

27   claims under Rule 12(b)(6) and Rule 9(b).  Plaintiff has failed to plead the Third (Fraud), Fourth

28

-1-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

1   (Negligent Misrepresentation), and Sixth and Seventh (California Securities Act) claims for relief

2   with the particularity required by Rule 9(b).

3        Plaintiff's Sixth and Seventh claim under the California Securities Act (Cal. Corp. Code

4   §§ 25504, 25504.1) also fail to state a claim because Plaintiff was required to have, but has failed

5   to allege facts establishing a California purchase, a California seller, or an offer of sale in

6   California. *Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1059 (1999).  Further,

7   Plaintiff cannot state a claim because (1) a remedy of damages is unavailable to him as Plaintiff

8   does not allege that MVP has sold its shares, therefore precluding an award of damages, and (2)

9   Plaintiff has failed to join as a party defendant the actual issuer of the shares, and no claim for

10   rescission exists against any other party under these statutes.  Cal. Corp. Code § 25501; *Viterbi v.*

11   *Wasserman*, 191 Cal. App. 4th 927 (2011).

12        Moving Defendants also move to dismiss Plaintiff's fifth claim (Negligence) pursuant to

13   Rule 12(b)(6) for failure to state a claim.  Plaintiff has not alleged facts that establish a duty

14   running from any Moving Defendant to Plaintiff.  In addition, Plaintiff's claim for negligence

15   arises out of claims that Moving Defendants mismanaged Ark Discovery (Offshore)'s

16   investments to the detriment of its shareholders, which shareholders allegedly include MVP.

17   Such claims cannot be pursued directly by an alleged shareholder, but instead must be pursued

18   derivatively in the British Virgin Islands under the laws of the British Virgin Islands.

19        Finally, Moving Defendants move to dismiss pursuant to Rule 12(b)(2) for lack of

20   personal jurisdiction.  Plaintiff fails to allege sufficient contacts with California to support the

21   exercise of personal jurisdiction over any Moving Defendant, and, upon dismissal of the federal

22   securities fraud claims, this Court should decline to exercise pendent personal jurisdiction.  *Action*

23   *Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004).

24        Pursuant to Rule 12(g)(1), these motions may be joined together.  As the defects identified

25   in this motion cannot be cured, Moving Defendants request that the dismissal be with prejudice.

26

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-2-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

1    Pursuant to Rule 44.1, Moving Defendants further provide notice of their intent to rely

2    upon the law of the British Virgin Islands, as further set forth herein and in the Request for

3    Judicial Notice.

4    This motion will be based upon this Notice of Motion and Motion, Memorandum of

5    Points and Authorities, and the Request for Judicial Notice filed herewith, which in turn is

6    supported by the authenticating Declarations of George O'Connell filed May 12, 2011 (Dkt. No.

7    60), Martin Zolnai, filed May 12, 2011 (Dkt. No. 59), and Dino Coppola, filed February 24, 2011

8    (Dkt. No. 18), and on such further documents and argument as the Court may permit at the

9    hearing of this motion.

10

11   Dated:  May 17, 2012                    DLA PIPER LLP (US)

12

13

14                                          By:____/s/ TODD M. NOONAN_____
                                               Todd M. Noonan
15                                             Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................ 1

II.  STATEMENT OF THE CASE ............................................................ 3

    A.   Procedural History .................................................................. 3

    B.   The Third Amended Complaint:  Brought by MVPAM, an Investment Advisor, Purporting to Assert the Claims of its Client, MVP, as an Alleged Assignee ..................................................................................... 4

    C.   The Investment and the Exposure Of Petters' Ponzi Scheme ............... 5

    D.   Named Defendants:  Plaintiff's Indiscriminate Joinder of Defendants ................. 6

    E.   The Alleged False Representations and Associated Investments by MVP ............. 7

    F.   Plaintiff's Allegations Concerning Defendants' Alleged Knowledge of the Falsity of the Alleged Misrepresentations ........................... 12

        1.   Knowledge Purportedly Gained From Steven Vestbirk's Background at Arrowhead ........................... 12

        2.   Prior Investment Experience with Ark Diversified Fund and Ark Royal Fund ................................ 13

        3.   Information Allegedly Obtained from Jim Granat ............................ 14

        4.   Alleged Loans to the Petters Entity, Edge One, LLC ...................... 16

        5.   Moving Defendants' Investigation In Response To The Delays In Payment ...................... 17

        6.   Subsequent Alleged Emails with Vestbirk ................................. 19

        7.   Plaintiff Relies Upon the Foregoing Allegations to Attempt to Demonstrate Moving Defendants' Alleged Knowledge of the Falsity of the Representations Concerning the Ark Discovery (Offshore) Investment ........................ 19

III. ARGUMENT ...................................................................................... 20

    A.   The Action Must Be Dismissed Because Plaintiff Has Failed To State A Claim ................................. 20

        1.   Plaintiff Has Failed to State a Claim for Federal Securities Fraud .......... 21

            a.   Foreign Securities Transactions Such as the One Alleged by Plaintiff Are Not Subject to United States Securities Laws .......... 22

                (1)   The Supreme Court in *Morrison v. Nat'l Australia Bank Ltd.* Abrogated the Prior "Conduct and Effects" Test in Favor Of A Bright Line Transactional Inquiry To Determine Whether a Purchase or Sale Is Subject to Section 10(b) .......... 22

                (2)   Cases Applying *Morrison* Have Only Served to Reinforce that Plaintiff's Federal Securities Claims Must Be Dismissed as They Were Not Made in the United States .......... 24

-i-

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

**TABLE OF CONTENTS**
(continued)

Page

(3)  Plaintiff Has Not Alleged and Cannot in Good Faith Allege that the Purchase or Sale of Ark Discovery (Offshore) Took Place in the United States ...................... 26

b.  Plaintiff's Complaint Fails to Comply With the Heightened Pleading Requirements of Rule 9(b) And the PSLRA ................. 30

(1)  Plaintiff Has Failed to Adequately Allege Scienter as to Each Named Moving Defendant ................................... 31

(2)  Plaintiff May Not Rely Upon Moving Defendants' Alleged Positions Within Ark Royal Asset Management as a Substitute for Pleading Specific Facts that Establish that Each Defendant Acted with Scienter ..................................................................... 34

(3)  Plaintiff Has Failed To Adequately Allege A Primary Violation By Each Moving Defendant ................ 37

c.  Plaintiff Has Failed to Adequately Plead a Claim for Control Person Liability Under Section 20(a) ............................. 40

2.  Plaintiff Has Failed To Adequately Plead California Law Claims for Securities Fraud, Fraud, Negligent Misrepresentation and Negligence ..................................................................................... 41

a.  Plaintiff Has Failed to Satisfy Rule 9(b)'s Particularity Requirements With Respect to His Claims for State Securities Fraud, Fraud, and Negligent Misrepresentation ........... 41

b.  Plaintiff Fails to State a State Law Securities Law Claim ........... 43

(1)  Plaintiff Has Not and Cannot Allege An Offer Made In California ....................................................................... 43

(2)  Neither the Remedy of Damages or Rescission Is Available to Plaintiff, Barring It From Stating a Claim Under the California Securities Laws ................... 46

c.  Plaintiff Has Failed to State a Claim for Negligence ................. 47

(1)  Plaintiff Lacks Standing to Assert This Negligence Claim Because It Is a Derivative Claim That Must Be Advanced On Behalf Of Ark Discovery (Offshore) Against ARAM ............................................... 47

(2)  Plaintiff Has Failed to Allege Facts Establishing An Independent Duty Running From Any Moving Defendant to Plaintiff, And Its Claim Is Also Barred by the Economic Loss Rule .............................................. 48

B.  Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant ....................................................................................... 49

IV.   CONCLUSION ......................................................................................... 54

-ii-

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

# TABLE OF AUTHORITIES

CASES

*Absolute Activist Value Master Fund, Ltd., v. Ficeto,*
__ F.3d __, 2012 WL 1232700 (2d Cir., April 13, 2012) ................................... 24, 25, 26, 27

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,*
368 F.3d 1174 (9th Cir. 2004) .......................................................................... 50

*Applied Underwriters, Inc. v. Combined Management, Inc.,*
371 Fed. Appx. 834, 2010 WL 1141528 (9th Cir., March 24, 2010) .................................... 53

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .................................................................................... 20, 29

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) ............................................................................ 20

*Bancroft & Masters, Inc. v. Augusta National Inc.,*
223 F.3d 1082 (9th Cir. 2000) .......................................................................... 51

*Batchelder v. Kawamoto,*
147 F.3d 915 (9th Cir. 1998) ............................................................................ 48

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................ 20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ........................................................................................ 53

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) .............................................................................. 20

*Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.,*
2011 WL 1211511 (D. Colo., March 31, 2011) .................................................... 28, 29

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*
511 U.S. 164 (1994) ........................................................................................ 37, 39

*Cisneros v. Instant Capital Funding Grp., Inc.,*
263 F.R.D. 595 (E.D. Cal. 2009) ...................................................................... 33, 41, 42

*Const. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.,*
2008 WL 2053733 (S.D. Cal. May 13, 2008) ...................................................... 40

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997) ............................................................................ 42

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

*Cornwell v. Credit Suisse Grp.,*
  729 F. Supp. 2d 620 (S.D.N.Y. 2010)...................................................................... 25

*Desaigoudar v. Meyercord,*
  223 F.3d 1020 (9th Cir. 2000)................................................................................. 31

*Diamond Multimedia Systems, Inc. v. Sup. Ct.,*
  19 Cal. 4th 1036 (1999) ............................................................................... 2, 44, 45

*Dole Food Co., Inc. v. Watts,*
  303 F.3d 1104 (9th Cir 2002).................................................................................. 52

*DSAM Global Value Fund v. Altris Software, Inc.,*
  288 F.3d 385 (9th Cir. 2002)............................................................................. 30, 32

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ................................................................................................ 46

*Elliot Assoc. v. Porsche Automobil Holding SE,*
  759 F. Supp. 2d 469 (S.D.N.Y. 2010)............................................................... 25, 26

*Eshelman v. Orthoclear Holdings, Inc.,*
  2009 WL 506864 (N.D. Cal. Feb. 27, 2009).......................................................... 48

*Fisher v. Acuson Corp.,*
  1995 WL 261439 (N.D. Cal. Apr. 26, 1995) .......................................................... 40

*Franchise Tax Bd. of Calif. v. Alcan Aluminum, Ltd.,*
  493 U.S. 331 (1990) ................................................................................................ 48

*Glazer Capital Mgmt., LP v. Magistri,*
  549 F.3d 736 (9th Cir. 2008)....................................................................... 35, 36, 37

*Glenn K. Jackson Inc. v. Roe,*
  273 F.3d 1192 (9th Cir. 2001)................................................................................. 49

*Gompper v. VISX, Inc.,*
  298 F.3d 893 (9th Cir. 2002)................................................................................... 32

*Hanson v. Denckla,*
  357 U.S. 235 (1958) ................................................................................................ 52

*Healy v. Beer Institute,*
  491 U.S. 324 (1989) ................................................................................................ 46

*Helicopteros Nacionales de Columbia v. Hall,*
  466 U.S. 408 (1984) ................................................................................................ 51

*Hoover Group, Inc. v. Custom Metalcraft, Inc.,*
  84 F.3d 1408 (Fed. Cir. 1996)................................................................................. 51

-iv-

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

*Horvath v. Banco Comercial Portugues, S.A.*,
    2011 WL 666410 (S.D.N.Y Feb. 15, 2011) .................................................................. 26

*In re AstraZeneca Sec. Litig.*,
    559 F.Supp.2d 453 (S.D.N.Y. 2008) ............................................................................ 37

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ....................................................................... 32

*In re Marvell Tech. Grp. Ltd. Secur. Litig.*,
    2008 WL 4544439 (N.D. Cal. Sep. 29, 2008) .............................................................. 40

*In re Metawave Commc'n Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003) ................................................................... 40

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) ....................................................................... 33

*In re Optimal U.S.*,
    2011 WL 167067 (S.D.N.Y. May 2, 2011) ............................................................ 29, 48

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .......................................................................... 30, 31, 32

*In re Societe Generale Secs. Litig.*,
    2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) ....................................................... 25, 29, 48

*In re Verifone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993) ......................................................................................... 40

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945) ..................................................................................................... 51

*Intrieri v. Superior Court*,
    117 Cal. App. 4th 72 (2004) ........................................................................................ 41

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S.Ct. 2296 (2011) ...................................................................................... 38, 39, 40

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
    1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ............................................................ 42

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 41, 42

*Lapiner v. Camtek, Ltd.*,
    2011 WL 445849 (N.D. Cal., February 2, 2011) ........................................................ 36

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ....................................................................................... 20

-v-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

*Lomayaktewa v. Hathaway,*
520 F.2d 1324 (9th Cir. 1975)..........................................................................47

*Los Angeles Fisheries, Inc. v. Crook,*
47 F.2d 1031 (9th Cir. 1931)............................................................................45

*McGlinchy v. Shell Chem. Co.,*
845 F.2d 802 (9th Cir. 1988)............................................................................20

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
540 F.3d 1049 (9th Cir. 2008)..........................................................................32

*MGIC Indem. Corp. v. Weisman,*
803 F.2d 500 (9th Cir. 1986)............................................................................21

*Morrison v. Nat'l Australia Bank Ltd.,*
130 S.Ct. 2869 (2010) .................................................................................passim

*Moss v. Kroner,*
197 Cal. App. 4th 860 (2011)...........................................................................47

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009)............................................................................20

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993)................................................................................42

*North Alaska Salmon Co. v. Pillsbury,*
174 Cal. 1 (1916) .............................................................................................45

*Norwest Mortgage, Inc. v. Superior Court,*
72 Cal. App. 4th 214 (1999).............................................................................45

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
96 F.3d 1151 (9th Cir. 1996)............................................................................41

*Peterson v. Kennedy,*
771 F.2d 1244 (9th Cir. 1985)..........................................................................53

*Petrie v Elect. Game Card Inc.,*
2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ....................................................32

*Phipps v. Wells Fargo Bank, N.A.,*
2011 WL 302803 (E.D. Cal. Jan. 27, 2011)......................................................41

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
522 F.3d 1049 (9th Cir. 2008)..........................................................................41

*Plumbers' Union v. Swiss Reinsurance Co.,*
753 F. Supp. 2d 166 (S.D.N.Y. 2010)..............................................................25

-vi-

*Poindexter v. Wedbush, Noble, Cooke, Inc.*,
1983 WL 1279 (D. Or. Jan. 24, 1983) ................................................................ 50

*Quelimine Co., Inc. v. Stewart Title Guaranty Co.*,
19 Cal. 4th 26 (1998) ........................................................................................ 49

*Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
88 Cal. App. 4th 595 (2001) .............................................................................. 49

*Robinson v. Cupples Container Co.*,
316 F. Supp. 1362 (N.D. Cal. 1970) .................................................................. 45

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................. 30

*S.E.C. v. Cohmad Sec. Corp.*,
2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ....................................................... 37

*Sarkis v. Lajcak*,
425 Fed. Appx. 557, 2011 WL 1118471 (9th Cir., March 28, 2011) ................. 53

*Schuster v. Gardner*,
127 Cal. App. 4th 305 (2005) ............................................................................ 48

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............................................................. 49, 51, 52, 54

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........................................................................... 52

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
585 F.3d 58 (2d Cir. 2009) ................................................................................ 29

*Smith v. Allstate Ins. Co.*,
160 F. Supp. 2d 1150 (S.D. Cal. 2001) .............................................................. 31

*South Cherry St., LLC v. Hennesee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) ................................................................................ 37

*South Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ......................................................................... 35, 36

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................. 20

*State Farm Mut. Auto Ins. Co. v. Davis*,
7 F.3d 180 (9th Cir. 1993) ................................................................................. 44

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........................................................................... 21

-vii-

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

*Stephenson v. Citco Grp. Ltd.,*
    700 F. Supp. 2d 599 (S.D.N.Y. 2010) .................................................................. 37

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
    552 U.S. 148 (2008) ............................................................................................ 37

*Sullivan v. Oracle Corp.,*
    51 Cal. 4th 1191 (2011) ................................................................................. 45, 46

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .............................................................................. 33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ....................................................................... 31, 32, 33, 40

*Tolentino v. Mossman,*
    2007 WL 4404447 (E.D. Cal., Dec. 13, 2007) ................................................... 50

*U.S. v. Botefuhr,*
    309 F.3d 1263 (10th Cir. 2002) .......................................................................... 50

*U.S. v. Stonehill,*
    83 F.3d 1156 (9th Cir. 1996) .............................................................................. 48

*Van Buskirk v. Cable News Network, Inc.,*
    284 F.3d 977 (9th Cir. 2002) .............................................................................. 21

*Vinci v. Waste Mgmt.,*
    80 F.3d 1372 (9th Cir. 1996) .............................................................................. 48

*Viterbi v. Wasserman,*
    191 Cal. App. 4th 927 (2011) ................................................................... 2, 46, 47

*W. Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) .............................................................................. 20

*Yen v. Buchholz,*
    2010 WL 1758623 (N.D. Cal., April 30, 2010) .................................................. 50

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ........................................................................ 30, 37

**STATUTES**

15 U.S.C. § 78aa ................................................................................................ 49, 50

15 U.S.C. § 78c ......................................................................................................... 24

15 U.S.C. § 78u .................................................................................................. 31, 32

-viii-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

28 U.S.C. § 1367(c) ........................................................................................ 41

Cal. Corp. Code § 25501 ............................................................................... 46

Cal. Corp. Code § 25008 ......................................................................... 43, 44

Cal. Corp. Code § 25401 ................................................................... 43, 45, 46

Cal. Corp. Code § 25504 ..................................................................... 43, 47

Cal. Corp. Code § 25504.1 ........................................................................... 43

**RULES**

Fed. R. Civ. Proc. 10(b)(5) ........................................................................... 21

Fed. R. Civ. Proc. 12(b)(1)................................................................. 1, 3, 40 41

Fed. R. Civ. Proc. 12(b)(2) ........................................................................ 3. 49

Fed. R.Civ.Proc. 12(b)(3) ............................................................................ 51

Fed. R. Civ. Proc. 12(b)(6) .................................................................... passim

Fed. R. Civ. Proc. 9(b) ........................................................................... passim

R. App. Proc. 32.1(a) .................................................................................... 53

**OTHER AUTHORITIES**

4A Wright & Miller, Federal Practice & Procedure (3d ed.), § 1069.7 ....................................... 50

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

# I.
# INTRODUCTION

The allegations of the Third Amended Complaint filed by plaintiff MVP Asset Management ("Plaintiff" or "MVPAM") establish (1) that Plaintiff cannot establish Article III Standing, (2) that Plaintiff cannot state a valid claim for relief, and (3) that Plaintiff cannot allege facts sufficient to establish personal jurisdiction over any Defendant.  Article III standing is addressed in Moving Defendants' Rule 12(b)(1) Motion to Dismiss filed separately herewith.  Moving Defendants' merits-based and personal jurisdiction arguments are set forth herein.

Plaintiff's flagship claim for federal securities fraud must be dismissed for a straightforward reason:  It is based upon an offshore transaction.  There was no purchase or sale in the United States of a security, which is the baseline minimum to be subject to United States securities laws.  Here, a foreign investor, MVP, allegedly used its foreign bank (VP Bank), which in turn used an alleged custodial relationship with yet another foreign entity, Citco Global Custody NV ("Citco Global"), to purchase shares in a foreign hedge fund, Ark Discovery Fund (Offshore) Ltd. ("Ark Discovery (Offshore)").  The actual purchaser was Citco Global, the foreign custodian, with the shares being held *at all times* offshore in VP Bank's account at Citco Global.  These are Plaintiff's express allegations, and they establish the underlying transaction as an offshore one.

As such, the claims must be dismissed.  The United States Supreme Court held in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), that Section 10(b) of the federal securities laws does not have extraterritorial reach, and instead covers only purchases and sales of securities listed on domestic exchanges or securities purchased or sold within the United States.  Plaintiff's Third Amended Complaint, like the three complaints that preceded it, establishes that the purchases at issue in this case were not within the United States.  *Morrison* therefore requires the dismissal of these claims.

Additionally, Plaintiff has failed to comply with the strict pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and Rule 9(b) of the Federal Rules of Civil Procedure.  For example, despite being on notice of the defects identified

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

- 1 -

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)
Case No. 210-CV-02483-GEB-CMK

1   herein from Moving Defendants' three prior motions to dismiss, Plaintiff still has indiscriminately

2   sued numerous individuals and entities based upon boilerplate allegations without alleging the

3   specific wrongdoing of each.  Plaintiff has also failed to meet the requirement that it plead the

4   specific facts establishing that *each* Moving Defendant acted with scienter with respect to *each* of

5   the alleged misrepresentations.  Plaintiff's repetition of these same pleading deficiencies in each

6   of its four complaints to date demonstrates that Plaintiff cannot cure the problem, and that the

7   claims should therefore be dismissed with prejudice.

8           Plaintiff's California securities law claims must be dismissed for several additional

9   reasons.  California securities laws, like their federal counterparts, do not extend extraterritorially

10  to reach these offshore transactions.  *Diamond Multimedia Systems, Inc. v. Sup. Ct.*, 19 Cal. 4th

11  1036, 1059 (1999).  Plaintiff has not and cannot allege a California buyer, seller, or offer to sell or

12  buy made in California.  The offer to buy came from the Netherlands through Citgo Global, and

13  was directed to Bermuda, the location of Ark Discovery (Offshore)'s administrator.  California

14  has *no* regulatory interest in this foreign transaction, and any effort to extend California's

15  regulatory reach that far would run afoul of the presumption against extraterritorial application of

16  statutes and the Due Process clause.  *Id.*.  Plaintiff has also failed to plead its California fraud-

17  based claims with the requisite level of particularity.  In addition, Plaintiff cannot state a claim

18  because it cannot plead a viable remedy.  Damages are unavailable under the plain language of

19  the statute where, as here, the buyer still holds the shares.  Rescission is also unavailable because

20  Plaintiff has not sued the actual issuer, Ark Discovery (Offshore), which is the only entity that

21  could receive the shares and return the consideration for the shares back to MVP.  *See Viterbi v.*

22  *Wasserman*, 191 Cal. App. 4th 927 (2011).  Accordingly, for these reasons as well, the California

23  Securities Law claims, must be dismissed.

24          As for the negligence claim, Plaintiff cannot pursue this claim given the "shareholder

25  standing" doctrine.  This claim, which arises out of the contention that Moving Defendants

26  mismanaged Ark Discovery (Offshore), is one held by Ark Discovery (Offshore), not its

27  shareholders.  The claim cannot be pursued directly, and instead must be pursued, if at all,

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-2-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   through a derivative action, which Plaintiff has not done.  In addition, Plaintiff fails to allege facts

2   establishing a duty of care owed by any Moving Defendant to the Plaintiff, and the claim is

3   otherwise barred by the economic loss rule.

4        Finally, Plaintiff fails to allege the facts necessary to establish personal jurisdiction over

5   Moving Defendants in California:  None is alleged to be located in this state, and none of the

6   alleged conduct was targeted at this forum.  Indeed, Plaintiff essentially fails to link the Moving

7   Defendants even to the alleged wrongdoing, much less to California.

8        Plaintiff has had multiple opportunities to cure the pleading deficiencies previously

9   identified by the Moving Defendants and has failed to do so.  Accordingly, Moving Defendants

10  request that their motion be granted and Plaintiff's claims dismissed with prejudice.

11
**II.**
**STATEMENT OF THE CASE**

12

13  **A.    Procedural History**

14       Plaintiff filed its original complaint on September 15, 2010.[1]  Moving Defendants moved

15  to dismiss under Rule 12(b)(1) and Article III of the Constitution on the ground that plaintiff

16  MVPAM, an uninjured investment advisor, lacked standing to assert the claims of its client,

17  MVP, the alleged actual investor.  Moving Defendants also moved to dismiss under Rule 12(b)(6)

18  for failure to state a claim and Rule 12(b)(2) for lack of personal jurisdiction.

19       On April 14, 2011, the Court issued its order granting the Rule 12(b)(1) Motion, finding

20  that Plaintiff lacked constitutional standing.  The Court granted Plaintiff leave to amend.  Because

21  of its ruling on the standing issue, the Court did not reach the other grounds raised by the Moving

22  Defendants.

23       On April 25, 2011, Plaintiff filed its First Amended Complaint ("FAC").  Moving

24  Defendants again moved to dismiss on similar grounds.  By order filed September 22, 2011, the

25  Court dismissed the FAC, finding that MVPAM had again failed to properly allege facts that

26

27  _____
[1]    Moving Defendants are not aware of information establishing that service of the Third
28  Amended Complaint has been completed on the non-moving defendant Granat.

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-3-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   established that it had Article III standing.  The Court provided MVPAM an additional chance to

2   amend.

3       On October 3, 2011, MVPAM filed the SAC.  The SAC contained few new allegations of

4   substance, with the primary changes being amended allegations in Paragraphs 3 and 87

5   concerning MVPAM's purported status as an assignee of MVP, a new paragraph 32(b) that

6   makes reference to a unrelated criminal indictment, and new allegations in Paragraph 51

7   concerning the foreign entities – VP Bank and Citco Global– involved in MVP's alleged purchase

8   of the shares at issue in this case.  Moving Defendants again moved to dismiss.  On January 6,

9   2012, the Court again dismissed the action on the grounds of lack of subject matter jurisdiction.

10  The Court did not reach Moving Defendants' Rule 12(b)(6) motion to dismiss.

11  **B.      The Third Amended Complaint:  Brought by MVPAM, an Investment Advisor,
         Purporting to Assert the Claims of its Client, MVP, as an Alleged Assignee.**

12

13      On January 16, 2012, Plaintiff filed its Third Amended Complaint.  The amendments

14  related only to the alleged assignment.  Plaintiff amended no other allegations, and did not fix any

15  of the defects identified in the prior motions.

16      The TAC establishes the transactions at issue to be entirely foreign.  Plaintiff MVPAM

17  acknowledges that it is not the purchaser of the securities at issue.  (TAC, ¶ 3.)  Instead, it is

18  merely the investment manager for the alleged actual purchaser, non-party MVP, an offshore

19  British Virgin Islands hedge fund.  *Id.*  Plaintiff alleges that it is the "attorney-in-fact" for MVP

20  pursuant to an Investment Management Agreement, and that it is bringing this action as the

21  assignee of MVP.  (*Id.* ¶¶ 3, 87.)  Further, Plaintiff also admits to two additional foreign parties in

22  the alleged purchase transaction, as it alleges that MVP's investments were not made directly by

23  MVP, but instead through two other offshore entities, Verwaltungs - und Privat-Bank

24  Aktiengesellschaft ("VP Bank"), a Lichtenstein bank, and Citco Global Custody ("Citco"), a

25  Netherlands bank that MVPAM alleges is VP Bank's custodian.  (*Id.*, ¶¶ 51, 59, 71.)

26

27

28

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

**C.    The Investment and the Exposure Of Petters' Ponzi Scheme**

MVPAM alleges that MVP's losses arise out of MVP's investments in Ark Discovery (Offshore), an offshore British Virgin Islands hedge fund that is not a named defendant.  (TAC, ¶23, 26, 27.)  Plaintiff alleges that Ark Discovery (Offshore) loaned money to its onshore counterpart, Ark Discovery II, LP, also not a named defendant, which in turn, loaned money to its "Client," an entity or entities associated with Tom Petters (collectively, "Petters").  (*Id.*, ¶ 27; *see also id.*, ¶ 42, citing to Ark Discovery Overview, reproduced at RJN, Ex. E ("The funds are independent vehicles.  Ark Discovery II, LP originates transactions while Ark Discovery Fund (Offshore) Ltd. provides secured debt financing to Ark Discovery II, LP to enable origination."); "Presentation," *id.*, ¶ 63, reproduced at RJN, Ex. F, at 10, 17 (describing investment platform).)

Petters in turn is alleged to have used the loan proceeds to finance purchases by big box retailers of "white goods" (such as consumer electronics and household appliances).  Plaintiff at times appears to allege that Ark Discovery (Offshore)'s loans were purportedly secured by these underlying white goods, but other allegations and facts subject to judicial notice make clear that Ark Discovery (Offshore)'s loans were secured only by the assets of its onshore counterpart, Ark Discovery II, LP.  It was instead Ark Discovery II, LP's loans that were to be secured by the underlying purchase orders, receivables due from retailers, and associated credit insurance.  (*Id.*, ¶ 27, 42, 63; RJN, Ark Discovery Overview, Ex. E, and Ark Presentation, Ex. F, at 10, 17.)  Plaintiff alleges that the retailers were to repay Ark Discovery II, LP, directly for the goods whose purchase they financed through the Petters' entities.  (*Id.*, ¶ 27.)

Petters, however, was running a multi-year, multi-billion dollar Ponzi scheme.  Plaintiff alleges that under the Petters Ponzi Scheme, loans from lenders like Ark Discovery II, LP, were not used to finance legitimate purchases by big box retailers.  (*Id.*, ¶ 28.)  Instead, Petters used the new loans to pay the loans of the previous lenders, thus making it appear that those prior loans had in fact financed real transactions.  (*Id.*)  According to Plaintiff, Petters Ponzi Scheme depended upon lenders accepting payments from his entities, rather than the retailers, and preventing those same lenders from verifying the transactions between the retailers and Petters' entities.  (*Id.*)  As such, Petters arranged for his entities to repay the loans, and prevented lenders

-5-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

from verifying the underlying transactions with suppliers, from accessing warehouses to view the products, and from independently verifying the accounts receivable with the various retailers. (*Id.*)

Plaintiff alleges that on September 19, 2008, federal investigators exposed the Petters Ponzi Scheme, and that by October 2008, Ark Discovery Fund (Offshore) was in liquidation, allegedly causing MVP's $2 million investment to lose nearly all of its value. (*Id.*, ¶ 29.) MVP was not alone in these losses. The fraud of Petters and his confederates reached back over a decade and caused billions in losses. In 2009, a federal jury convicted Petters of 20 counts of wire and mail fraud, money laundering and conspiracy. He was sentenced to fifty years in prison and is in bankruptcy.[2] As described in Petters' criminal proceedings, there was an elaborate charade of real companies, shell companies, financing transactions, extensive false documentation, and collusion among multiple Petters' employees and third parties – all designed to create the illusion of legitimacy and allow the Ponzi scheme to continue. Petter's fraud was sophisticated, massive, and perpetrated on over 500 victims, ranging from individual investors to sophisticated hedge funds, victims who included those situated as defendants in this lawsuit.

**D.    Named Defendants:  Plaintiff's Indiscriminate Joinder of Defendants.**

Plaintiff has not named either Ark Discovery (Offshore) or Ark Discovery II, LP, as defendants. Ark Discovery (Offshore) is in receivership in the British Virgin Islands. (TAC, ¶¶ 29, 84.) Ark Discovery II, LP, is in bankruptcy. Plaintiff has instead named Ark Royal Asset Management Ltd. ("ARAM"), alleged to be a Bermuda company, which acted as the investment manager for Ark Discovery (Offshore).[3] (*Id.*, ¶¶ 8, 30.) Also named as defendants are the alleged managing partners of ARAM, Steven Vestbirk, alleged to be a resident of Bermuda, and Jeff

---

[2]    For background and a fuller context, Petters' criminal indictment, and associated verdict and judgment are attached for the Court's reference to the Request for Judicial Notice as Exhibits A to C.

[3]    Defendant Vestbirk Capital Management is alleged to have been the predecessor to ARAM. (TAC, ¶ 9.) ARAM and Vestbirk Capital Management are referred to as ARAM.

-6-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1  Balliet, alleged to be a resident of Texas.[4]  (*Id.*, ¶¶ 4, 5.)  The TAC alleges no direct

2  misrepresentations by Balliet, and, as to defendant Vestbirk, alleges only one, supposedly made in

3  a telephone discussion in September 2007, over six months before MVP made its first investment

4  in Ark Discovery (Offshore) and well before the Ark Discovery (Offshore) fund was even

5  launched.  (*See id.*, ¶ 37.)

6          Plaintiff further names a host of individuals and entities without any alleged link to the

7  alleged fraud.  For example, Plaintiff names Allison Hanslik, a resident of Texas, in her alleged

8  capacity as Chief Operating Officer for ARAM, but alleges no facts showing misrepresentations

9  or even involvement by her.  (*Id.*, ¶ 6.)  Plaintiff also names Ark Royal Asset Management, LLC,

10  and Ark Discovery LLC, as allegedly involved in the investment activities of Ark Discovery

11  (Offshore) in the United States, which activities allegedly took place through Ark Royal

12  Holdings, LLC, and its several subsidiaries.  (*Id.*, ¶¶ 11-19.)[5]  The TAC completely fails to

13  include facts showing the purported role of these entities.

14  E.      **The Alleged False Representations and Associated Investments by MVP.**

15          Plaintiff identifies four primary sets of alleged misrepresentations:  (1) A September 24,

16  2007 phone call between Vestbirk and Michael Stratford, principal for MVPAM; (2) a one-page

17  fact sheet sent twice to MVPAM via email, once on February 7, 2008, and again on February 26,

18  2008; (3) a Presentation, emailed to MVPAM on May 8, 2008, and (4) a series of performance

19  reports intermixed through this time period.  Plaintiff does *not* allege any specific offer to sell

20  MVP shares of Ark Discovery (Offshore), either separately or through any of these alleged

21  misrepresentations.

22

23  _____

24  [4]      The remaining individual defendant, Jim Granat, of Illinois, is alleged to be part of the
    ARAM management team and a portfolio manager.  (TAC, ¶ 7.)  Granat is not represented by
25  undersigned counsel and is not a moving party.

26  [5]      These alleged affiliates or subsidiaries are Moving Defendants:  Ark Royal Services, LLC;
    Ark Royal Capital, LLC; Ark Royal Capital Funding, LLC; Ark Royal Capital Inc; Ark Royal
27  Resources, LLC; Ark Royal Assurance, LLC; and Ark Royal Investments, LLC.  All of these
    entities, as well as Ark Royal Asset Management, LLC, and Ark Discovery LLC, will be referred
28  to herein as "Ark Entities (US)."  (TAC, ¶¶ 11-19.)

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-7-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

*September 24, 2007 Phone Call*

Plaintiff's first alleged misrepresentation arises from an alleged September 24, 2007 conference call between Stratford, Dino Coppola, and Steven Vestbirk. According to Plaintiff, Vestbirk allegedly discussed a potential future fund, Ark Discovery (Offshore), Vestbirk's experience in this type of investment, the established history of the underlying company (Petters), the expected safety of the investment, and the due diligence to be conducted, which, according to Plaintiff, allegedly included "constant contact" with the borrower (presumably Ark Discovery II and/or Petters, Plaintiff does not specify), and all counterparties to the underlying transactions, which presumably means the retailers and suppliers of the goods themselves. (TAC, ¶ 37(G).) As discussed further below, however, the written materials later allegedly provided to Plaintiff made no reference to "constant contact" with the retailers, and only referenced contact with the Petters entities, which are referred to as the "Client" in the materials. (*Id.*, ¶¶42, 63, RJN, Exs. E, F at 20.)[6]

Only Vestbirk is alleged to have been involved in this call; Moving Defendants Balliet, Hanslik, and the Ark Entity (US) defendants are not alleged to have had any role whatsoever. (*Id.*, ¶ 37.) Moreover, the connection between this call and any later MVP investments is attenuated, at best. Vestbirk and Stratford were allegedly discussing a future, contemplated opportunity at the time; the statements were forward looking. The allegations further establish that MVPAM's principal, Michael Stratford, knew at the time of the call, that is, *over six months before* the first alleged investment by MVP, that the Petters Companies were expected to be involved. (*Id.*, ¶ 37, at 18:17-18.) Plaintiff, an experienced hedge fund manager, had previously placed MVP in other Petters investments, and therefore had over six months to conduct whatever

---

[6]     In Paragraph 37, Plaintiff's allegations appear to suggest that Vestbirk told Plaintiff that Ark Discovery II would "extend the loan to the buyer," meaning the underlying retailer. (TAC, ¶ 37(D),(H)). It is not clear what Plaintiff is trying to suggest by this allegation. As Plaintiff's other allegations clarify, however, and as the documents subject to judicial notice demonstrate, Ark Discovery II made no loans to the Buyers (retailers), only to Petters entities, which then, in turn, financed the retailer's purchases. Similarly, Ark Discovery (Offshore) also made no loans to retailers, and instead only loaned funds to Ark Discovery II. (*See id.*, ¶ 37; RJN, Exs. E, F.)

-8-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1  due diligence he saw fit on this potential Petters investment before he directed MVP to make its

2  purchase.[7]

3  *Ark Discovery Summary Sheet*

4  No misrepresentations are alleged to have been made for the next six months.  On

5  February 7, 2008, and again on February 26, 2008, Plaintiff alleges that Coppola emailed

6  Stratford a one-page summary describing the Ark Discovery investment.  (TAC, ¶¶ 42, 43; RJN,

7  Ex. E.)  Plaintiff quotes extensively from but does not attach this document to the TAC, and it has

8  instead been supplied by Moving Defendants as part of the Request for Judicial Notice.  Plaintiff

9  alleges misstatements concerning the investment's structure, expected due diligence, and the

10  experience of fund management.  (*Id.*, ¶ 42-43; *see* RJN, Ex. E.)  Contrary to the statements of

11  constant contact with retailers and suppliers that Plaintiff claims Vestbirk allegedly made,

12  however, these written sheets state only that there would be "on-going due diligence and

13  communication with the client [Petters' entities]."  (RJN, Ex. E, in "Strategy Overview.")  No

14  mention is made in this written documentation of "constant contact" with the participants in the

15  underlying transaction such as the retailer or supplier.  (*Id.*)

16  Plaintiff alleges in conclusory fashion that this fact sheet constitutes "group-published"

17  information.  Plaintiff alleges no specific facts showing any particular defendant's supposed

18  direct or even indirect role in the preparation or dissemination of this fact sheet, or that any

19  particular defendant had ultimate authority over the content of the statement or whether it was to

20  be made, however.  Instead, Plaintiff relies solely upon the alleged positions of the individual

21  defendants as "high ranking management" officials to establish the purported link between them

22  and the statements.  Plaintiff alleges nothing at all with respect to the Ark Entities (US).  (TAC,

23  ¶ 42.)

24

25

---

26  [7]    MVPAM had placed MVP into Petters' investments, including the Palm Beach
Promissory Fund, well *before* Ark Discovery (Offshore) was even proposed as a potential future

27  investment.  *See* TAC, ¶ 40 31 (citing to November 7, 2007, email Coppola/Stratford email); *see
also*  Defendants' Request for Judicial Notice in Support of Motion to Dismiss Original

28  Complaint, Ex. F, filed February 24, 2011, Dkt. No. 21-6) (attaching November 7, 2007 email).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    Plaintiff also fails to disclose, but the Court may properly take judicial notice of, the fact

2    that the information sheet included substantial disclaimers and made express reference up at the

3    top of the sheet to a more complete offering memorandum.  (*E.g.*, RJN, Ex. E ("Other terms

4    apply.  Investors should carefully review the Fund Information Memorandum."))  Moreover, the

5    one-page summary sheet concluded with the following express disclaimer:  "*This is neither an*

6    *offer to sell nor a subscription of any offer to purchase* interests in Ark Discovery II, LP or Ark

7    Discovery Fund (Offshore) Limited (the "Funds")."  (*Id.* (emphasis added).)  By its very terms,

8    this one-page sheet is *not* an offer to sell, and Plaintiff alleges no facts establishing to the

9    contrary.

10       *First Two Alleged Investments*

11    Despite the clear reference in these two documents to entirely separate offering materials,

12    Plaintiff has not attached the Confidential Information Memorandum, any Subscription

13    Agreement associated with MVP's alleged purchase of shares of Ark Discovery (Offshore), or

14    any offering or transactional document whatsoever.  In fact, Plaintiff *never* alleges that Ark

15    Discovery (Offshore) or any other defendant made an offer to sell shares to MVP (or to anyone

16    else for that matter), how or when that offer was made or conveyed, or what constituted the offer.

17    The Vestbirk telephone conference is not alleged to be such an offer, and both the one-page fact

18    sheet and the presentation (discussed below) expressly disclaim that they constitute such an offer.

19    Plaintiff alleges only that MVPAM caused MVP to make the purchases.  (TAC, ¶¶ 51, 59, 71.)

20    These alleged purchases, however, were not even made by MVP.  Instead, Plaintiff alleges

21    that MVP has a custodial bank, VP Bank, which is in Lichtenstein.  VP Bank allegedly has a bank

22    account, Account No. 190023, with yet another off-shore entity, Citco Global, which is alleged to

23    be a custodial service based in the Netherlands.  (*Id.*, ¶ 51.)  MVP alleges that VP Bank holds

24    assets for the benefit of MVP in this VP Bank account at Citco Global.  (*Id.*)  Plaintiff further

25    alleges that "[a]ll of MVP's investments in the Ark Discovery Fund alleged herein are held, and

26    have been held at all times since they were purchased, for the benefit of MVP in VP Bank

27

28

-10-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   Account Number 190023 with Citco." (*Id.*)  Plaintiff alleges that the purchases of the

2   investments in Ark Discovery (Offshore) were made by Citco Global.  (*Id.*)

3        Plaintiff alleges the first investment of $1 million in Ark Discovery (Offshore) was made

4   by Citco Global on April 1, 2008.  Plaintiff alleges that the purchase was "consummated" when

5   the purchase funds were wired by Citco Global from its bank account at HBSC in New York,

6   which in turn allegedly completed the purchase by wiring the funds to Ark Discovery Fund's

7   account at JP Morgan, also in New York.  (*Id.*)  Following this first purchase by Citco Global,

8   Plaintiff alleges a series of communications on the investment's performance.  (*Id.*, ¶¶ 52-57.)

9   Plaintiff alleges a second investment on July 1, 2008, in the amount of $500,000, again by Citco

10  Global.  (*Id.*, ¶ 59.)  Plaintiff alleges that further performance reports followed that investment.

11  (*Id.*, ¶ 60-62.)

12        *Ark Discovery Fund Presentation*

13        Plaintiff alleges that soon after the second MVP investment, MVPAM received a

14  presentation entitled "Ark Discovery Fund."  (TAC, ¶ 63; RJN, Ex. F.)  This presentation covered

15  aspects of the investment's structure and expected performance.  (RJN, Ex. F.)  The presentation

16  also included an express and detailed "Disclaimer" that provided, among other things, that the

17  presentation was not an offer to sell any security, and that no such offer would be made except

18  through the formal offering materials.  (*Id.* at 1.)  Similarly, it stated that potential investors

19  should "refer to the fund offering memorandum for a full explanation of the risk factors

20  associated with this investment." (*Id.* at 19.)

21        Again, rather than allege specific facts demonstrating that any Moving Defendant made

22  the statements in the Presentation, Plaintiff instead relies upon a conclusory allegation that the

23  document was "group published," and that Moving Defendants should be deemed to have been

24  involved solely by virtue of their alleged positions within Ark Discovery (Offshore) Ltd.  (TAC

25  ¶ 63.)

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    *Remaining Investment*

2         Plaintiff alleges that subsequent to receiving this Presentation, he received two more

3    monthly performance reports.  (TAC, ¶¶ 69, 70.)  Plaintiff alleges that he directed the final

4    $500,000 investment to be made by MVP on August 1, 2008, again purchased by Citco Global.

5    (*Id.*, ¶ 71.)  Plaintiff alleges several more performance reports follow between August 5 and

6    September 22.  (*Id.*, ¶¶ 72-79, 82.)

7    **F.    Plaintiff's Allegations Concerning Defendants' Alleged Knowledge of the Falsity of
         the Alleged Misrepresentations.**

8

9         There are no allegations of fact demonstrating any actual knowledge by any Moving

10   Defendant of the ongoing Petters Ponzi Scheme before it was exposed in September 2008.

11   Plaintiff's contention, therefore, is that Moving Defendants should have known that Petters was

12   engaged in a massive fraud.  Plaintiff, however, has not alleged any specific facts plausibly

13   demonstrating that any Moving Defendant knew of, or was acting in reckless disregard of, the

14   Petters' fraud.

15        **1.    Knowledge Purportedly Gained From Steven Vestbirk's Background at
             Arrowhead.**

16

17        Plaintiff speculates that Vestbirk gained "direct or indirect" experience with Petters loan

18   transactions because he was a director of the Arrowhead hedge fund "during at least the first six

19   months of 2003."  (TAC, ¶ 32.)  Plaintiff alleges that in December 2008, he spoke with Dino

20   Coppolla, who allegedly had been associated with ARAM, and Coppola told Plaintiff of

21   Vestbirk's alleged prior position with Arrowhead, and that Vestbirk allegedly "boasted" of his

22   connection to Petters and knowledge of the Petters trade.  (*Id.*)  Plaintiff alleges no facts that

23   would support the inference that Vestbirk gained any knowledge of any potential wrongdoing by

24   reason of this alleged short involvement with Arrowhead five years before Plaintiff's alleged

25   investments in this case.

26        Next, and in lieu of actual facts showing wrongdoing by any Moving Defendant, Plaintiff

27   instead includes allegations regarding unrelated criminal proceedings against two non-parties,

28

-12-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   with no showing of any connection between these non-parties and any Moving Defendant.  For

2   example, Plaintiff alleges that in April 2011, Michelle Palm, a former executive of a different

3   hedge fund, Arrowhead, pled guilty to a charge that she made a false statement to the SEC in

4   connection with its investigation of the Petters Ponzi Scheme.  Per Plaintiff, Palm had originally

5   falsely testified to the SEC that she did not know that repayment of the loans was coming from

6   Petters' entities.  (*Id.*)  Palm later recanted this testimony, and testified that, in fact, she had

7   known that the payments were coming from Petters' entities, and had known that the investors in

8   Arrowhead were being told differently.  (*Id.*)  Plaintiff then adds yet another Arrowhead criminal

9   matter to the mix, this one relating to the indictment of James Fry, who had been the CEO of

10  Arrowhead from 1999 to 2008.  Plaintiff alleges that Fry knew that retailers were not repaying the

11  loans made by Arrowhead to finance the purchases and that Petters was instead repaying the

12  loans, and nonetheless misrepresented to investors that retailers were repaying the loans.  (*Id.*)

13          Then, based again merely upon his status as an outside director of Arrowhead for six

14  months in 2003, Plaintiff speculates that Vestbirk somehow supposedly knew that Arrowhead

15  was knowingly making these misrepresentations, and that Vestbirk also supposedly "shared his

16  knowledge of the Petters trade, acquired as a result of his association with Arrowhead" with

17  Moving Defendants Balliet and Hanslik.  (*Id.*)  While Plaintiff seeks to tar Vestbirk through this

18  remote association, it is more telling, given these other prosecutions, that *no* criminal action is

19  alleged to have been initiated against Vestbirk in connection with Arrowhead.  Further, no facts

20  are alleged to support these conclusory allegations of Vestbirk's supposedly imputed knowledge,

21  or of the supposed communication of this imputed knowledge from Vestbirk to Balliet or Hanslik.

22  The speculation is instead solely based on "information and belief," without the required

23  supporting specific factual allegations required under the Private Securities Litigation Reform Act

24  ("PSLRA").

25          **2.      Prior Investment Experience with Ark Diversified Fund and Ark Royal Fund.**

26          Plaintiff next alleges that by reason of an alleged association with the separate Ark

27  Diversified and Ark Royal Funds, Vestbirk, Balliet, and Hanslik allegedly gained knowledge that

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    Petters-supervised transactions were not repaid by retailers, and that Petters never allowed lenders

2    to verify transactions with the suppliers, the existence of the goods at warehouses, or the

3    existence of accounts receivable directly with the retailers.  (TAC, ¶ 33.)  No facts whatsoever are

4    alleged concerning the nature of the investments made by these other funds, how they were

5    structured, what their level of involvement in Petters transactions was supposed to have been,

6    whether their involvement was the same as Ark Discovery (Offshore) or Ark Discovery II, LP's

7    is alleged to have been, or what specific red-flags were known to these defendants as a result of

8    their alleged association with these prior investment funds.  (*Id.*)

9         **3.      Information Allegedly Obtained from Jim Granat**

10        Plaintiff alleges that defendant Jim Granat (who is not a moving party and who has not

11   appeared in this action to date), was an officer with an investment company known as Edge One

12   Capital LLC.[8]  Plaintiff alleges that Granat officially joined ARAM in March 2008, but was

13   purportedly acting as a member of Senior Management and a Portfolio Manager for Ark

14   Discovery (plaintiff does not specify which entity – Ark Discovery (Offshore) or Ark Discovery

15   II, LP) as early as September 2007.  (TAC, ¶ 36.)  As Plaintiff notes in the very next paragraph of

16   the amended complaint, however, Ark Discovery was only a contemplated, future fund in

17   September 2007.  (*Id.*, ¶ 37(A) (Vestbirk allegedly explains on September 24, 2007, call that "Ark

18   Discovery Fund was being set up . . . ."))

19        Plaintiff then reviews testimony provided by Jim Granat in the criminal prosecution of

20   Tom Petters.  (*See id.*, ¶ 41.)  According to Plaintiff, Granat supposedly "admitted under oath"

21   that ARAM (1) never spoke with the alleged retailers or suppliers in the Petters transactions; (2)

22   never visited any warehouses purportedly containing the collateral; (3) knew by September 2007

23   that the alleged insurers had not been able to gain access to warehouses and confirm the existence

24   of collateral; (4) knew by September 2007 that Petters "never allowed" access to the supply

25   chain; and (5) ARAM caused Ark Discovery to loan money to Petters entities despite knowing

26   _____

[8]      A different company, Edge One LLC, was one of the "special purpose vehicles" involved
27   with the Petters' transactions.  (TAC, ¶ 36.)  Although the names are similar, Granat's Edge One
     Capital, which allegedly became Ark Discovery II, LP, is an entirely different company from the
28   Petters' controlled entity, Edge One LLC.  (*Id.*)

-14-

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1  the foregoing and knowing that ARAM had done nothing to independently verify the transactions

2  or collateral.  (*Id.*)  Plaintiff alleges that Granat's knowledge should be imputed to ARAM, and

3  that Plaintiff is "informed and believes" that Granat "shared his knowledge of the foregoing with

4  his superiors and partners, Vestbirk, Balliet and his colleague Hanslik."  (*Id.*)

5          No specific facts are alleged to support these speculative and conclusory allegations.

6  Moreover, Plaintiff has misleadingly summarized the underlying Granat's testimony upon which

7  these allegations rely.  Granat's testimony is attached to the Request for Judicial Notice as Exhibit

8  D.  Granat testified that he was initially employed by a company (Edge One Capital) that invested

9  in the Petters' Group and that ultimately became affiliated with Ark Discovery II.  (RT, at 1634,

10  1639, 1640.)  Granat did not testify that he was speaking for ARAM, any Moving Defendant, or

11  anyone apart from himself.  (*E.g.* RT, at 1654.)

12          In his testimony, Granat reviewed his company's early investment history in the Petters

13  entities, the representations made to him by Petters representatives, as well as the obstacles that

14  began to be raised to Granat's efforts to conduct due diligence on the underlying transactions.

15  (RT, at 1635-36; 1649-50.)  Granat stated that he understood that the insurance companies had in

16  fact been making efforts to inspect warehouses.  (RT, at 1651.)  Granat also described how

17  Petters' background and reputation as a successful businessman was important to his decision to

18  do business with him.  (RT, at 1636-37.)  Granat reviewed how Petters' acquisition of well-

19  known, legitimate companies such as Polaroid, Sun Country Airlines, and Fingerhut gave validity

20  to Petters' business dealings.  (RT, at 1636-37.)  All of these early representations took place

21  months before Granat became associated with ARAM.

22          Granat noted that incoming payments from the Petters' investment were monitored and

23  timely received.  (RT, at 1637, 1656, 1660.)  No problems with incoming payments were seen

24  through late 2007 or into 2008.  (RT, at 1640, 1642.)  Granat also described the extensive

25  documentation supplied by the Petters' team, including purchase orders, invoices, loan

26  documentation – documentation that was reviewed by outside counsel prior to execution – as well

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-15-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   as UCC filings.  (RT, at 1641-42; 1653-54; 1655.)  Granat stated that this documentation

2   convinced him that the underlying transactions had in fact occurred.  (RT, at 1654.)

3       Granat testified that he first noticed a delay in payments in mid-summer 2008.  Granat

4   stated that he followed up on this delay by contacting Petters' representatives, who assured him,

5   repeatedly, that the delays were temporary, resulting from the slowing economy, and that

6   payments would be made.  (RT, at 1644-45; 1656.)  Granat also stated that when news of the

7   search warrant broke in September 2008, the owners of Ark Royal requested that he immediately

8   return from a business trip in Switzerland to investigate.  He did so that very day.  (RT, at 1645.)

9   Upon his return, Granat managed to speak with Petters, who again reiterated that all was fine and

10  that "everything would be cleared up."  (RT, at 1646.)[9]

11      Granat testified that had he had been repeatedly lied to concerning these transactions, and

12  that if he had known of any problem, he would have immediately alerted Ark Fund to make no

13  further investments.  (RT, at 1658-59.)  Granat further disclosed that the Ark Fund investors lost

14  approximately $125 million and that he personally lost $250,000 as a result of Petters' fraud.

15  (RT, at 1646.)

16      **4.    Alleged Loans to the Petters Entity, Edge One, LLC.**

17      Plaintiff alleges in vague fashion that Ark Discovery made prior loans to the Petters'

18  entity, Edge One, from which Moving Defendants allegedly should have known that the

19  _____

20  [9]     Granat also testified about one early instance in 2007 when a Petters representative
    rebuffed an effort to inspect merchandise at supplier warehouses in part because of logistical
21  concerns.  (RT, at 1635-36, 1650.)  Granat noted that Petters representatives informed him that
    they did not want investors speaking to the retailers.  (RT, at 1651.)  Granat further testified,
22  however, that he believed the insurance companies were still involved in trying to check the
    warehouses, RT, at 1650-51, and Granat did not conclude prior to the disclosure of the search
23  warrant in September 2008 that the transactions were not legitimate.  (RT, at 1645.)  Further,
    Granat did not testify that he conveyed the information concerning access to the warehouses or
24  retailers to any Moving Defendant at any time period relevant to this lawsuit.  And the contacts
    with Petters that involved certain Moving Defendants were all ones in which Petters'
25  representatives provided assurances.  These contacts were not "red flags" of ongoing fraud.  (RT.
    at 1645, 1659.)  In any event, there are no facts alleged that Granat passed on information
26  concerning his other interactions with the Petters' group to any Moving Defendant, apart from
    Plaintiff's mere speculation that this happened.  (*See* TAC, ¶ 41.)
27

28

DLA PIPER LLP (US)
SACRAMENTO
-16-
WEST\232187443.1
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

repayment flow was not as represented.  (TAC, ¶¶ 47-49.)  Plaintiff alleges that Ark Discovery II made six loans to Edge One with principal amounts of $57 million.  Plaintiff alleges that this $57 million was repaid to Ark Discovery II, but that it was repaid with interest by a Petters entity and not by the retailers.  (*Id.*, ¶ 47.)  While Plaintiff alleges in conclusory fashion that Moving Defendants knew or were reckless in not knowing the actual source of the repayment funds, Plaintiff does not allege any fact demonstrating that any Moving Defendant knew of, or was advised of, the source of the repayment funds, or reviewed any documentation concerning the source of the repayment funds, during this relevant time period.  (*See id.*)

Next, Plaintiff alleges that Ark Discovery II made a series of loans on March 5, 10, and 12, 2008.  These loans allegedly had maturity dates of June 23, 2008.  Plaintiff alleges that Ark Discovery II was repaid over $3 million on these loans, but that after June 23, 2008, Ark Discovery II did not receive further principal payments, and that the loans were technically in default after June 30, 2008.  Plaintiff alleges that Ark Discovery (Offshore) was the source of the funds for these loans by Ark Discovery II.  (*Id.* at 48, 49.)[10]

Again, Plaintiff does not allege any fact demonstrating that any Moving Defendant knew of, or was advised of, the source of the repayment funds, or reviewed any documentation concerning the source of the repayment funds, during this relevant time period.  (*See id.*)  Instead, the timing of the loans, which did not even come due until summer 2008, simply corroborates the fact that the delays in payment, once experienced, led to immediate follow-up and investigation by Moving Defendants (as the prior loans, per Plaintiff, had in fact been paid).  (*See* TAC, ¶¶ 47, 81.)

**5.    Moving Defendants' Investigation In Response To The Delays In Payment.**

Per Plaintiff's own allegations, Moving Defendants did not sit idly by once they learned of the delays in payment.  Instead, they made requests to access supply warehouses, for example, to confirm the underlying collateral.  (TAC, ¶ 80.)  If, in fact, Moving Defendants had been aware of

---

[10]    Plaintiff alleges another series of loans between June 30 and September 3, 2008, that were also not repaid.  (TAC, ¶ 58.)  Plaintiff alleges no specific facts demonstrating that these loans were made with knowledge of the existence of the Petters' scheme.

-17-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

the Petters Ponzi Scheme, complicit in it, or even recklessly blind to it with the hope of having their loans paid off, such requests would *not* have been made.  The only result that could come from such an inspection would be to prove or disprove the validity of the transaction.  It is not an inquiry that would be made by someone who did not want to know the true facts, or who already knew those facts.

And, indeed, as Plaintiff is forced to concede, Defendants continued to press for more information.  (*Id.,* ¶ 80).  Plaintiff also expressly identifies a September 2008 call from Balliet and Granat to Petters confederates Coleman and White.  (*Id.*, ¶ 81.)  Plaintiff alleges that on that call, Balliet demanded third-party confirmation from the retailers, and disclosed that ARAM had just learned that payments on the loans were not being paid by the retailers but were instead from Petters.  *Id.*  Balliet expressed concern that this fact could jeopardize the insurance that had been expected to protect the investment.  (*Id.*)[11]

These allegations support only one plausible inference:  Vestbirk, Balliet, and the rest of the Moving Defendants had no idea that Petters was running a massive Ponzi scheme and did not know any of the statements concerning the structure of the transactions were inaccurate when made.[12]  As with the Granat testimony, this allegations show only an immediate investigation by

---

[11]     Plaintiff alleges that notwithstanding the foregoing, Granat tried to end the call on an optimistic note, with reference to future investments in the fund.  (TAC, ¶ 81.)  Plaintiff alleges in conclusory fashion that this statement by Granat means that the Moving Defendants knew this was a Ponzi scheme, and were motivated to keep it going so as to be repaid.  (*Id.*)  Balliet is not alleged to have authorized this statement by Granat.  Moreover, and as discussed further below, this is not a plausible inference.  If Moving Defendant were motivated to keep the scheme going, they would have kept quiet, not pressed for further confirmation on the underlying transactions, as Plaintiff alleges they did.

[12]     Plaintiff alleges that Balliet and Hanslik are Certified Public Accountants in Texas, and that therefore should have been aware of the alleged dangers of related-party transactions, the need for third-party confirmations, and the need for valid transactions to ensure insurance coverage.  (TAC, ¶ 33.)  As alleged by Plaintiff, however, Defendants were trying to get to the bottom of the issues and confirm the legitimacy of the transactions, and it was Balliet, who, upon learning of the related-party issue, the inability to confirm transactions, and the payment delays, aggressively pushed Petters' representatives for answers.  (*See id,* at ¶¶ 80, 81.)  For all of its length and repetition, all that Plaintiff has established through this amended complaint is to demonstrate that Moving Defendants acted immediately when apprised of "red-flags" concerning this investment.

-18-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   ARAM, Vestbirk and Balliet upon the "red flag" of a delay of payment, and not a defendant

2   ignoring such red flags while making contrary public statements.

3         **6.**     **Subsequent Alleged Emails with Vestbirk**

4        Plaintiff closes by citing two emails between Vestbirk and Stratford that post-date the

5   exposure of the fraud.  Plaintiff fails to attach copies of either email to the Second Amended

6   Complaint.  In the first, a December 3, 2008 email from Vestbirk to Stratford, Vestbirk

7   purportedly "admits" that he was "unaware" of any transaction financed by Ark Discovery Fund

8   that was "real."  (TAC, ¶ 85.)  This email was sent months after Petters was exposed as a fraud.

9   It amounts to nothing more than an acknowledgement of what was by then public knowledge, as

10   well as the plain reality that Ark Discovery (Offshore) had been victimized by Petters.  It proves

11   nothing as to any of the Moving Defendants' state of mind prior to the exposure of the fraud.

12        The second, dated January 6, 2009, is of the same ilk.  It demonstrates only that upon

13   identifying discrepancies and delays for the first time, Moving Defendants did not sit by quietly,

14   but instead sought to confirm that the transactions were in fact legitimate and stated that no more

15   monies would be loaned until the issues were clarified.  (*Id.*, ¶ 86.)  Again, this allegation only

16   corroborates that Moving Defendants did not have the requisite scienter at the time the alleged

17   misrepresentations were made.

18
19        **7.**     **Plaintiff Relies Upon the Foregoing Allegations to Attempt to Demonstrate Moving Defendants' Alleged Knowledge of the Falsity of the Representations Concerning the Ark Discovery (Offshore) Investment.**

20        Plaintiff, in cut and paste fashion, repeatedly identifies the foregoing facts to attempt to

21   establish that it is plausible that Moving Defendants knew or were reckless in not knowing of the

22   falsity of the statements concerning the investments' structure and performance, and that Moving

23   Defendant's acts therefore constituted an extreme departure from the customary standard of care.

24   (*See* TAC, ¶¶ 39. 45, 46, 65-68, 83, 90, 101, 108.)  However, as set forth above, Plaintiffs have

25   not identified any specific "red-flag" of which Moving Defendants were aware, apart from the

26   delay in payment, and as Plaintiff alleges Moving Defendants promptly acted upon that

27

28

-19-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

disclosure.  Apart from that delay in payment, not even suffered until the summer of 2008,

Plaintiff offers only mere conclusions, unfounded inferences and suppositions.  Plaintiff does not

plead any fact showing that any Moving Defendant knew of Petters' fraud, or knew, specifically,

that payments were being made by Petters' entities and not by the retailers as had been expected.

**III.**
**ARGUMENT**

**A.     The Action Must Be Dismissed Because Plaintiff Has Failed To State A Claim.**

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual

allegations as true, and must construe them and normally draw all reasonable inferences from

them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th

Cir. 1996).  It need not, however, accept as true unreasonable inferences or conclusory legal

allegations cast in the form of factual allegations.  *W. Mining Council v. Watt,* 643 F.2d 618, 624

(9th Cir. 1981); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Moreover, in

order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 570 (2007).  A claim has facial plausibility "when the plaintiff pleads *factual content* that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added).  This standard

requires more than "a sheer possibility that the defendant has acted unlawfully."  *Id.*; *see also*

*Moss v. U.S. Secret Serv.,* 572 F.3d 962, 967-970 (9th Cir. 2009) (reviewing *Iqbal* pleading

standard); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts are not

required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a

complaint from a motion to dismiss).  Dismissal is proper where there is either a "lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

The court may properly consider exhibits submitted with the complaint, documents whose

contents are alleged or relied on in the complaint, and matters subject to judicial notice.  *Lee v.*

-20-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   *City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001); *Van Buskirk v. Cable News Network,*

2   *Inc.,* 284 F.3d 977, 980 (9th Cir. 2002).  Taking judicial notice of these matters does not convert

3   the motion to dismiss into a motion for summary judgment.  *MGIC Indem. Corp. v. Weisman,*

4   803 F.2d 500, 504 (9th Cir. 1986).  The court is not required to accept as true conclusory

5   allegations that are contradicted by judicially noticed facts.  *Steckman v. Hart Brewing Inc.,* 143

6   F.3d 1293, 1295-96 (9th Cir. 1998).

7        In addition to these general rules, the more stringent requirements of the Private Securities

8   Litigation Reform Act ("PSLRA") and Rule 9(b) apply to certain of Plaintiff's claims.  These

9   standards are addressed in more detail below in Section III(A)(1)(b).

10       **1.    Plaintiff Has Failed to State a Claim for Federal Securities Fraud.**

11       Plaintiff's first cause of action is based on an alleged violation of Section 10(b) of the

12   Securities Exchange Act of 1934 ("Exchange Act") and Rule 10(b)(5) promulgated thereunder.

13   The second cause of action alleges that "by virtue of their positions as control persons," the

14   defendants are jointly liable for securities law violations under Section 20(a) of the Act.  The

15   TAC fails to state a claim under the federal securities law for several reasons.  First, Section 10(b)

16   does not have extraterritorial reach, and controlling United States Supreme Court authority bars

17   Plaintiff's claims, which are based upon offshore transactions.  Second, Plaintiff has failed to

18   meet the strict pleading requirements applicable to a securities fraud claim.  Specifically, Plaintiff

19   has failed to properly plead scienter, and has failed to allege facts tying each named defendant to

20   the alleged wrongdoing.  Third, Plaintiff's Section 20(a) claims falls along with the underlying

21   Section 10(b) claim.  Finally, Plaintiff has also failed to plead sufficient facts to hold certain

22   named defendants in as purported control persons.  Accordingly, Moving Defendants respectfully

23   request the dismissal of the federal securities claims with prejudice.

24

25

26

27

28

-21-

a.   **Foreign Securities Transactions Such as the One Alleged by Plaintiff Are Not Subject to United States Securities Laws.**

(1)   **The Supreme Court in *Morrison v. Nat'l Australia Bank Ltd.* Abrogated the Prior "Conduct and Effects" Test in Favor Of A Bright Line Transactional Inquiry To Determine Whether a Purchase or Sale Is Subject to Section 10(b).**

Plaintiff's claims are based upon alleged purchases of securities that took place offshore, that is, outside of the United States.  Under the controlling United States Supreme Court case of *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), the transactions falls outside of the reach of Section 10(b), and Plaintiff's federal securities law claims must be dismissed.

In *Morrison,* the United States Supreme Court held that Section 10(b) does not apply extraterritorially.  Rather, it "reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Id.* at 2888.  The Court held that the focus of the Exchange Act is not on where the alleged deception originated or occurred, "but upon purchases and sales of securities in the United States . . . .  Those purchase-and-sale transactions are the objects of the statute's solicitude." *Id.* at 2884.

After reiterating that "it is the foreign location of the transaction that establishes (or reflects the presumption of) the Act's inapplicability," the Supreme Court explicitly rejected the argument that Section 10(b) might be applicable "when the fraud involves significant conduct in the United States that is material to the fraud's success." *Id.* at 2885-86.  In so holding, it forcefully rejected the previously applied "conduct" or "effects" tests that had examined general contacts with or effects on the United States to determine whether a purchase or sale was within the reach of Section 10(b), in favor of the above-described "transactional test": that is, "whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange." *Id.* at 2886.[13]

---

[13]   In imposing these territorial limits, the Supreme Court expressed substantial concern with the potential for conflict in laws and "reject[ed] the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad . . . ." *Id.* at 2885.

Like the United States, foreign countries regulate their domestic securities exchanges and securities transactions occurring within

-22-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

Thus, for example, as *Morrison* itself makes clear, it does not matter that the offshore company in which the plaintiff invests may, in turn, have invested in the United States. *Id.* at 2883-84. In fact, the alleged fraud at issue in *Morrison* included a substantial United States component. The claims arose from National Australia Bank's purchase of a Florida-based bank, Homeside. *Id.* at 2875-76, 2883-84. The plaintiff also alleged manipulation of financial models by Homeside in the United States, as well as the dissemination of misleading statements within the United States concerning Homeside's performance. *Id.*

Notwithstanding this United States connection, the Supreme Court stated definitively that the offshore transaction was not within the scope of United States securities laws:

> For it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.

*Id.* at 2884.

Plaintiff's allegations are tailored to the old and rejected "conduct and effects" test.[14] They do not pass muster after *Morrison*, as further demonstrated by analysis of several recent Circuit and District Court cases that have applied *Morrison* to dismiss federal securities law

> their territorial jurisdiction. And the regulation of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters. . . . They all complain of the interference with foreign securities regulation that application of Section 10(b) abroad would produce, and urge adoption of a clear test that will avoid that consequence. The transactional test we have adopted – whether the purchase or sale is made *in the United States*, or involves a security listed on a domestic exchange – meets that requirement.

*Id.* (emphasis added). Plaintiff's claims in this case, which should have been pursued in the British Virgin Islands, well illustrate the Supreme Court's concern.

[14] It is obvious from review of Plaintiff's original complaint that when Plaintiff filed this action in September 2010, it did so without knowledge of the *Morrison* case, which had been issued three months before in June 2010. Plaintiff's original complaint alleges a plainly offshore transaction. Since then, Plaintiff has added additional allegations in an effort to try to dance around the holding of *Morrison*, but simply cannot escape the fact that this claim is based on an offshore transaction and barred by *Morrison* as a matter of law.

-23-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    claims as being based on foreign transactions that fall outside the scope of Section 10(b).  Those

2    cases are reviewed below.

3              **(2)    Cases Applying *Morrison* Have Only Served to Reinforce that
                        Plaintiff's Federal Securities Claims Must Be Dismissed as**
4                       **They Were Not Made in the United States.**

5              Court decisions since *Morrison* have confirmed its abrogation of the old "conduct and

6    effects" test, and identified those factors specifically relevant to the determination of where the

7    transaction took place.  For example, the Second Circuit (the court that originally established the

8    "conduct and effects" test) recently described the specific allegations it concluded are required to

9    bring a particular transaction within the reach of Section 10(b).[15]  *See Absolute Activist Value*

10   *Master Fund, Ltd., v. Ficeto*, __ F.3d __, 2012 WL 1232700 (2d Cir., April 13, 2012).  Noting

11   that the Supreme Court had not fully described what is required to establish that a purchase or

12   sale was "made in the United States," the Second Circuit first reviewed the definitions of "buy,"

13   "purchase," "sale," and "sell," under the Exchange Act, and stated that such terms include "any

14   contract to buy, purchase or otherwise acquire," a stock, or "any contract to sell or otherwise

15   dispose of" a stock.  *Id.*, *6, citing 15 U.S.C. § 78c(a)(13), (a)(14).  From this, the Second Circuit

16   concluded that the act of purchasing or selling is the act of entering into a binding contract to

17   purchase or sell, that is, the moment when the parties become "bound to effectuate the

18   transaction."  *Id.*

19             The Second Circuit then set forth its test to determine whether the transaction was a

20   domestic one:

21                  Thus, in order to adequately allege the existence of a domestic
                    transaction, it is sufficient for a plaintiff to allege facts leading to
22                  the plausible inference that the parties incurred irrevocable liability
                    within the United States to take and pay for a security, or that the
23                  seller incurred irrevocable liability within the United States to
                    deliver a security.

24

25

26

27   _____
     [15]     The Ninth Circuit has not yet issued a definitive ruling on *Morrison* issues, leaving the
28   Second Circuit has the most persuasive guidance post-*Morrison* to date.

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1          DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                          AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
                          Case No. 210-CV-02483-GEB-CMK

1   *Id.*, *7.  In addition, as an alternative to the place of contracting, that is, entry into "irrevocable

2   liability," the Second Circuit held that allegations that title was transferred within the United

3   States would also suffice to establish a domestic transaction.  *Id.*[16]

4          District Courts around the country, while not employing precisely the same language as

5   the Second Circuit in *Ficeto*, have been similarly consistent in requiring allegations establishing a

6   domestic transaction, and in rejecting as irrelevant the old "conduct and effects" test.  *See, e.g.,*

7   *Plumbers' Union v. Swiss Reinsurance Co.,* 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010) (granting

8   motion to dismiss with prejudice and holding that "as a general matter, a purchase order in the

9   United States for a security that is sold on a foreign exchange is insufficient to subject the

10  purchase to the coverage of section 10(b) of the Exchange Act"); *In re Societe Generale Secs.*

11  *Litig.,* 2010 WL 3910286, *6 (S.D.N.Y. Sept. 29, 2010) (granting motion to dismiss with

12  prejudice and holding that: "By asking the Court to look to the location of the 'the act of placing a

13  buy order' and to . . . 'the place of the wrong,' Plaintiffs are asking the Court to apply the conduct

14  test specifically rejected in *Morrison* ); *Cornwell v. Credit Suisse Grp.,* 729 F. Supp. 2d 620, 628

15  (S.D.N.Y. 2010) (awarding judgment on the pleadings, and holding that *Morrison* "foreclosed the

16  application of § 10(b) to any claims related to foreign securities trades executed on foreign

17  exchanges even if purchased by American investors."); *see also Elliot Assoc. v. Porsche*

18  *Automobil Holding SE*, 759 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (dismissing federal securities

19  claims with prejudice and holding that plaintiff could not base federal securities claim on offshore

20  swap agreements).  Together, and uniformly, the holdings of these many cases all strongly

21  support the dismissal of Plaintiff's claims in this action.

22

23

24

25

---

[16]       The Second Circuit firmly put the nail in the coffin on the conduct and effects test,
terming its own prior test "defunct."  *Id.,* *8 ("Similarly, allegations that the Funds were heavily
marketed in the United States and that United States investors were harmed by the defendants'
actions, while potentially satisfying the now-defunct conduct and effects test, do not satisfy the
transactional test announced in *Morrison*.") (internal citations omitted).

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1

(3)     **Plaintiff Has Not Alleged and Cannot in Good Faith Allege that the Purchase or Sale of Ark Discovery (Offshore) Took Place in the United States.**

2

3      Under *Morrison's* transactional test, the alleged purchases of Ark Discovery (Offshore) by

4   Citco Global for VP Bank and allegedly on behalf of MVP fall well outside of the reach of

5   Section 10(b).  The alleged purchaser, MVP, is an offshore hedge fund located in the British

6   Virgin Islands.  (TAC, ¶ 3.)  The investments were made in a fund that itself is offshore, Ark

7   Discovery (Offshore), also located in the British Virgin Islands.  (*Id.*, ¶ 23.)  The actual purchase

8   of the securities was made by another offshore entity, Citco Global, which is based in the

9   Netherlands, using an account (Account No. 190023) held in the name of not MVP, but instead

10  yet another foreign entity, VP Bank, which allegedly acts as MVP's custodial bank.  (*Id.*, ¶ 51,

11  59, 71.)  Moreover, MVP's alleged investments in Ark Discovery Fund are held, "and have been

12  held at all times since they were purchased" in this offshore account at Citco Global.  (*Id.*)  In

13  addition, the alleged investment manager of Ark Discovery (Offshore) is a Bermuda based

14  company, defendant ARAM.  (*Id.*, ¶¶ 8, 30.)  Ark Discovery (Offshore)'s fund administrator,

15  Beacon Fund Services, is also alleged to be offshore in Bermuda.  (*Id.*, ¶ 52.)

16      Thus, a foreign buyer (MVP), relying upon its foreign custodian bank (VP Bank), which

17  in turn used its own foreign custodial agent (Citco Global), allegedly invested in a foreign

18  security (Ark Discovery (Offshore)), which was then held in a foreign bank account.  MVP's

19  investment structure is offshore at every level, carefully designed *by it* to avoid the United States

20  altogether.  For this reason, it lies outside of the reach of Section 10(b).  *See Horvath v. Banco*

21  *Comercial Portugues, S.A.*, 2011 WL 666410, *2-3 (S.D.N.Y Feb. 15, 2011) (federal securities

22  law claims barred by *Morrison* where US-based plaintiff had deposited funds with Portuguese

23  bank for investment in Luxemburg bank that was in turn to use proceeds to invest in German

24  bank).

25      Moreover, Plaintiff purposely omits mention of the contractual documents that effected

26  the sale, and has not alleged, therefore, as required by *Absolute Activist*, that the parties (1)

27  incurred irrevocable liability within the United States to take and pay for a security, (2) that the

28  seller incurred irrevocable liability within the United States to deliver a security, or (3) that that

-26-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   title was transferred within the United States.  *See Absolute Activist*, 2012 WL 1232700 *7-9.

2   Instead, Plaintiff has included only the conclusory allegations that (1) the transaction was

3   consummated when Citco Global wired money to Ark Discovery Fund (Offshore) account in the

4   United States, and (2) that Plaintiff contends the investment funds never left the United States.

5   (TAC, ¶ 51.)

6        These allegations do not suffice.  *See Absolute Activist,* 2012 WL 1232700, *8.  Plaintiff's

7   allegations say nothing concerning when or where the parties reached a binding, irrevocable

8   agreement for the purchase or sale, for example.  How and where, for example, did Citco Global,

9   the purchasing party, make an offer to buy?  How and where did Ark Discovery (Offshore)

10  accept?  Indeed, Plaintiff alleges nothing at all concerning the actual transactional documents,

11  such as any offering memorandum, subscription agreement, purchase order, or confirmation, for

12  example.  These are the contractual documents that would evidence the transaction and its

13  location, yet Plaintiff very conspicuously avoids mention of them completely.[17]

14       Similarly, Plaintiff says nothing of where the shares were issued, or where title to the

15  shares may have passed, except to concede that the shares "have been held at all times since they

16  were purchased" in the offshore account at Citco Global, which in and of itself suffices to support

17  the dismissal of this claim.  (*See* TAC, ¶ 51:14-16.)  In addition, under British Virgin Islands law,

18  shares are not deemed "issued" until the name of the registered shareholder is entered on the

19  share register.  Section 50, Business Companies Act, British Virgin Islands, RJN, Ex. H. ("A

20  share is deemed to be issued when the name of the shareholder is entered in the register of

21  members.").  Plaintiff does not allege that this share issuance took place in the United States, and,

22

23  [17]     Moving Defendants have requested that the Court take judicial notice of the Citco Global Order documents for each transaction, which the Court may properly do as these documents are
24  integral to the Third Amended Complaint in light of Plaintiff's reference to the specific dates, amounts, and actual purchaser and account number for the transactions at issue.  (RJN, Ex. G.)
25  These purchase orders confirm an offshore transaction:  a Netherlands Bank (Citco) (1) placed orders with a Bermuda administrator (Beacon), (2) indicated that the "subscription/purchase form
26  to follow by mail," (3) requested registration of the shares in Citco's name, with a registered address in the Netherlands and mailing address in Ireland, and (4) asked for confirmation to be
27  sent to it in Ireland (fax number begins with 353, the country code for Ireland).  (RJN, Ex. G.)
28  Nothing in these documents suggests a U.S. transaction.

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   in fact, expressly alleges that the issuer, Ark Discovery (Offshore), is in the British Virgin Islands

2   and that Ark Discovery (Offshore)'s administrator, Beacon, is located in Bermuda.  (TAC, ¶ 52.)

3   Further, again under British Virgin Islands law, shares of British Virgin Island companies are also

4   considered to be held in the British Virgin Islands for jurisdictional purposes, further supporting

5   the offshore situs for this transaction.  Section 245, Business Companies Act, British Virgin

6   Islands, RJN, Ex. I. ("For purposes of determining matters relating to title and jurisdiction but not

7   for purposes of taxation, the situs of the ownership of shares … of a company is the Virgin

8   Islands.").

9       Moreover, courts have already held that the mere fact that the flow of purchase money

10  may have touched the United States is not enough, absent more facts where concerning the

11  passage of title, share issuance or place of entry into irrevocable liability.  For example, the

12  District Court of Colorado addressed and rejected a similar contention concerning the alleged

13  flow of money through the United States in *Cascade Fund, LLP v. Absolute Capital Mgmt.*

14  *Holdings Ltd.*, 2011 WL 1211511, *4-7 (D. Colo., March 31, 2011).  As here, the shares at issue

15  in *Cascade* were not alleged to be traded on any domestic exchange, although the buyer in

16  *Cascade* was a United States investor – something that is manifestly not the case here.  *Id.* at *4.

17  The investment was initiated by the US investor, Cascade, who executed a subscription

18  agreement and sent it to the fund in the Cayman Islands for acceptance.  *Id.* at *1.  Investors in the

19  fund then wired funds to the fund "via banks in New York (if the investment was to be made

20  using dollars) or banks in Europe (if the investment was to be made using Euros)."  *Id.*  The

21  subscription agreement also provided the fund could reject the investment for any reason.  *Id.*

22      In *Cascade,* Plaintiff argued that since (1) offering materials were disseminated in the

23  United States, (2) fund executives had traveled to the United States to solicit investors, (3)

24  plaintiff had made the decision to invest while located in the United States, and (4) money for the

25  purchase had been wired to the United States, this purchase qualified under *Morrison* as a

26  domestic transaction.  *Id.* at *7.  The District Court rejected this contention outright.  With respect

27  to the first three asserted grounds, the district court held that those were just attempts to revive the

28

-28-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    "effects" test that had been specifically rejected by the Supreme Court in *Morrison*.  As for the

2    transfer of the funds to New York, the district court held that that transfer "simply describes one

3    step" in the process for acquiring the shares.  The transaction was not complete until the

4    application to purchase had been accepted, which the Court presumed had occurred in the

5    Cayman Islands.  *Id.*  Accordingly, the claim was dismissed.  *See also Shipping Corp. of India*

6    *Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009) (beneficiary has no property

7    interest in an electronic funds transfer until transfer is completed by acceptance by the

8    beneficiary's bank; electronic fund transfers "are neither the property of the originator nor the

9    beneficiary while briefly in the possession of an intermediary bank").

10          Subsequent to *Cascade*, the Southern District of New York conducted a slightly different

11   analysis, but one that nonetheless similarly supports the dismissal of the Plaintiff's claim in this

12   case.  In *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351 (S.D.N.Y. 2011), the district court

13   examined the purchase of an offshore Bahamian fund.  Unlike the plaintiff MVPAM, plaintiffs in

14   *In re Optimal* correctly acknowledged that the route of the money was irrelevant, in favor of

15   evaluation of where the shares issued:  "In this case, it's where the shares were issued is where

16   the purchase is actually consummated.  Until then the money is in the air.  And whether it's in the

17   air over Ireland [where the funds administrator was located] or any other place doesn't really

18   amount to much."  *Id.* at 373, n. 163.  Plaintiffs alleged in that case that the shares were issued in

19   New York.  They pointed to a written confirmation "Contract Notes" that read "WE BOUGHT

20   [SOLD] FOR YOUR ACCOUNT IN: NYS."  *Id.* at 373.  From this evidence, and drawing

21   inferences in the plaintiff's favor, the court concluded that the plaintiffs had shown enough, at

22   least for a motion to dismiss, to demonstrate that the purchase took place in the United States.  *Id*.

23          In this case, the only alleged contact in this entire process with the United States is in the

24   alleged flow of purchase money, which Plaintiff alleges passed through New York banks.[18]

25   _____

26   [18]    While Plaintiff alleges that the purchase funds stayed in the United States, but this
     allegation is pure speculation, and need not be accepted as true under the *Iqbal* standard of
27   plausibility, particularly in light of Plaintiff's failure to allege any facts at all about the actual
     issuance of the shares.  *See Iqbal*, 129 S. Ct. at 1949-51 (complaint must state claim that is
28   "plausible on its face," that crosses line from merely the "conceivable to plausible.").  Moreover,

-29-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   (TAC, ¶ 51.)  Particularly given Plaintiff's other allegations concerning the entirely foreign nature

2   of this transaction, and Plaintiff's conspicuous refusal to include any allegations concerning the

3   transactional documents, this one alleged contact with the United States does not render this

4   obviously foreign transaction into a domestic one.  As held in *Morrison*, the presence of "*some*

5   *domestic activity*" does not support application of Section 10(b) to offshore transactions.  Federal

6   securities law under Section 10(b), no matter how Plaintiff might contort it, does not reach this

7   offshore transaction.  The alleged investor is a British Virgin Islands company that allegedly used

8   not one but two offshore banks as contracting parties to purchase shares in a British Virgin Island

9   fund that is administered out of Bermuda.  (TAC, ¶¶ 3, 51, 52, 59, 71.)

10          Nothing in that series of allegations suggests the domestic issuance of shares, which

11   Plaintiff has *expressly* alleged are and have been at all times held offshore at Citco Global.  (TAC,

12   ¶ 51.)  Accordingly, Plaintiff's federal securities claims must be dismissed

13          **b.      Plaintiff's Complaint Fails to Comply With the Heightened Pleading
                      Requirements of Rule 9(b) And the PSLRA.**

14

15          To state a federal securities fraud claim, a plaintiff must allege five elements:  (1) a

16   material misrepresentation or omission of fact, (2) scienter, (3) in connection with the purchase or

17   sale of a security, (4) transaction and loss causation, and (5) economic loss.  *Zucco Partners, LLC*

18   *v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); *DSAM Global Value Fund v. Altris*

19   *Software, Inc.,* 288 F.3d 385, 388 (9th Cir. 2002).  The PSLRA, 15 U.S.C. § 78u-4, significantly

20   strengthened pleading requirements in private securities litigation for the express purpose of

21   eliminating meritless claims such as those alleged here.  *See In re Silicon Graphics Inc. Sec.*

22   *Litig.,* 183 F.3d 970, 988 (9th Cir. 1999).  Congress sought "to put an end to the practice

23   of pleading 'fraud by hindsight.'"  *Id.*  In private securities law claims, plaintiffs must "plead with

24   particularity both falsity and scienter."  *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  As

25   to each defendant, the plaintiff must "specify *each* statement alleged to have been misleading, the

26   reason or reasons why the statement is misleading, and, if an allegation regarding the statement or

27   _____

28   the allegation is irrelevant.  It does not matter what the issuer ultimately does with the money; it is
    the location of the transaction that is dispositive.  *Morrison*, 130 S.Ct. at 2883-84.

-30-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1          DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                          AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
                          Case No. 210-CV-02483-GEB-CMK

1   omission is made on information and belief, the complaint shall state with particularity all facts

2   on which that belief is formed." 15 U.S.C. § 78u-4(b) (emphasis added).

3        Further, in addition to the requirements of the PSLRA, traditional Rule 9(b) requirements

4   for pleading fraud remain.  Rule 9(b) provides that in all "averments of fraud or mistake, the

5   circumstances constituting fraud or mistake shall be stated with particularity," that is, "with a

6   high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir.

7   2000); Fed.R.Civ.P. 9(b).  The allegations must "identify the time, place and content of the

8   alleged misrepresentation so that the defendant can identify the statement.  Second, the plaintiff

9   must plead facts explaining why the statement was false when it was made." *Smith v. Allstate*

10  *Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (internal citations omitted).

11       Plaintiff has failed adequately to allege scienter or the purported role of each Moving

12  Defendant in the alleged fraud.  For these additional reasons, Plaintiff's federal securities claims

13  should be dismissed.[19]

14                    **(1)   Plaintiff Has Failed to Adequately Allege Scienter as to Each
                            Named Moving Defendant.**

15

16       The PSLRA imposes a significant pleading burden with respect to the required state of

17  mind of each Moving Defendant.  Under the PSLRA, a plaintiff must, "with respect to *each* act or

18  omission alleged to violate this chapter state *with particularity* facts giving rise to a *strong*

19  *inference* that *the defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A)

20  (emphasis added); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 334 (2007).

21  The required state of mind is the making of the false or misleading statements either intentionally

22  or with "deliberate recklessness." *Silicon Graphics,* 183 F.3d at 974 ("We hold that a private

23  securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute

24

25  [19]     Plaintiff also continues the scattershot and repetitious approach that plagued the first three
26  complaints by referring to numerous statements for which no specific facts are alleged to
    establish that the statement was false when made.  However, Moving Defendants herein focus
27  solely on Plaintiff's failure to allege scienter and the role of each Defendant in the alleged fraud
    with the requisite level of particularity.

28

DLA Piper LLP (US)
Sacramento

1   strong circumstantial evidence of deliberately reckless or conscious misconduct").  Deliberate

2   recklessness is "a form of intentional or knowing misconduct."  *Id.* at 976.  "To allege a 'strong

3   inference of deliberate recklessness,' [the plaintiff] 'must state facts that come closer to

4   demonstrating intent, as opposed to mere motive and opportunity.'"  *DSAM Global Value*

5   *Fund,* 288 F.3d at 388-89, *quoting Silicon Graphics,* 183 F.3d at 974).  "[A]lthough facts

6   showing mere recklessness or a motive to commit fraud and opportunity to do so may provide

7   some reasonable inference of intent, they are not sufficient to establish a strong inference of

8   deliberate recklessness."  *Silicon Graphics*, 183 F.3d at 974.

9           Further, to qualify as "strong" within the meaning of the statute, the inference of scienter

10   must be more than merely plausible or reasonable.  The inference must be cogent and at least as

11   compelling to a reasonable person as any opposing inference of non-fraudulent intent.  *Tellabs*,

12   551 U.S. at 314, 322-25.  When assessing a complaint for compliance with this standard, "courts

13   must consider the complaint in its entirety . . . [and inquire] whether *all* of the facts alleged, taken

14   collectively, give rise to a strong inference of scienter, not whether any individual allegation,

15   scrutinized in isolation, meets that standard."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540

16   F.3d 1049, 1066 (9th Cir. 2008) (internal citation omitted); *see also Gompper v. VISX, Inc.*, 298

17   F.3d 893, 897 (9th Cir. 2002) ("[T]he court must consider *all* reasonable inferences to be drawn

18   from the allegations, including inferences unfavorable to the plaintiffs.").

19           Lastly, Plaintiff must direct its scienter allegations not only to each misstatement, but to

20   each Moving Defendant.  So called group pleading, whereby scienter may be implied for one or

21   more defendants based upon the actions of another, is no longer a viable doctrine given the

22   enactment of the PSLRA.  15 U.S.C. § 78u-4(b)(2) (requiring plaintiff, with respect to *each* act or

23   omission, to allege with particularity facts giving rise to a strong inference that *the defendant*

24   acted with the required state of mind); *Petrie v Elect. Game Card Inc.*, 2011 WL 165402, *3

25   (C.D. Cal. Jan. 12, 2011), *citing In re Hansen Natural Corp. Sec. Litig.,* 527 F. Supp. 2d 1142,

26   1153-54 (C.D. Cal. 2007) (holding that "the group pleading doctrine can no longer be used in

27   pleading cases under the PSLRA" and noting that "[t]his view is shared by numerous district

28

-32-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    courts within this circuit."); *In re New Century,* 588 F. Supp. 2d 1206, 1223 (C.D. Cal.

2    2008) ("All of the Circuit courts that have expressly considered whether group pleading is

3    compatible with the PSLRA have concluded that it is not."); *see also Tellabs*, 551 U.S. at 326 n.6

4    ("The Seventh Circuit held that allegations of scienter made against one defendant cannot be

5    imputed to all other individual defendants. . . .  the Shareholders do not contest the Seventh

6    Circuit's determination, and we do not disturb it.").[20]

7           Accordingly, as to *each* Moving Defendant and *each* alleged misrepresentation, Plaintiff

8    must allege specific facts that give rise to a strong inference of scienter.  Plaintiff does not meet

9    this standard.  Moving Defendants have set forth above in Section II(F) in detail the allegations

10   that Plaintiff contends support a finding of scienter.  These facts do not even suffice to

11   demonstrate mere negligence, never mind intentional or deliberately reckless conduct.  While

12   Plaintiff pleads countless allegations based on conclusions, speculation, and "information and

13   belief" concerning what Moving Defendants should have discovered by virtue of their allegedly

14   having been involved in an investment fund that made investments in the Petters Ponzi Scheme,

15   Plaintiff does *not* alleged the requisite cold, hard facts that show that any Moving Defendant

16   actually acted with the requisite state of mind.

17          Plaintiff, for example, alleges no contemporaneous contradictory facts, and no "red flags,"

18   purportedly known to Moving Defendants at the time the alleged misrepresentations were made.

19   Indeed, Plaintiff's own allegations demonstrate that Moving Defendants acted promptly when the

20   first few red flags did start to pop up with the delays in payment.  Plaintiff admits, for example,

21   the Moving Defendants were pressing to gain access to the warehouses to confirm the legitimacy

22   of the transaction.  (TAC, ¶ 80.)  This investigation then led to additional ones, such as the

23   alleged call by Balliet, TAC, ¶ 81, that reflected searching inquiries – inquiries that were entirely

24   *inconsistent* with Moving Defendants already having known that Petters was operating a scam.

25   _____

26   [20]      Similarly, *"Rule 9(b) does not allow a complaint to merely lump multiple defendants
     together but 'require[s] plaintiffs to differentiate their allegations when suing more than one

27   defendant . . . and inform each defendant separately of the allegations surrounding his alleged
     participation in the fraud.'" *Cisneros v. Instant Capital Funding Grp., Inc.,* 263 F.R.D. 595, 606-

28   07 (E.D. Cal. 2009), *citing Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007).

-33-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    Further, while Plaintiff also relies on a mischaracterization of Granat's testimony, it fails to tie to

2    this testimony to the contemporaneous state of mind of any – let alone *each* – of the Moving

3    Defendants.  In his testimony, Granat did not purport to speak for any of the Moving Defendants,

4    and there are no *facts* – dates, times places, method of communication, what was said, etc. –

5    alleged to support Plaintiff's speculation that Granat must have shared his supposed knowledge

6    with the Moving Defendants.

7              Moreover, Granat's testimony, to the extent it suggests anything, suggests only that he,

8    like hundreds of others, was victimized by a sophisticated, multi-billion dollar scheme to defraud.

9    (RJN, Exs. D (Transcript), A (Indictment).)  Prior to his exposure as a fraud, Petters' was a well-

10   known businessman who had acquired several, large legitimate companies.  His investment

11   structure had a successful history spanning years.  The hallmark of Petters' scheme was the use of

12   seemingly legitimate but in fact collusive third parties and the provision of extensive

13   documentation to make the transactions appear genuine.  (*Id*.)  As set forth in the Granat

14   testimony, this documentation was also vetted by outside lawyers prior to Ark Discovery II's

15   provision of loans to the Petters' entities.  Further, as with the alleged Balliet telephone

16   conference, the Granat testimony reveals a rapid follow up to investigate at the first "red flag."

17   The delays in payments, once experienced for the first time, were not ignored; they were

18   aggressively run down, a pursuit, in fact, which likely contributed to the downfall of the scheme.

19   (RJN, Ex. D (Granat Testimony); *see also* TAC, ¶ 80, 81.)

20              **(2)       Plaintiff May Not Rely Upon Moving Defendants' Alleged
                           Positions Within Ark Royal Asset Management as a Substitute**
21   **for Pleading Specific Facts that Establish that Each Defendant
                           Acted with Scienter.**
22

23              Bereft of facts showing that Moving Defendants such as Balliet, Hanslik, or any of the

24   Ark Entities (US) intended to defraud MVP, Plaintiff instead tries to tie them to the alleged fraud

25   merely by association.  Allegations of this type, however, to the effect that a defendant who is

26   part of a company's "core operations" can be held to have the same state of mind and knowledge

27   of the same facts as the company itself, do not suffice:

28

DLA PIPER LLP (US)
SACRAMENTO

1
2
3
4
5
6
7

> A question remains, however, about reliance on the core-operations inference when it is the only basis for scienter in the complaint.  Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard.  In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware.  *As a general matter, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud" or other allegations supporting scienter.*

8  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) (emphasis added).

9  Plaintiff's allegations here offer nothing more than a potential "general awareness" of the

10  company's activities.  Plaintiff does not include additional allegations of specific information

11  conveyed to management related to the fraud or otherwise supporting scienter.  These allegations,

12  in other words, do not suffice under the PSLRA.

13       Similar in effect is *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008).

14  In *Glazer,* the Ninth Circuit affirmed a district court's dismissal of a securities claim.  In so doing,

15  it confirmed the necessity of pleading scienter on an individual basis and underscored the need for

16  specific facts even when a plaintiff elects to rely upon the core operations inference.  *Id.* at 742-

17  49.  As here, the plaintiff in *Glazer* had not pled any facts demonstrating personal knowledge of

18  the allegedly improper underlying transactions.  The plaintiff, however, sought to establish an

19  inference of scienter through factors such as the defendant's role as CEO in what was a small

20  company, the financial incentives allegedly accruing to the defendant from ignoring the fraud,

21  and the fact that the fraud was quickly discovered later by a third party during due diligence

22  preceding an acquisition.  *Id.* at 745.

23       The Ninth Circuit rejected each of the plaintiff's asserted grounds – grounds that, it should

24  be noted, were far more substantial than the mere conclusions and speculation offered by Plaintiff

25  in this case.  *See id.* at 745-49.  The Ninth Circuit held that, absent "specific admissions" from

26  officers that they were involved in "every detail of the company," general allegations that an

27  officer "must have known" of the fraud as a result of his position in the company or "hands-on

28

-35-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1  management style" are not sufficient. *Id.* Similarly, responsibility for "day-to-day operations"

2  was not enough to establish scienter, absent additional specific factual allegations showing that

3  the improper activities were of such prominence that it would be "absurd" to suggest that top

4  management could have been unaware. *Glazer*, 549 F.3d at 746.

5          Despite the company's small size, and the defendant's prominent role as CEO, the illegal

6  payments at issue were not of the nature that awareness of them by senior management could be

7  assumed. *Id.* at 746-747. "To the contrary, the surreptitious nature of the transactions creates an

8  equally strong inference that the payments would have deliberately been kept secret – even within

9  the company." *Id.* Similarly, the fact that a third party (which evaluated the company as part of

10 due diligence leading up to an acquisition) discovered the fraud early on in its due diligence, did

11 not support a strong inference of scienter. *Id.* at 748 ("The mere fact that GE was able to discover

12 the FCPA violations does not create a direct inference that Magistri personally knew about the

13 violations.").

14         *South Ferry* and *Glazer* confirm the inadequacy of Plaintiff's scienter allegations under

15 the PSLRA. *See also Lapiner v. Camtek, Ltd.*, 2011 WL 445849, *8 (N.D. Cal., February 2,

16 2011). Plaintiff's Third Amended Complaint makes only generic references to the individual

17 Defendants' alleged management positions. (TAC, ¶¶ 5, 6, 31.) And Plaintiff relies solely upon

18 speculation about what Moving Defendants were supposed to have known. Plaintiff alleges no

19 specific, contemporaneous facts that were actually known to any defendant at the time of the

20 alleged statements, and under the PSLRA, one defendant cannot be equated with another.[21]

21         Boiled down to its essence, the complaint is that Moving Defendants defrauded Plaintiff

22 by not discovering sooner that they themselves were being victimized by Petters. Such is not the

23 ───────────────

24 [21]    Plaintiff's allegations push the core operations inference to a whole new level of
   attenuation. Plaintiff imputes to Vestbirk supposed knowledge of fraudulent transactions at a
25 different hedge fund, Arrowhead, based solely upon Vestbirk's alleged short time as an outside
   director many years before the events in question. This allegation falls well short under Ninth
26 Circuit authority limiting use of the core operations inference. Yet Plaintiff then improperly
   *imputes* Vestbirk's imputed knowledge to Balliet and Hanslik and the other Moving Defendants,
27 who are not alleged to even have been involved with Arrowhead in any capacity. Plaintiff's
   improper reliance on such rank speculation and conclusions demonstrates that it cannot plead the
28 specific, hard facts necessary to establish scienter.

-36-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    stuff of which securities fraud claims are made.  *See S.E.C. v. Cohmad Sec. Corp.,* 2010 WL

2    363844, *2 (S.D.N.Y. Feb. 2, 2010) (rejecting scienter allegations because "the complaint

3    supports the reasonable inference that Madoff fooled the defendants as he did individual

4    investors, financial institutions, and regulators").  Plaintiff's allegations that Moving Defendants

5    did not conduct the level of due diligence allegedly represented does not mean that they intended

6    to defraud Plaintiff.  *South Cherry St., LLC v. Hennesee Grp. LLC,* 573 F.3d 98, 111-13 (2d Cir.

7    2009) (terming allegation that defendant's due diligence fell short of what was represented to be

8    "hardly a cogent or compelling suggestion" of scienter in a case also involving an investment

9    fund victimized by a Ponzi scheme).[22]

10        Plaintiff's pleading burden in a securities fraud case is a high one, and Plaintiff does not

11   come close to the level of detail required.  Plaintiff's allegations consistently fail to plausibly

12   suggest any complicity by Moving Defendants in Petters' fraud.  For this reason, Plaintiff's

13   federal securities claims should be dismissed.

14                    **(3)    Plaintiff Has Failed To Adequately Allege A Primary Violation
                              By Each Moving Defendant.**
15

16        Plaintiff is required to allege specific misrepresentations by *each* Moving Defendant.

17   Aiding and abetting liability, group or collective action liability, and alter ego liability are not

18   viable doctrines for establishing a federal securities claim.  *E.g. Cent. Bank of Denver, N.A. v.*

19   *First Interstate Bank of Denver*, 511 U.S. 164, 171-78, 191 (1994); *Stoneridge Inv. Partners, LLC*

20   *v. Scientific-Atlanta*, 552 U.S. 148, 156, 162 (2008).  Through what it terms "group published

21

22   [22]        As for motive, Plaintiff alleges nothing more than a supposed intent to increase assets
     under management.  If such a motive sufficed, merely being an investment manager would
23   establish scienter. The law is clear, however, that simply demonstrating a profit motive is not
     enough.  *E.g., Zucco Partners*, 552 F.3d at 1005 (simple allegations of pecuniary motive do not
24   suffice); *Glazer,* 549 F.3d at 748 (merely establishing a profit motive does not suffice to create a
     strong inference of scienter); *In re AstraZeneca Sec. Litig.,* 559 F. Supp. 2d 453, 468
25   (S.D.N.Y.2008) (holding that in pleading scienter, "arguing that the motive for defrauding
     investors was to increase the company's profits or to increase officer compensation is not
26   sufficient"); *Stephenson v. Citco Grp. Ltd.,* 700 F. Supp. 2d 599, 620-21 (S.D.N.Y. 2010)
     (economic interest in retaining clients not probative of motive to ignore Madoff's fraud).
27   Moreover, Moving Defendants' prompt action to investigate the delays in payment belies the
     existence of any motive to play along with Petters to make money from his fraud.
28

-37-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

information," Plaintiff seeks to bypass these United States Supreme Court holdings to impose

liability on Moving Defendants who are not alleged to have actually made the statements relied

upon by Plaintiff in the TAC, such as the one-page fact sheet and the presentation.  (TAC, ¶¶ 42,

43, 63.)[23]

The group publication or group pleading doctrine, however, did not survive the enactment

of the PSLRA, as made clear by the United States Supreme Court in its recent decision in *Janus*

*Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011).  The Supreme Court in

*Janus* addressed the issue of who is the "maker" of a statement for purposes of potential liability

under Section 10(b).  Plaintiffs were shareholders in an asset management firm, Janus Capital

Group, Inc., a publicly traded company that created the Janus family of mutual funds, including

the Janus Investment Fund (the "Fund") (JCG).  *Id.* at 2299.  JCG retained Janus Capital

Management ("JCM"), its wholly-owned subsidiary, as the investment advisor for the Fund.  *Id.*

JCM provided the Fund with investment advisory services.  *Id.*

The Fund issued a prospectus that plaintiff alleged was misleading.  The plaintiff further

alleged that when the true information came out, this disclosure led investors to withdraw money

from the Fund, negatively affecting the net asset value of the Fund.  *Id.* at 2300.  This drop in

value in turn led to a decrease in JCM's management fees that hurt the earnings of JCM's parent,

JCG.  This earnings drop led to a decline in the share price of JCG, which was the company in

which plaintiff had invested.  *Id.*

In asserting Rule 10b-5 liability, the plaintiff alleged that JCG and JCM "caused mutual

fund prospectuses to be issued for the Janus mutual funds and made them available to the

investing public, . . . ."  *Id.*  The District Court, however, dismissed the claim under Rule 12(b)(6)

for failure to state a claim.  The Fourth Circuit reversed, holding that the plaintiff had sufficiently

alleged that "JCG and JCM, by participating in the writing and dissemination of the prospectuses*,

made* the misleading statements contained in the documents."  *Id.* at 2301.

---

[23]    Plaintiff does not allege Vestbirk's call was "group published," and there are no facts
tying any Moving Defendant to it.  Balliet and Hanslik, for example, were not participants in the
call.  (TAC, ¶ 37.)

-38-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   The Supreme Court granted certiorari to address whether JCM could be held liable as the

2   maker of the statements in the prospectus, and then reversed the Fourth Circuit.[24]  The Supreme

3   Court held that JCM was not the maker of the statement because it was not the person "with

4   ultimate authority over the statement, including its content and whether and how to communicate

5   it." *Id.* at 2302.  That person was the Fund.  *Id.* at 2304-05.  In reaching this holding, the Court

6   held that "one who prepares or publishes a statement on behalf of another is not its maker." *Id.* at

7   2302.  Analogizing to a speechwriter, the Court stated that "[e]ven when a speechwriter drafts a

8   speech, the content is entirely within the control of the person who delivers it.  And it is the

9   speaker who takes credit – or blame – for what is ultimately said." *Id.*  The Court held that any

10  other result would undermine its decision in *Cent. Bank of Denver, N.A. v. First Interstate Bank*

11  *of Denver, N.A.*, 511 U.S. 164, 180 (1994), which held that the Rule 10b-5 private right of action

12  does not extend to suits against aiders and abettors.  *Id.*

13  The Court held the governing rule to be as follows:  ". . . [T]he maker of a statement is the

14  person or entity with ultimate authority over the statement, including its content and whether and

15  how to communicate it." *Id.*  Notably, such an entity did not include JCM, the investment

16  advisor, despite the close relationship between it and the Fund, as it was the Fund, not JCM, that

17  was the maker of the statement.  *Id.* at 2304-05.  The Court reached this holding notwithstanding

18  the allegation that JCM was significantly involved in preparing the prospectus that contained the

19  alleged misrepresentation, as such assistance did not transform JCM into the maker of this

20  statement.  *Id.* at 2305.

21  The application of *Janus Capital* to Plaintiff's Third Amended Complaint is

22  straightforward:  There are no facts alleged that establish any specific Moving Defendant as the

23  "maker" of the allegedly misleading statements in the one-page fact sheet or the later

24  Presentation, for example.  Plaintiff just relies on the "group-publication" inference.  As to the

25  September 24, 2007, call, Plaintiff identifies only Vestbirk, and not any other Defendant, and, as

26

---

27  [24]   Plaintiffs dropped their argument that JCG should be held liable as the maker of the
statements by the time the case reached the Supreme Court, and sought only to hold JCM liable as
28  a primary violator.  *Id.* at 2301 n.5.

-39-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   noted, the connection between that call and the subsequent investments is entirely absent, not

2   only because of the passage of time, but also the intermediary provision of actual offering

3   materials – the September call having occurred before the Ark Discovery (Offshore) fund was

4   even established.  And, lastly, Plaintiff does not allege that any Ark Entity (US) was a maker of

5   any statement.

6        Plaintiff's aggregation of defendants, and its reliance on the "group published

7   information" and "collective action" theories in an effort to establish a primary violation against

8   these Moving Defendants (*see, e.g.,* TAC, ¶¶ , 42, 43, 63) is improper; such doctrines did not

9   survive the enactment of the PSLRA and have no validity particularly given the Supreme Court's

10  decision *Janus Capital*.  *See also  In re Marvell Tech. Grp. Ltd. Secur. Litig.*, 2008 WL 4544439,

11  *3-4 (N.D. Cal. Sep. 29, 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

12  326 n. 6, (2007), and rejecting group pleading doctrine under PSLRA).

13       Accordingly, Plaintiff's Section 10(b) claim must be dismissed with prejudice under this

14  controlling authority.

15           **c.       Plaintiff Has Failed to Adequately Plead a Claim for Control Person
                         Liability Under Section 20(a).**

16

17       Plaintiff has failed to properly plead a Section 10(b) claim against any Moving Defendant,

18  not the least reasons for which being the bar of *Morrison* (and Plaintiff's lack of Article III

19  standing, as set forth in the Rule 12(b)(1) motion filed herewith).  A Section 20(b) claim may be

20  dismissed summarily if a plaintiff fails to establish a primary violation of Section 10(b).  *In re*

21  *Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993); *see also In re Metawave Commc'n Corp.*

22  *Sec. Litig.*, 298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003).  As such, the Section 20(b) claims

23  must be dismissed as a matter of law.  *See also Const. Laborers Pension Trust of Greater St.*

24  *Louis v. Neurocrine Biosciences, Inc.*, 2008 WL 2053733, *9 (S.D. Cal. May 13, 2008) (where

25  10(b) claims are dismissed for failure to comply with PSLRA, "plaintiffs' claims under Sections

26  20(b) fail without an underlying violation of Section 10(b)"); *Fisher v. Acuson Corp.*, 1995 WL

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-40-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   261439, *8 n.5 (N.D. Cal. Apr. 26, 1995) ("Plaintiffs' additional theories of a 'fraudulent scheme'

2   and 'Section 20(b) Indirect Fraud' do not allow them to circumvent Rule 9(b)'s requirements").[25]

3   **2.**   **Plaintiff Has Failed To Adequately Plead California Law Claims for Securities Fraud, Fraud, Negligent Misrepresentation and Negligence.**

4

5   As set forth in Moving Defendants Rule 12(b)(1) motion filed herewith, Plaintiff lacks

6   standing to pursue any of the claims alleged in this action, federal or state.  Upon dismissal of the

7   federal securities law claims, whether on standing grounds, under *Morrison*, or under the PSLRA,

8   this Court should further find that it lacks diversity jurisdiction as the alleged assignment was a

9   collusive one.  (Defendants' Rule 12(b)(1) Motion to Dismiss.)  Accordingly, the Court should

10  decline to exercise supplemental jurisdiction over the remaining state law claims, and dismiss

11  them as well.  28 U.S.C. § 1367(c).  Should the Court turn to these claims on their merits, they

12  should nonetheless still be dismissed.

13  **a.**   **Plaintiff Has Failed to Satisfy Rule 9(b)'s Particularity Requirements With Respect to His Claims for State Securities Fraud, Fraud, and Negligent Misrepresentation.**

14

15  In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule

16  9(b)'s particularity requirements."  *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803, *14

17  (E.D. Cal. Jan. 27, 2011); *Cisneros v. Instant Capital Funding Grp., Inc.*, 263 F.R.D. 595, 606

18  (E.D. Cal. 2009).[26]  Similarly, Rule 9(b) governs plaintiff's state law securities fraud claim.

19  _____

20  [25]   In addition, Plaintiff's indiscriminate inclusion of multiple defendants with no alleged connection to the alleged fraud provides a secondary basis for dismissal of these claims.  Plaintiff alleges no facts in an effort to plead a viable case against the Ark Entities (US) defendants for

21  example.  The mere conclusions alleged by Plaintiff do not show that these Moving Defendants exercised control over either ARAM or Ark Discovery (Offshore) for purposes of establishing

22  control person liability.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162

23  (9th Cir. 1996).  For this additional reason, these entity defendants should be dismissed.

24  [26]   The elements of a cause of action for fraud in California are:  "(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent

25  to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Under California law, both fraud and

26  negligent misrepresentation are forms of deceit, and the elements for each are similar.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008).  Negligent

27  misrepresentation, however, lacks the element of intent to deceive.  "[W]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for

28  such belief, he may be liable for negligent misrepresentation, a form of deceit."  *Id.*, citing *Intrieri*

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

-41-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *12-13 (N.D. Cal. Sept. 14,

2    1998).

3         Further, as an overarching matter, where a complaint alleges a unified course of fraudulent

4    conduct and relies entirely on that course of conduct as the basis of that claim, the claim is said to

5    be "grounded in fraud" or to "sound in fraud."  In such cases, the pleading as a whole must satisfy

6    the particularity requirement of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

7    Cir. 2009).  Here, Plaintiff's California securities fraud claim, as well as the common law fraud

8    and negligent misrepresentation claims, are all directly premised upon the same allegedly

9    fraudulent conduct as his federal securities fraud claim.  (*See* TAC, ¶¶ 99-103; 106-110; 117-119;

10   120-122 (incorporating all prior allegations to support claims for fraud, negligent

11   misrepresentation and securities fraud)).

12        Accordingly, Rule 9(b) applies to each of these three state law claims.  Rule 9(b) requires

13   particularized allegations of the circumstances constituting fraud.  *Cisneros,* 263 F.R.D. at

14   606-07; *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be

15   accompanied by "the who, what, when, where, and how" of the misconduct charged);

16   *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as

17   the times, dates, places, benefits received and other details of the alleged fraudulent activity.").

18   Further, when there are multiple defendants, a plaintiff must provide *each* defendant with enough

19   information to enable them to know which misrepresentations are attributable to them and their

20   specific fraudulent conduct.  *Cisneros*, 263 F.R.D. at 606-07 (*"*Rule 9(b) does not allow a

21   complaint to merely lump multiple defendants together . . . .").  The role of each defendant in the

22   fraudulent scheme must be alleged with specificity.  *Id.*

23        As set forth above in Section III(A)(1)(b), *supra*, Plaintiff has failed to allege fraud with

24   the requisite particularity.  Plaintiff has not alleged facts linking each Moving Defendant to each

25   statement claimed to be false, and has not sufficiently pleaded that each Moving Defendant acted

26   with scienter with respect to each statement claimed to be false.  Accordingly, for these reasons,

27

28   *v. Sup. Ct.*, 117 Cal. App. 4th 72, 86 (2004).

-42-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    Plaintiff's claims for fraud, negligent misrepresentation, and state securities fraud must be

2    dismissed.

3                    **b.        Plaintiff Fails to State a State Law Securities Law Claim.**

4                        **(1) Plaintiff Has Not and Cannot Allege An Offer Made *In* California.**

5            Plaintiff asserts violations of Corporations Code section 25504.1, which imposes joint and

6    several liability on any person who materially assists in a violation of Corporations Code section

7    25401, and Corporations Code section 25504, which imposes joint and several liability on certain

8    persons who control a person that violates Section 25401.  Section 25401 makes it unlawful for

9    any person to offer or sell a security *in this state* by means of any written or oral communication

10   that includes an untrue statement of material fact or omission.[27]

11           Plaintiff's California securities law claims fail for a straightforward reason:  There has

12   been no offer to sell or sale of a security "in this state."  In fact, Plaintiff – as a result, among

13   other things, of its omission of any mention of the Confidential Information Memorandum and

14   Subscription Agreement, which are the operative offering documents through which Citco Global

15   actually purchased the shares – has failed to allege any offer at all, never mind an offer in

16   California.[28]  Vestbirk's telephone conference with Stratford, made six months before any

17   purchase by Citco Global and prior to any fund activity, was not an offer of sale.  (TAC, ¶ 37.)

18   As for the one-page fact sheet and presentation, neither contains an offer of sale.  In fact, both

19   documents expressly *disclaim* that they are offers of sale.  (RJN, Exs. E, F.)  The only apparent

20   offer to purchase, therefore, emanated from the Netherlands from Citco Global.

21           Moreover, as has been reviewed, this was an offshore transaction.  Corporations Code

22   Section 25008 defines an Offer or Sale of Security "in this state" as follows:

23           (a)      An offer or sale of a security is made in this state when an offer to sell is
             made in this state, or an offer to buy is accepted in this state, or (if both the seller

24

25   _____

26   [27]    Plaintiff alleges no facts demonstrating that any Moving Defendant "materially assisted"
     the sale of Ark Discovery (Offshore) to Citco Global (or MVP).

27   [28]    Plaintiff apparently seeks through this omission to avoid providing a basis for the Court to
     take judicial notice of these offering documents, but in so doing, has failed to allege any offer at
28   all.

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    and the purchasers are domiciled in this state) the security is delivered to the
2    purchaser in this state. . . .

3    (b)    An offer to sell or to buy is made in this state when the offer either
     originates from this state or is directed by the offeror to this state and received at
4    the place to which it is directed.  An offer to buy or to sell is accepted in this state
     when acceptance is communicated to the offeror in this state; and acceptance is
5    communicated to the offeror in this state when the offeree directs it to the offeror
     in this state reasonably believing the offeror to be in this state and it is received at
6    the place to which it is directed.

7    . . . .

8

9    Cal. Corp. Code § 25008.

10       Plaintiff MVPAM brings this suit merely as a purported assignee of MVP and stands in its

11   shoes. *See State Farm Mut. Auto Ins. Co. v. Davis*, 7 F.3d 180, 183 (9th Cir. 1993).  MVP, the

12   alleged investor, is a British Virgin Islands company.  There was no California seller, no

13   California buyer, no offer to a California investor, no sale to or purchase by a California investor,

14   and no offer to sell any share of Ark Discovery (Offshore) in California, and no delivery of any

15   share to California.  Plaintiff expressly alleges that the relevant transaction took place between

16   Citco Global, a Netherlands bank, and Ark Discovery (Offshore).  Plaintiff's own allegations

17   therefore place any offer to sell, or any offer to buy from Citco Global, as well as the purchase

18   itself, offshore.  The purported assignment of claims from the offshore investor to Plaintiff does

19   not somehow transform the offshore, non-cognizable claim into an onshore, cognizable one.

20   (TAC, ¶¶ 51, 59, 71.)  All relevant parties are offshore entities, and none is alleged to be located

21   in the State of California.  There is simply no basis for California to seek to regulate this

22   transaction between two British Virgin Island hedge funds.

23       And, in fact, not only does the plain statutory language make clear that California

24   securities law does not extend offshore, the California Supreme Court has confirmed this express

25   limitation.  In *Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1053 (1999), the

26   California Supreme Court contrasted Sections 25400 and 25401 of the California Securities Code

27   with respect to whether the provisions reached conduct occurring out of state.  Section

28   25400,which is *not* at issue in this case, outlaws certain conduct intended to manipulate the price

-44-

DLA Piper LLP (US)
Sacramento

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    of a stock. There, the California Supreme Court held that not only purely intra-state transactions

2    were subject to regulation because the Legislature had not included the words "in this state" with

3    respect to the purchase or sale, and intended to reach any purchase or sale when the allegedly

4    wrongful conduct had occurred in California. *Id.* at 1049-69.

5         The California Supreme Court contrasted Section 25400 with Section 25401, the

6    provision upon which Plaintiff relies in this case, and which does expressly include the "in this

7    state" limiter. *Id.* at 1053. ("When the Legislature intended that a purchase or sale of a stock

8    must occur in California if the buyer or seller is to be subject to civil, criminal, or administrative

9    penalties, it said so . . . [I]n section 25401, the Legislature expressly limited the scope of the

10   prohibition of false or misleading statements in an offer to buy or sell" to offers to buy or sell "in

11   this state"; further holding that the Corporate Securities Act is "quite specific in describing those

12   unlawful practices in which a purchase or sale must occur in California") (emphasis added); *Los*

13   *Angeles Fisheries, Inc. v. Crook*, 47 F.2d 1031, 1034-35 (9th Cir. 1931) (where California

14   purchaser requested that Nevada bank acquire stock of Nevada company on his behalf, no offer

15   for sale was made in California for purposes of application of California securities laws);

16   *Robinson v. Cupples Container Co.*, 316 F. Supp. 1362, 1368 (N.D. Cal. 1970) (purchase of stock

17   not subject to California securities laws, despite presence of California purchaser and negotiations

18   in California, where contract for sale and exchange of stock took place in Missouri).

19        In addition, state statutes are presumed *not* to have extraterritorial reach. *Diamond*

20   *Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1059 (1999); *Norwest Mortgage, Inc. v.*

21   *Superior Court*, 72 Cal. App. 4th 214, 222 (1999), both citing *North Alaska Salmon Co. v.*

22   *Pillsbury*, 174 Cal. 1 (1916); *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)

23   (citing *Diamond,* and examining presumption against extraterritorial application of statutes in

24   holding that California's Unfair Competition Law cannot reach conduct occurring out of state).

25   Plaintiff also fails to confront the fact that the broad reach of California securities law it advocates

26   would not survive scrutiny under the Due Process Clause or the Commerce Clause. *See Diamond*

27   *Multimedia*, 19 Cal. 4th at 1063-64 (rejecting commerce clause arguments in that case because

28

-45-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1  issuer and maker of statements was located in California, and thus application of statute was not

2  purporting to regulate any transaction in securities occurring outside of California), citing *Healy*

3  *v. The Beer Institute,* 491 U.S. 324, 336 (1989) (Commerce Clause precludes application of state

4  statute to commerce that takes place wholly outside state's borders, whether or not commerce has

5  effects within state), and *Edgar v. MITE Corp.*, 457 U.S. 624, 641-44 (1982) (invalidating Illinois

6  law that purported to regulate transactions outside of state lines); *see also Sullivan,* 51 Cal. 4th at

7  1207 n.9 (noting that Due Process clause places additional restrictions on extraterritorial

8  application of state statutes); *Morrison*, 130 S.Ct. at 2883-88.

9       Here, Plaintiff, an uninjured alleged assignee, who does not even have standing, is the

10  only alleged connection to California.  There is no allegation that the investments were to be

11  marketed or sold to Californians, and the purchaser, seller, and every alleged maker of any

12  alleged false statement, all reside outside of California and have no connection to this State.  In

13  such circumstances, the California securities claims must be dismissed.

14              **(2)**    **Neither the Remedy of Damages or Rescission Is Available to Plaintiff, Barring It From Stating a Claim Under the California**
15                              **Securities Laws.**

16  Section 25501 provides the remedies available to a purchaser of securities:
17

18       Any person who violates Section 25401 shall be liable to the person who
     purchases a security from him or sells a security to him, who may sue either for
19       rescission or for damages (if the plaintiff or the defendant, as the case may be, no
     longer owns the security) . . . .
20

21  Cal. Corp. § 25501 (parenthetical in statute as enacted).

22       MVP has not sold and still holds (allegedly through VP Bank and Citgo Global) the shares

23  of Ark Discovery (Offshore).  (*See* TAC, ¶ 119 (offering to tender the shares).)  As such, and

24  under the plain language of the statute, Plaintiff, as MVP's alleged assignee, is not eligible to

25  recover damages.  Cal. Corp. § 25501; *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011).

26       With respect to the potential remedy of rescission, Plaintiff has failed to join as a party

27  defendant the actual issuer of the shares, Ark Discovery (Offshore).  Only the issuer may be liable

28  on a claim for rescission brought under the California Securities Act.  *Viterbi*, 191 Cal. App. 4th

-46-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   at 935-944 (non-seller defendants not liable as "control persons" or "aiders and abettors" for

2   claim for rescission under Sections 25504 or 25504.1; only direct seller can place buyer in

3   original position); *cf. Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No

4   procedural principle is more deeply imbedded in the common law than that, in an action to set

5   aside a lease or a contract, all parties who may be affected by the determination of the action are

6   indispensable."); *but see Moss v. Kroner*, 197 Cal. App. 4th 860 (2011) (disagreeing with *Viterbi*

7   and finding that remedy of rescission remains available as to non-issuer defendants).

8          Accordingly, on these independent grounds, this claim should be dismissed.

9                    **c.      Plaintiff Has Failed to State a Claim for Negligence.**

10          Plaintiff's Fifth Claim for Relief is for negligence.  Plaintiff alleges that *each* Moving

11   Defendant had a duty to (a) make careful investment decisions; (b) conduct adequate due

12   diligence; (c) report accurately to Plaintiff on the results of the due diligence; (d) ensure that Ark

13   Discovery Fund loans were structured so that the loan repayments were made directly to Ark

14   Discovery Fund; (e) take reasonable steps to perfect security interests and insurance on the

15   collateral and accounts receivable; and (f) accurately report on the value of shares in the Fund and

16   returns and losses therein.  (TAC, ¶ 114.)

17          These claims must be dismissed for two reasons.  First, this common law claim is one that

18   arises from duties allegedly owing from the fund manager, ARAM, to the fund, Ark Discovery

19   (Offshore), and not from any Moving Defendant to Plaintiff.  The claim, in other words, is a

20   derivative one that cannot be pursued directly by Plaintiff.  In addition, Plaintiff has failed to

21   allege facts establishing any independent duty running from any Moving Defendant to Plaintiff.

22                    **(1)      Plaintiff Lacks Standing to Assert This Negligence Claim**
                                 **Because It Is a Derivative Claim That Must Be Advanced On**
23                               **Behalf Of Ark Discovery (Offshore) Against ARAM.**

24          The gravamen of Plaintiff's negligence claim is that Moving Defendants failed to properly

25   supervise and manage Ark Discovery (Offshore)'s investments.  (TAC, ¶ 114.)  Moving

26   Defendants' duties with respect to their alleged actions and inactions, however, if such duties

27   were owed, would run to Ark Discovery (Offshore), and not to its shareholders.

28

-47-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

MVP's potential claim as a shareholder, therefore, is no different from any other shareholder claiming that the directors or officers of a company mismanaged its affairs, causing a diminution in share value. Such claims *cannot* be asserted directly by the shareholder, but instead must be brought as a derivative action on behalf of the corporation. *E.g. Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005) (shareholder cannot bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 365-366 (S.D.N.Y. 2011) (dismissing on grounds that plaintiffs lacked shareholder standing because gross negligence claim was based on alleged mismanagement of fund, including failure to conduct adequate due diligence, and was therefore claim that had to be pursued derivatively). Similarly, a shareholder cannot use the diminution of share value as the basis for bringing an action against a third party for harm to the corporation. *E.g. U.S. v. Stonehill*, 83 F.3d 1156, 1160-61 (9th Cir. 1996); *Vinci v. Waste Mgmt.*, 80 F.3d 1372, 1375 (9th Cir. 1996).[29]

> **(2)    Plaintiff Has Failed to Allege Facts Establishing An Independent Duty Running From Any Moving Defendant to Plaintiff, And Its Claim Is Also Barred by the Economic Loss Rule.**

Plaintiff also does not allege the facts necessary to establish a duty running directly from any Moving Defendant to Plaintiff. No facts are alleged to suggest that Moving Defendants entered into any agreement with Plaintiff, or agreed to take any steps whatsoever on its specific behalf. Indeed, there is no indication that any Moving Defendant (apart perhaps from ARAM, through non-moving party Vestbirk) was even aware of MVP or its potential purchase of shares, and Plaintiff alleges no facts establishing that individual defendants such as Jeff Balliet or Allison

---

[29]    This doctrine is rooted in standing and real party in interest requirements. A shareholder cannot directly initiate actions to enforce the rights of a corporation. *Franchise Tax Bd. of Calif. v. Alcan Aluminum, Ltd.,* 493 U.S. 331, 335-36 (1990). Furthermore, the company at issue, Ark Discovery (Offshore), is a British Virgin Islands company. Under the "internal affairs" doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated. *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998). Plaintiff alleges no compliance with the requirements of British Virgin Islands law in asserting this derivative claim, which must be dismissed. *See Eshelman v. Orthoclear Holdings, Inc.,* 2009 WL 506864, at *9, *14 (N.D. Cal. Feb. 27, 2009) (dismissing claims for failure to adhere to law of British Virgin Islands governing derivative claims).

-48-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

Hanslik or the Ark Entities (US) owed any duty to Plaintiff.  Plaintiff's allegations do not establish an investment advisor-client relationship between MVPAM or MVP and any Moving Defendant.

Moreover, Plaintiff's only alleged losses are economic.  No personal injury is alleged.  In such circumstances, and absent a "special relationship," the general rule in California is that there is no duty to prevent economic loss to third parties in negligence actions at common law, and the courts are reluctant to impose such duties.  *Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 605 (2001); *see also Quelimine Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 57 (1998); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196-99 (9th Cir. 2001). Plaintiff also alleges no facts establishing why any Moving Defendant – including, for example, individuals such as Vestbirk, Balliet or Hanslik or the Ark Entities (US), for example, had a "special relationship" with Plaintiff.  And, given the economic loss rule , it is clear that no such duty exists.  *See Ratcliff Architects*, 88 Cal. App. 4th at 605.

Accordingly, this claim should be dismissed with prejudice.

**B.**     **Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant.**

Moving Defendants also move to dismiss Plaintiff's Complaint for lack of personal jurisdiction.[30]  In filing this action in the Eastern District of California, Plaintiff apparently seeks to establish personal jurisdiction based on the nationwide service of process available under the federal securities laws.  *See* 15 U.S.C. § 78aa.  However, the Ninth Circuit has made clear that a court should not automatically continue to exercise personal jurisdiction over defendants if the "anchor claims," that is the federal claims that provide a wider basis for personal jurisdiction, are dismissed.

---

[30]     Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction.  The plaintiff then bears the burden of demonstrating that jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).  Moving Defendant Vestbirk, who resides outside of the United States, has filed a separate motion on this issue.

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1    Instead, under a doctrine referred to as "pendent personal jurisdiction," a District Court is

2    vested with discretion upon dismissal of the anchor claims to determine whether to continue to

3    exercise personal jurisdiction over the defendants on the remaining claims.  When the federal

4    claims are dismissed before trial, a court should typically decline to exercise personal jurisdiction,

5    unless there is an independent basis outside of the dismissed claims to establish such jurisdiction.

6    *U.S. v. Botefuhr*, 309 F.3d 1263, 1273-74 (10th Cir. 2002); *Action Embroidery Corp. v. Atl.*

7    *Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).[31]  Accordingly, with the dismissal of

8    the federal "anchor claims" in this case, the Court should assess whether there remains any basis,

9    under traditional forum-specific standards, for maintaining personal jurisdiction over the Moving

10   Defendants on the remaining California state law claims.  *See Yen v. Buchholz*, 2010 WL

11   1758623, *1, *5 (N.D. Cal., April 30, 2010) (holding that where plaintiff had failed to state a

12   claim for federal securities fraud, they could not rely upon the nationwide service provisions of

13   the securities fraud statutes to establish personal jurisdiction); *see also* 4A Wright & Miller,

14   Federal Practice & Procedure (3d ed.), § 1069.7 ("Of course, if the only jurisdictionally sufficient

15

16   ―――――――――――――

[31]    Moving Defendants apprise the Court that in researching this issue, they located one
17   ruling from this Court, *Tolentino v. Mossman*, 2007 WL 4404447 (E.D. Cal., Dec. 13, 2007), in
     which a party moving to dismiss argued that the Court should not exercise personal jurisdiction
18   over a defendant once a federal claim is dismissed.  Citing to an Oregon district court case,
     *Poindexter v. Wedbush, Noble, Cooke, Inc.*, 1983 WL 1279 (D. Or. Jan. 24, 1983), the Court held
19   that it could continue to exercise personal jurisdiction over defendants on the state claims even if
     the federal securities law claims were dismissed *without prejudice*.  *Tolentino*, 2007 WL
20   4404447, at *3.  Here, of course, the dismissal should be *with prejudice*.  Furthermore, none of
     the parties in *Tolentino* appear to have identified for the Court the *Botefur* or *Action Embroidery*
21   cases cited herein, or to the doctrine of pendent personal jurisdiction more generally.  In addition,
     *Poindexter* did not involve the issue of personal jurisdiction with respect to state law claims
22   remaining after the dismissal of a federal claim.  Instead, only a federal securities claim was
     involved, and the court concluded that its dismissal of that claim under Rule 12(b)(6) did not, in
23   and of itself, mean that there was no personal jurisdiction under 15 U.S.C. § 78aa on that *same*
     federal claim.  *Poindexter*, 1983 WL 1279, at *3.  Moving Defendants do not argue that
24   Plaintiff's failure to state a federal securities claim in and of itself means that there is no personal
     jurisdiction over defendants on that federal claim.  Instead, Moving Defendants are relying upon
25   the doctrine of pendent personal jurisdiction as to the separate state claims once the federal claims
     are dismissed.  Lastly, the *Poindexter* case well predates *Action Embroidery* and *Botefur*.  Moving
26   Defendants respectfully suggest, therefore, that the Court's analysis in *Tolentino* is not controlling
     here.
27

28
                                                    -50-

1   claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim

2   should be dismissed as well").[32]

3       There is not.  As a starting point, Plaintiff's own allegations demonstrate that each of the

4   Moving Defendants is a non-resident of California.  (TAC, ¶¶ 4-19.)  The exercise of jurisdiction

5   over a non-resident defendant violates the protections created by the due process clause unless the

6   defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does

7   not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326

8   U.S. 310, 316 (1945).

9       A defendant's contacts with a state may be evaluated under the separate doctrines of

10  general or specific jurisdiction.  In order to establish general jurisdiction, a plaintiff must establish

11  that *each* defendant has "continuous and systematic general business contacts" with California,

12  such that the exercise of jurisdiction is "reasonable and just."  *Helicopteros Nacionales de*

13  *Columbia v. Hall*, 466 U.S. 408, 415 (1984).  The standard for establishing general jurisdiction is

14  high:  A plaintiff must demonstrate that the defendant's contacts approximate physical presence in

15  the forum.  *Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086 (9th Cir.

16  2000).  "This is an exacting standard, as it should be, because a finding of general jurisdiction

17  permits a defendant to be haled into court in the forum state to answer for any of its activities

18  anywhere in the world."  *Schwarzenegger*, 374 F.3d at 800.

19      Plaintiff's Third Amended Complaint alleges no facts whatsoever to establish that any

20  Moving Defendant should be subject to general jurisdiction within California.  Accordingly, if the

21  Court is to find that it may constitutionally exercise personal jurisdiction over any of the Moving

22  Defendants, it must be through the alternative doctrine of specific jurisdiction.  Establishing

23  _____

24  [32]     In addition, venue must be established by Plaintiff as to each Moving Defendant and as to
    each claim.  *E.g., Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir.

25  1996).  Much as with personal jurisdiction, Plaintiff's choice of venue in the Eastern District
    appears based upon his invalid federal securities law claims and his purported status as a plaintiff.

26  Moving Defendants have requested the dismissal of this action with prejudice.  Should an
    amended pleading be filed, however, that asserts only state law claims or that includes MVP as a

27  plaintiff, Moving Defendants reserve the right to move to dismiss for improper venue as well.
    F.R.Civ.Proc. 12(b)(3).  MVPAM's status as an uninjured investment advisor does not provide a

28  sufficient link to this District for venue purposes.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

specific jurisdiction requires a showing of sufficient contacts with the forum state in relation to the remaining state causes of action.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The Ninth Circuit has established a three-prong test to analyze whether a defendant should be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

A showing that a defendant "purposefully availed" himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id., citing Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  A showing that a defendant "purposefully directed" his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum.  *Id.* at 803.  Purposeful direction is evaluated under a separate three part test, with the court examining whether the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.*, citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir 2002).

In this case, the Plaintiff cannot even meet the first element required to establish personal jurisdiction.  Plaintiff does not, and cannot, allege any facts to establish purposeful availment or purposeful direction by any Moving Defendant.  As a starting point, Plaintiff does not allege any facts whatsoever as to moving defendants Balliet, Hanslik, or any of the Ark Entities (US) that show purposeful availment or purposeful direction toward California.  As to defendant ARAM,

-52-

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   Plaintiff alleges one phone call by defendant Steven Vestbirk and a number of emails from other

2   nonparties alleged to be agents of ARAM, received by Plaintiff, who alleges he resides within

3   California (either in Tahoe City or San Francisco).  One phone call to the state does not suffice.

4   *See Peterson v. Kennedy*, 771 F.2d 1244, 1261-62 (9th Cir. 1985) (holding that "use of the mails,

5   telephone, or other international communications simply do not qualify as purposeful activity

6   invoking the benefits and protection of the [forum] state").[33]

7         However, MVPAM is neither the underlying investor nor the alleged injured party.  The

8   actual alleged investor in Ark Discovery (Offshore) is a completely different entity – allegedly

9   MVP or Citco Global.  None of these entities are alleged to be California residents.  MVP, for

10  example, is alleged to be a British Virgin Islands company, Citco Global is a Netherlands-based

11  bank and VP Bank is in Lichtenstein.  Plaintiff does not allege that any purchase or sale of

12  securities occurred within California, or that any California resident invested in Ark Discovery

13  (Offshore).  In addition, Plaintiff is itself a Delaware, not California, company.  (TAC, ¶ 3.)

14        Plaintiff, in other words, has not and cannot allege activity by any Moving Defendant that

15  was "expressly aimed" at California, and random, fortuitous, or attenuated contacts do not suffice

16  to establish jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  This was

17  not an investment targeted at residents of California, and there is no allegation that MVP is a

18  California resident.  Instead, Plaintiff concedes MVP is a resident of the British Virgin Islands.

19  Plaintiff, therefore, cannot establish either conduct "expressly aimed" at the forum state or harm

20  suffered within the forum state, never mind conduct causing harm that any Moving Defendant

21

---

22  [33]      In analogous circumstances, when the contemplated transaction had nothing to do with
California, the Ninth Circuit has held that the exercise of personal jurisdiction is inappropriate.

23  *See, e.g., Sarkis v. Lajcak*, 425 Fed. Appx. 557, 2011 WL 1118471, *1-2 (9th Cir., March 28,
2011) (no personal jurisdiction in California for claims arising from employment contract:

24  Despite fact that plaintiff was in California and negotiated contract through phone and email
contracts, the contract itself was for employment in Bosnia, and bore no relation to California);

25  *Applied Underwriters, Inc. v. Combined Management, Inc.*, 371 Fed. Appx. 834, 2010 WL
1141528, *1-2 (9th Cir., March 24, 2010) (no personal jurisdiction in California for Maine

26  resident in case arising out of insurance contract, despite fact that plaintiff had some negotiations
with employees of defendant insurer in California).  While these two cases are "unpublished,"

27  pursuant to the 2006 amendments to the Federal Rules of Appellate Procedure, as they were

28  issued after January 1, 2007, they may be cited to this Court.  *See* F.R.App.Proc. 32.1(a).

DLA PIPER LLP (US)
SACRAMENTO

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK

1   *knew* would likely to be suffered in California.  *See Schwarzenegger*, 374 F.3d at 802-03.  To the

2   contrary, this was, and was always intended to be, an entirely offshore transaction.

3        Plaintiff's Third Amended Complaint establishes no basis for the exercise of personal

4   jurisdiction over Balliet, Hanslik, or any of the Ark Entities (US).  As to ARAM, the alleged

5   contacts are not directed at California.  They were, if anything, directed at MVP, a British Virgin

6   Islands fund, as a potential investor.  Accordingly, the Third Amended Complaint should be

7   dismissed on this ground as well.

8                                           **IV.**
                                     **CONCLUSION**
9

10       Accordingly, for the reasons set forth above, Moving Defendants respectfully request the

11   dismissal of this action with prejudice.

12   Dated:  May 17, 2012                              DLA PIPER LLP (US)

13

14                                                     By:___/s/ TODD M. NOONAN_____

15                                                         Todd M. Noonan
                                                           Attorneys for Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)
SACRAMENTO

-54-

WEST\232187443.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6);
Case No. 210-CV-02483-GEB-CMK