1  GEORGE L. O'CONNELL (SBN 74037)
   TODD M. NOONAN (SBN 172962)
2  DLA PIPER LLP (US)
   400 Capitol Mall, Suite 2400
3  Sacramento, CA  95814-4428
   Tel:  916.930.3200
4  Fax:  916.930.3201

5  Attorneys for Defendants
   STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET
6  MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL
   ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS,
7  LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL
   CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL
8  RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS,
   LLC

9

10                    UNITED STATES DISTRICT COURT

                      EASTERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company,<br><br>13            Plaintiff,<br><br>14       v.<br><br>15  STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, JIM GRANT, ARK ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company, VESTBIRK CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company, ARK ROYAL ASSET MANAGEMENT, LLC, a Nevada Limited-Liability Company, ARK DISCOVERY, LLC, a Business Entity of Unknown Form, ARK ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company, ARK ROYAL SERVICES, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, INC., a Nevada Corporation, ARK ROYAL RESOURCES LLC, a Nevada Limited-Liability Company, ARK ROYAL ASSURANCE LLC, a Nevada Limited-Liability Company, and ARK ROYAL INVESTMENTS, LLC, a Nevada Limited-Liability Company,<br><br>            Defendants. | CASE NO.  2:10-cv-02483-GEB-CMK<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:   June 18, 2012<br>Time:  9:00 a.m.<br>Dept:  Courtroom 10<br>Judge: Honorable Garland E. Burrell, Jr. |

DLA PIPER LLP (US)
SACRAMENTO

WEST\230658104.1        DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                        AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
                        Case No. 210-CV-02483-GEB-CMK

1        TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on June 18, at 9:00 a.m., in Courtroom 10 of the above-

3  titled Court, located at 501 I Street, Sacramento, California 95814, defendants STEVEN

4  VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT,

5  LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET

6  MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK

7  ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL

8  FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK

9  ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will

10  and hereby do move to dismiss the Third Amended Complaint filed by plaintiff, MVP Asset

11  Management (USA) LLC ("MVPAM"), under Article III of the United States Constitution and

12  Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that Plaintiff lacks

13  constitutional standing to maintain this action because it has failed to properly allege its putative

14  standing as an assignee to assert claims purportedly held by MVP.

15        In the alternative, and in conjunction with their Rule 12(b)(6) Motion to Dismiss filed

16  herewith, Moving Defendants also seek dismissal of the state law claims on the ground of lack of

17  diversity jurisdiction.  Upon dismissal of Plaintiff's federal claims pursuant to the Rule 12(b)(6)

18  motion, the Court will lack diversity jurisdiction over the remaining state law claims.  Federal law

19  requires the Court to look through the alleged collusive assignment between MVPAM and MVP,

20  and thereby use MVP's citizenship for purposes of determining whether complete diversity exists.

21  28 U.S.C. § 1359.  When MVP's citizenship is considered, complete diversity is defeated because

22  there will be a foreign assignor as the effective plaintiff and a foreign defendant.  *See* 28 U.S.C.

23  § 1332.  Accordingly, upon dismissal of the two federal claims, the Court should decline to

24  exercise supplemental jurisdiction over the remaining state law claims, and dismiss them.  28

25  U.S.C. §1367(c).

26

27

28

    DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1    This motion will be based upon this Notice of Motion and Motion, Memorandum of

2    Points and Authorities, all filed and served herewith, and on such further documents and

3    argument as the Court may permit at the hearing of this motion.

4    Dated:  May 17, 2012                    DLA PIPER LLP (US)

5

6
                                             By:_____/s/ TODD M. NOONAN_____
7                                                Todd M. Noonan
                                                 Attorneys for Defendants
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        -2-

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     PLAINTIFF'S FOURTH SET OF ALLEGATIONS CONFIRMS THAT IT
        CANNOT ALLEGE A VALID ASSIGNMENT .................................................... 4

        A.      Plaintiff's Original Complaint:  Plaintiff Purports to Bring the Action as an
                Uninjured Investment Advisor Holding a Power of Attorney ....................... 4

        B.      Plaintiff's First Amended Complaint:  Plaintiff Now Claimed to be an
                Assignee, but Failed to Allege Facts Sufficient to Establish a Valid
                Assignment ................................................................................................ 5

        C.      Plaintiff's Second Amended Complaint:  Plaintiff Adds a Belated Director
                Ratification to Try to Salvage the Defective Assignment............................. 6

        D.      Plaintiff's Third Amended Complaint:  Plaintiff Alleges a "Nonwritten
                agreement" to Assign MVP's Claims ......................................................... 8

III.    DISCUSSION ...................................................................................................... 8

        A.      Standards Governing This Rule 12(b)(1) Motion to Dismiss For Lack Of
                Article III Constitutional Standing............................................................ 8

        B.      Plaintiff MVPAM Has Failed to Allege a Valid Assignment Because There
                Was No Outward Manifestation of the Alleged Agreement to Assign................ 10

        C.      MVP's May 2011 Ratification of the Alleged Assignment Does Not
                Retroactively Provide MVPAM with Article III Standing ................................... 13

                1.      MVP's Belated Ratification Cannot Create Standing Where None
                        Existed at the Outset Of Litigation............................................. 13

                2.      Plaintiff Is Also Barred From Relying Upon Rule 17 Because Its
                        Decision To File In The Name Of MVPAM Rather Than MVP Was
                        Made For Tactical Reasons........................................................ 18

        D.      MVPAM Has Had Four Bites At The Apple:  Dismissal This Time Should
                Be Without Leave to Amend........................................................................ 19

        E.      Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of
                Assessing Diversity Jurisdiction ............................................................... 19

IV.     CONCLUSION ................................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

CASES

2

3

*Advanced Magnetics, Inc. v. Bayshore,*
106 F.3d 11 (2d Cir. 1997) ........................................................................................ 17

4

*Airlines Reporting Corp. v. S and N Travel, Inc.,*
58 F.3d 857 (2d Cir. 1995) ........................................................................................ 21

5

6

*Amalgamated Transit Union v. Superior Court,*
46 Cal. 4th 993 (2009) .............................................................................................. 10

7

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ........................................................................................ 9, 13

8

9

*Attorney's Trust v. Videotape Computer Prods., Inc.,*
93 F.3d 593 (9th Cir. 1996) ............................................................................ 19, 20, 21

10

*Bennett v. Spear,*
520 U.S. 154 (1997) .................................................................................................. 16

11

12

*Cetacean Cmty v. Bush,*
386 F.3d 1169 (9th Cir. 2004) ......................................................................... 8, 14, 15

13

*Cockerell v. Title Ins. & Trust Co.,*
42 Cal. 2d 284 (1954) ....................................................................................... 10, 11, 13

14

15

*Craig v. Atl. Richfield Co.,*
19 F.3d 472 (9th Cir. 1994) ....................................................................................... 22

16

*Dunmore v. U.S,*
358 F.3d 1107 (9th Cir. 2004) ......................................................................... 15, 16, 18

17

18

*Dweck v. Japan CBM Corp.,*
877 F.2d 790 (9th Cir. 1989) ............................................................................... 21, 22

19

20

*Faysound Ltd. v. United Coconut Chem., Inc.,*
878 F.2d 290 (9th Cir. 1989) ..................................................................................... 22

21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ............................................................................................. 9, 14

22

23

*Gladstone Realtors v. Village of Bellwood,*
441 U.S. 91 (1979) .................................................................................................... 16

24

25

*Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.,*
546 F.2d 1227 (5th Cir. 1977) ................................................................................... 21

26

27

*In re Brooms,*
447 B.R. 258 (9th Cir. B.A.P. 2011) ........................................................................ 10

28

DLA PIPER LLP (US)
SACRAMENTO

*Indep. Living Ctr. of S. Cal., Inc. v. Shewry,*
    543 F.3d 1050 (9th Cir. 2008) ............................................................................ 14

*Kent v. N. California Reg'l Office of the Am. Friends Serv. Comm.,*
    497 F.2d 1325 (9th Cir. 1974) ............................................................................ 16

*Kokkonen v. Guardian Life Ins. Co.,*
    511 U.S. 375 (1994) ............................................................................................. 9

*Kramer v. Caribbean Mills, Inc.,*
    394 U.S. 823 (1969) ..................................................................................... 20, 21

*Lierboe v. State Farm Mut. Auto Ins. Co.,*
    350 F.3d 1018 (9th Cir. 2003) ............................................................................ 16

*Lincoln Prop. Co. v. Roche,*
    546 U.S. 81 (2005) ............................................................................................. 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................. 14, 16, 18

*McCown v. Spencer, Jr.,*
    8 Cal. App. 3d 216 (1970) ................................................................................. 10

*Morrison v. Nat'l Australia Bank Ltd.,*
    130 S.Ct. 2869 (2010) ....................................................................................... 18

*Mutuelles Unies v. Kroll & Linstrom,*
    957 F.2d 707 (9th Cir. 1992) ............................................................................ 17

*Newman-Green, Inc. v. Alfonzo-Larrain,*
    490 U.S. 826 (1989) ............................................................................................. 9

*Pratt v. Progressive Casualty Ins. Co.,*
    2011 WL 2160863 (W.D. Ky., June 1, 2011) .................................................... 16

*Property Asset Management, Inc., v. Chicago Title Ins. Co., Inc.,*
    173 F.3d 84 (2nd Cir. 1999) ......................................................................... 11, 12

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ............................................................................. 9

*Simpson v. Alaska State Comm'n for Human Rights,*
    608 F.2d 1171 (9th Cir. 1979) ........................................................................... 22

*Steckman v. Hart Brewing Inc.,*
    143 F.3d 1293 (9th Cir. 1998) ............................................................................. 9

*W. Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) ....................................................................... 9, 13

-iii-

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP,*
   549 F.3d 100 (2d Cir. 2008)...................................................................................... 5

*Warren v. Fox Family Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003).................................................................................... 9

*Winet v. Price,*
   4 Cal. App. 4th 1159 (1992)..................................................................................... 11

*Wolfe v. Strankman,*
   392 F.3d 358 (9th Cir. 2004)...................................................................................... 9

*Wulff v. CMA, Inc.,*
   890 F.2d 1070 (9th Cir. 1989).................................................................................. 18

*Zurich Ins. Co. v. Logitrans, Inc.,*
   297 F.3d 528 (6th Cir. 2002).................................................................................... 16

**STATUTES**

28 U.S.C. § 1332.......................................................................................... 4, 19, 20

28 U.S.C. § 1359.............................................................................................. passim

28 U.S.C. § 1367(c)............................................................................................ 4, 23

28 U.S.C. § 2072(b)............................................................................................... 15

**RULES**

Fed. R. Civ. Proc. 12(b)(1)............................................................................ 8, 9, 14

Fed. R. Civ. Proc. 12(b)(6)............................................................................... 19, 4

Fed. R. Civ. Proc. 17...................................................................................... passim

Fed. R. Civ. Proc. 17(a) ..................................................................... 14, 15, 16, 17

Fed. R. Civ. Proc. 82(a) ........................................................................................ 15

**OTHER AUTHORITIES**

1 Witkin, *Summary of Cal. Law (10th ed. 2005), Contracts*, § 116 ........................... 11

1 Witkin, *Summary of Cal. Law (10th ed. 2005), Contracts*, § 709 ........................... 11

U.S. Constitution, Article III............................................................................ passim

-iv-

# I.
## INTRODUCTION

This action has been dismissed three times for lack of Article III standing.  Each time, the Court provided plaintiff MVP Asset Management's ("Plaintiff" or "MVPAM") with the opportunity to cure.  MVPAM's Third Amended Complaint ("TAC"), however, confirms that Plaintiff, the uninjured investment advisor to the allegedly harmed underlying investor MVP Fund of Funds ("MVP"), simply cannot allege a valid assignment of MVP's purported claims to MVPAM.  MVPAM therefore lacks Article III standing.  Plaintiff has had ample opportunity to get it right, and its latest effort shows that it cannot do so.  Allowing further amendment would be futile.  This time, therefore, the Court should dismiss the action without leave to amend.

In its most recent order dismissing the action for lack of Article III standing, the Court found that Plaintiff's "bare allegation that '[i]n February 2009 MVPAM . . . caused MVP to enter into an agreement with MVPAM under which MVP assigned its claims arising out of and relating to the Ark Discovery Fund . . . to MVPAM for collection" was insufficient to allow the court to determine that a valid assignment had been made.  (*See* Order, filed January 16, 2012, at 7.)  In amending however, Plaintiff adds *nothing* of substance to this previous "bare allegation" concerning the assignment, and *nothing* that would allow this Court to determine that a valid assignment had been made.

Plaintiff's scattering of new allegations are set forth in Paragraph 87 of the TAC.  As pertinent to the validity of the alleged assignment, Plaintiff added the following new allegations.

- That MVP and MVPAM entered into a "non-written agreement" under which MVP assigned its claims for collection in California; and
- That the alleged assignment was made in or around February 28, 2009, in Tahoe City, California.

Plaintiff, in other words, added the alleged date and location of the supposed agreement, and described the agreement as "non-written."  That is it:  A date, a place, and the deliberately opaque and evasive word "non-written."  But the addition of the word "non-written" adds nothing of substance to the prior "bare allegation" that "MVPAM . . . caused MVP to enter into an

1    agreement with MVPAM under which MVP assigned its claims." That bare allegations has

2    already been ruled inadequate, and remains just as inadequate with the adjective "non-written"

3    added. (Order, at 7.)

4         Why the conclusory and evasive allegations? That becomes clear when the *only*

5    participant – consciously stated in the singular – to this purported assignment is considered.

6    Previously and again in the TAC, Plaintiff alleges that it was MVPAM (the uninjured investment

7    advisor), acting pursuant to its alleged authority under an Investment Management Agreement

8    with MVP (the alleged investor), that "caused" MVP to assign its claims to MVPAM. (SAC,

9    ¶ 87; TAC, ¶ 87.)

10        Plaintiff alleges that MVPAM's principal is Michael Stratford. (TAC, ¶ 35.) The Court

11   may reasonably infer from Plaintiff's allegations, then, that just one individual, Michael Stratford,

12   stood on *both* sides of this purported transaction. MVPAM, acting through Michael Stratford and

13   as the alleged attorney-in-fact for MVP (the supposed assignor), *caused* MVP to enter into a

14   "non-written" agreement to assign its claims to MVPAM, with MVPAM accepting the

15   assignment through, again, Michael Stratford. No other persons are identified. No

16   contemporaneous documentation reflecting the purported assignment has ever been alleged to be

17   in existence. No contemporaneous facts concerning the nature and manner of the supposed

18   assignment are provided.

19        Accordingly, there is yet one more reasonable inference that the Court may be draw from

20   this series of allegations. This purported "assignment" – if it even happened at all – occurred *only*

21   in the mind of Michael Stratford. It was not documented in any manner at the time, or

22   communicated in any way whatsoever at the time to anyone else. Indeed, it was not even

23   allegedly ratified by MVP, the supposed assignor, until more than two years later May 2011, a

24   date well after the filing of this lawsuit, and in specific response to Defendants' motions to

25   dismiss. (*See* TAC, ¶ 87(C).)

26

27

28

-2-

1    Such a "mental assignment" does not constitute a valid assignment under California law.[1]

2    Irrespective of whether MVPAM might have had the power under the IMA to assign the claims, it

3    actually had to do so in a legally cognizable fashion.  It did not.  California law, in a fashion

4    consistent with the Restatement of Contracts, requires an outward "manifestation" of the

5    assignment in order for it to be valid.  Of course, this *must* be the law, and some outward

6    manifestation *must* be present, because California follows the objective theory of contracts.  The

7    undisclosed subjective intent of a party concerning whether it assented to, or the meaning of the

8    terms of, a contract is irrelevant.  What matters is what was objectively done, said, or written.

9    Yet here, Plaintiff has not alleged any such manifestation of the assignment.  Defendants

10   have not been able to identify even one case endorsing as valid such a "mental assignment," and

11   nothing in the law or common sense suggests that such an assignment should be valid or

12   enforceable.  There must be an outward manifestation of the assignment, and here there was not.

13   Accordingly, the assignment as alleged is invalid and cannot support Article III standing.

14   Moreover, Plaintiff's allegations concerning MVP's alleged ratification of the assignment in May

15   2011 do not cure this constitutional defect.  MVPAM did not have standing at the time it filed this

16   lawsuit, and nothing done after that point, including the purported ratification, can remedy that

17   defect.  As Plaintiff still has not adequately alleged standing, despite *four* separate opportunities

18   to do so, the case should be dismissed without leave to amend.

19   Furthermore, and only to the extent the Court does not dismiss the case in its entirety for

20   lack of constitutional standing, Moving Defendants also identify an issue concerning the Court's

21   diversity jurisdiction.  Plaintiff alleges both federal question and diversity jurisdiction.  (TAC,

22   ¶ 1.)  Title 28 U.S.C. section 1359, however, bars a plaintiff from entering into a collusive

23

---

[1]    In dismissing the Second Amended Complaint, the Court also found that Plaintiff had not
24   alleged sufficient facts to justify the application of California law, rather than the law of the
     British Virgin Islands.  (Order, at 7.)  Under the law of a British Virgin Islands, the alleged
25   assignment would be invalid.  (*See* Declaration of James Corbett QC, ¶¶ 31-36, filed November
     14, 2011, Dkt. No. 85.)  Defendants maintain that the law of the British Virgin Islands should
26   govern, particularly given that the BVI is where the alleged assignor, MVP, is located, and it is
     the law of the BVI law that governs MVP and MVPAM's contractual relationship under the IMA,
27   *see* TAC, Ex. A, ¶ 19, at 10.  Nonetheless, Defendants apply, for purposes of this motion only,
     California law, because Plaintiff's claims must still be dismissed under that law as well.

28

-3-

1  assignment in order to manufacture diversity jurisdiction.  Partial assignments between related

2  persons for purposes of collection represent a prototypical collusive assignment.  The assignment

3  alleged in this case bears all of the hallmarks of a collusive assignment.

4      Section 1359 provides that when a collusive assignment is present, the Court must

5  disregard the citizenship of the assignee and look to that of the assignor for purposes of

6  evaluation of diversity jurisdiction.  28 U.S.C. § 1359.  When plaintiff MVPAM's Delaware

7  citizenship is disregarded, complete diversity is lost.  There is both a foreign assignor/plaintiff

8  (MVP) and foreign defendants (Vestbirk and Ark Royal Asset Management, Ltd.).  Diversity

9  jurisdiction does not exist when a foreign citizen or subject is named on both sides of a lawsuit.

10  *See* 28 U.S.C. § 1332.  Therefore, to the extent that the Court finds Article III standing but

11  proceeds to dismiss the federal claims pursuant to the Rule 12(b)(6) motion, the remaining state

12  law claims should be dismissed for lack of subject matter jurisdiction.  There is no basis for this

13  Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state

14  law claims.

**II.**
**PLAINTIFF'S FOURTH SET OF ALLEGATIONS CONFIRMS THAT IT CANNOT**
**ALLEGE A VALID ASSIGNMENT**

**A.    Plaintiff's Original Complaint:  Plaintiff Purports to Bring the Action as an**
**Uninjured Investment Advisor Holding a Power of Attorney.**

19      Plaintiff's original complaint, drafted prior to any issue being raised with respect to

20  Plaintiff's standing, alleged that plaintiff MVPAM was merely an uninjured investment advisor

21  purporting to assert the claims of its management client, MVP, pursuant to a power of attorney.

22  Plaintiff did not allege that it was asserting its claims as the assignee of MVP, *despite* the obvious

23  importance of such a fact and *despite* the fact that it now alleges that this purported assignment

24  actually happened in February 2009, which was well before the filing of the action.  (*See* TAC,

25  ¶ 87.)  Instead, MVPAM alleged in its original complaint only that it had been the "investment

26  manager" for MVP, "with unrestricted decision making authority to control and act as MVP's

27  attorney-in-fact with respect to all investments and litigation relating thereto."  (Original

28

1   Complaint, ¶ 3.)  Given Plaintiff's newest set of allegations concerning a "non-written

2   assignment," it is no doubt the case that this first set of allegations represented the true set of the

3   facts:  Plaintiff has only ever been an investment manager and alleged attorney-in-fact, and there

4   was no valid assignment.

5           However, this attorney-in-fact status did not suffice to allow Plaintiff to advance its

6   client's claims in federal court.  As found by this Court in its Order of April 14, 2011, MVPAM's

7   mere possession of an alleged power of attorney did not suffice to provide MVPAM with Article

8   III standing.  (Order, filed April 14, 2011, at 4, citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte*

9   *& Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008)).  As a mere uninjured investment advisor,

10  MVPAM had suffered no injury-in-fact, and the case therefore was dismissed with leave to

11  amend.  (*See* April 14, 2011 Order, at 4.)

12  **B.    Plaintiff's First Amended Complaint:  Plaintiff Now Claimed to be an Assignee, but
        Failed to Allege Facts Sufficient to Establish a Valid Assignment.**

13

14          Plaintiff subsequently filed its First Amended Complaint.  Notwithstanding its failure to

15  mention the assignment before, Plaintiff alleged that it had, in fact, been an assignee all along.

16  Relying upon the same alleged Power of Attorney that had been insufficient to convey it with

17  standing, Plaintiff alleged that it brought the "action as an assignee pursuant to an assignment by

18  MVP for collection . . . ."  (First Amended Complaint ("FAC"), ¶ 3.)  Plaintiff further disclosed

19  that there had been no separate corporate action by MVP in connection with this purported

20  assignment.  Instead, MVPAM "caused" MVP to assign its claims to MVPAM:

21          In February 2009, pursuant to its power of attorney . . . , MVPAM caused MVP to
            enter into an agreement with MVPAM under which MVP assigned its claims
22          arising out of and relating to the Ark Discovery Fund ("MVP Claims") to
            MVPAM for collection in return for MVPAM's agreement to account to MVP for
23          any recovery obtained, net the cost of prosecuting the MVP Claims.

24  (FAC, ¶ 87.)  MVP also alleged that its principal, Michael Stratford, "as the sole voting

25  shareholder of MVP with the authority to bind MVP, confirmed and approved on behalf of MVP

26  the assignment of the MVP Claims for collection to MVPAM."  *Id.*

27          None of the documentation that one would expect to have been generated in connection

28

                                                -5-

1    with such a substantial corporate decision involving an alleged $2 million loss was attached to the

2    First Amended Complaint (and such documentation has never been supplied).  MVPAM did not

3    attach, for example, any assignment or any "confirmation" by Stratford of the purported

4    assignment.

5          By way of Order filed September 22, 2011, the Court again dismissed MVPAM's claims

6    for lack of Article III standing.  The Court reviewed the governing law of the British Virgin

7    Islands, which provides that a company may, "by an instrument in writing," appoint a person as

8    its attorney either "generally or in relation to a specific matter."  (Order, filed September 22,

9    2011, at 5, citing British Virgin Islands Business Companies Act of 2004 ("BVI Companies

10   Act"), § 106.)  The Court found that Plaintiff's allegations did not demonstrate that it had a

11   general power of attorney; instead, Plaintiff had alleged only that it held a specific power limited

12   to investments and litigation relating to those investments.  This specific and limited power of

13   attorney did not provide MVPAM the right to unilaterally assign MVP's claims to MVPAM.

14   (*See Id.*, at 5.)

15         As for the purported shareholder ratification by Stratford, the Court found that under

16   British Virgin Islands law, only the directors have the power to direct the affairs of MVP unless

17   the Articles of Association provided otherwise.  MVPAM had not alleged that MVP's Articles

18   contained such a modification.  (*Id.*, at 6.)  As such, the Court found that while MVP's directors

19   might have had the power to make the assignment, Stratford's purported confirmation as the "sole

20   voting shareholder" was of no legal effect.  It did not "bind MVP and make MVPAM's

21   assignment valid."  (*Id.,* at 7.)  Accordingly, since MVPAM still had not alleged a valid

22   assignment, the Court dismissed the complaint, again providing MVPAM leave to amend.

23   **C.    Plaintiff's Second Amended Complaint:  Plaintiff Adds a Belated Director
           Ratification to Try to Salvage the Defective Assignment.**

24

25         Plaintiff filed the SAC on October 3, 2011.  Plaintiff alleged that on March 23, 2004,

26   MVP and MVPAM entered into an Investment Management Agreement ("IMA").  (SAC, ¶ 3.)

27   MVPAM alleged that pursuant to the IMA, MVP delegated to MVPAM a power of attorney

28

-6-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                            AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
                            Case No. 210-CV-02483-GEB-CMK

1   including all powers and discretions to manage the business affairs of MVP.  *Id.*  The SAC also

2   repeats MVPAM's prior allegation that it is bringing this action as a purported assignee "pursuant

3   to an assignment by MVP for collection . . . ."  (*Id.*)  The purported assignment still was not

4   provided.  Instead, MVPAM alleged that MVPAM "caused MVP to enter into an agreement with

5   MVPAM under which MVP assigned its claims arising out of and relating to the Ark Discovery

6   Fund ("MVP Claims") to MVPAM . . . ."  (*Id.*, ¶ 87.)

7          MVPAM also repeated its allegations concerning the purported shareholder ratification,

8   alleging that "Stratford, as the sole voting shareholder of MVP, with the authority under the

9   [Memorandum and Articles of Association] to delegate the management powers of MVP's Board

10  of Directors, confirmed and approved on behalf of MVP the assignment of the MVP Claims for

11  collection to MVPAM."  (*Id.*)  Lastly, MVPAM added a new allegation to the effect that on

12  May 27, 2011 – a date during the pendency of this action, and after the Court had already

13  dismissed the original complaint for lack of standing, after MVPAM had filed the FAC, and after

14  Moving Defendants had again challenged MVPAM's constitutional standing – MVP's Board of

15  Directors allegedly retroactively confirmed the purported assignment.  (*Id.*)

16         Moving Defendants again moved to dismiss.  They argued that the IMA did not provide

17  MVPAM with the requisite authority to assign the claims, that Plaintiff had not alleged a valid

18  assignment, and that none of the alleged shareholder or Board of Director ratifications operated to

19  cure these defects.  In an Order entered January 6, 2012, the Court concluded that Plaintiff had

20  sufficiently alleged its authority to enter into an assignment.[2]  However, the Court found (1) that

21  Plaintiff's "bare allegation" concerning the assignment did not suffice to establish that a valid

22  assignment had been made, and (2) that Plaintiff had not alleged sufficient facts to support

23  application of California law, rather than BVI law, under which Defendants argued the

24  assignment would have been invalid.  (*See* Order, January 6, 2012, at 7.)  The Court provided

25

26

_____

27  [2]     Given the Court's ruling on the authority issue, Defendants have not again briefed that
    issue.  Defendants preserve this defense, however, and reserve the right to establish in future

28  proceedings that MVPAM was not provided the authority to assign MVP's claims to itself.

-7-

1   Plaintiff with 10 days to amend, and Plaintiff did so, filing the Third Amended Complaint.[3]

2   **D.     Plaintiff's Third Amended Complaint:  Plaintiff Alleges a "Nonwritten agreement"**
       **to Assign MVP's Claims.**

3

4         Plaintiff's Third Amended Complaint adds only a handful of new allegations.  In an effort

5   to bolster the contention that California law applies to the assignment, Plaintiff alleges that the

6   alleged agreement was entered into in Tahoe City, California, and supposedly provides for

7   collection on MVP's claims in California.  (TAC, ¶ 87.)  Plaintiff does not allege that any

8   representative of MVP traveled to California for purposes of entering into the assignment.

9   Rather, the same actor, MVPAM, was present on both sides of the agreement, allegedly in two

10  different capacities:  MVPAM as itself, the assignee, and MVPAM as the alleged attorney-in-fact

11  for MVP, the assignor.  It was thus allegedly MVPAM that caused MVP to enter into the

12  agreement with MVPAM to assign MVP's claims to MVPAM.  (*Id.*)

13        As for this alleged agreement, Plaintiff alleges little else new, except that it was a "non-

14  written agreement."  As the agreement was not documented in any fashion, and did not result

15  from oral communications between MVP and MVPAM, Plaintiff is left only with this coy

16  characterization; the alleged agreement to assign, in other words, apparently exists only in the

17  mind of MVPAM's principal:  Michael Stratford.  (*See* TAC, ¶ 87.)[4]

18                                        **III.**
                                    **DISCUSSION**

19

20  **A.     Standards Governing This Rule 12(b)(1) Motion to Dismiss For Lack Of Article III**
       **Constitutional Standing.**

21        A suit brought by a plaintiff without Article III standing is not a "case or controversy,"

22  and should be dismissed under Rule 12(b)(1).  *Cetacean Cmty v. Bush*, 386 F.3d 1169, 1174 (9th

23  _____

24  [3]     The Court subsequently entered an order upon the stipulation of the parties that stayed the
    action on an interim basis for the parties to pursue settlement discussions.  Those discussions did
    not bear fruit, and with the expiration of the stay, the parties are back before the Court.

25  [4]     Plaintiff also added a new allegation concerning MVPAM's alleged commercial interest
    in advancing the collection of MVP's claims.  (TAC, ¶ 87(D).)  Unfailingly willing to tailor

26  allegations to whatever the law might require, this allegation appears to be an effort to bring the

27  alleged assignment into conformance with British Virgin Islands law, which generally precludes
    the assignment of a "bare cause of action."  (*Compare* Declaration of James Corbett QC, Dkt.

28  No. 85, and Declaration of Arabella Di Iorio, ¶¶ 19-21, Dkt. No. 89.)

1    Cir. 2004); *see* Order, September 22, 2011, at 2-3.  The plaintiff has the burden of establishing

2    jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts

3    are courts of limited jurisdiction.  They possess only that power authorized by Constitution and

4    statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies

5    outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

6    asserting jurisdiction.") (internal citations omitted).  Among other things, in order to satisfy

7    Article III's standing requirements, the plaintiff must show that it suffered an injury-in-fact fairly

8    traceable to the challenged acts of the defendants.  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

9    *Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  "The existence of federal jurisdiction ordinarily

10   depends on the facts as they exist when the complaint is filed."  *Newman-Green, Inc. v. Alfonzo-*

11   *Larrain*, 490 U.S. 826, 830 (1989).

12          "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v.*

13   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

14   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

15   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

16   themselves, would otherwise invoke federal jurisdiction."  *Id.*

17          Moving Defendants' present motion presents a facial challenge.  Accordingly, the Court

18   should assume that the factual allegations in the TAC are true, and all reasonable inferences

19   should be drawn in MVPAM's favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

20   However, the Court need not accept as true legal conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

21   1949-50 (2009); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).  In addition,

22   where a plaintiff's allegations are contradicted by attachments to the complaint, the contradictory

23   allegations may be disregarded.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

24   (9th Cir. 2003); *Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

25

26

27

28

-9-

**B.      Plaintiff MVPAM Has Failed to Allege a Valid Assignment Because There Was No Outward Manifestation of the Alleged Agreement to Assign.**

As set forth by the Court in its Order of January 6, "[i]n an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining:  (1) what has been assigned; and (2) whether a valid assignment has been made."  (Order, January 6, 2012, at 7, citing *In re Brooms*, 447 B.R. 258, 265 (9th Cir. B.A.P. 2011).  In this case, Plaintiff's allegations do not allow the Court to determine either issue.  Plaintiff has not alleged a valid assignment, which necessarily precludes any determination on what has actually been assigned.

Specifically, Plaintiff's allegations provide no reasonable basis to infer that there was an outward manifestation of the purported assignment, and in the absence of such an operative act, there was no valid assignment.  The law requiring an outward manifestation of an assignment is long-standing, required by the objective theory of contracts applicable in California, and the one irreducible minimum that *must* be present.

> An assignment requires very little by way of formalities and is essentially free from substantive restrictions.  In the absence of a statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment.  *It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.*

*Amalgamated Transit Union v. Superior Court*, 46 Cal. 4th 993, 943 (2009) (emphasis added); *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954) ("While no particular form of assignment is necessary, the assignment, *to be effectual*, must be a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such person, or to a third person.") (emphasis added); *McCown v. Spencer, Jr.*, 8 Cal. App. 3d 216, 225 (1970) (same); *see also* Rest.2d Contracts, § 324 ("It is essential to an assignment of a right that the obligee *manifest* an intention to transfer the right to another person without further action or manifestation of intention by the obligee.  The manifestation may be made to the other or to a third person on his behalf and, except as

-10-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1  provided by statute or by contract, may be made either orally or by a writing.") (emphasis added);

2  1 Witkin, *Summary of Cal. Law (10th ed. 2005), Contracts*, § 709.

3          At root, this outward manifestation is fundamentally required by the objective theory of

4  contracts.  Witkin has summarized that law as follows in the context of the mutual consent needed

5  to establish a valid contract:

6              Every contract requires consenting parties.  However, there need
              not be a subjective meeting of the minds; in the absence of fraud,
7              mistake, etc., the outward *manifestation* or *expression* of consent is
              controlling.  In other words, mutual consent is gathered from the
8              reasonable meaning of the words and acts of the parties, and not
              from their unexpressed intentions or understanding.  By the modern
9              law of contract, the mere state of mind of the parties—with
              reference to the meeting of the minds—is not the essential object of
10             inquiry, the terms of the promise-act being determinable by an
              *external* and not by an internal standard … or by what distinguished
11             writers have termed the *objective* rather than the *subjective test.*

12  1 Witkin, *Summary of Cal. (10th ed. 2005)*, *Contracts*, § 116 (emphasis in original; internal

13  citations, quotations omitted).  A similar standard governs the interpretation of contracts, and

14  would apply here as well to any evaluation of the supposed terms of the assignment between

15  MVP and MVPAM.  *See, e.g., Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) (undisclosed

16  subjective intent irrelevant to determination of the meaning of a contract).

17         Absent such an outward manifestation, the assignment is not "effectual" and invalid.  *See*

18  *Cockerell*, 42 Cal. 2d at 291.  Thus, for example, in *Property Asset Management, Inc., v. Chicago*

19  *Title Ins. Co., Inc.,* 173 F.3d 84, 87 (2nd Cir. 1999), the Second Circuit found an assignment to be

20  invalid when there had been no outward manifestation of the intent to assign claims between

21  sister corporations.  In a case, much like this one, where the timing of the alleged assignment

22  mattered, the plaintiff submitted affidavits from officers of the putative assignor corporation, who

23  were also officers of the putative assignee corporation, stating that the two corporations had

24  always intended to have plaintiff receive the right to enforce the title insurance policy claim at

25  issue.  Judge Calebresi of the Second Circuit held, however, that the affidavits "express[ed] only

26  the uncommunicated subjective understanding of the officers."  *Id.*   Similar to California law, the

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1   court explained that "although no particular formula is needed to create an assignment under New

2   York law, there is a need for some 'act or words' that manifest an intent to assign." *Id*.

3       Since, as here, there had been no outward manifestation, the Second Circuit rejected the

4   purported assignment as invalid.  As it explained, the reason for not permitting unmemorialized

5   assignments is especially compelling in cases involving corporate affiliates:

6
7
8
9
10
11
12
13
> The reason for not permitting assignments based on unmemorialized intentions is especially strong in cases like this one, where the putative assignor and assignee are sister corporations.  If intent alone were enough to assign, and to do so retroactively, then the holder of a contract could choose at will which of its corporate personalities would be the beneficiary of any given contract on any given day.  This could be accomplished simply by adducing insider officers' testimony that they had meant to assign the contract from its nominal holder to the appropriate corporate shell before the relevant date….[E]ven if we assume that the present plaintiff had no manipulative motive, it is easy to see how recognizing assignments based on retrospective testimony about intent alone would, in many cases, permit the unfair manipulation of contract rights.

14   *Id.* at 87.

15       The Second Circuit's analysis applies with even more force to this case.  Here, the alleged

16   transaction does not even reach to the level of being between "sister" corporations; instead, it was

17   all the supposed doing of one corporation, MVPAM, and in fact just one person, Michael

18   Stratford.  All of the concerns raised by the Second Circuit – the choosing at will of which

19   corporate personality to utilize, the unfair manipulation of contract rights – are present here.

20       Plaintiff has failed to allege the basic facts necessary to establish the manifestation of the

21   purported assignment, and has therefore failed to allege the operative fact of an actual

22   assignment.  Plaintiff has had four tries to establish a valid assignment, yet flatly refuses to supply

23   the straightforward facts – and not conclusions – necessary to do so.  Nowhere does the TAC

24   explain, for example, how the alleged specific terms of the assignment – such as those providing

25   for collection in a specific state, and for return of proceeds to MVP after accounting for costs –

26   were or even could be outwardly manifested through the "non-written" agreement.  Instead, there

27

28

-12-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1    is just a retrospective manipulation of contract rights, and the selection of whatever corporate

2    personality is appropriate to meet the need of the day.

3          "The burden of proving an assignment falls upon the party asserting the rights

4    thereunder."  *Cockerell*, 42 Cal. 2d at 292.  "In an action by an assignee to enforce an assigned

5    right, the evidence must not only be sufficient to establish the fact of assignment when that fact is

6    in issue but the measure of sufficiency requires that the evidence of assignment be clear and

7    positive to protect an obligor from any further claim by the primary obligee.  *Id.* (internal

8    citations omitted).  Here, all of the information concerning this supposed assignment is already

9    entirely within Plaintiff's knowledge and control, and Plaintiff and its attorneys are presumed to

10   know the law and the prerequisites for alleging a valid assignment under California law.  Yet,

11   Plaintiff offers only more smoke and mirrors.

12         Plaintiff's allegations do not suffice to establish a valid assignment, particularly given the

13   circumstances here, where MVPAM/Stratford stood on both sides of the transaction.[5]  Instead,

14   Plaintiff continues to offer only mere legal conclusions that should be disregarded in their

15   entirety.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *W. Mining Council v. Watt,* 643 F.2d

16   618, 624 (9th Cir. 1981).  Moving Defendants thus request the dismissal of this action without

17   leave to amend.

18   **C.    MVP's May 2011 Ratification of the Alleged Assignment Does Not Retroactively**
     **Provide MVPAM with Article III Standing.**
19

           **1.    MVP's Belated Ratification Cannot Create Standing Where None Existed at**
20               **the Outset Of Litigation**.

21         MVPAM's remaining effort at salvaging this purported and invalid assignment comes

22   through a belated May 27, 2011, Written Resolution of the MVP Board of Directors.  (TAC,

23   Ex. C.)  This resolution was allegedly passed approximately eight months after the filing of the

24   _____

25   [5]    Had such an assignment actually occurred, it would have been documented, given that it
     involved a claim allegedly worth $2 million, involved domestic and foreign corporations, and had

26   one purported agent (MVPAM/Stratford) acting for both the assignor and assignee.  Similarly, the
     Resolution of the MVP Board of Directors, attached as Exhibit C to the TAC, further

27   demonstrates that there was no valid assignment.  In the Resolutions, the Board purports to
     review the history of this purported assignment.  Nowhere in the recitation is there any suggestion

28   that there was a contemporaneous manifestation of the assignment.  (*See* TAC, Exhibit C.)

1   original complaint by MVPAM, and only after the filing of Moving Defendants' second motion

2   to dismiss, which again raised a standing challenge.

3         Through these Resolutions, MVPAM seeks to establish that it had the authority to assign

4   MVP's claims to MVPAM.  (TAC, Ex. C.)  However, as noted above in footnote 5, nothing in the

5   Resolutions provides any contemporaneous evidence on the actual purported act of assignment,

6   i.e., the outward manifestation of the assignment.

7         Following the resolutions is a "Ratification" provision, through which the MVP Board

8   purports to ratify the past actions of MVPAM.  This belated ratification, however, does not and

9   cannot alter the fact that at the time this action was filed, the Plaintiff lacked Article III standing.

10  This defect is not subject to later cure.

11        Standing to sue is an "essential and unchanging part of the case-or-controversy

12  requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Article III

13  constitutional standing must exist at the time action is filed.  *Friends of the Earth, Inc. v. Laidlaw*

14  *Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 189 (2000).  The limits are jurisdictional, cannot be

15  waived by any party, and a court must resolve doubts about constitutional standing *sua sponte*.

16  *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1064-65 (9th Cir. 2008).  A suit

17  brought by a plaintiff without Article III standing is not a "case or controversy," and should be

18  dismissed under Rule 12(b)(1).  *Cetacean Cmty.*, 386 F.3d at 1174.  Here, for the reasons set forth

19  above, Plaintiff did not and cannot establish Article III standing at the time the action was filed.

20  The Court never had subject matter jurisdiction, and absent subject matter jurisdiction, lacks even

21  the basis to retain jurisdiction to consider other motions or proposed curative actions.  As such,

22  the action must be dismissed.

23        In briefing on the prior motions to dismiss, Plaintiff has argued that the Board's

24  ratification nonetheless should operate under Rule 17 of the Federal Rules of Civil Procedure to

25  retroactively provide MVPAM with standing.  This argument lacks merit, and conflates Article

26  III (or constitutional) standing, on the one hand, with statutory or prudential standing, on the

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1    other.  Defects in statutory standing are subject to cure, including through Rule 17; defects in

2    constructional standing are not.

3        This distinction – between constitutional and prudential or statutory standing– has been

4    well-developed in the case law.  A party may have constitutional standing, that is, it may have

5    suffered a cognizable injury-in-fact, but prudential concerns might still weigh against the Court

6    exercising jurisdiction, if, for example, the plaintiff was not be the real party in interest despite

7    having Article III standing.  *See, e.g., Dunmore v. U.S,.* 358 F.3d 1107, 1112 (9th Cir. 2004)

8    (debtor had Article III standing, but was not real party in interest when bankruptcy trustee in

9    charge of his bankruptcy estate).

10       Rule 17 allows a party to cure such prudential real party in interest defects.  *Id.*[6]  The

11   Federal Rules, however, do not purport to expand the jurisdiction of the federal courts beyond the

12   limits of the U.S. Constitution.  28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or

13   modify any substantive right."); Fed.R.Civ.Proc. 82(a) ("These rules do not extend or limit the

14   jurisdiction of the district courts . . . .").  Thus, by the express terms and limits of the Federal

15   Rules of Civil Procedure, Rule 17 cannot alter the irreducible constitutional minimum that Article

16   III standing exist at the outset of the litigation.

17       Moreover, even beyond these express stated limits of the Federal Rules themselves, when

18   a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute.

19   *Cetacean*, 386 F.3d at 1174 (noting that Congress can provide for statutory standing for particular

20   _____

[6]       Rule 17 provides as follows:

21

22       (a)    **Real Party in Interest**.

23       (1)    **Designation in General**.  An action must be prosecuted in the name of the
         real party in interest. . . .

24       . . .

25       (3)    Joinder of the Real Party in Interest.  The court may not dismiss an action
         for failure to prosecute in the name of the real party in interest until, after an
26       objection, a reasonable time has been allowed for the real party to ratify, join, or
         be substituted into the action.  After ratification, joinder, or substitution, the action
27       proceeds as if it had been originally commenced by the real party in interest.

28   Fed.R.Civ.Proc. 17(a).
                                          -15-

1    plaintiffs so long as Article III standing is independently satisfied); *Bennett v. Spear*, 520 U.S.

2    154, 162 (1997) (unlike constitutional standing, Congress may modify or abrogate prudential

3    standing concerns) *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no

4    event may Congress abrogate the Art. III minima:  A plaintiff must always have suffered 'a

5    distinct and palpable injury to himself' that is likely to be redressed if the requested relief is

6    granted."); *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

7         For this reason, Rule 17 "must be read with the limitation that a federal district court must,

8    at a minimum, arguably have subject matter jurisdiction *over the original claims.*"  *Zurich*, 297

9    F.3d at 531 (emphasis added); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) (Rule

10   17(a) addresses party joinder and not federal-court subject-matter jurisdiction); *Lujan*, 504 U.S. at

11   569 n.4 (later joinder of parties cannot cure standing issue that existed at time of filing:  "The

12   existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint*

13   *is filed.*  It cannot be that, by later participating in the suit, the State Department and AID

14   retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.")

15   (internal citation omitted); *Dunmore*, 358 F.3d at 1112 (distinguishing between the "irreducible

16   constitutional minimum of standing" and the prudential requirement that the plaintiff be the "real

17   party in interest," and holding that a party *with* standing, but who was not the real party in

18   interest, could rely upon Rule 17 and the ratification of the real party in interest, to allow the suit

19   to proceed); *Kent v. N. California Reg'l Office of the Am. Friends Serv. Comm.*, 497 F.2d 1325,

20   1329 (9th Cir. 1974) ("There is no doubt that as to the trust fund, the trustees are the real party in

21   interest by virtue of Fed.R.Civ.Proc. 17(a).  But Rule 17(a) means only that the trustees have a

22   real interest in the trust fund.  Rule 17(a) does not give them standing; 'real party in interest' is

23   very different from standing."); *Pratt v. Progressive Casualty Ins. Co.*, 2011 WL 2160863, *2-3

24   (W.D. Ky., June 1, 2011) (Rule 17 cannot be used to cure defects in Article III standing that exist

25   at time of filing); *cf. Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir.

26   2003) (class action must be dismissed where named plaintiff lacks constitutional standing;

27

28
                                                 -16-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
                              AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
                              Case No. 210-CV-02483-GEB-CMK

1   rejecting argument that other members of the class should have been named a class

2   representatives to avoid dismissal).

3       Accordingly, because MVPAM lacked the constitutional standing to file this suit, the

4   action must be dismissed, irrespective of any later effort to cure.  Neither of the cases cited by

5   Plaintiff in the prior motion practice, *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir.

6   1992), or *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997),

7   compel a different result.  In *Advanced Magnetics*, a plaintiff brought suit on behalf of itself and

8   certain of its shareholders.  The plaintiff did not hold a valid assignment, and thus could not

9   pursue the claims of the other shareholders.  *Advanced Magnetics*, 106 F.3d at 16-18.  The

10   Second Circuit nonetheless concluded that joinder under Rule 17 should have been allowed.  *Id.*

11   at 20.  However, unlike the circumstance in this case, it was undisputed that standing existed at

12   the outset of the case, as the original plaintiff was also pursuing its *own* claims as well.  *Id.* at 14.

13   Accordingly, the district court had continuing jurisdiction to consider joinder under Rule 17,

14   something that is not the case here.

15       The *Mutuelles* case is similarly unavailing to Plaintiff.  That case was a legal malpractice

16   case brought by an insurer against a law firm.  *Mutuelles*, 957 F.2d at 709.  The named plaintiff,

17   Mutuelles, had paid a total of $3,115,381 to settle the underlying action, some of which was paid

18   by two other insurance companies.  *Id.* at 710.  The action was initially filed just by Mutuelles,

19   and during the proceeding, the district court ruled that at least one of the other insurers was also a

20   real party in interest.  *Id.*  Pursuant to Rule 17, the district court allowed the other insurer to file a

21   Rule 17(a) ratification, allowing the action to proceed on that portion of the action as to which it

22   was the real party in interest.  *Id.*  The Ninth Circuit affirmed this ratification and joinder, over the

23   objection that the claims of the insurers would otherwise have been time barred, because the

24   action had also been filed by Mutuelles, the lead insurer, on its own behalf.  *Id.* at 712.  *Mutuelles*,

25   in other words, is a case involving the straightforward application of Rule 17.  It is not an Article

26   III standing case because Mutuelles *had* standing at the time the action was filed, and the Court

27   thus had jurisdiction to act under Rule 17.

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK**

In contrast, MVPAM did not have constitutional standing at the time this action was filed, and Rule 17 cannot in and of itself provide the Court with subject matter jurisdiction. The action must therefore be dismissed. *See Lujan*, 504 U.S. at 560, 569 n.4.[7]

**2.  Plaintiff Is Also Barred From Relying Upon Rule 17 Because Its Decision To File In The Name Of MVPAM Rather Than MVP Was Made For Tactical Reasons.**

Even where the original filing party had constitutional standing (and here MVPAM did not), ratification or joinder under Rule 17 and an associated relation back to the original date of filing will not be allowed, unless MVPAM's decision to sue in its own name was an "understandable mistake and not a strategic decision." *Dunmore*, 358 F.3d at 1112-13. Here, MVP could have brought this action directly in its own name at the outset. That it did not was tactical move designed to create the appearance of United States and California connections, and federal and state claims, where there are in fact none.

Throughout, MVPAM has sought to conflate itself, the uninjured investment advisor, with MVP, the alleged purchaser, for the purpose of (1) creating the appearance of a United States transaction, when there is none, (2) creating the appearance of a California connection, when there is none; and (3) creating federal and state law claims for MVP, which in fact, possesses no such domestic claims: MVP, after all, is a BVI investor that invested in a BVI hedge fund. Throughout its opposition papers to date in this action, Plaintiff has continually tried to exploit this conflation of MVP and MVPAM to evade the holding of *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), which holds that offshore transactions are not subject to Rule 10(b), to contend that offers of sales were made in California, and to argue that personal jurisdiction exists because Defendants supposedly targeted their actions at California. Had MVP, a British Virgin Islands company, brought this action in its own name, none of these meritless arguments

---

[7]  The Ninth Circuit has also held that an assignment may not be used to circumvent the bar of a statute of limitations. This is precisely what MVPAM seeks to accomplish here through the ratification, since the statute of limitations has run on MVP's claims. *Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989).

1    could have been raised in the first instance.[8]  The decision to sue in MVPAM's name was a

2    tactical, calculated move from the start, barring Plaintiff from relying upon Rule 17.

3    **D.      MVPAM Has Had Four Bites At The Apple:  Dismissal This Time Should Be
            Without Leave to Amend.**

4

5         This Court has provided Plaintiff ample opportunity to establish standing.  It cannot do so,

6    and Moving Defendants therefore request the dismissal of the action without leave to amend.

7    **E.      Plaintiff's Collusive Assignment Must Be Disregarded for Purposes of Assessing
            Diversity Jurisdiction.**

8

9         If the Court does not dismiss all of the claims for lack of Article III standing, but instead

10   only dismisses the federal claims pursuant to the arguments raised in the Rule 12(b)(6) motion

11   filed herewith, the entire action should nonetheless still be dismissed because Court will lack

12   diversity jurisdiction over the remaining state law claims.  While Plaintiff alleges diversity

13   jurisdiction, TAC, ¶ 1 (citing 28 U.S.C. § 1332(a)(3)), federal law bars district courts from

14   exercising jurisdiction over a civil action where a party has used an improper or collusive

15   assignment to join a party for purposes of creating jurisdiction:

16        **§ 1359.         Parties collusively joined or made**

17        A district court shall not have jurisdiction of a civil action in which any party, by
          assignment or otherwise, has been improperly or collusively joined to invoke the
18        jurisdiction of such court.

19   28 U.S.C. § 1359.

20        Controlling United States Supreme Court and Ninth Circuit authority provides that an

21   assignment of the type at issue in this case, a partial assignment between related parties for

22   collection purposes only, is presumptively collusive for purposes of application of Section 1359,

23   thereby requiring a district court to look through the alleged assignment and to the citizenship of

24   the alleged assignor, in this case MVP, for purposes of assessing diversity jurisdiction.

25        For example, in *Attorney's Trust v. Videotape Computer Prods., Inc.,* 93 F.3d 593 (9th

26   Cir. 1996), a Chinese corporation, CMC Magnetics ("CMC") claimed that a California

27   ───────────────
     [8]      In addition, MVPAM asserted diversity jurisdiction on the residence of MVPAM.  (TAC,
28   ¶ 1.)

                                          -19-

1   corporation, Videotape Products ("VTP"), owed it a debt.  CMC assigned its claim to a California

2   citizen, Attorneys Trust ("AT"), for purposes of collection, which in turn sued VTP in federal

3   court.  *Id.* at 594.  VTP then filed cross-complained against CMC, asserting a breach of warranty

4   claim on the underlying product supplied by CMC and associated with the debt owed to CMC.

5   *Id.*

6          The case proceeded to trial, and the district court found in favor of VTP on its cross claim.

7   Having lost, CMC and AT challenged jurisdiction on appeal, claiming that the district court

8   lacked diversity jurisdiction because the assignee, AT, and the defendant-cross complainant,

9   VTP, were both California citizens.  *Id.*  The Ninth Circuit rejected this argument, piercing

10  through the assignment to the residence of the assignor, CMC, to uphold diversity jurisdiction.

11  *Id.* at 599-600.

12         In so holding, the Ninth Circuit relied in part on the leading case applying Section 1359,

13  *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969).  The dispute in *Kramer*, like the

14  underlying dispute in this case, was between citizens of foreign states, thus precluding a finding

15  of diversity jurisdiction.  *Kramer*, 394 U.S. at 824; *see also* 28 U.S.C. § 1332(a)(2).  Accordingly,

16  the plaintiff, a Panamanian company, assigned its interest to a Texas attorney for collection.  The

17  original assignment was supported by the payment of $1, and by separate agreement, the attorney

18  also agreed to remit 95% of any recovery back to the Panamanian company.  *Kramer*, 394 U.S.

19  at 824.

20         The Supreme Court held that these facts could not support diversity jurisdiction given the

21  mandate of Section 1359.  The Supreme Court held that the assignment was made just "for

22  purposes of collection," *id.* at 827-28, which, as will be discussed has been identified as a primary

23  indicator of whether an assignment is collusive.  Moreover, the Supreme Court noted that it was

24  not basing its holding on any conclusion that the assignment was illegal or improper under Texas

25  law.  *Id.* at 829.  Instead, the Court held that the question was whether the assignment was being

26  used to manufacture diversity jurisdiction where it would not otherwise exist.  *Id.*

27

28

-20-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1      The Ninth Circuit then identified the following factors as relevant to the collusion inquiry:

2  whether there were good business reasons for the assignment, whether the assignee had a prior

3  interest in the item, whether the assignment coincided with the commencement of the litigation,

4  whether consideration was paid, whether the assignment was partial or complete, and whether

5  there was any admission that the assignment was made to create jurisdiction.  *Attorney's Trust*, 93

6  F.3d at 595-96 (collecting cases).

7      Partial assignments, such as the one at issue in this case, that are for collection purposes

8  and where the assignor retains a significant interest in the outcome of the case, are nearly always

9  found to be collusive.  *Id.* at 597:

10         On the other hand, where an assignment is partial, the courts are very likely to find
           that there is an improper or collusive transfer because the prior owner still has an
11         interest. . .   In fact, research has not disclosed a single case where an assignment
           for collection (however framed or disguised) has been held to be anything but
12         collusive.

13  *Id.*, citing *Kramer*, 394 U.S. at 827-30 (assignor retained 95% of the proceeds); *Airlines*

14  *Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 859, 861-62 (2d Cir. 1995) (multiple

15  airlines were the "real and substantial" parties; collection agency was mere conduit for a remedy

16  owing to them); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d

17  1227, 1228-29 (5th Cir. 1977) (assignment of 50% interest in net proceeds of recovery, after

18  payment of attorney's fees and costs, coupled with assignment effected for legal and tactical

19  reasons, supported finding that collusive).

20      *Attorney's Trust*, *Kramer*, and the cases cited therein make clear that the alleged

21  assignment in this case must be ignored for purposes of assessment of diversity jurisdiction.

22  MVPAM's alleged assignment of MVP's claims to itself was for collection only.  The assignment

23  for that reason is a partial one:  It was not supported by any independent consideration; instead,

24  MVPAM alleges that all of the funds will be returned to MVP net of collection costs.  These

25  factors alone demonstrate that this assignment "has almost all of the classic elements of an

26  assignment which does not affect jurisdiction."  *See Attorney's Trust*, 93 F.3d at 599.  Indeed,

27  Ninth Circuit law holds that such an assignment is *presumptively* collusive.  *Dweck v. Japan CBM*

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1)
Case No. 210-CV-02483-GEB-CMK

1     *Corp.*, 877 F.2d 790, 792 (9th Cir. 1989) (assignment between a parent and a subsidiary, or a

2     corporation and one of its officers or directors, is "presumptively ineffective to create diversity

3     jurisdiction"), citing *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174

4     (9th Cir. 1979).  "Unless there is a legitimate business reason which justifies such an assignment,

5     it cannot create diversity jurisdiction." *Id.* (finding assignment from corporation to officer to be

6     collusive for purposes of application of Section 1359).  Here, MVP obviously could have filed

7     this lawsuit on its own behalf in the first instance; diversity jurisdiction would have just been

8     absent.

9        In this case, the collusive nature of the assignment is even more apparent by the fact that it

10     has been used as a backdoor method to try to bring this action within the reach of United States

11     and California law, when in fact this was an entirely foreign investment transaction.  Further, as

12     described above, there is only real actor in this purported transaction, Michael Stratford, who

13     allegedly sat on both sides of the alleged "non-written" assignment.  No independent corporate

14     action by MVP itself is even alleged to have occurred until well after the filing of this lawsuit.

15     (TAC, ¶¶ 3, 87.)  The only common player in this entire set of alleged transactions is Stratford.

16     None of the formalities, such as documentation, that one might expect to see with a non-collusive,

17     legitimate assignment are present in this case, which further weighs in favor of a finding that this

18     was a collusive assignment.  *See Dweck*, 877 F.2d at 792 (noting as one relevant factor that the

19     plaintiff had failed to offer any documentation relating to the assignment).

20        Accordingly, as the alleged assignment was collusive, the citizenship of the alleged real

21     party in interest, MVP, is the only relevant citizenship for purposes of assessing diversity

22     jurisdiction.  MVP is alleged to be a British Virgin Islands company.  (TAC, ¶ 3.)  On the

23     defendants' side, both defendants Vestbirk and Ark Royal Asset Management Ltd. are alleged to

24     be Bermuda citizens.  As a citizen or subject of a foreign state is on both sides of the litigation,

25     the requirement of complete diversity cannot be met.  *Craig v. Atl. Richfield Co.*, 19 F.3d 472,

26     476 (9th Cir. 1994), citing *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294-95

27     (9th Cir. 1989).

28

-22-

1   The implication of this lack of diversity is straightforward.  Moving Defendants have

2   argued in their separate motion filed herewith that Plaintiff cannot state a claim for federal

3   securities fraud because (among several grounds asserted) that transaction took place entirely

4   offshore and is therefore not subject to Section 10(b).  Upon any dismissal of the federal claims,

5   on any basis, federal question subject matter jurisdiction will be lost.  Diversity jurisdiction will

6   not salvage Plaintiff's remaining state law claims given the collusive assignment.  28 U.S.C.

7   § 1359.  As such, the Court could and should decline to exercise supplemental jurisdiction over

8   these state law claims.  28 U.S.C. § 1367(c)(3).

9                                          **IV.**
                                    **CONCLUSION**
10

11   The Court's order was clear:  Plaintiff needed to allege facts establishing a valid

12   assignment.  Plaintiff did not do so.  Accordingly, Moving Defendants request the dismissal of

13   the action without leave to amend.

14   Dated:  May 17, 2012                      DLA PIPER LLP (US)

15

16                                      By:   /s/ TODD M. NOONAN

17                                          Todd M. Noonan
                                          Attorneys for Defendants
18

19

20

21

22

23

24

25

26

27

28

-23-