1   GEORGE L. O'CONNELL (SBN 74037)
    TODD M. NOONAN (SBN 172962)
2   DLA PIPER LLP (US)
    400 Capitol Mall, Suite 2400
3   Sacramento, CA  95814-4428
    Tel:  916.930.3200
4   Fax:  916.930.3201

5   Attorneys for Defendants
    STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET
6   MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL
    ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS,
7   LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL
    CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL
8   RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS,
    LLC

9

10                    UNITED STATES DISTRICT COURT

                     EASTERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN VESTBIRK, JEFF BALLIET, ALLISON HANSLIK, JIM GRANT, ARK ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company, VESTBIRK CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company, ARK ROYAL ASSET MANAGEMENT, LLC, a Nevada Limited-Liability Company, ARK DISCOVERY, LLC, a Business Entity of Unknown Form, ARK ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company, ARK ROYAL SERVICES, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited-Liability Company, ARK ROYAL CAPITAL, INC., a Nevada Corporation, ARK ROYAL RESOURCES LLC, a Nevada Limited-Liability Company, ARK ROYAL ASSURANCE LLC, a Nevada Limited-Liability Company, and ARK ROYAL INVESTMENTS, LLC, a Nevada Limited-Liability Company, <br><br> Defendants. | CASE NO.  2:10-cv-02483-GEB-CMK <br><br> DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1) <br><br> Date:   June 18, 2012 <br> Time:  9:00 a.m. <br> Dept:  Courtroom 10 <br> Judge: Honorable Garland E. Burrell, Jr. |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DLA PIPER LLP (US)
SACRAMENTO

WEST\233110595.1     DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 2

    A.    Plaintiff Has Not And Cannot Allege A Valid Assignment Because There Was No Outward Manifestation Of The Supposed Act Of Assignment ............... 2

    B.    MVP's Alleged Ratification Of The Purported Assignment, Which Was Made Over Seventh Months After The Filing Of The Action, Cannot Retroactively Establish Article III Standing Where It Was Absent At The Outset ........................................................................................................ 4

    C.    MVPAM Does Not Rebut Moving Defendants' Showing That The Assignment Was Made For Tactical Reasons, Further Removing Rule 17 As An Option For Plaintiff To Establish Standing ................................................. 8

    D.    In The Event The Court Concludes Article III Standing Exists, It Should Nonetheless Pierce Through MVPAM's Citizenship In Determining Whether Diversity Jurisdiction Exists.................................................................. 9

III.    CONCLUSION ............................................................................................ 11

DLA Piper LLP (US)
Sacramento

WEST\233110595.1      DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# TABLE OF AUTHORITIES

CASES

*Advanced Magnetics, Inc. v. Bayshore,*
106 F.3d 11 (2d Cir. 1997)..................................................................6, 7, 8

*Amalgamated Transit Union v. Super. Ct.,*
46 Cal. 4th 993 (2009) ........................................................................1, 2

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...........................................................................4

*Attorney's Trust v. Videotape Computer Prods., Inc.,*
93 F.3d 593 (9th Cir. 1996)...............................................................9, 10

*Bennett v. Spear,*
520 U.S. 154 (1997) ..............................................................................5

*Cetacean Cmty v. Bush,*
386 F.3d 1169 (9th Cir. 2004)................................................................5

*Cockerell v. Title Ins. & Trust Co.,*
42 Cal. 2d 284 (1954) ........................................................................1, 2

*Dunmore v. United States,*
358 F.3d 1107 (9th Cir. 2004)............................................................5, 8

*Dweck v. Japan CBM Corp.,*
877 F.2d 790 (9th Cir. 1989)............................................................9, 10

*Gladstone Realtors v. Village of Bellwood,*
441 U.S. 91 (1979)................................................................................5

*Kramer v. Caribbean Mills, Inc.,*
394 U.S. 823 (1969) ..............................................................................9

*Lierboe v. State Farm Mut. Auto Ins. Co.,*
350 F.3d 1018 (9th Cir. 2003)................................................................6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...........................................................................5, 8

*McCown v. Spencer, Jr.,*
8 Cal. App. 3d 216 (1970).......................................................................2

*Mutuelles Unies v. Kroll & Linstrom,*
957 F.2d 707 (9th Cir. 1992)............................................................6, 7, 8

DLA PIPER LLP (US)
SACRAMENTO

-ii-

WEST\233110595.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

*Norton v. Consol. Fisheries, Inc.*,
  120 Cal. App. 2d 86 (1953)..................................................................... 2, 3

*Park B Smith, Inc. v. CHF Industries, Inc.*,
  811 F.Supp.2d 766 (S.D.N.Y. July 12, 2011) ..................................... 7, 8

*Pratt v. Progressive Casualty Ins. Co.*,
  2011 WL 2160863 (W.D. Ky. June 1, 2011) ............................................ 6

*Property Asset Mgmt., Inc., v. Chicago Title Ins. Co., Inc.*,
  173 F.3d 84 (2nd Cir. 1999)..................................................................... 2, 4

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ................................................................................. 6

*VHW, Inc. v. Geostar Corp.*,
  2007 WL 1110664 (E.D. Mich. April 13, 2007).................................... 7, 8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)..................................................................... 4, 6

*Western Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981)................................................................... 4

*Wulff v. CMA, Inc.*,
  890 F.2d 1070 (9th Cir. 1989).................................................................. 7

*Zurich Ins. Co. v. Logitrans, Inc.*,
  297 F.3d 528 (6th Cir. 2002)........................................................... 5, 6, 7, 8

**STATUTES**

28 U.S.C.§ 1359 ........................................................................................... 9

28 U.S.C. § 2072(b) ..................................................................................... 5

**RULES**

Fed.R.Civ.Proc. 12(b)(2)............................................................................ 2

Fed.R.Civ.Proc. 12(b)(6)............................................................................ 2

Fed.R.Civ.Proc. 12(h)(3)............................................................................ 8

Fed.R.Civ.Proc. 15(d) ................................................................................ 7

Fed.R.Civ.Proc. 17 ............................................................................. passim

Fed.R.Civ.Proc. 82(a) ................................................................................ 5

WEST\233110595.1   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1

**OTHER AUTHORITIES**

2

1 Witkin, *Summary of Cal. Law (10th ed. 2005), Contracts*, § 709 ........................................... 1, 2

3

Rest.2d Contracts, § 324 ................................................................................................................ 2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

# I.
## INTRODUCTION

The Court provided plaintiff MVPAM leave to amend to allege facts establishing a valid assignment of claims.  MVPAM did not do so because it cannot do so.  It is now apparent, after four complaints, that there is no set of facts under which Plaintiff could allege a valid assignment.  The case should be dismissed without further leave to amend.

California law is clear, consistent with the law as set forth in the Restatement, and commonsensical:  In order for an assignment to be "sufficient," in order for it to be "effectual," there must a "manifestation" of the intention to make a present transfer of rights.  (*See* Motion to Dismiss, at 10-13, citing *Amalgamated Transit Union v. Super. Ct.*, 46 Cal. 4th 993, 943 (2009); *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954).)  The objective theory of contracts requires no less –there must be some outwardly manifested act subject to objective evaluation in order for a contract to exist.  (Motion, at 11, citing 1 Witkin, *Summary of Cal. Law (10th ed. 2005), Contracts,* § 709.)

No such manifestation has been alleged in this case.  None is alleged in the Third Amended Complaint, and none is identified in MVPAM's opposition.  Plaintiff, in fact, does not contest that just one company, MVPAM, and indeed just one individual, Michael Stratford, stood on both sides of the transaction.  While this fact alone would not necessarily invalidate the assignment had a legitimate one actually occurred, it is also undisputed that this supposed transaction took place *only* in the mind of Michael Stratford.  Plaintiff does not, because it cannot, refute the fact that there was no other contemporaneous documentation or other outward communication of this purported assignment.  That Michael Stratford may have "caused" MVP to assign its claims to MVPAM in his head is not an assignment recognized by the law.

As such, there was no valid assignment of claims prior to the filing of this action.  As this Court previously found, Plaintiff therefore lacked Article III constitutional standing at the time it filed this action.  (*See* Order, April 14, 2011).  This constitutional defect is not subject to later

WEST\233110595.1        DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK

1  cure under Rule 17 of the Federal Rules of Civil Procedure or otherwise.  Accordingly, the action

2  must be dismissed.[1]

3  **II.**
   **ARGUMENT**

4  **A.    Plaintiff Has Not And Cannot Allege A Valid Assignment Because There Was No**
        **Outward Manifestation Of The Supposed Act Of Assignment.**

5

6        The law is unambiguous:  In order for an assignment to be valid, there must be some

7  manifestation of the intention to make a present transfer of rights by the assignor to the assignee.

8  *Amalgamated Transit Union v. Super. Ct.*, 46 Cal. 4th 993, 943 (2009) (emphasis added);

9  *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954); *McCown v. Spencer, Jr.*, 8 Cal.

10  App. 3d 216, 225 (1970); Rest.2d Contracts, § 324; 1 Witkin, *Summary of Cal. Law (10th ed.*

11  *2005), Contracts*, § 709.[2]  There is not one fact alleged in the Third Amended Complaint or

12  identified in the Opposition that establishes (or that even supports a reasonable inference) that

13  such a manifestation occurred in this case.

14        Plaintiff seeks to skirt around these uncontroversial requirements of the law by raising

15  irrelevant issues and cases.  Plaintiff, for example, cites to the case of *Norton v. Consol.*

16  *Fisheries, Inc.*, 120 Cal. App. 2d 86, 90-91 (1953), for the principle that the testimony from the

17  assignee alone can suffice to establish a valid assignment.  From this, Plaintiff presumably wishes

18  the Court to conclude that since plaintiff, as purported assignee, argues that an assignment

19  happened, that alone should suffice.

20        *Norton,* however, is merely a case about the sufficiency of the evidence required to

21  establish an assignment.  It does not alter the requirements necessary to prove such an

22  _____

23  [1]    Defendants raised a number of other additional grounds for dismissal in this motion, and
      in the Rule 12(b)(6) and 12(b)(2) motions filed herewith.  Each of those grounds supports the

24  dismissal of this ill-considered lawsuit, which never should have been filed in this jurisdiction by
      this Plaintiff in the first instance.

25  [2]    While Plaintiff seeks to distinguish these cases on their facts, it cannot undercut the
      fundamental requirement of the law that there be a manifestation.  Moreover, Plaintiff fails to

26  identify even one case validating an assignment that took place solely with the head of an
      assignor/assignee.  The closest case on the facts is the Second Circuit case of *Property Asset*

27  *Mgmt., Inc., v. Chicago Title Ins. Co., Inc.,* 173 F.3d 84, 87 (2nd Cir. 1999), discussed in the
      moving papers and herein, which supports Defendants' position, not Plaintiff's.

28

-2-

1    assignment.  In *Norton*, the plaintiff sued a fish wholesaler, alleging that she was the assignee of

2    certain monies that the wholesaler allegedly owed to a number of commercial fisherman.  *Id.* at

3    87-88.  The matter was tried to the court.  The only evidence of the assignment came from the

4    plaintiff herself, who testified regarding an alleged oral assignment.  *Id.*  On appeal, the

5    wholesaler contended that the court should not have been able to find a valid assignment based

6    solely on her testimony; the issue, in other words, concerned burden of proof and modicum of

7    evidence required to establish a valid assignment.  *Id.*  The case had nothing to do with what is

8    actually required to establish a valid assignment in the first place.  *See id.*

9            In *Norton*, the "manifestation" of the assignment was oral, and proven through the

10   testimony of the plaintiff in that case.  An oral assignment is not alleged in this case.  Nor is a

11   written assignment alleged.  Instead, Plaintiff's argument progresses as follows.  MVPAM had

12   the alleged authority to assign MVP's claims to MVPAM, MVPAM in a manner unspecified

13   "caused" MVP to do so, and neither MVPAM nor MVP now deny that such an assignment

14   happened.  (Opposition, at 2:14-21.)  The notable missing link:  An actual, valid *act* of

15   assignment.  In its place, Plaintiff alleges only conclusions – that it "caused" the assignment to

16   take place, and that that assignment was "non-written."

17           To expose Plaintiff's argument is to refute it.  At page 5 of the Opposition, Plaintiff

18   contends that it did in fact satisfy the manifestation requirement, as follows:

19           However, MVP, through its authorized representative, did manifest to the
             assignee ("the other") MVP's intention to assign the claims to the assignee.
20           This is an assignment between related entities where the assignee is
             authorized to act on behalf of and bind the assignor.  When MVPAM,
21           acting pursuant to its authority as MVP's fiduciary and manager, caused
             MVP to assign its claims, this was a manifestation by MVP to the assignee
22           of MVP's intent, as assignor, to assign the claim.

23   (Opposition, at 5:14-6:1.)[3]  Stated differently, there was an assignment because there was an

24   assignment.  No *fact* concerning any purported manifestation is alleged.  All that is alleged is that

25   MVPAM "caused" an assignment, *ergo* there was an assignment.

26   _____

     [3]      Plaintiff, in an effort to discredit Defendants' argument, mischaracterizes it by suggesting
27   that Defendants seek to require that the assignment have been in writing.  Defendants did not
     argue that only a written assignment would suffice.  Instead, Defendants argued that there must be
28   an outward manifestation of the assignment – some operative act – and here there was none.

1    Such legal conclusions do not suffice and may be disregarded. *Ashcroft v. Iqbal*, 129 S.

2    Ct. 1937, 1949 (2009); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).  If

3    Plaintiff could have alleged the outward manifestation of the assignment, it would have done so.

4    All of the facts are within its control.  It did not and cannot.  Indeed, as the above quoted portion

5    of Plaintiff's argument demonstrates, what Plaintiff really seeks is an exemption from the

6    manifestation requirement for assignments between related parties.  Plaintiff cites to no California

7    law carving out such an exception, and Defendants are aware of none.  In fact, as described in the

8    *Property Asset* case, such an exception would "permit the unfair manipulation of contract rights,"

9    with predictable abuses resulting therefrom.[4]  *See Property Asset Mgmt., Inc., v. Chicago Title*

10   *Ins. Co., Inc.,* 173 F.3d 84, 87 (2nd Cir. 1999).

11       In Plaintiff's view, if Michael Stratford thought it, then it happened.  However, an

12   assignment that exists only in the heads of the assignor and assignee is no assignment at all, even

13   if (and, it may be said, particularly if) the assignor and assignee are the same person.  Plaintiff

14   was not a valid assignee at the time this action was filed, and therefore lacked Article III standing.

15   (Order, April 14, 2011, citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549

16   F.3d 100 (2d Cir. 2008).  The only question remaining is whether the alleged ratification of that

17   assignment by MVP, a ratification that took place over seven months after the original complaint

18   was filed, suffices to retroactively cure this constitutional defect.  It does not.

19   **B.     MVP's Alleged Ratification Of The Purported Assignment, Which Was Made Over
            Seventh Months After The Filing Of The Action, Cannot Retroactively Establish**
20   **Article III Standing Where It Was Absent At The Outset.**

21       Moving Defendants reviewed in their moving papers why Rule 17 of the Federal Rules of

22   Civil Procedure cannot be relied upon by Plaintiff to retroactively cure defects with Article III

23

---

24   Plaintiff's Opposition, just as the Third Amended Complaint, fails to supply this missing link,
     requiring the dismissal of this action.

25   [4]    The potential for mischief arising from acceptance of Plaintiff's position is substantial.
     Numerous transactions are entered into by related parties, some with the same individual acting in

26   multiple capacities.  As just one example, an individual may act in multiple capacities with

27   respect to a family trust or among related companies.  Under Plaintiff's view, so long as a party
     "thought it," then a contract should be recognized by the law, even if there is no other objectively

28   available evidence of the event.

-4-

1    standing that existed at the time of the filing of the action.  (Motion at 13-19.)  In opposition,

2    MVPAM argues that MVP will be bound by the judgment, and that is all that should be relevant.

3    Whether the judgment is binding, however, is not the issue.  Article III standing is the issue.

4              On that front, Plaintiff has failed adequately to address the central authorities relied upon

5    by Moving Defendants, including those setting forth the distinctions between defects in prudential

6    standing, which may be subject to cure under Rule 17, and Article III standing, which are not.

7    *See* Motion, at 14-16, citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (noting

8    that Congress can provide for statutory standing for particular plaintiffs so long as Article III

9    standing is independently satisfied); *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (unlike

10   constitutional standing, Congress may modify or abrogate prudential standing concerns)

11   *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no event may Congress

12   abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable

13   injury to himself' that is likely to be redressed if the requested relief is granted."); *see also* 28

14   U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right.");

15   Fed.R.Civ.Proc. 82(a) ("These rules do not extend or limit the jurisdiction of the district courts . .

16   . ."); *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).

17             MVPAM also ignores the authorities cited by Moving Defendants – including Untied

18   States Supreme Court cases – to the effect that the belated addition of parties to an action after its

19   filing cannot retroactively cure Article III standing defects.  *See* Motion at 15, citing *Lujan v.*

20   *Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (later joinder of parties cannot cure standing

21   issue that existed at time of filing:  "The existence of federal jurisdiction ordinarily depends on

22   the facts *as they exist when the complaint is filed.*  It cannot be that, by later participating in the

23   suit, the State Department and AID retroactively created a redressability (and hence a

24   jurisdiction) that did not exist at the outset.") (internal citation omitted); *Dunmore v. United*

25   *States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (distinguishing between the "irreducible

26   constitutional minimum of standing" and the prudential requirement that the plaintiff be the "real

27   party in interest," and holding that a party *with* standing, but who was not the real party in

28

1    interest, could rely upon Rule 17 and the ratification of the real party in interest, to allow the suit

2    to proceed); *Pratt v. Progressive Casualty Ins. Co.*, 2011 WL 2160863, *2-3 (W.D. Ky. June 1,

3    2011) (Rule 17 cannot be used to cure defects in Article III standing that exist at time of filing);

4    *cf. Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (class action

5    must be dismissed where named plaintiff lacks constitutional standing; rejecting argument that

6    other members of the class should have been named a class representatives to avoid dismissal).

7           Furthermore, in relying upon *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir.

8    1992), and *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997),

9    MVPAM fails to address the reasons discussed in depth by Moving Defendants in their moving

10   papers regarding why these two cases do not assist MVPAM's arguments:  namely, in each,

11   Article III standing at the time of filing was *not* at issue.  There was no constitutional impediment

12   to application of Rule 17 in those cases because the courts had subject matter jurisdiction from

13   the outset.  The same is not true here, given that MVPAM lacked Article III standing at the time

14   this action was filed.[5]

15          Plaintiff does not address these arguments because it cannot refute them.  Moreover,

16   Plaintiff's remaining arguments do not establish a basis for application of Rule 17 to this case.

17   Plaintiff argues, for example, that the case of *Zurich Ins. Co. v. Logitrans*, 297 F.3d 528 (6th Cir.

18   2002), whose holding squarely refutes Plaintiff's position, was wrongly decided.  Accordingly to

19   Plaintiff, *Zurich* is wrong because implementation of Rule 17 does not expand a court's

20   jurisdiction, and instead merely acts to allow a party to circumvent a statute of limitations that

21   may have expired in the interim.

22   [5]    Plaintiff now suggests that since its compensation was based upon the performance of
23   MVP's investments, it too suffered a harm.  This is merely a retread of the arguments raised and
     rejected by the Second Circuit in the *Huff* case and address previously by this Court.  The relevant
24   injury suffered by the plaintiff must also be the one upon which the lawsuit is based  *See Huff*,
     549 F.3d at 110 (investment advisor's alleged reputational injuries from investing based upon
25   allegedly fraudulent information did not suffice to provide constitutional standing, where
     complaint sought to recover losses traceable to clients' losses, not those of investment manager);
26   *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 224 n.14 (1974) ("to
27   satisfy the Art. III prerequisite the complaint party . . . [must] allege a specific invasion of [a]
     right suffered by him").  Plaintiff MVPAM has not filed suit for its lost investment commissions,
28   and those alleged losses are irrelevant to the standing issue.

Plaintiff's contention, however, falters on the fact that there was *no* Article III standing present at the time *this* action was filed, and thus Plaintiff is in fact using Rule 17 to expand the subject matter jurisdiction of this Court.  Unlike the situations in *Mutuelles* or *Advanced Magnetics*, here, there was no valid assignment prior to the filing of the lawsuit, and the Court therefore lacked subject matter jurisdiction over the action at the time that it was filed.  As such, this Court lacked, and still lacks, the subject matter jurisdiction to consider any request by Plaintiff, or to take any action apart from entering dismissal.  By relying on Rule 17 to retroactively establish such subject matter jurisdiction, Plaintiff is, therefore, improperly using it to expand the jurisdictional reach of the Court beyond that permitted by Article III.  This, as held by the authorities cited above and in the moving papers, is something that a Federal Rule of Civil Procedure cannot be used to do.  *Zurich*, in short, was correct in its analysis.[6]

Lastly, Plaintiff cites to two District Court cases from outside of California, *Park B Smith, Inc. v. CHF Industries, Inc.,* 811 F.Supp.2d 766 (S.D.N.Y. July 12, 2011), and *VHW, Inc. v. Geostar Corp.*, 2007 WL 1110664 (E.D. Mich. April 13, 2007).  *Smith* fails to correctly analyze the inherent limits of Rule 17 in light of the differences between constitutional and prudential standing, and, in particular, in light of the bedrock requirement that Article III standing must exist at the time of filing.  In addition, the *Smith* case directly acknowledges that a plaintiff cannot cure a jurisdictional defect through a retrospective assignment, which is precisely what MVPAM seeks

---

[6]     Plaintiff also seeks to distinguish *Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir. 1989).  In so doing, Plaintiff misses one of its main teachings.  In *Wulff*, the plaintiff had filed a Miller Act claim, which provides protection to persons supplying materials and labor for federal projects.  However, the plaintiff had not performed any work in connection with the project that was the subject of their lawsuit.  Subsequently (after the running of the statute of limitations), the plaintiff obtained an assignment of claims from a contractor who had actually performed work on the project, and then sought rely upon Rule 17 to establish the timeliness of its suit based upon the original filing date.  *Id.* at 1071, 1075-76.  The Ninth Circuit held Rule 17, and its provision that the action may proceed as if originally filed by the real party in interest, can only apply where the initial action was validly filed.  *Id.* at 1075.  In *Wulff*, the plaintiff did not have an original, valid claim under the Miller Act to which the later assigned claim related.  As such, the Ninth Circuit held that neither Rule 17, nor Rule 15(d) concerning supplemental pleadings, provided a basis for Plaintiff to proceed on the otherwise time-barred claim.  *Id.* In short, the later assignment could not serve to ratify the commencement of a suit on a claim that did not exist.  So too in this case, where MVPAM lacked standing at the outset of the case, rendering its initial filing a nullity, not subject to later ratification.

-7-

1    to accomplish through the Resolutions.  *Smith*, 811 F. Supp. 2d at 773.  As for *VHW*, it is

2    inapplicable for much the same reasons as *Mutuelles* or *Advanced Magnetics*:  Article III standing

3    was present in that case at the time of filing.  Indeed, the district court in *VHW* held that the

4    original named plaintiff *had* Article III standing at the time of filing, which is the very reason that

5    it concluded *Zurich* did not apply.  *VHW*, 2007 WL at *6-7, 10.  Here, MVPAM did not have

6    Article III standing when this case was filed.

7        Rule 17 cannot provide the basis for a court to bypass the baseline requirement that

8    Article III standing exist at the time of filing.  *See* Order, at 2; *Lujan*, 504 U.S. at 569 n.4

9    (standing turns on facts as they existed at the time the plaintiff filed the complaint).  Article III

10   standing was not present at the time of filing; in fact, the MVP Board resolutions were not even

11   drafted until over seven months had passed *after* the filing.  As such, the action must be dismissed

12   without leave to amend.  *See also* F.R.Civ.P. 12(h)(3) ("If the court determines at any time that it

13   lacks subject-matter jurisdiction, the court must dismiss the action.").

14   **C.    MVPAM Does Not Rebut Moving Defendants' Showing That The Assignment Was
            Made For Tactical Reasons, Further Removing Rule 17 As An Option For Plaintiff**
15   **       To Establish Standing.**

16       In moving to dismiss, Defendants also reviewed the fact that parties may not rely upon

17   Rule 17 at all, where the original choice of parties was made for tactical reasons.  A party is

18   entitled to rely upon Rule 17 only if its decision to sue in its own name was an "understandable

19   mistake and not a strategic decision."  *Dunmore,* 358 F.3d at 1112-13.  In their moving papers,

20   Defendants contended that MVPAM's decision was entirely strategic, designed with the aim of

21   generating venue and jurisdiction.  This case has nothing to do with California, and nothing to do

22   with the Eastern District.  There is only one allegedly injured party in this case, MVP.  MVP is

23   the alleged underlying investor, and it is located in the British Virgin Islands, not the Eastern

24   District.

25       In response, MVPAM effectively concedes that the choice of party was a deliberate one,

26   noting only that it did not seek to "disguise" MVP's underlying involvement.  (Opposition, at 13.)

27   Whether MVPAM affirmatively sought to mislead the Court is not the test under Rule 17,

28

-8-

1   however.[7]  It is just whether or not MVPAM made a conscious, tactical choice, or made a

2   mistake.  As MVPAM's own opposition makes clear, the decision was conscious and strategic,

3   and not a mistake.  Rule 17 does not provide Plaintiff with an avenue to escape the consequences

4   of its strategic decisions.

5   **D.   In The Event The Court Concludes Article III Standing Exists, It Should**
        **Nonetheless Pierce Through MVPAM's Citizenship In Determining Whether**
6       **Diversity Jurisdiction Exists.**

7            Arguing in the alternative, Moving Defendants have argued that in the event that the Court

8   finds Plaintiff can satisfy Article III's standing requirements, it should still dismiss the balance of

9   Plaintiff's state law claims because of lack of diversity jurisdiction if it dismisses the federal

10  securities law claims as a result of the Section 12(b)(6) Motion to Dismiss.  This is an argument

11  the Court need not reach if Plaintiff does not establish Article III standing, or if, in dismissing the

12  federal claims, the Court also concludes it lacks personal jurisdiction over the Defendants for the

13  remaining state law claims.

14           Defendants argument is based on Section 1359 of Title 28, which provides that collusively

15  joined parties cannot be considered for purposes creating jurisdiction.  (Motion, at 19, citing 28

16  U.S.C.§ 1359.)  As set forth in the moving papers, assignments such as the one at issue here,

17  which are for purposes of collection and between related parties, are the prototypical collusive

18  assignment.  *Id.*, citing *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823 (1969); *Attorney's Trust v.*

19  *Videotape Computer Prods., Inc.,* 93 F.3d 593 (9th Cir. 1996); and *Dweck v. Japan CBM Corp.,*

20  877 F.2d 790, 792 (9th Cir. 1989).  In fact, not only are such assignments the prototypical

21  collusive assignment, they are *presumptively* collusive.  *Dweck*, 877 F.3d at 792.

22           In opposition, MVPAM then reviews its contentions as to why there is a commercial

23  benefit to it from the assignment, which it argues is sufficient to render the assignment not

24  ───────────────

[7]        Plaintiff suggests in its papers that it never sought to disguise the real underlying investor
25  – yet in Plaintiff's original complaint, which initiated this action, Plaintiff MVPAM repeatedly
    conflated itself with MVP, referring to *MVPAM*'s, and not MVP's, investments and even losses,
26  when in fact these were allegedly MVP's investments and losses.  (*See* Original Complaint, ¶¶ 24,
    26, 43, 50, 69, 73, 80, 87, 91.)  MVPAM expressly sought to blur the lines between it and MVP,
27  both in an effort to create jurisdiction and venue, and to state a claim under the federal securities
    laws.
28

-9-

1   collusive.  Plaintiff, however, cites to no factually relevant case supporting this contention.  This

2   should come as no surprise.  As first quoted in the moving papers, the Ninth Circuit in *Attorney's*

3   *Trust* stated that its research had "not disclosed a single case where an assignment for collection

4   (however framed or disguised) had been held to be anything but collusive."  *Attorney's Trust*, 93

5   F.3d at 597.  Moreover, as held in *Dweck*, merely articulating a business interest will not suffice;

6   the interest must be sufficient to overcome the presumption.

7           Here, MVPAM's asserted interest in collecting the money does not suffice.  First,

8   MVPAM offers nothing on any legitimate business interest on the part of MVP for entering into

9   the assignment.  Nothing prevented MVP from suing in its own name.  Second, the assignment

10  was not for consideration, which the courts have identified as relevant to whether the assignment

11  is collusive or not.  Third, MVP retained an interest; the assignment is not complete.  This factor,

12  as reviewed in the moving papers, strongly suggests collusion and provides the basis for

13  continuing to account for the residence of the assignor.

14          In addition, no formalities whatsoever were followed in this case, and the assignment was

15  between closely related entities.  As discussed, this purported assignment exists entirely in the

16  head of one man.  The circumstances surrounding this alleged assignment are rife with

17  opportunities for manipulation, as the alleged assignment is unmoored from any objectively

18  provable event.  There is no document, oral statement, or other conduct through which the

19  assignment was supposedly entered.  As *Dweck*, the very case relied upon by Plaintiff holds, this

20  factor too weighs in favor of a finding of collusion.  *See Dweck*, 877 F.2d at 792 (plaintiff's

21  failure to offer any documentation relating to the assignment was relevant to collusion

22  determination).

23          Neither MVP nor the transactions in dispute have any connection with this District, this

24  State, or the United States.  It is only through the devices first of the alleged power of attorney,

25  and then of the alleged mental assignment, that Plaintiff could assert even a tenuous basis for a

26  United States and California connection.  This assignment is collusive, and only MVP's residence

27  should be considered for purposes of judging diversity jurisdiction.

28

-10-

**III.**
**CONCLUSION**

The alleged assignment exists only in the mind of Michael Stratford.  That does not suffice under California law, the law of the British Virgin Islands, or any other potentially governing law.  Plaintiff MVPAM therefore lacked Article III standing at the time this lawsuit was filed.  Accordingly, for the reasons set forth above, Moving Defendants respectfully request that their motion be granted, and the action dismissed without leave to amend.

Dated:  June 11, 2012                              DLA PIPER LLP (US)


By:___/s/ TODD M. NOONAN_____
       Todd M. Noonan
       Attorneys for Defendants

-11-

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1); Case No. 210-CV-02483-GEB-CMK