IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
MVP ASSET MANAGEMENT (USA) LLC,    )
a Delaware Limited Liability       )   2:10-cv-02483-GEB-CKD
Company,                           )
                                   )
               Plaintiff,          )   ORDER
                                   )
          v.                       )
                                   )
STEVEN VESTBIRK, JEFF BALLIET,     )
ALLISON HANSLIK, JIM GRANT, ARK    )
ROYAL ASSET MANAGEMENT, LTD., a    )
Bermuda Limited Company,           )
VESTBIRK CAPITAL MANAGEMENT,       )
LTD., a Bermuda Limited Company,   )
ARK ROYAL ASSET MANAGEMENT, LLC,   )
a Nevada Limited-Liability         )
Company, ARK DISCOVERY, LLC, a     )
Business Entity of Unknown Form,   )
ARK ROYAL HOLDINGS, LLC, a         )
Nevada Limited-Liability           )
Company, ARK ROYAL SERVICES,       )
LLC, a Nevada Limited-Liability    )
Company, ARK ROYAL CAPITAL, LLC,   )
a Nevada Limited-Liability         )
Company, ARK ROYAL CAPITAL         )
FUNDING, LLC, a Nevada Limited-    )
Liability Company, ARK ROYAL       )
CAPITAL, INC., a Nevada            )
Corporation, ARK ROYAL             )
RESOURCES, LLC, a Nevada           )
Limited-Liability Company, ARK     )
ROYAL ASSURANCE LLC, a Nevada      )
Limited-Liability Company, and     )
ARK ROYAL INVESTMENTS, LLC, a      )
Nevada Limited-Liability           )
Company,                           )
                                   )
               Defendants.         )
_____   )
```

Defendants filed a motion to dismiss Plaintiff's Third Amended Complaint ("TAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing, *inter alia*, Plaintiff lacks Article III standing and the Court lacks diversity jurisdiction over Plaintiff's state claims. (Defs.' Mot. to Dismiss TAC for Lack of Jurisdiction ("Defs.' 12(b)(1) Mot."); ECF No. 111.) Plaintiff opposes the motion, arguing it has properly alleged standing. (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s 12(b)(1) Opp'n"); ECF No. 116.)

Defendants also filed a motion to dismiss Plaintiff's TAC under Rules 12(b)(6) and 12(b)(2), arguing "Plaintiff cannot state a valid claim for relief[ and] . . . cannot allege facts sufficient to establish personal jurisdiction over any Defendant." (Defs.' Mot. to Dismiss TAC Pursuant to Rule 12(b)(6) and Rule 12(b)(2) ("Defs.' 12(b)(6) Mot.") 1:5-6; ECF No. 109.) Plaintiff opposes the motion, arguing it has "adequately stated" its federal and state law claims. (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s 12(b)(6) Opp'n") 1:25-2:3; ECF No. 113.)

Further, Defendant Steven Vestbirk filed a motion to dismiss Defendants' TAC under Rule 12(b)(2), arguing Plaintiff has not alleged sufficient contacts with California to establish personal jurisdiction over Vestbirk. (Def.'s Mot. 1:22-24; ECF No. 112.) Plaintiff opposes the motion, arguing it is duplicative of Defendants' 12(b)(2) motion to dismiss. (ECF No. 117.)

For the reasons stated below, Defendants' 12(b)(1) motion to dismiss is granted in part and denied in part; Defendants' 12(b)(6) motion to dismiss is granted in part and denied in part; and Defendants' 12(b)(2) and Defendant Vestbirk's 12(b)(2) motions are denied as moot.
///

## I. STANDING

Defendants argue in their 12(b)(1) dismissal motion that Plaintiff lacks Article III standing, since "Plaintiff, the uninjured investment advisor to the allegedly harmed underlying investor [MVP Fund of Funds Ltd. ('MVP')], simply cannot allege a valid assignment of MVP's purported claims to [MVP Asset Management (USA) LLC ('MVPAM')]." (Defs.' 12(b)(1) Mot. 1:6-8.) Defendants argue:

> Plaintiff alleges little else new [in the TAC], except that it was a "non-written agreement." As the agreement was not documented in any fashion, and did not result from oral communications between MVP and MVPAM, Plaintiff is left only with this coy characterization; the alleged agreement to assign, in other words, apparently exists only in the mind of MVPAM's principal: Michael Stratford.

Id. 8:13-17 (quoting TAC ¶ 87). Plaintiff opposes the motion, contending "MVPAM has specifically alleged that, pursuant to its management authority, it caused MVP to assign its claims against Defendants to MVPAM for collection." (Pl.'s 12(b)(1) Opp'n 2:17-19.) Defendants rejoin that Plaintiff's allegations are merely legal conclusions; specifically, Defendants argue "no *fact* concerning any purported manifestation is alleged. All that is alleged is that MVPAM 'caused' an assignment, *ergo* there was an assignment." (Pl.'s Reply to Defs.' 12(b)(1) Opp'n 3:24-3:25.)

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit. In that event, the suit should be dismissed under Rule 12(b)(1)." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) (citation omitted).

> [T]o satisfy Article III's standing requirements, a plaintiff must show that (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not

3

> conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). Plaintiff has the burden of establishing jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants challenge subject matter jurisdiction based on a facial attack. (Defs.' 12(b)(1) Mot. 9:17.) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. "[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, we take the allegations in the plaintiff's complaint as true . . . and draw all reasonable inferences in [Plaintiff's] favor." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (internal quotation marks and citations omitted).

Here, the parties dispute whether a valid assignment occurred, which is a question of state law. See Dolch v. United Cal. Bank, 702 F.2d 178, 181 (9th Cir. 1983) ("The nature and scope of renewal rights, as well as their assignability, are federal questions, but the conditions for valid assignment are not.") Since the parties agree that California law applies for purposes of the 12(b)(1) motion only, the Court will apply California law. (Defs.' 12(b)(1) Mot. 3:1 n.1.; Pl.'s 12(b)(1) Opp'n 4:3-9; see also 21X Capital, Ltd. v. Werra, 2008 WL 753907, at *2 (N.D. Cal. Mar. 19, 2008) ("The parties agree that, for purposes of this motion, California law applies.").)

4

Under California law, "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." Cal. Civ. Code § 954. "While no particular form of assignment is necessary, the assignment, to be effective, must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person." Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284, 291 (1954); see also Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd., 203 Cal. App. 4th 1328, 1335 (2012) (same). "[I]n the absence of a statute requiring that an assignment be in writing it is immaterial whether it is made orally or by writing." Swing v. Lingo, 129 Cal. App. 518, 523 (1933).

Plaintiff alleges the following concerning the assignment of its claims:

> Plaintiff . . . is a Limited Liability Company organized and existing under the laws of the State of Delaware with its principal place of business until August 2009 in Tahoe City, California and since September 2009 in San Francisco, California. At all relevant times mentioned herein, MVPAM has been the investment manager to [MVP], an Investment Company organized and existing under the laws of the British Virgin Islands. On or about March 23, 2004, MVP and MVPAM entered into an Investment Management Agreement ("IMA") (a true and correct copy of which is attached hereto as Exhibit A and incorporated herein). Under the IMA, MVP, pursuant to MVP's Memorandum and Articles of Association ("M&A") (a true and correct copy of which is attached hereto as Exhibit B and incorporated herein), delegated to MVPAM a general power of attorney including all powers and discretions to manage the business and affairs of MVP. Under the IMA MVPAM, as attorney in fact for MVP, was and is entitled generally to exercise such powers and discretions as may be necessary in order to perform the duties delegated to it by MVP's directors including, among other things:
>
> > (a) "[to] manage the investment and reinvestment of the assets of [MVP] with power on behalf of and in the name of [MVP] to

5

purchase, subscribe or otherwise acquire investments and to sell, redeem, exchange, vary or transpose the same";

(b) "to . . . purchase (or otherwise acquire), sell (or otherwise dispose of) and invest money and other assets for the account of the Company and effect foreign exchange transactions in connection with any such purchase, acquisition, sale or other disposal";

(c) "[to] enter into, make and perform such contracts, agreements and other undertakings as may in the opinion of [MVPAM] be necessary or advisable or incidental to the carrying out of the functions, duties, powers and discretions conferred on it pursuant to [the IMA] and its role as Investment Manager of [MVP]";

In making each of the investments, investment decisions and decisions relating to the investments alleged herein, MVPAM was acting pursuant to its authority to manage the business and affairs of MVP. MVPAM brings this action as assignee pursuant to an assignment by MVP for collection as alleged in more detail below.

. . .

In or around February 28 2009 [sic] at Tahoe City, California, MVPAM and MVP entered into a non-written agreement under which MVP assigned its claims arising out of and relating to the Ark Discovery Fund ("MVP Claims") to MVPAM for collection in California in return for MVPAM's agreement to account to MVP for any recovery obtained, net of the cost of prosecuting the MVP Claims (the "Assignment"). As a result of the Assignment, MVPAM holds legal title and MVP holds beneficial title to the assigned MVP Claims.

A.   MVPAM caused MVP to enter into the Assignment in or around February 28 2009 [sic] at Tahoe City, California pursuant to MVPAM's authority under the IMA as alleged in Paragraph 3 of this TAC, including its power and discretion to manage MVP's business and affairs, its power and discretion to manage the investment and reinvestment of the MVP's assets with power on behalf of and in the name of MVP to sell, redeem, exchange, vary or transpose MVP's investments, its power and discretion to sell (or otherwise dispose of) and invest money and other assets for the account of the Company, and,

6

its power and discretion to enter into, make and perform such contracts, agreements and other undertakings it deemed necessary or advisable or incidental to the carrying out of the functions, duties, powers and discretions conferred on it pursuant to the IMA to its role as the manager of MVP's business and affairs, and pursuant to its general power of attorney for MVP.

B.  In or around February 28, 2009 at Tahoe City, California, Stratford, as the sole voting shareholder of MVP, with the authority under the M&A to delegate the management powers of MVP's Board of Directors, confirmed and approved on behalf of MVP the Assignment to MVPAM of the MVP Claims.

C.  By resolution dated May 27, 2011 (a true and correct copy of which is attached hereto as Exhibit C and incorporated herein), MVP's Board of Directors (i) unanimously ratified, confirmed, approved and adopted in all respects the Assignment and (ii) agreed to be bound by any judgment entered in this Action.

D.  MVPAM has genuine commercial interest in the enforcement of the MVP claims. As the manager of MVP's business affairs, with power over MVP's assets and investments, MVPAM has a legitimate commercial interest in fulfilling its fiduciary responsibility to MVP by taking actions for the benefit of MVP including pursuing the MVP Claims. MVPAM, as MVP's investment manager, made the decisions to invest in the Ark Discovery shares at issue and caused MVP to purchase the shares. MVPAM has a genuine commercial interest in recovering the lost Ark Discovery investments because, under the IMA, MVPAM's compensation is based on the value of MVP's assets and on the performance of MVP's investments.

E.  By bringing this action in California based on Defendants' violations of California law and the federal securities laws, MVPAM is performing the Assignment in California.

(TAC ¶¶ 3, 87.)

Defendants' argument centers on the manifestation requirement of an assignment; specifically, Defendants contend Plaintiff's failure to allege oral communications or documentation supports drawing the inference that there was no manifestation of intent. However, "no

particular form of assignment is necessary" as long as there is a "manifestation to another person by the owner of his intention . . . ." Cockerell, 42 Cal. 2d at 291. Plaintiff alleges that it was the same person, Stratford, who had the authority to assign the claims and the authority to approve the assignment. Plaintiff also alleges sufficient facts to permit drawing a reasonable inference that it was the intent of both entities to effectuate this assignment, and that this transaction occurred on February 28, 2009, in Tahoe City, California.

The case relied upon heavily by Defendants, Property Asset Management, Inc. v. Chicago Title Insurance Co., Inc., 173 F.3d 84 (2d Cir. 1999), concerns the proof required at summary judgment in order for Plaintiff to meet its burden. Id. at 87; see also Cockerell, 42 Cal. 2d at 292 (explaining a plaintiff's burden concerning assignments is as follows: "the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, . . . but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee"). However, "at this stage of the pleading, [Plaintiff] need only show that the facts alleged, if proved, would confer standing upon [it]." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003). Therefore, Plaintiff's allegations are sufficient to state an assignment.

## II. FEDERAL CLAIMS

Defendants seek dismissal of Plaintiff's Securities and Exchange Act of 1934 ("SEC Act") claims under Rule 12(b)(6). Plaintiff's first claim alleges a violation of Section 10(b), and its second claim alleges control person liability under Section 20(a). (TAC ¶¶ 88-98.) Defendants argue "Section 10(b) does not have extraterritorial reach,

1  and controlling United States Supreme Court authority bars Plaintiff's
2  claims, which are based upon offshore transactions." (Defs.' 12(b)(6)
3  Mot. 21:15-17.) Further, Defendants argue, "Plaintiff's Section 20(a)
4  claim falls along with the underlying Section 10(b) claim." Id. 21:20-
5  21. Plaintiff opposes the motion, contending the "transactions at issue
6  are almost entirely domestic in nature[, and] are governed by the
7  domestic securities law." (Pl.'s 12(b)(6) Opp'n 11:13-15.)

8  "In reviewing the dismissal of a complaint, we inquire whether
9  the complaint's factual allegations, together with all reasonable
10 inferences, state a plausible claim for relief." Cafasso, U.S. ex rel.
11 v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing
12 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The material allegations
13 of the complaint are accepted as true and all reasonable inferences are
14 drawn in favor of the plaintiff. Al-Kidd v. Ashcroft, 580 F.3d 949, 956
15 (9th Cir. 2009). However, this tenet "is inapplicable to legal
16 conclusions." Iqbal, 556 U.S. at 678. Further, "[a] pleading that offers
17 'labels and conclusions' or 'a formulaic recitation of the elements of
18 a cause of action will not do.' Nor does a complaint suffice if it
19 tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
20 Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).
21 "In sum, for a complaint to survive a motion to dismiss, the
22 nonconclusory 'factual content,' and reasonable inferences from that
23 content, must be plausibly suggestive of a claim entitling the plaintiff
24 to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.
25 2009).

26 "To state a claim under § 10(b) . . . , a plaintiff must show
27 that the securities transaction at issue was a securities transaction
28 that is covered by the Exchange Act." Cascade Fund, LLP v. Absolute

1  Capital Mgmt. Holdings Ltd., No. 08-cv-01381-MSK-CBS, 2011 WL 1211511,
2  at *3 (D. Colo. Mar. 31, 2011). "Section 10(b) reaches the use of a
3  manipulative or deceptive device or contrivance only in connection with
4  the purchase or sale of a security listed on an American stock exchange,
5  and the purchase or sale of any other security in the United States."
6  Morrison v. Nat'l Austl. Bank Ltd., 558 U.S. ---, 130 S. Ct. 2869, 2888
7  (2010). Therefore, "the focus of the Exchange Act is not upon the place
8  where the deception originated, but upon purchases and sales of
9  securities in the United States." Id. at 2884.

10  Plaintiff alleges, and this motion to dismiss concerns,
11  domestic transactions of securities not listed on an American stock
12  exchange. "[T]ransactions involving securities that are not traded on a
13  domestic exchange are domestic if irrevocable liability is incurred or
14  title passes within the United States." Absolute Activist Value Master
15  Fund Ltd. v. Ficeto, 677 F.3d 60, 67 (2d Cir. 2012).

> [I]n order to adequately allege the existence of a
> domestic transaction, it is sufficient for a
> plaintiff to allege facts leading to the plausible
> inference that the parties incurred irrevocable
> liability within the United States: that is, that
> the purchaser incurred irrevocable liability within
> the United States to take and pay for a security,
> or that the seller incurred irrevocable liability
> within the United States to deliver a security.

21  Id. at 68. It is also sufficient "for the plaintiff to allege that title
22  to the shares was transferred within the United States." Id.

23  Plaintiff makes the following allegations concerning the
24  alleged transactions:

> At all times relevant hereto Verwaltungs- und
> Privat-Bank Aktiengesellschaft ("VP Bank") served
> as the Custodian Bank for MVP. Citco Global Custody
> NV ("Citco") is a custodial service based in the
> Netherlands. VP Bank maintains with Citco Account
> Number 190023 in which, as MVP's Custodian Bank, VP
> Bank holds on behalf of MVP the assets of MVP. All
> of MVP's investments in the Ark Discovery Fund

10

alleged herein are held, and have been held at all times since they were purchased, for the benefit of MVP in VP Bank's Account Number 190023 with Citco. Pursuant to its power of attorney for MVP, MVPAM caused MVP to make the investments in the Ark Discovery Fund alleged herein through MVP's custodian, Citco. On or about April 1, 2008, Plaintiff caused MVP, through Citco, to purchase 10,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million. MVP's purchase was consummated when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York which, in turn, completed the purchases by wiring the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. Plaintiff is informed and believes, and thereupon alleges, that the $1 million purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

. . .

On or about July 1, 2008, Plaintiff caused MVP, through Citco, to purchase 5,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $500,000. MVP's purchase was consummated when MVP's purchase funds were wired from Citco's bank account at HSBC Bank in New York which, in turn, completed the purchases by wiring the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. Plaintiff is informed and believes, and thereupon alleges, that the $500,000 purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

. . .

On or about August 1, 2008, Plaintiff caused MVP, through Citco, to purchase 5,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $500,000. MVP's purchase was consummated when MVP's purchase funds were wired from Citco's bank account at HSBC Bank in New York which, in turn, completed the purchases by wiring the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. Plaintiff is informed and believes, and thereupon alleges, that the $500,000 purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to

1         make the loans to Petters which constituted Ark
2         Discovery Fund's asset portfolio.

3 (TAC ¶¶ 51, 59, 71.) Plaintiff's allegations concerning the
4 transactions, that certain funds were transferred in between New York-
5 based banking institutions, are insufficient to establish the existence
6 of a domestic transaction, as required under Section 10(b). See Cascade
7 Fund, LLP, 2011 WL 1211511, at *3 ("That leaves the final fact urged by
8 Cascade: that the funds to complete the transaction were wired (at least
9 initially) to New York. This assertion does not amount to a conclusion
10 that the transaction was completed in New York . . . .").

11      Further, Defendants seek dismissal of Plaintiff's § 20(a)
12 control person liability claim. "Congress has established liability in
13 § 20(a) for every person who, directly or indirectly, controls any
14 person liable for violations of the securities laws." Janus Capital Grp.
15 v. First Derivative Traders, 564 U.S. ---, 131 S. Ct. 2296, 2304 (2011).
16 Therefore, Plaintiff's "control person claims under Section 20(a) are
17 'necessarily predicated on a primary violation of securities law.' . . .
18 Because Plaintiff['s] primary claim[] under Section 10(b) . . . [is]
19 dismissed, 'these secondary claims must also be dismissed.'" In re
20 Societe Generale Sec. Litig., No. 08 Civ. 2495, 2010 WL 3910286, at *9
21 (S.D.N.Y. Sept. 29, 2010); see also Morrison, 130 S. Ct. at 2876 n.2.
22 ("Liability under § 20(a) is obviously derivative of liability under
23 some other provision of the Exchange Act.").

24      For the stated reasons, the portion of Defendants' motion to
25 dismiss concerning Plaintiff's federal claims is GRANTED. Further, for
26 the reasons stated below, the portion of Defendants' motion to dismiss
27 concerning Plaintiff's state claims is DENIED.
28 ///

### III. DIVERSITY JURISDICTION

In their 12(b)(1) motion to dismiss, Defendants argue "[i]f the Court . . . only dismisses the federal claims pursuant to the arguments raised in the Rule 12(b)(6) motion . . . , the entire action should nonetheless be dismissed because the Court will lack diversity jurisdiction over the remaining state law claims." (Defs.' 12(b)(1) Mot. 19:9-12.) Specifically, Defendants argue "federal law bars district courts from exercising jurisdiction over a civil action where a party has used an improper or collusive assignment to join a party for purposes of creating jurisdiction[.]" Id. 19:13-15. Plaintiff rejoins, arguing "the allegations of the [TAC] establish[] legitimate business reasons for MVP's assignment to MVPAM[.]" (Pl.'s 12(b)(1) Opp'n 15:5-7.)

"The existence of federal jurisdiction is a matter of federal, not state law[, and] an assignment [can] be improperly or collusively made even though binding under state law[.]" Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 829 (1969) (internal quotation marks and citations omitted). Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively joined to invoke the jurisdiction of such court." Attorneys Trust v. Videotape Computer Prods., Inc., 93 F.3d 593, 597 (9th Cir. 1996).

In determining whether an assignment is collusive, "the main focus is usually upon the reality of the transaction itself. . . . [I]s the assignee truly a real party in interest or just a strawman for all practical purposes? If the latter, an assignment which creates jurisdiction will be dubbed improper." Id. at 597.

> [C]ourts have set out a number of factors which are to be considered in deciding whether an assignment is improper or collusive. Among them are: were there good business reasons for the assignment; did

13

>              the assignee have a prior interest in the item or
>              was the assignment timed to coincide with
>              commencement of litigation; was any consideration
>              given by the assignee; was the assignment partial
>              or complete; and was there an admission that the
>              motive was to create jurisdiction.

Id. at 595-96. Further, "where an assignment is partial, the courts are very likely to find that there is an improper or collusive transfer because the prior owner still has an interest." Id. at 597. Specifically, "research has not disclosed a single case where an assignment for collection (however framed or disguised) has been held to be anything but collusive." Id.

Plaintiff alleges an assignment for collection between itself and MVP. (TAC ¶¶ 3, 87; TAC, Ex. C.) At the time of the assignment, both entities were under the control of MVPAM. Id. "Courts presume that an assignment is collusive in situations where the relationship between assignor and assignee is close and provides an excellent opportunity for manipulation, as in transfers between corporations and its subsidiaries or officers." Arsape S.A. v. JDS Uniphase Corp., No. C 03-4535, 2004 WL 2663180, at *4 (N.D. Cal. July 29, 2004). "To overcome this presumption, the party asserting diversity must show a legitimate business reason for the transfer." Yokeno v. Mafnas, 973 F.2d 803, 810 (9th Cir. 1992). "Simply articulating a business reason is insufficient; the burden of proof is with the party asserting diversity to establish that the reason is legitimate and not pretextual." Id.

Plaintiff does not oppose Defendants' argument that Plaintiff alleges a partial assignment, or that there is a close relationship between MVP and MVPAM; however, Plaintiff argues it has sufficiently alleged a business reason for the assignment. (Pl.'s 12(b)(1) Opp'n 15:1-21.) Plaintiff's business reason comprises the following

14

1 allegations:

> MVPAM has genuine commercial interest in the enforcement of the MVP claims. As the manager of MVP's business affairs, with power over MVP's assets and investments, MVPAM has a legitimate commercial interest in fulfilling its fiduciary responsibility to MVP by taking actions for the benefit of MVP including pursuing the MVP Claims. MVPAM, as MVP's investment manager, made the decisions to invest in the Ark Discovery shares at issue and caused MVP to purchase the shares. MVPAM has a genuine commercial interest in recovering the lost Ark Discovery investments because, under the IMA, MVPAM's compensation is based on the value of MVP's assets and on the performance of MVP's investments.

(TAC ¶ 87.) These allegations are insufficient to overcome the presumption of collusion. See Yokeno, 973 F.2d at 811 ("Disposing of a clouded property interest to increase financial attractiveness is not a legitimate business purpose that would overcome the presumption of collusiveness if, once the cloud is removed, the assignor stands to reap the benefits of the assignee's success.").

Further, since the issue concerning whether the assignment was collusive remains unresolved, and the "manufacture of [f]ederal jurisdiction was the very thing which Congress intended to prevent when it enacted § 1359[,]" the Court declines to address the portion of the motions challenging the state claims since it is questionable whether Plaintiff will be able to state viable federal claims or a basis for diversity jurisdiction at this stage in the proceedings. Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 828-29 (1969). Therefore, Defendants' motion to dismiss Plaintiff's state claims for lack of jurisdiction is granted.

## IV. CONCLUSION

For the stated reasons, Defendants' 12(b)(1) motion to dismiss is granted in part and denied in part; Defendants' 12(b)(6) motion to

dismiss is granted in part and denied in part; and Defendants' 12(b)(2) and Defendant Vestbirk's 12(b)(2) motions are denied as moot, because of rulings on the other motions.

Plaintiff is granted ten (10) days from the date on which this order is filed to file a Fourth Amended Complaint addressing the deficiencies of Plaintiff's pleading discussed in this order. Further, Plaintiff is notified that this action may be dismissed with prejudice under Federal Rule of Civil Procedure 41(b) if Plaintiff fails to file an amended complaint within the prescribed time period.

Dated:  July 11, 2012

GARLAND E. BURRELL, JR.
Senior United States District Judge