1   GEORGE L. O'CONNELL (SBN 74037)
     TODD M. NOONAN (SBN 172962)
2   DLA PIPER LLP (US)
     400 Capitol Mall, Suite 2400
3   Sacramento, CA  95814-4428
     Tel:  916.930.3200
4   Fax:  916.930.3201

5   Attorneys for Defendants
     STEVEN VESTBIRK; JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET
6   MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL
     ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS,
7   LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL
     CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL
8   RESOURCES, LLC; ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS,
     LLC

9

10              UNITED STATES DISTRICT COURT

                EASTERN DISTRICT OF CALIFORNIA
11

12   MVP ASSET MANAGEMENT (USA) LLC, a     CASE NO.  2:10-cv-02483-GEB-CMK
     Delaware Limited Liability Company,
13                           DEFENDANTS' NOTICE OF MOTION
           Plaintiff,                 AND MOTION TO DISMISS PLAINTIFF'S
                           FOURTH AMENDED COMPLAINT
14          v.                     PURSUANT TO RULE 12(B)(6), 12(B)(1),
                           AND 12(B)(2); MEMORANDUM OF
15   STEVEN VESTBIRK, JEFF BALLIET,        POINTS AND AUTHORITIES IN SUPPORT
     ALLISON HANSLIK, JIM GRANT, ARK       THEREOF
16   ROYAL ASSET MANAGEMENT, LTD., a
     Bermuda Limited Company, VESTBIRK
17   CAPITAL MANAGEMENT, LTD., a Bermuda   Date:   October 9, 2012
     Limited Company, ARK ROYAL ASSET       Time:  9:00 a.m.
18   MANAGEMENT, LLC, a Nevada Limited-     Dept:  Courtroom 10
     Liability Company, ARK DISCOVERY, LLC, a  Judge: Honorable Garland E. Burrell, Jr.
19   Business Entity of Unknown Form, ARK
     ROYAL HOLDINGS, LLC, a Nevada Limited-
20   Liability Company, ARK ROYAL SERVICES,
     LLC, a Nevada Limited-Liability Company,
21   ARK ROYAL CAPITAL, LLC, a Nevada
     Limited-Liability Company, ARK ROYAL
22   CAPITAL FUNDING, LLC, a Nevada Limited-
     Liability Company, ARK ROYAL CAPITAL,
23   INC., a Nevada Corporation, ARK ROYAL
     RESOURCES LLC, a Nevada Limited-Liability
24   Company, ARK ROYAL ASSURANCE LLC, a
     Nevada Limited-Liability Company, and ARK
25   ROYAL INVESTMENTS, LLC, a Nevada
     Limited-Liability Company,
26
           Defendants.
27

28

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 9, 2012, at 9:00 a.m., in Courtroom 10 of the above-titled Court, located at 501 I Street, Sacramento, California 95814, defendants STEVEN VESTBIRK; JEFF BALLIET, ALLISON HANSLIK, ARK ROYAL ASSET MANAGEMENT, LTD.; VESTBIRK CAPITAL MANAGEMENT, LTD.; ARK ROYAL ASSET MANAGEMENT, LLC; ARK DISCOVERY, LLC; ARK ROYAL HOLDINGS, LLC; ARK ROYAL SERVICES, LLC; ARK ROYAL CAPITAL, LLC; ARK ROYAL CAPITAL FUNDING, LLC; ARK ROYAL CAPITAL, INC.; ARK ROYAL RESOURCES, LLC; and ARK ROYAL ASSURANCE LLC; ARK ROYAL INVESTMENTS, LLC ("Moving Defendants") will and hereby do move to dismiss the Fourth Amended Complaint filed by Plaintiff.  As further set forth in the Memorandum of Points and Authorities filed herewith, which is incorporated herein by this reference, the grounds for this motion are as follows.

Moving Defendants move to dismiss the First and Second Causes of Action, which assert securities fraud claims under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934, under Rule 12(b)(6), Rule 9(b), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  The Complaint fails to state federal securities fraud claims for several reasons.  First, Section 10(b) does not have extraterritorial reach, and controlling United States Supreme Court authority bars Plaintiff's claims, which are based upon offshore transactions.  *Morrison v. Nat'l Bank of Australia Ltd.*, 130 S.Ct. 2869 (2010); *see also* Order, filed July 12, 2012.  Second, Plaintiff has failed to meet the strict pleading requirements applicable to a securities fraud claim under the PSLRA and Rule 9(b).  Plaintiff has failed to properly plead scienter, for example, and has failed to allege facts establishing each Moving Defendant as the "maker" of the alleged misstatement.  Third, Plaintiff's Section 20(a) control person claims must be dismissed once the underlying Section 10(b) claim is dismissed.  In addition, Plaintiff has also failed to plead sufficient facts to establish all of the Moving Defendants as purported control persons.

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   Consistent with this Court's Order of July 12, 2012, Moving Defendants also move to

2   dismiss the state law claims under Rule 12(b)(1) for lack of diversity jurisdiction.  Upon dismissal

3   of Plaintiff's federal claims, the Court will lack federal question jurisdiction.  With respect

4   diversity jurisdiction, federal law requires the Court to look past MVPAM's citizenship to that of

5   MVP, as MVPAM's status as a putative plaintiff results only from a collusive assignment

6   allegedly made between MVPAM and MVP.  28 U.S.C. § 1359.  When MVP's citizenship is

7   considered, complete diversity is defeated because there is a foreign assignor as the effective

8   plaintiff and a foreign defendant.  *See* 28 U.S.C. § 1332.  Accordingly, there will be no continuing

9   subject matter jurisdiction for the Court, and it should decline to exercise supplemental

10  jurisdiction over the remaining state law claims and dismiss them.  28 U.S.C. §1367(c).

11  Moving Defendants also move to dismiss Plaintiff's California common law and statutory

12  claims under Rule 12(b)(6) and Rule 9(b).  Plaintiff has failed to plead the Third (Fraud), Fourth

13  (Negligent Misrepresentation), and Sixth and Seventh (California Securities Act) claims for relief

14  with the particularity required by Rule 9(b).  Plaintiff's Sixth and Seventh claims under the

15  California Securities Act (Cal. Corp. Code §§ 25504, 25504.1) also fail to state a claim because

16  Plaintiff was required to have, but did not allege facts establishing a California purchase, a

17  California seller, or an offer of sale in California.  *Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19

18  Cal. 4th 1036, 1059 (1999).  Further, Plaintiff cannot state a claim because (1) a remedy of

19  damages is unavailable to him because Plaintiff does not allege that MVP has sold its shares,

20  therefore precluding an award of damages, and (2) Plaintiff has failed to join as a party defendant

21  the actual issuer of the shares, and no claim for rescission exists against any other party.  Cal.

22  Corp. Code § 25501; *Viterbi v. Wasserman*, 191 Cal. App. 4th 927 (2011).

23  Moving Defendants also move to dismiss Plaintiff's fifth claim (Negligence) pursuant to

24  Rule 12(b)(6) for failure to state a claim.  Plaintiff has not alleged facts that establish a duty

25  running from any Moving Defendant to Plaintiff.  In addition, Plaintiff's claim for negligence

26  arises out of claims that Moving Defendants mismanaged Ark Discovery (Offshore)'s

27  investments to the detriment of its shareholders, which shareholders allegedly include MVP.

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

-2-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    Such claims cannot be pursued directly by an alleged shareholder, but instead must be pursued

2    derivatively in the British Virgin Islands under the laws of the British Virgin Islands.

3         Finally, Moving Defendants move to dismiss pursuant to Rule 12(b)(2) for lack of

4    personal jurisdiction.  Plaintiff fails to allege sufficient contacts with California to support the

5    exercise of personal jurisdiction over any Moving Defendant, and, upon dismissal of the federal

6    securities fraud claims, this Court should decline to exercise pendent personal jurisdiction.  *Action*

7    *Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004).

8         Pursuant to Rule 12(g)(1), these motions may be joined together.  As the defects identified

9    in this motion cannot be cured, Moving Defendants request that the dismissal be with prejudice.

10   Pursuant to Rule 44.1, Moving Defendants further provide notice of their intent to rely upon the

11   law of the British Virgin Islands, as further set forth herein and in the Request for Judicial Notice.

12        This motion will be based upon this Notice of Motion and Motion, Memorandum of

13   Points and Authorities, and the Request for Judicial Notice filed herewith, which in turn is

14   supported by the authenticating Declarations of George O'Connell filed May 12, 2011 (Dkt. No.

15   60), Martin Zolnai and Todd M. Noonan, both filed herewith, and Dino Coppola, filed February

16   24, 2011 (Dkt. No. 18); and on such further documents and argument as the Court may permit at

17   the hearing of this motion.

18

19   Dated:  August 27, 2012                    DLA PIPER LLP (US)

20

21                                    By:___/s/ TODD M. NOONAN_____

22                                       Todd M. Noonan
                                         Attorneys for Defendants
23

24

25

26

27

28

-3-

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF THE CASE .................................................................... 4

       A.     Procedural History:  Plaintiff's Four Prior Complaints Have Been
              Dismissed ........................................................................................ 4

       B.     The Fourth Amended Complaint – Only Limited Amendments From the
              Prior Dismissed Third Amended Complaint.................................... 6

              1.     Amendments to Paragraphs 51, 59, and 71:  Plaintiff Finally
                     Discloses That The Purchases Were Made By Citco Global
                     Pursuant To A Subscription Agreement ................................... 6

              2.     The Subscription Agreement................................................... 8

III.   ARGUMENT ........................................................................................... 13

       A.     Plaintiff Has Failed To State A Claim For Federal Securities Fraud.................. 13

              1.     As Already Held By This Court, Foreign Securities Transactions
                     Are Not Subject to Section 10(b) ......................................... 14

                     a.     The Subscription Agreement Imposed Irrevocable Liability
                            on Citco Global, as the Alleged Agent for MVP ........... 16

                     b.     Plaintiff's Allegations And The Subscription Agreement
                            Confirm That The Irrevocable Liability Was Not Incurred
                            Within the United States ............................................. 18

              2.     Plaintiff Has Failed To Adequately Plead A Claim For Control
                     Person Liability Under Section 20(a) .................................... 21

       B.     With The Dismissal Of Federal Securities Law Claims, The Court Should
              Dismiss The Action In Its Entirety................................................. 21

       C.     The Federal Claims Should Also Be Dismissed Because Plaintiff's
              Complaint Fails to Comply With the Heightened Pleading Requirements of
              Rule 9(b) And the PSLRA ............................................................ 22

              1.     Summary Of Relevant Allegations ........................................ 23

                     a.     The Investment And The Exposure Of Petters' Ponzi
                            Scheme ................................................................... 23

                     b.     Named Defendants:  Plaintiff's Indiscriminate Joinder of
                            Defendants............................................................... 24

                     c.     The Alleged False Representations and Associated
                            Investments By MVP ................................................. 25

                     d.     Plaintiff's Allegations Concerning Defendants' Alleged
                            Knowledge Of The Falsity Of The Alleged
                            Misrepresentations ................................................... 28

                            (1)     Knowledge Purportedly Gained From Steven
                                    Vestbirk's Background At Arrowhead............................. 29

                            (2)     Prior Investment Experience With Ark Diversified
                                    Fund And Ark Royal Fund................................. 30

                            (3)     Information Allegedly Obtained From Jim Granat.......... 30

                            (4)     Alleged Loans To The Petters Entity, Edge One,
                                    LLC ................................................................... 33

-i-

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

(5)    Moving Defendants' Investigation In Response To The Delays In Payment ..................................................... 34

(6)    Subsequent Alleged Emails With Vestbirk ...................... 35

2.    Plaintiff Has Failed To Adequately Allege Scienter As To Each Named Moving Defendant ................................................. 35

    a.    Plaintiff Has Not Alleged The Requisite Facts, As Compared To Conclusions, To Establish That Each Defendant Act With Scienter As To Each Alleged Misrepresentation ..................................................... 38

    b.    Plaintiff May Not Rely Upon Moving Defendants' Alleged Positions Within Ark Royal Asset Management as a Substitute for Pleading Specific Facts that Establish that Each Defendant Acted with Scienter ........................... 39

3.    Plaintiff Has Also Failed To Adequately Allege A Primary Violation By Each Moving Defendant ..................................... 42

D.    Plaintiff Has Failed To Adequately Plead Its California Securities Fraud, Fraud, Negligent Misrepresentation, and Negligence Claims ............................ 45

1.    Plaintiff Has Failed to Satisfy Rule 9(b) For These State Claims ............ 45

2.    Plaintiff Fails to State a State Law Securities Law Claim ....................... 46

    a.    Plaintiff Has Not and Cannot Allege An Offer Made In California ................................................................. 46

    b.    Neither The Remedy Of Damages Nor Rescission Is Available To Plaintiff, Barring It From Stating a Claim Under the California Securities Laws ........................... 49

3.    Plaintiff Has Failed to State a Claim for Negligence ............................. 50

    a.    Plaintiff Lacks Standing To Assert This Negligence Claim Because It Is A Derivative Claim That Must Be Advanced On Behalf Of Ark Discovery (Offshore) Against ARAM ............ 51

    b.    Plaintiff Has Failed To Allege Facts Establishing An Independent Duty Running From Any Moving Defendant to Plaintiff, And Its Claim Is Also Barred By The Economic Loss Rule ............................................................... 52

E.    Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant ....................................................... 52

IV.    CONCLUSION ......................................................................................... 57

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

-ii-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

# TABLE OF AUTHORITIES

CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
    677 F.3d 60 (2d Cir. 2012)........................................................................ passim

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,*
    368 F.3d 1174 (2004)................................................................................ 53, 54

*Applied Underwriters, Inc. v. Combined Management, Inc.,*
    371 Fed. Appx. 834, 2010 WL 1141528 (9th Cir., March 24, 2010) ..................... 56

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102............................................................................................ 53, 57

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 13, 19

*Attorneys Trust v. Videotape Computer Prods., Inc.,*
    93 F.3d 593 (9th Cir. 1996)............................................................................. 5

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ......................................................................... 14

*Bancroft & Masters, Inc. v. Augusta National Inc.,*
    223 F.3d 1082 (9th Cir. 2000)........................................................................ 55

*Batchelder v. Kawamoto,*
    147 F.3d 915 (9th Cir. 1998).......................................................................... 51

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 13

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ..................................................................................... 57

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996)............................................................................ 13

*Cascade Fund LLP v. Absolute Capital Mgmt. Holdings Ltd.,*
    2011 WL 1211511 (D. Colo. Mar. 31, 2011) ................................... 5, 14, 15, 19

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*
    511 U.S. 164 (1994) ......................................................................... 18, 42, 43

*Cisneros v. Instant Capital Funding Grp., Inc.,*
    263 F.R.D. 595 (E.D. Cal. 2009) ....................................................... 37, 45, 46

-iii-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997)............................................................................................ 45

*Craig v. Atl. Richfield Co.,*
  19 F.3d 472 (9th Cir. 1994)............................................................................................. 21

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010)..................................................................................... 14, 17

*Desaigoudar v. Meyercord,*
  223 F.3d 1020 (9th Cir. 2000)......................................................................................... 22

*Diamond Multimedia Systems, Inc. v. Sup. Ct.,*
  19 Cal. 4th 1036 (1999) .......................................................................................... 3, 48, 49

*Dole Food Co., Inc. v. Watts,*
  303 F.3d 1104 (9th Cir 2002).......................................................................................... 56

*DSAM Global Value Fund v. Altris Software, Inc.,*
  288 F.3d 385 (9th Cir. 2002)...................................................................................... 22, 36

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ......................................................................................................... 49

*Eshelman v. Orthoclear Holdings, Inc.,*
  2009 WL 506864 (N.D. Cal. Feb. 27, 2009)................................................................. 51

*Faysound Ltd. v. United Coconut Chem., Inc.,*
  878 F.2d 290 (9th Cir. 1989)........................................................................................... 21

*Franchise Tax Bd. of Calif. v. Alcan Aluminum, Ltd.,*
  493 U.S. 331 (1990) ......................................................................................................... 51

*Glazer Capital Mgmt., LP v. Magistri,*
  549 F.3d 736 (9th Cir. 2008)................................................................................... 39, 40, 41

*Glenn K. Jackson Inc. v. Roe,*
  273 F.3d 1192 (9th Cir. 2001)......................................................................................... 52

*Gompper v. VISX, Inc.,*
  298 F.3d 893 (9th Cir. 2002)........................................................................................... 36

*Hanson v. Denckla,*
  357 U.S. 235 (1958) ......................................................................................................... 55

*Healy v. Beer Institute,*
  491 U.S. 324 (1989) ......................................................................................................... 49

*Helicopteros Nacionales de Columbia v. Hall,*
  466 U.S. 408 (1984) ......................................................................................................... 54

-iv-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*,
    84 F.3d 1408 (Fed. Cir. 1996)............................................................................................54

*Horvath v. Banco Comercial Portugues, S.A.*,
    2011 WL 666410 (S.D.N.Y Feb. 15, 2011) ......................................................................20

*In re AstraZeneca Sec. Litig.*,
    559 F.Supp.2d 453 (S.D.N.Y. 2008)..................................................................................41

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007)..............................................................................37

*In re Marvell Tech. Grp. Ltd. Secur. Litig.*,
    2008 WL 4544439 (N.D. Cal. Sep. 29, 2008)....................................................................44

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008)..............................................................................37

*In re Optimal U.S. Litig.*,
    813 F. Supp. 2d 351 (S.D.N.Y. 2011)................................................................................51

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999).......................................................................................22, 36

*In re Societe Generale Sec. Litig.*,
    2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010)...................................................................21

*In re Verifone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993).................................................................................................21

*In re Vivendi Universal, S.A. Securities Litig.*,
    __ F.R.D. __, 2012 WL 2829556 (S.D.N.Y. July 5, 2012)................................................18

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945)............................................................................................................54

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S.Ct. 2296 (2011) ..........................................................................................42, 43, 44

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
    1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ..................................................................45

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).............................................................................................45

*Lapiner v. Camtek, Ltd.*,
    2011 WL 445849 (N.D. Cal., February 2, 2011) ...............................................................41

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)...............................................................................................14

-v-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

*Lomayaktewa v. Hathaway,*
   520 F.2d 1324 (9th Cir. 1975)................................................................. 50

*Los Angeles Fisheries, Inc. v. Crook,*
   47 F.2d 1031 (9th Cir. 1931)................................................................. 48

*McGlinchy v. Shell Chem. Co.,*
   845 F.2d 802 (9th Cir. 1988)................................................................. 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
   540 F.3d 1049 (9th Cir. 2008)............................................................... 36

*MGIC Indem. Corp. v. Weisman,*
   803 F.2d 500 (9th Cir. 1986)................................................................. 14

*Morrison v. Nat'l Australia Bank Ltd.,*
   130 S.Ct. 2869 (2010) ................................................................... passim

*Moss v. Kroner,*
   197 Cal. App. 4th 860 (2011)............................................................... 50

*Moss v. U.S. Secret Serv.,*
   572 F.3d 962 (9th Cir. 2009)................................................................. 13

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993)................................................................... 45

*North Alaska Salmon Co. v. Pillsbury,*
   174 Cal. 1 (1916) ............................................................................ 48

*Norwest Mortgage, Inc. v. Superior Court,*
   72 Cal. App. 4th 214 (1999)................................................................. 48

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996)................................................................. 21

*Peterson v. Kennedy,*
   771 F.2d 1244 (9th Cir. 1985)............................................................... 56

*Petrie v Elect. Game Card Inc.,*
   2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ............................................. 37

*Phipps v. Wells Fargo Bank, N.A.,*
   2011 WL 302803 (E.D. Cal. Jan. 27, 2011).............................................. 45

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
   522 F.3d 1049 (9th Cir. 2008)............................................................... 45

*Poindexter v. Wedbush, Noble, Cooke, Inc.,*
   1983 WL 1279 (D. Or. Jan. 24, 1983) ............................................. 53, 54

-vi-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

*Quelimine Co., Inc. v. Stewart Title Guaranty Co.*,
    19 Cal. 4th 26 (1998) ............................................................................................ 52

*Radiation Dynamics, Inc. v. Goldmuntz*,
    464 F.2d 876 (2d Cir. 1972) .................................................................................. 15

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) ................................................................................. 57

*Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
    88 Cal. App. 4th 595 (2001) .................................................................................. 52

*Robinson v. Cupples Container Co.*,
    316 F. Supp. 1362 (N.D. Cal. 1970) ...................................................................... 48

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ................................................................................. 22

*S.E.C. v. Cohmad Sec. Corp.*,
    2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ............................................................ 41

*Sarkis v. Lajcak*,
    425 Fed. Appx. 557, 2011 WL 1118471 (9th Cir., March 28, 2011) ..................... 56

*Schauer v. Mandarin Gems of California, Inc.*,
    125 Cal. App. 4th 949 (2005) ................................................................................ 50

*Schuster v. Gardner*,
    127 Cal. App. 4th 305 (2005) ................................................................................ 51

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................ 53, 55, 56, 57

*Securities In. Prot. Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985) ............................................................................... 53

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ............................................................................... 55

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir. 2009) .................................................................................... 20

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ..................................................... 23, 26, 27

*South Cherry St., LLC v. Hennesee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) .................................................................................... 41

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ..................................................................... 39, 41

-vii-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ............................................................... 13

*Steckman v. Hart Brewing Inc.,*
   143 F.3d 1293 (9th Cir. 1998) ......................................................... 14, 17

*Stephenson v. Citco Grp. Ltd.,*
   700 F. Supp. 2d 599 (S.D.N.Y. 2010) ................................................... 42

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
   552 U.S. 148 (2008) ............................................................................ 42

*Sullivan v. Oracle Corp.,*
   51 Cal. 4th 1191 (2011) ................................................................ 48, 49

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) .............................................................. 37

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ............................................................... 36, 37, 44

*Tolentino v. Mossman,*
   2007 WL 4404447 (E.D. Cal., Dec. 13, 2007) ................................... 53, 54

*U.S. v. Botefuhr,*
   309 F.3d 1263 (10th Cir. 2002) .......................................................... 53

*U.S. v. Stonehill,*
   83 F.3d 1156 (9th Cir. 1996) .............................................................. 51

*Van Buskirk v. Cable News Network, Inc.,*
   284 F.3d 977 (9th Cir. 2002) ............................................................. 14

*Vinci v. Waste Mgmt. Inc.,*
   80 F.3d 1372 (9th Cir. 1996) ............................................................. 51

*Viterbi v. Wasserman,*
   191 Cal. App. 4th 927 (2011) ......................................................... 3, 50

*W. Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981) .............................................................. 13

*Yen v. Buchholz,*
   2010 WL 1758623 (N.D. Cal., April 30, 2010) ..................................... 54

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) ......................................................... 22, 41

-viii-

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1

**STATUTES**

2

12 U.S.C. § 1951 ................................................................................................. 19

3

15 U.S.C. § 78aa ................................................................................................. 53

4

15 U.S.C. § 78u-4(b) ...................................................................................... passim

5

28 U.S.C. § 1359 ...................................................................................... 1, 5, 21, 22

6

28 U.S.C. § 1367(c)(3) ....................................................................................... 22

7

8

Cal. Corp. Code Section 25008 .................................................................... 46, 47

9

Cal. Corp. Code Section 25400 ............................................................................ 48

10

Cal. Corp. Code section 25401 ................................................................. 46, 48, 49

11

Cal. Corp. Code Section 25501 ....................................................................... 49, 50

12

Cal. Corp. Code section 25504 ....................................................................... 46, 50

13

Cal. Corp. Code section 25504.1 ......................................................................... 46

14

**RULES**

15

Fed. R. Civ. Proc. 10(b)(5) ................................................................................. 13

16

Fed. R. Civ. Proc. 12(b)(1) ................................................................................... 4

17

Fed. R. Civ. Proc. 12(b)(2) ...................................................................... 4, 5, 52

18

Fed. R. Civ. Proc. 12(b)(3) ................................................................................. 54

19

Fed. R. Civ. Proc. 12(b)(6) ........................................................................... passim

20

Fed. R. Civ. Proc. 9(b) ................................................................................. passim

21

**REGULATIONS**

22

12 C.F.R. § 210.25 ("Regulation J") .................................................................. 19

23

**OTHER AUTHORITIES**

24

25

4A Wright & Miller, Federal Practice & Procedure (3d ed.), § 1069.7 ....................... 54

26

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

# I.
## INTRODUCTION

The Court dismissed this action on July 12, 2012, finding as follows:

- That Plaintiff failed to state a claim for federal securities fraud because Section 10(b) of the Securities and Exchange Act does not have extraterritorial reach, and Plaintiff had not alleged a domestic securities transaction (Order, at 9-12); and

- That, in the absence of a federal claim, Plaintiff's remaining state law claims must be dismissed for lack of diversity jurisdiction because under 28 U.S.C. § 1359, a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively joined to invoke the jurisdiction of the court, and the alleged assignment by which the alleged foreign investor, MVP Fund of Funds ("MVP"), allegedly assigned its claims to plaintiff, MVP Asset Management, was collusive.[1]

Plaintiff filed its Fourth Amended Complaint on July 23, 2012. Both of the above findings by the Court continue to attach with equal force to this fifth iteration of the complaint. In fact, Plaintiff's few amendments provide the Court with a conclusive basis to dismiss the action without leave to amend.

With respect to the federal Section 10(b) claim, the central focus of the Court's prior order was whether, per the test set forth in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), an irrevocable liability to purchase or sell the securities was incurred within the United States. Plaintiff's amended allegations establish that the contracts governing the purchase were executed by non-United States parties outside of the United States, precluding application of Section 10(b).

More specifically, Plaintiff's prior allegations already established that a foreign investor, MVP, allegedly used its foreign bank (VP Bank), which in turn used an alleged custodial relationship with yet another foreign entity, Citco Global Custody NV ("Citco Global"), to purchase shares in a foreign hedge fund, Ark Discovery Fund (Offshore), with the shares being held at all times offshore in VP Bank's account at Citco Global. Through its amended allegations, Plaintiff now discloses that Citco Global entered into a Subscription Agreement to purchase the shares. Plaintiff makes no allegation that Citco Global executed the Subscription

---

[1]     Having so ruled, the Court declined to address the other issues raised by the Defendants.

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    Agreement within the United States.  Accordingly, not only were all of the relevant parties to the

2    transactions outside of the United States, and not only were the shares issued and held outside of

3    the United States, but the place of contracting was also outside of the United States.

4         In seeking to bring this plainly foreign transaction within the reach of United States

5    securities law, Plaintiff continues to fixate on a fact that has already been held by this Court to be

6    insufficient:  namely, that Citco Global wired purchase funds to Ark Discovery Fund (Offshore)

7    through a New York bank.  This one allegation concerning the flow of money did not suffice

8    before and still does not.  In addition, Plaintiff's amended allegations quote directly from the

9    Subscription Agreement.  While Plaintiff conspicuously fails to attach it, Ninth Circuit case law

10   authorizes the Court to consider it on this motion through the incorporation by reference doctrine,

11   and the Court is requested to do so.

12        Review of the Subscription Agreement reveals Plaintiff's allegations concerning the

13   money flow to be materially incomplete.  The Subscription Agreement contains detailed wire

14   instructions.  Those wire instructions provide that the New York bank was merely an

15   intermediary or "correspondent" bank, with the ultimate destination for the funds being Ark

16   Discovery (Offshore) Ltd.'s account at the Bank of Butterfield in Bermuda.  Plaintiff fails to

17   explain why its allegations do not detail the complete wire instructions, or the basis for it to allege

18   that the funds stayed in New York given that the wire instructions provide for payment to an

19   account in Bermuda.  And, in any event, Plaintiff does not allege– and could not truthfully allege

20   – that Citco Global did not follow the Subscription Agreement's wire instructions, removing this

21   last and already insufficient basis for Plaintiff to contend that this transaction was domestic.

22        The federal securities law claims must therefore be dismissed under *Morrison v. Nat'l*

23   *Australia Bank Ltd.*, 130 S.Ct. 2869 (2010).  No possible curative allegation remains, and the

24   dismissal of these federal claims should be with prejudice.

25        With respect to the remaining state law claims, they should be dismissed for the same

26   reasons set forth in the Court's Order of July 12, 2012.  Plaintiff made no amendment to its

27   allegations concerning the collusive assignment, and the Court's prior findings therefore remain

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

-2-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    applicable to this new pleading.  There is no diversity jurisdiction given the collusive assignment,

2    and the entire action should be dismissed.

3           Further, as set forth in the prior motions to dismiss, there are additional defects with the

4    pleading that independently support its dismissal.  Plaintiff, for example, has failed to comply

5    with the strict pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"),

6    15 U.S.C. § 78u-4, and Rule 9(b) of the Federal Rules of Civil Procedure.  Despite being on

7    notice of the defects identified herein from Moving Defendants' four prior motions to dismiss,

8    Plaintiff still has indiscriminately sued numerous individuals and entities based upon boilerplate

9    allegations without alleging the specific wrongdoing of *each*.  Plaintiff has also failed to meet the

10   requirement that it plead specific facts establishing that *each* Moving Defendant acted with

11   scienter with respect to *each* of the alleged misrepresentations.  Plaintiff's repetition of these

12   same pleading deficiencies through five complaints demonstrates that Plaintiff cannot cure the

13   problem, and the claims should be dismissed with prejudice on this ground as well.

14          Plaintiff's California securities law claims must be dismissed for several additional

15   reasons.  California securities laws, like their federal counterparts, do not extend extraterritorially

16   to reach these offshore transactions.  *Diamond Multimedia Systems, Inc. v. Sup. Ct.*, 19 Cal. 4th

17   1036, 1059 (1999).  California has *no* regulatory interest in this foreign transaction, and any effort

18   to extend California's regulatory reach outside of its borders would run afoul of the presumption

19   against extraterritorial application of statutes and the Due Process clause.  *Id.*

20          In addition, Plaintiff cannot state a California securities claim because it cannot plead a

21   viable remedy.  Damages are unavailable under the plain language of the statute where, as here,

22   the buyer still holds the shares.  Rescission is also unavailable because Plaintiff has not sued the

23   actual issuer, Ark Discovery (Offshore), which is the only entity that could receive the shares and

24   return the consideration for the shares back to MVP.  *See Viterbi v. Wasserman*, 191 Cal. App.

25   4th 927 (2011).  Accordingly, for these reasons as well, the California Securities Law claims,

26   must be dismissed.

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

As for the negligence claim, Plaintiff cannot pursue this claim given the "shareholder standing" doctrine.  This claim, which arises out of the contention that Moving Defendants mismanaged Ark Discovery (Offshore), is one held by Ark Discovery (Offshore), not its shareholders.  The claim cannot be pursued directly, and instead must be pursued, if at all, through a derivative action, which Plaintiff has not done.  In addition, Plaintiff fails to allege facts establishing a duty of care owed by any Moving Defendant to the Plaintiff, and the claim is otherwise barred by the economic loss rule.

Finally, Plaintiff fails to allege the facts necessary to establish personal jurisdiction over Moving Defendants in California:  None is alleged to be located in this state, and none of the alleged conduct was targeted at this forum.  The alleged investor, after all, was located in the British Virgin Islands and the actual buyer in the Netherlands.

Accordingly, Moving Defendants request that their motion be granted and Plaintiff's claims be dismissed with prejudice.

## II.
## STATEMENT OF THE CASE

A.    **Procedural History:  Plaintiff's Four Prior Complaints Have Been Dismissed.**

Plaintiff filed its original complaint on September 15, 2010.  Moving Defendants moved to dismiss under Rule 12(b)(1) and Article III of the Constitution on the ground that plaintiff MVPAM, an uninjured investment advisor, lacked standing to assert the claims of its client, MVP, the alleged actual investor.  Moving Defendants also moved to dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(2) for lack of personal jurisdiction.  On April 14, 2011, the Court granted the Rule 12(b)(1) Motion, finding that Plaintiff lacked constitutional standing.  The Court did not reach the other grounds raised by the Moving Defendants.

Plaintiff subsequently filed its First Amended Complaint.  Moving Defendants again moved to dismiss.  By order filed September 22, 2011, the Court dismissed the First Amended Complaint, finding that MVPAM had still failed to allege facts establishing Article III standing.

DLA PIPER LLP (US)
SACRAMENTO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

MVPAM then filed its Second Amended Complaint. This version amended allegations in Paragraphs 3 and 87 concerning MVPAM's purported status as an assignee of MVP, and included new allegations in Paragraph 51 disclosing the foreign entities – VP Bank and Citco Global – involved in MVP's alleged purchase of the shares at issue. On January 6, 2012, the Court again dismissed the action on the grounds of lack of subject matter jurisdiction.

Plaintiff subsequently filed its Third Amended Complaint. The amendments in that complaint related only to the alleged assignment. Moving Defendants again sought dismissal, raising Article III standing challenges based upon the invalidity of the alleged assignment, as well as Rule 12(b)(6) grounds and a Rule 12(b)(2) personal jurisdiction challenge. By way of Order filed July 12, 2012, the Court dismissed the action for the fourth time. The Court concluded that Plaintiff's amended allegations sufficed to allege an assignment, and thus that, at least for purposes of pleading, Plaintiff had Article III standing. (Order, July 12, 2012, at 8.) The Court, however, dismissed Plaintiff's federal securities law claims for failure to state a claim. The Court reviewed Plaintiff's allegations in detail, and noted only one potential domestic component in the chain of events relating to the purchase of shares: the payment for the shares was allegedly made through a New York bank. The Court found that this one alleged fact did not suffice to establish the existence of a domestic transaction, citing cases such as the *Morrison* case from the United States Supreme Court; *Absolute Activist* out of the Second Circuit; and the District Court case of *Cascade Fund LLP v. Absolute Capital Mgmt. Holdings Ltd.*, 2011 WL 1211511, at *3 (D. Colo. Mar. 31, 2011), among others. (Order, at 12.)

Having dismissed the federal claims, the Court turned to the state claims. It concluded that the alleged assignment between MVPAM and MVP was collusive under 28 U.S.C. § 1359. Under section 1359, "[a] district court shall not have jurisdiction of a civil action in which any part, by assignment or otherwise, has been improperly or collusively joined to invoke the jurisdiction of the court." (Order, at 13, citing *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 597 (9th Cir. 1996). Given the collusive assignment, and with both MVP from the Plaintiff's side and defendants Vestbirk and ARAM being citizens of foreign states, there was

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    no basis for diversity jurisdiction.  The Court thus dismissed the state law claims as well.  (*See*

2    Order, at 15.)  The Fourth Amended Complaint ("FAC") followed.

3    **B.      The Fourth Amended Complaint – Only Limited Amendments From the Prior
             Dismissed Third Amended Complaint.**

4

5           Given the basis for the Court's prior dismissal, and the limited nature of the amendments,

6    Moving Defendants first review herein the new allegations that directly pertain to the *Morrison*

7    issue, as that issue, when combined with the collusive assignment and lack of diversity

8    jurisdiction, should lead to the dismissal of the action.  Moving Defendants reserve the broader

9    summary of Plaintiff's allegations for later in the motion.

10          **1.      Amendments to Paragraphs 51, 59, and 71:  Plaintiff Finally Discloses That
                     The Purchases Were Made By Citco Global Pursuant To A Subscription
                     Agreement.**

11

12          The Fourth Amended Complaint contains new allegations concerning the mechanics of

13   Citco Global's purchase of shares of Ark Discovery (Offshore).  These new allegations quote

14   expressly from the written contract governing the purchases, which is known as the Subscription

15   Agreement.  As these amendments provide the basis for this Court to dismiss the action without

16   leave to amend, they are reviewed in detail below.

17          Previously, Plaintiff described the purchase transaction as follows:

18          At all times relevant hereto Verwaltugs- un Privat-Bank Aktiengesellschaft
            ("VP Bank") served as the Custodian Bank for MVP.  Citco Global
19          Custody NV ("Citco) is a custodial service based in the Netherlands.  VP
            Bank maintains with Citco Account Number 190023 in which, as MVP's
20          Custodian Bank, VP Bank holds on behalf of MVP the assets of MVP.  All
            of MVP's investments in the Ark Discovery Fund alleged herein are held,
21          and have been held at all times since they were purchased, for the benefit
            of MVP in VP Bank's Account Number 190023 with Citco.  Pursuant to its
22          power of attorney for MVP, MVPAM caused MVP to make the
            investments in the Ark Discovery Fund alleged herein through MVP's
23          custodian, Citco.

24   (FAC, ¶ 51.)  This set of allegations established that all of the relevant participants to the

25   transaction were foreign:  MVP, a foreign hedge fund, used a foreign bank (VP Bank), and that

26   foreign bank's account with a foreign custodian (Citco Global), to make the purchase of an

27   offshore hedge fund, Ark Discovery (Offshore).  These allegations remain unchanged in the FAC.

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

-6-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

Previously, Plaintiff also alleged as follows with respect to the mechanics of the purchase:

> On or about April 1, 2008, Plaintiff caused MVP, through Citco, to purchase 10,000 shares of the Ark Discovery Fun (Offshore) Ltd. for $1 million. MVP's purchase was consummated when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York which, in turn, completed the purchase by wiring the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. Plaintiff is informed and believes, and thereupon alleges, that the $1 million purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

(FAC, ¶ 51.)

As noted by Moving Defendants in each of their four prior motions to dismiss, this allegation omitted mention of the relevant offering and subscription documents. In the amended allegations, Plaintiff finally discloses one of them, albeit incompletely and inaccurately. As amended, the allegation now reads as follow:

> On or about **March 26,** 2008, Plaintiff caused MVP, through Citco, to **enter into a subscription for the** purchase of 10,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $1 **million with a value date of April 1, 2008. The Subscription Agreement for the** purchase **of these shares instructed MVP to wire the purchase funds to the Ark Discovery Fund's New York bank account. MVP complied with Ark Discovery Fund's instructions and** consummated **its subscription** when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York, which, in turn, **wired,** the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. **The Subscription Agreement provides that upon the wiring of MVP's purchase funds, "[t]his subscription is irrevocable by the Investor . . ." and, therefore, when MVP wired its purchase funds to Ark Discovery Fund's New York bank account MVP incurred irrevocable liability within the United States to take and pay for the Ark Discovery Fund shares.** Plaintiff is informed and believes, and thereupon alleges, that the $1 million purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

(FAC, ¶ 51, bold emphasis added to show amendments.) Identical changes were made to Paragraphs 59 and 71 with respect to the two subsequent purchases.

Plaintiff thus discloses that a Subscription Agreement governed Citco Global's purchases, but does *not* allege that Citco's execution of this document took place in the United States, or that

-7-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   it was accepted by Ark Discovery (Offshore) in the United States.  These facts alone suffice to

2   support the dismissal of the action, as further discussed below.  Further, given Plaintiff's

3   quotation from Subscription Agreement and the allegation that MVP "complied" with it, the

4   Subscription Agreement may be considered directly by the Court on this motion.  That

5   agreement, discussed in the next section, confirms that the flow of purchase money is not relevant

6   to where an irrevocable liability was incurred in this case, and that the flow of funds ended in

7   Bermuda in any event.  It confirms, in other words, that the transactions are not domestic.

8           **2.       The Subscription Agreement**

9           Despite quoting directly from the Subscription Agreement, Plaintiff fails to attach a copy.

10  The reason for this omission is clear given its content.  An executed copy of the Subscription

11  Agreement is attached to the Request for Judicial Notice as Exhibit A.  It is part of a 12-page fax

12  from Citco to Beacon Management, Ark Discovery (Offshore)'s administrator in Bermuda.  The

13  first page is Citco's purchase order.  Through this document, Citco requested a subscription for

14  $1 million as of April 1, 2008, in Ark Discovery Fund (Offshore).  (RJN, Ex. A, at 1.)  Citco

15  requested registration of the shares in its name, with a registered address in the Netherlands and

16  mailing address in Ireland.  *Id.*  The header on the fax is directed to a number in Bermuda (441

17  country code), and Citco asks that the subscription be confirmed to a fax number in Ireland (353

18  country code).  Nothing in this series of facts remotely suggests a domestic transaction.

19          The executed Subscription Agreement follows the purchase order.  As the pagination

20  reflects, the Subscription Agreement is taken from a larger Offering Memorandum.  It is

21  "Appendix A" and located at pages 38-47 within the Offering Memorandum.  (*Id.*, at pages 3-12

22  of the facsimile).[2]  In pertinent part, the Subscription Agreement provides that Citco Global is the

23  _____

24  [2]        The complete Offering Memorandum may be found as Exhibit B to the RJN.  As the
    Subscription Agreement quoted by Plaintiff is a constituent part of this larger document, the

25  Court may consider it as well on this motion, although it need not do so to dismiss the claims.
    The Offering Memorandum contains extensive warnings and risk factors – including specifically

26  the risk of loss from fraud – yet not one of these warnings is mentioned by Plaintiff in the FAC.
    (RJN, Ex. B, at 19, 24, 21-28.)  It also provides that the investment was only being made

27  available to non-US professional investors.  (*Id.* at 3, 13-14.)  A "U.S. Person" was defined
    expansively to include all manner of nature and corporate persons resident in, or organized under,

28  the laws of the United States."  (*Id.* at 14.)  MVP, Citco, and VP Bank are all non-US persons.

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    "Investor," and that the completed Subscription Agreement is to be sent to Beacon Management

2    in Bermuda, attention Martin Zolnai.  (*Id.*, at 38-39.)

3         Contrary to Plaintiff's allegations, the Subscription Agreement does *not* provide that the

4    obligation to purchase becomes irrevocable upon the wiring of purchase funds to New York.

5    Instead, the binding nature of the agreement is reflected in several paragraphs, as follows:

6         The undersigned hereinafter referred to as the "Investor" hereby subscribes
          in accordance with the terms of the Offering Memorandum and this
7         Subscription Agreement for 1,000,000 US Dollar [Class A USD] Shares
          . . . of ARK DISCOVRY FUND (OFFSHORE) LIMITED (the "Fund") at
8         the Net Asset Value per share at the 1st of the day of April 2008.  Payment
          of the total purchase price in the amount of USD 1,000,000 is enclosed
9         herewith/has been wired to the Fund's Custodian in accordance with the
          above wire instructions.  This subscription agreement is irrevocable by the
10        Investor except under the terms of the Offering Memorandum Amended
          and Restated 14 November 2006 and may be accepted if, as and when
11        received.  The Fund reserves the right to reject without cause all
          subscriptions up to the time the shares are issued.
12

13   (RJN, Ex. A, at 38.)[3]  This provision does not, as incorrectly alleged by Plaintiff, provide that the

14   obligation to purchase became irrevocable upon the wiring of purchase funds to New York.

15        Nor does any other provision so provide.  For example, Citco's execution of the

16   Subscription Agreement appears on page 39.  By its signature, Citco agreed as follows:

17        2.      The Investor(s) agree that the Investor may not cancel, terminate or
          revoke this Subscription Agreement or any agreement of the Investor(s)
18        made hereunder and that this Subscription Agreement shall survive the
          death or disability of the Investor(s) and shall be binding upon the
19        Investor(s)'s heirs, executors, administrators, successors, and permitted
          assigns.
20

21        3.      This Subscription Agreement has been duly and validly authorized,
          executed and delivered by the Investor(s), and, *upon acceptance by the
22        Fund, will constitute the valid, binding and enforceable agreement of the
          Investor(s).*

23        4.      This Subscription Agreement and the documents referred to herein
          constitute the entire agreement between the parties hereto with respect to
24        the subject matter hereof.

25   The Offering Memorandum further confirms that a purchase of shares could only be made
26   through a Subscription Agreement.

27   [3]     The reference to the November 2006 Offering Memorandum is a typographical error, as
     the Offering Memorandum in which this Subscription Agreement is contained is the February
28   2008 version for Ark Discovery Fund (Offshore).

-9-

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1  (*Id.*, 46, emphasis added.)  It is the Subscription Agreement itself, therefore, its execution by the

2  Investor and acceptance by the Fund, that creates the enforceable obligation to purchase.  The

3  payment is merely one part of a larger process and set of promises established by the Subscription

4  Agreement

5          The Subscription Agreement also contains provisions specifying that the *only* offering

6  documents are the offering materials themselves, and that the Investor is entitled to rely only

7  upon those offering materials in making the decision to invest:

8          By signing the attached subscription form, the Investor(s) represent and
        agree to the following:

9

10          1. . . . No oral representation made or oral information furnished to the
        Investor in connection with the purchase of the Shares were in any way
        inconsistent with the Offering Memorandum.  The Investor(s) has received

11          no offering material except the Offering Memorandum, which may be
        amended.  The Investor acknowledges that no person has given, or is

12          authorized to give, any information or make any representation not
        contained in the Offering Memorandum and any information or

13          representation not contained therein must not be relied upon as having been
        authorized by the Fund.

14

15          . . .

16          13.      There have been no representations, guarantees or warranties made
        to the Investor by the Fund or its agents or employees, or by any other

17          person, expressly or by implication, with respect to (i) the appropriate
        length of time the Investor will be required to remain an owner of the

18          Shares; (ii) the percentage of profit and/or amount of or type of
        consideration, profit or loss to be realized, if any, as a result of the

19          Investor's investment, or (iii) the possibility that past performance or
        experience on the part of the Fund or any affiliate, partner, salesman,

20          associate, agent or employee of any other person might in any way indicate
        the predictable results of the ownership of Shares.

21  (*Id.*, at 40, 42.)  Despite this express agreement by Citco, none of Plaintiff's allegations is based

22  upon the actual offering materials, fatally undercutting the entire case.

23          Finally, and with respect to Plaintiff's oft-repeated allegation that the transaction is a

24  domestic one because purchase funds flowed through a New York intermediary bank, the

25  Subscription Agreement also includes detailed instructions on where the payment funds should be

26  transmitted.  (Id., at 39:  "WIRE INSTUCTIONS ARE SET OUT AT THE END OF THE

27  SUBSCRIPTION AGREEMENT.")  Those wire instructions provide as follows:

28

-10-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

**For monies sent from outside of Bermuda:**

Chase Manhattan Bank N.A.[4]
Building F Floor 8
4 Chase Metrotech Center
New York, NY 11245
Swift:  CHAS US 33

**For Credit**

Butterfield Trust (Bermuda) Limited
Bermuda
Account Number: 0011067808

**For Further Credit**

Ark Discovery Fund (Offshore) Limited
Account Number: 1370001
Bermuda

(*Id.*, at 47.)

Notably, Plaintiff's allegations neglect steps 2 and 3 of the wire instructions, which plainly provide that the destination account is Ark Discovery (Offshore)'s account in Bermuda. The instructions, in fact, describe a standard correspondent banking relationship.  Correspondent banking is a fundamental part of the international monetary system.  US Dollar transactions usually flow through the United States – however, not all banks have United States branches. (See RJN, Ex. L, at 288.)  For this reason, a foreign bank will establish a correspondent relationship with a United States bank.  The account at the United States bank is that of the foreign bank, not that of the foreign bank's clients.

By way of explanatory background on this relationship, correspondent banking was described as follows in a Senate Hearing concerning mitigating the potential for money laundering through the correspondent bank system:

> Correspondent banking is the means by which one bank, the correspondent bank, provides financial services to another bank, often referred to as the respondent bank.  Typically, the respondent bank has no physical presence in the jurisdiction in which it maintains a correspondent account.  Correspondent banking thus enables the respondent bank to provide services to its customers

---

[4]     JPMorgan Chase, the bank referenced in the pleadings, was previously known as Chase Manhattan.

-11-

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1

2

> that otherwise would be unavailable because of geographic
> limitations.

3

4

5

6

7

> Correspondent banking is an integral part of the domestic and
> international banking system.  Without correspondent banking, in
> fact, it would often be impossible for banks to provide
> comprehensive nationwide and international banking services –
> among them, the vital capacity to transfer money by wire with
> amazing speed and accuracy across international boundaries.  U.S.
> Banks maintain thousands of correspondent relationships, through
> which billions of dollars move every day.

8

9

(Senate Hearing 107-84, Role of U.S. Correspondent Banking in International Money

Laundering, March 1, 2001, RJN, Ex. L, at 1-2; *see also* 287-89.)

10

11

12

13

14

15

16

17

The wire instructions in the Subscription Agreement therefore describe the following

banking relationship:  Chase Manhattan is the correspondent or intermediary bank.  Bank of

Butterfield is the respondent or beneficiary bank.  Butterfield maintains a correspondent account

with Chase Manhattan, account number is 0011067808.  Ark Discovery (Offshore), in turn, has

an account at Butterfield in Bermuda, account number 1370001.[5]  There is no reasonable

inference to be drawn from the wire instructions, therefore, that Ark Discovery (Offshore) has an

account at the New York bank, or that Ark Discovery (Offshore)'s funds were not credited to its

account with the Bank of Butterfield in Bermuda as the instructions provide.

18

19

20

21

22

Despite quoting directly from the Subscription Agreement and thereby evidencing access

to it, and despite the fact that Plaintiff's sole basis for claiming a United States connection is the

intermediate role of the New York bank, Plaintiff provides *no* explanation for its failure to

disclose that the final destination of the funds was in Ark Discovery (Offshore)'s account in

23

24

25

26

27

28

---

[5]     The Court is also requested to take judicial notice of the Bank of Butterfield's publicly
available wire instructions, attached as Exhibit M to the Request for Judicial Notice, and available
at www.bm.butterfieldgroup.com/Personal/Everyday_Banking/Int_Mon_Tf_Instr/incoming.htm .
For US Dollar transactions, Bank of Butterfield instructs that the money be wired to JP Morgan
Chase Bank, Building F Floor 8, 4 Chase Metrotech Center, New York, New York, 11245, Swift
CHAS US 33, Account Number 001106708.  These *generic* instructions match those from the
2008 Subscription Agreement, further confirming that the account at Chase is the Bank of
Butterfield's and not that of Ark Discovery (Offshore).  Plaintiff has no good faith basis to
suggest to the contrary to this Court.

-12-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1  Bermuda, nor does it explain its failure to disclose to the Court in this pleading or in any of its

2  prior submissions, that the full wire instructions that make this plain.

3  **III.**
   **ARGUMENT**

4

5  A.  **Plaintiff Has Failed To State A Claim For Federal Securities Fraud.**

6  Plaintiff's first cause of action is based on an alleged violation of Section 10(b) of the

7  Securities Exchange Act of 1934 ("Exchange Act") and Rule 10(b)(5) promulgated thereunder.

8  The second cause of action alleges that "by virtue of their positions as control persons," the

9  defendants are jointly liable for securities law violations under Section 20(a) of the Act.  Plaintiff

10 fails to state a claim under both provisions.

11 When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual

12 allegations as true, and must construe them and draw all reasonable inferences from them in favor

13 of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).  It

14 need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in

15 the form of factual allegations.  *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981);

16 *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Moreover, in order to survive

17 a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a

18 claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

19 (2007).  A claim has facial plausibility "when the plaintiff pleads *factual content* that allows the

20 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

21 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  This standard requires more than

22 "a sheer possibility that the defendant has acted unlawfully."  *Id.*; *see also Moss v. U.S. Secret*

23 *Serv.,* 572 F.3d 962, 967-970 (9th Cir. 2009) (reviewing *Iqbal* pleading standard); *Sprewell v.*

24 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts are not required to make

25 "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion

26 to dismiss).  Dismissal is proper where there is either a "lack of a cognizable legal theory or the

27

28

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

-13-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1  absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

2  *Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

3        Here, Plaintiff has quoted from the Subscription Agreement but failed to attach it.  As

4  further discussed in the Request for Judicial Notice, the court may properly consider exhibits

5  submitted with the complaint, documents such as the Subscription Agreement whose contents are

6  alleged or relied on in the complaint, and matters otherwise subject to judicial notice.  *Lee v. City*

7  *of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001); *Van Buskirk v. Cable News Network,*

8  *Inc.,* 284 F.3d 977, 980 (9th Cir. 2002).  Consideration of these matters does not convert a motion

9  to dismiss into a motion for summary judgment.  *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500,

10  504 (9th Cir. 1986).  Further, the court is not required to accept as true and may disregard

11  allegations that are contradicted by such matters.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d

12  992, 998 (9th Cir. 2010); *Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

13        **1.    As Already Held By This Court, Foreign Securities Transactions Are Not**
          **Subject to Section 10(b).**

14

15        The Court analyzed the requirements to establish a domestic transaction in its most recent

16  Order dismissing the Third Amended Complaint.  As set forth in that Order, "[t]o state a claim

17  under § 10(b) . . . , a plaintiff must show that the securities transaction at issue was a securities

18  transaction that is covered by the Exchange Act."  (Order, at 9, quoting *Cascade Fund, LLP v.*

19  *Absolute Capital Mgmt. Holdings Ltd.*, 2011 WL 1211511, at *3 (D. Colo. Mar. 31, 2011)).

20  "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in

21  connection with the purchase or sale of a security listed on an American stock exchange, and the

22  purchase or sale of any other security in the United States." (Order, at 10, quoting *Morrison v.*

23  *Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2888 (2010).)  "[T]he focus of the Exchange Act is

24  not upon the place where the deception originated, but upon purchases and sales of securities in

25  the United States."  (Order, at 10, quoting *Morrison,* 130 S.Ct. at 2884.)

26        In applying *Morrison* and ruling on Moving Defendants' prior Motion to Dismiss, this

27  Court adopted the test developed by the Second Circuit in *Absolute Activist Value Master Fund*

28

-14-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    *Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012), to determine whether a particular transaction

2    occurred in the United States.  Under that test, the plaintiff must allege facts leading to the

3    plausible inference that the parties incurred irrevocable liability within the United States to take

4    and pay for a security, or that the seller incurred irrevocable liability within the United States to

5    deliver a security.  (Order, at 10, quoting *Absolute Activist*, 677 F.3d at 68.)  In addition, this

6    Court followed the Second Circuit's holding that allegations that title was transferred within the

7    United States also suffice to establish a domestic transaction.  *Id.*  Plaintiff's previous allegations

8    failed to establish a domestic transaction under these tests.  The only alleged United States

9    connection – that funds were transferred between New York-based banking institutions – was

10    "insufficient to establish the existence of a domestic transaction."  (Order, at 12, citing *Cascade

11    Fund, LLP*, 2011 WL 1211511, at *3.)

12        Plaintiff's amended pleading does not remedy this defect; to the contrary, it cements it as

13    fatal to the action.  Indeed, Plaintiff's reliance on the mere fact of payment under the contract

14    evinces a fundamental misunderstanding of the concept of irrevocable liability.  As explained by

15    the Second Circuit in *Absolute Activist*, answering the question of where irrevocable liability is

16    incurred requires nothing more than an examination of the formation of the parties' binding

17    contractual obligation:

18           Our decision in *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d
          Cir. 1972), also lends support to the notion that a securities transaction

19           occurs when the parties incur irrevocable liability.  In that case, we held
          that in the context of a civil trial brought pursuant to Rule 10b-5, the

20           district court correctly instructed the jury that "the time of a 'purchase or
          sale' of securities within the meaning of Rule 10b-5 is to be determined as

21           the time when the parties to the transaction are committed to one another."
          *Id.* at 891.  "'Commitment' is a simple and direct way of designating the

22           point at which, in the classic contractual sense, there was a meeting of the
          minds of the parties; it marks the point at which the parties obligated

23           themselves to perform what they had agreed to perform even of the formal
          performance of their agreement is to be after a lapse in time."  *Id.*

24

25           Given that the point at which the parties became irrevocably bound is used
          to determining the timing of the purchase and sale, we similarly hold that

26           the point of irrevocable liability can be used to determine the locus of a
          securities purchase or sale.

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

-15-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   *Absolute Activist*, 677 F.3d at 67-68; *see also id.* at 67 (" . . . the act of purchasing or selling a

2   securities is the act of entering into a binding contract to purchase or sell securities."); 

3   Restatement (Second) of Conflict of Laws § 188 (for purposes of choice of law analysis, "the

4   place of contracting is the place where occurred the last act necessary, under the forum's rules of

5   offer and acceptance, to give the contract binding effect, assuming, hypothetically, that the local

6   law of the state where the act occurred rendered the contract binding.").

7        The question for purposes of this motion, therefore, is not through where the purchase

8   money flowed, but instead (1) whether the Subscription Agreement provides for irrevocable

9   liability, and, if so, (2) where was that irrevocable liability incurred?

10        **a.**      **The Subscription Agreement Imposed Irrevocable Liability on Citco**

11                  **Global, as the Alleged Agent for MVP.**

12        As a starting point, Plaintiff's assertion in the complaint that the payment in New York

13   imposed an irrevocable liability conflates a mere condition precedent to the contract (payment of

14   purchase funds) with the actual binding obligation imposed on Citco Global and Ark Discovery

15   (Offshore) by the contract (*i.e.,* purchase of the shares).  These are distinct concepts, and nothing

16   in the Subscription Agreement provides that merely by paying the funds, Citco Global became

17   irrevocably bound to purchase the shares.

18        To the contrary, the Subscription Agreement provides as follows with respect to the

19   purchase funds:  "Payment of the total purchase price in the amount of USD 1,000,000 is

20   enclosed herewith/has been wired to the Fund's Custodian in accordance with the above wire

21   instructions."  (RJN, Ex. A at 38.)  In executing the Subscription Agreement, therefore, Citco

22   Global was representing that payment was concurrently being made with, or had been made prior

23   to, the submission of the agreement.  (*See also id.*, at 44, certifying truth of representation and

24   warranties in the Subscription Agreement.)  The fact of payment, in other words, was a

25   representation made part of the contract, but was not the contractual obligation itself.

26        Rather, the terms of the purchase, and Citco Global and Ark Discovery (Offshore)'s

27   respective rights and obligations with respect to it, are governed by the Subscription Agreement.

28

-16-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    (*See id.*, at 46, ¶ 4 "This Subscription Agreement and the documents referred to herein constitute

2    the entire agreement between the parties hereto with respect to the subject matter hereof.").

3    Those obligations extend beyond payment of funds.  (*E.g., id.*, at 43, containing representations

4    concerning the Investor being a "Professional Investor" and with respect to "Compliance with

5    Money Laundering" regulations).

6         Moreover, the Subscription Agreement contains express provisions concerning its binding

7    nature.  Those provisions do not provide that it becomes irrevocable upon payment of funds to

8    New York, and Plaintiff's contrary allegations may therefore be disregarded.  *Daniels-Hall*, 629

9    F.3d at 998; *Steckman,*, 143 F.3d at 1295-96.  Instead, the Subscription Agreement provides that

10   it is irrevocable, at the earliest, upon Citco Global's execution and submission of it to the Fund.

11   (RJN, Ex. A, at 38 ("The undersigned hereinafter referred to as the "Investor" hereby subscribes .

12   . . ."), 38 ("The subscription is irrevocable by the Investor except under the terms of the [Offering

13   Memorandum] and may be accepted if, as and when received."); 46 ("The Investor(s) agree that

14   the Investor may not cancel, terminate or revoke this Subscription Agreement or any agreement

15   of the Investor(s) made hereunder . . . .")  As discussed above, the payment by the time of the

16   submission of the agreement should have already been made, *id.* at 38, and it is the submission of

17   the Subscription Agreement that renders the obligation binding.

18        Alternatively, and indulging all inferences in favor of the Plaintiff, the agreement became

19   irrevocable once the Subscription Agreement was accepted by the Fund, as only then would there

20   be an offer *and* acceptance.  *Id.*, at 46 ("This Subscription Agreement has been duly and validly

21   authorized, executed and delivered by the Investor(s), and, *upon acceptance by the Fund*, will

22   constitute the valid, binding and enforceable agreement of the Investor(s).") (emphasis added); 38

23   ("The Fund reserves the right to reject without cause all subscriptions up to the time the shares are

24   issued.").  Again, reference is to the Subscription Agreement, and not to the payment of the funds.

25        Accordingly, the obligation to purchase is irrevocable from the perspective of the potential

26   investor, here Citco Global, at the earliest, upon its submission of the Subscription Agreement to

27   Beacon, and at the latest, upon the acceptance of the agreement by the Fund and the issuance of

28

-17-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1  the shares.  Nothing in the Subscription Agreement, however, speaks merely to the payment of

2  the purchase funds, or their receipt, as the triggering point for irrevocable liability.  The

3  remaining question, therefore, is where this irrevocable liability was incurred.

4          b.      **Plaintiff's Allegations And The Subscription Agreement Confirm That
               The Irrevocable Liability Was Not Incurred Within the United States.**

5

6          Plaintiff's amended allegations demonstrate that the irrevocable liability embodied in the

7  Subscription Agreement was incurred outside of the United States.

8          *First*, all parties to the Subscription Agreement reside outside of the United States.  (FAC,

9  ¶¶ 23, 51, 59, 71; *see also* Subscription Agreement, Ex. A at p. 38-39.)

10         *Second*, it is Plaintiff's burden to plead a domestic transaction.  Plaintiff, however, does

11 *not* allege (and could not allege) that Citco's execution of the agreement or Ark Discovery Fund

12 (Offshore)'s acceptance of it took place within the United States.  (FAC, ¶¶ 23, 51, 59, 71;

13 Subscription Agreement, Ex. A.)  *See In re Vivendi Universal, S.A. Securities Litig.*, __ F.R.D.

14 __, 2012 WL 2829556, at *5 (S.D.N.Y. July 5, 2012) (" . . . irrevocable liability occurs when (and

15 where) there is a binding contract for the purchase or sale of a security. . . .  There has been no

16 evidence presented, or even allegations made, that the Merger Agreement among Vivendi,

17 Seagrams, and Canal Plus – French and Canadian companies – was executed in the United

18 States.")

19         *Third*, the shares were issued outside of the United States, and title to the shares did not

20 pass within the United States.  (FAC, ¶ 51, 59, 71 ("All of MVP's investments in the Ark

21 Discovery Fund alleged herein are held, and have been held at all times since they were

22 purchased, for the benefit of MVP in VP Bank's Account Number 190023 with Citco."); *see also*

23 Subscription Agreement, Ex. A).

24         *Fourth,* as discussed above, given the fact that an express written contract governs the

25 parties' transactions, the fact that funds were transferred through New York banks is irrelevant to

26 the location where irrevocable liability was incurred.  Indeed, the District of Colorado in the

27

28

-18-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   *Cascade* case previously cited by this Court in its July 12 Order rejected the very argument now

2   advanced by Plaintiff:

3
> That leaves the final fact urged by Cascade: that the funds to
> complete the transaction were wired (at least initially) to New York.
> This assertion does not amount to a conclusion that the transaction
> was completed in New York; rather, it simply describes one step by
> Cascade to comply with ACM's designated process for applying to
> invest in the funds. The Subscription Agreement makes clear that
> simply sending money to New York was not sufficient to complete
> the transaction.  ACM reserved the right to reject a request to invest
> for any reason, even if the purchase money had properly been wired
> to New York.  Thus, the transaction was not completed until ACM
> finally accepted an application—presumably in its Cayman Islands
> offices.  Under these circumstances, the Court cannot say that the
> facts alleged by Cascade indicate that the transaction occurred in
> the United States.  Accordingly, Cascade has failed to allege facts
> showing that a § 10(b) claim is cognizable here, and ACM is
> entitled to dismissal of the claim against it.

12   *Cascade Fund*, 2011 WL 1211511, at *8.

13       *Sixth* and finally, even if considered relevant to the place of contracting, Plaintiff's

14   allegation concerning the flow of purchase money is, charitably, incomplete.[6]  The Subscription

15   Agreement's wire instructions do not stop with the New York intermediary bank.  In fact, the

16   only account information provided for Ark Discovery (Offshore) is with respect to its account at

17   the Bank of Butterfield in Bermuda, and it is that account that was the final destination for the

18   money.  (RJN, Ex. A, at 47.)  Plaintiff does not (and could not) allege that the wire instructions

19   were not followed by Citco Global.[7]  In fact, per Plaintiff, it "complied" with the instructions.

---

[6]     While Plaintiff alleges that the purchase funds stayed in the United States, this allegation is pure speculation, and need not be accepted as true under the *Iqbal* standard of plausibility, particularly in light of the express wire instructions denoting a destination account in Bermuda and Plaintiff's allegations that it "complied" with those instructions.  *See Iqbal*, 556 U.S. at 678 (complaint must state claim that is "plausible on its face," that crosses line from merely the "conceivable to plausible").

[7]     This was an international wire transfer, and subject to detailed federal regulations enacted not only to ensure the protection of funds and the integrity of the financial system, but also to root out criminal activity, such as money-laundering.  *E.g.*, 12 C.F.R. § 210.25 ("Regulation J"); 12 U.S.C. § 1951 (Bank Secrecy Act).  In order to comply with these laws and regulations, and in order even to be processed, any wire transfer from Citco Global would have had to have been accompanied by detailed instructions setting forth such information as the relevant account numbers, ultimate beneficiaries, and destination banks.  The Subscription Agreement provides this detail.

-19-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   (FAC, ¶¶ 51, 59, 71.)  If any locale along the path the money traveled is relevant to this issue,

2   therefore, it is Bermuda, where the beneficiary bank was located, and not New York.  That the

3   Bank of Butterfield had a correspondent account with a New York bank is irrelevant to this

4   analysis.  *See also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d

5   Cir. 2009) (beneficiary has no property interest in an electronic funds transfer until transfer is

6   completed by acceptance by the beneficiary's bank; electronic fund transfers "are neither the

7   property of the originator nor the beneficiary while briefly in the possession of an intermediary

8   bank"); *id.* at 60, n.1 (reviewing electronic fund transfers, the role of originating, intermediary,

9   and beneficiary banks, and explaining that the transfer is not complete until the beneficiary bank

10  (here, Bank of Butterfield) credits the account of its client (here, Ark Discovery (Offshore)).

11         Plaintiff was required to have, but did not, allege the facts necessary to establish that an

12  irrevocable liability was entered into in the United States.  Plaintiff also does not allege that title

13  to these shares was transferred within the United States.[8]  Indeed, given the full wire instructions

14  as set forth in the wire instructions, Plaintiff lacks a good faith basis to contend that these

15  transactions took place in the United States.  This should come as no surprise:  MVP's investment

16  structure was carefully designed by it to *avoid* the United States altogether.  MVP's alleged

17  purchases of Ark Discovery (Offshore) thus lie outside of the reach of Section 10(b) under

18  *Morrison*, and the Section 10(b) claim must be dismissed.  *See Horvath v. Banco Comercial*

19  *Portugues, S.A.*, 2011 WL 666410, *2-3 (S.D.N.Y Feb. 15, 2011) (federal securities law claims

20  barred by *Morrison* where US-based plaintiff had deposited funds with Portuguese bank for

21  investment in Luxemburg bank that was in turn to use proceeds to invest in German bank).

22

23  [8]      Plaintiff alleges that the shares "have been held at all times since they were purchased" in
24  the offshore account at Citco Global.  (*See* FAC, ¶ 51:14-16.)  Citco is not alleged to be located in
    the United States.  Further, under British Virgin Islands law, shares of British Virgin Island
25  companies are also considered to be held in the British Virgin Islands for jurisdictional purposes,
    further supporting the offshore situs for this transaction.  Section 245, Business Companies Act,
26  British Virgin Islands, RJN, Ex. K. ("For purposes of determining matters relating to title and
    jurisdiction but not for purposes of taxation, the situs of the ownership of shares … of a company
27  is the Virgin Islands.").  These facts as well support the conclusion that this was an offshore
    transaction.

28

-20-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1

2

**2.      Plaintiff Has Failed To Adequately Plead A Claim For Control Person Liability Under Section 20(a).**

3

4

5

6

7

For the reasons set forth above, Plaintiff has failed to properly plead a Section 10(b) claim against any Moving Defendant.  A Section 20(b) claim may be dismissed summarily if a plaintiff fails to establish a primary violation of Section 10(b).  (July 12, 2012 Order, at 12, citing *In re Societe Generale Sec. Litig.*, 2010 WL 3910286, at *9 (S.D.N.Y. Sept. 29, 2010; *Morrison*, 130 S. Ct. at 2876 n.2); *see also In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993).[9]

8

9

**B.      With The Dismissal Of Federal Securities Law Claims, The Court Should Dismiss The Action In Its Entirety.**

10

11

12

13

14

15

The Court previously found the alleged assignment of claims from MVP to MVPAM was collusive under 28 U.S.C. §1359.  (Order, July 12, 2012, at 13-15.)  The Fourth Amended Complaint contains no new allegations concerning the purported assignment.[10]  Accordingly, for the same reasons set forth in the July 12, 2012 Order, the assignment is collusive, and MVPAM's citizenship cannot be considered for purposes of evaluating diversity jurisdiction.  Rather, that of the assignor, MVP, must be considered.

16

17

18

19

20

21

MVP is alleged to be a British Virgin Islands company.  (FAC, ¶ 3.)  On the defendants' side, both defendants Vestbirk and Ark Royal Asset Management Ltd. are alleged to be Bermuda citizens.  (FAC, ¶¶ 4, 8.)  As a citizen or subject of a foreign state is on both sides of the litigation, the requirement of complete diversity cannot be met.  *Craig v. Atl. Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994), citing *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294-95 (9th Cir. 1989).  Therefore, upon dismissal of the federal claims under *Morrison* (or

22

23

24

25

26

[9]      Plaintiff's indiscriminate inclusion of multiple defendants with no alleged connection to the alleged fraud provides a secondary basis for dismissal of these claims.  Plaintiff alleges no facts in an effort to plead a viable case against the Ark Entities (US) defendants for example.  The mere conclusions alleged by Plaintiff do not show that these Moving Defendants exercised control over either ARAM or Ark Discovery (Offshore) for purposes of establishing control person liability.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1162 (9th Cir. 1996).  For this additional reason, these entity defendants should be dismissed from this claim.

27

28

[10]      In light of the Court's July 12 Order, Moving Defendants reserve their defenses relating to the invalidity of the assignment and Plaintiff's lack of Article III standing for later proceedings, in the event the case is not dismissed in the interim.

-21-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1  on any other basis), federal question subject matter jurisdiction will be lost, and diversity

2  jurisdiction will be absent given the collusive assignment.  28 U.S.C. § 1359.  As such, the Court

3  should decline to exercise supplemental jurisdiction over these state law claims, and dismiss the

4  action.  *See* Order, at 13-14; 28 U.S.C. § 1367(c)(3).

5  **C.    The Federal Claims Should Also Be Dismissed Because Plaintiff's Complaint Fails to
       Comply With the Heightened Pleading Requirements of Rule 9(b) And the PSLRA.**

6

7        The stringent pleading requirements of the Private Securities Litigation Reform Act

8  ("PSLRA") and Rule 9(b) apply to Plaintiff's federal claims.  To state a federal securities fraud

9  claim, a plaintiff must allege five elements:  (1) a material misrepresentation or omission of fact,

10  (2) scienter, (3) in connection with the purchase or sale of a security, (4) transaction and loss

11  causation, and (5) economic loss.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990

12  (9th Cir. 2009); *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 388 (9th Cir.

13  2002).  The PSLRA, 15 U.S.C. § 78u-4, significantly strengthened pleading requirements in

14  private securities litigation for the express purpose of eliminating meritless claims such as those

15  alleged here.  *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 988 (9th Cir. 1999).

16  Congress sought "to put an end to the practice of pleading 'fraud by hindsight.'"  *Id.*  In private

17  securities law claims, plaintiffs must "plead with particularity both falsity and scienter."  *Ronconi*

18  *v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  As to each defendant, the plaintiff must

19  "specify *each* statement alleged to have been misleading, the reason or reasons why the

20  statement is misleading, and, if an allegation regarding the statement or omission is made on

21  information and belief, the complaint shall state with particularity all facts on which that belief is

22  formed." 15 U.S.C. § 78u-4(b) (emphasis added).

23        Further, in addition to the requirements of the PSLRA, traditional Rule 9(b) requirements

24  for pleading fraud remain.  Rule 9(b) provides that in all "averments of fraud or mistake, the

25  circumstances constituting fraud or mistake shall be stated with particularity," that is, "with a

26  high degree of meticulousness."  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir.

27  2000); Fed.R.Civ.P. 9(b).  The allegations must "identify the time, place and content of the

28

-22-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    alleged misrepresentation so that the defendant can identify the statement.  Second, the plaintiff

2    must plead facts explaining why the statement was false when it was made." *Smith v. Allstate*

3    *Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (internal citations omitted).

4         Plaintiff has failed adequately to allege scienter or the purported role of each Moving

5    Defendant in the alleged fraud.  Plaintiff's federal securities claims should therefore be dismissed.

6         **1.      Summary Of Relevant Allegations**

7              **a.      The Investment And The Exposure Of Petters' Ponzi Scheme**

8         MVPAM alleges that MVP's losses arise out of MVP's investments in Ark Discovery

9    (Offshore), an offshore British Virgin Islands hedge fund that is not a named defendant.  (FAC,

10   ¶ 23, 26, 27.)  Plaintiff alleges that Ark Discovery (Offshore) loaned money to its onshore

11   counterpart, Ark Discovery II, LP, also not a named defendant, which in turn, loaned money to its

12   "Client," an entity or entities associated with Tom Petters (collectively, "Petters").  (*Id.*, ¶ 27; *see*

13   *also id.*, ¶ 42, citing to Ark Discovery Overview, reproduced at RJN, Ex. E ("The funds are

14   independent vehicles.  Ark Discovery II, LP originates transactions while Ark Discovery Fund

15   (Offshore) Ltd. provides secured debt financing to Ark Discovery II, LP to enable origination.");

16   "Presentation," *id.*, ¶ 63, reproduced at RJN, Ex. F, at 10, 17 (describing investment platform).)

17        Petters is alleged to have used the loan proceeds to finance purchases by big box retailers

18   of "white goods" (such as consumer electronics and household appliances).  Plaintiff alleges that

19   the retailers were to repay Ark Discovery II, LP, directly for the goods whose purchase they

20   financed through the Petters' entities.  (*Id.*, ¶ 27.)  Petters, however, was running a multi-year,

21   multi-billion dollar Ponzi scheme.  Plaintiff alleges that under the Petters Ponzi Scheme, loans

22   from lenders like Ark Discovery II, LP, were not used to finance legitimate purchases by big box

23   retailers.  (*Id.*, ¶ 28.)  Instead, Petters used the new loans to pay the loans of the previous lenders,

24   thus making it appear that those prior loans had in fact financed real transactions.  (*Id.*)

25        According to Plaintiff, Petters' Ponzi Scheme depended upon lenders accepting payments

26   from his entities, rather than the retailers, and preventing those same lenders from verifying the

27   transactions between the retailers and Petters' entities.  (*Id.*)  As such, Petters arranged for his

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   entities to repay the loans, and prevented lenders from verifying the underlying transactions with

2   suppliers, from accessing warehouses to view the products, and from independently verifying the

3   accounts receivable with the various retailers. (*Id.*)

4        Plaintiff alleges that on September 19, 2008, federal investigators exposed the Petters

5   Ponzi Scheme, and that by October 2008, Ark Discovery Fund (Offshore) was in liquidation,

6   allegedly causing MVP's $2 million investment to lose nearly all of its value. (*Id.*, ¶ 29.) MVP

7   was not alone in these losses. The fraud of Petters and his confederates reached back over a

8   decade and caused billions in losses. In 2009, a federal jury convicted Petters of 20 counts of

9   wire and mail fraud, money laundering and conspiracy. He was sentenced to fifty years in prison

10  and is in bankruptcy.[11] As described in Petters' criminal proceedings, there was an elaborate

11  charade of real companies, shell companies, financing transactions, extensive false

12  documentation, and collusion among multiple Petters' employees and third parties – all designed

13  to create the illusion of legitimacy and allow the Ponzi scheme to continue. Petter's fraud was

14  sophisticated, massive, and perpetrated on over 500 victims, ranging from individual investors to

15  sophisticated hedge funds, victims who included those situated as defendants in this lawsuit.

16        **b.      Named Defendants:  Plaintiff's Indiscriminate Joinder of Defendants.**

17        Plaintiff has not named either Ark Discovery (Offshore) or Ark Discovery II, LP, as

18  defendants. Ark Discovery (Offshore) is in receivership in the British Virgin Islands. (FAC,

19  ¶¶ 29, 84.) Ark Discovery II, LP, is in bankruptcy. Plaintiff has instead named Ark Royal Asset

20  Management Ltd. ("ARAM"), alleged to be a Bermuda company, which acted as the investment

21  manager for Ark Discovery (Offshore).[12] (*Id.*, ¶¶ 8, 30.) Also named as defendants are the

22  alleged managing partners of ARAM, Steven Vestbirk, alleged to be a resident of Bermuda or

23

24

_____

25  [11]     For background and a fuller context, Petters' criminal indictment, and associated verdict

26  and judgment are attached for the Court's reference to the Request for Judicial Notice as Exhibits
    G to I.

27  [12]     Defendant Vestbirk Capital Management is alleged to have been the predecessor to

28  ARAM. (FAC, ¶ 9.) ARAM and Vestbirk Capital Management are referred to as ARAM.

-24-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    England, and Jeff Balliet, alleged to be a resident of Texas.[13]  (*Id.*, ¶¶ 4, 5.)  The FAC alleges no

2    misrepresentations by Balliet, and, as to defendant Vestbirk, alleges only one, supposedly made in

3    a telephone discussion in September 2007, over six months before MVP made its first investment

4    in Ark Discovery (Offshore) and well before the Ark Discovery (Offshore) fund was even

5    launched.  (*See id.*, ¶ 37.)

6         Plaintiff further names a host of individuals and entities without any alleged link to the

7    alleged fraud.  For example, Plaintiff names Allison Hanslik, a resident of Texas, in her alleged

8    capacity as Chief Operating Officer for ARAM, but alleges no facts showing misrepresentations

9    or even involvement by her.  (*Id.*, ¶ 6.)  Plaintiff also names Ark Royal Asset Management, LLC,

10   and Ark Discovery LLC, as allegedly involved in the investment activities of Ark Discovery

11   (Offshore) in the United States, which activities allegedly took place through Ark Royal

12   Holdings, LLC, and its several subsidiaries.  (*Id.*, ¶¶ 11-19.)[14]  The FAC completely fails to

13   include facts showing the purported role of these entities.

14              **c.    The Alleged False Representations and Associated Investments By**
                       **MVP.**
15

16        Plaintiff identifies four general sets of alleged misrepresentations:  (1) A September 24,

17   2007 phone call between Vestbirk and Michael Stratford, principal for MVPAM; (2) a one-page

18   fact sheet sent twice to MVPAM via email, once on February 7, 2008, and again on February 26,

19   2008; (3) a Presentation, emailed to MVPAM on May 8, 2008, and (4) a series of performance

20   reports intermixed through this time period.  Each is summarized below.

21

22

23   ─────────────────────
     [13]    The remaining individual defendant, Jim Granat, of Illinois, is alleged to be part of the
24   ARAM management team and a portfolio manager.  (FAC, ¶ 7.)  Granat is not represented by
     undersigned counsel and is not a moving party.
25
     [14]    These alleged affiliates or subsidiaries are Moving Defendants:  Ark Royal Services, LLC;
26   Ark Royal Capital, LLC; Ark Royal Capital Funding, LLC; Ark Royal Capital Inc; Ark Royal
     Resources, LLC; Ark Royal Assurance, LLC; and Ark Royal Investments, LLC.  All of these
27   entities, as well as Ark Royal Asset Management, LLC, and Ark Discovery LLC, will be referred
     to herein as "Ark Entities (US)."  (FAC, ¶¶ 11-19.)
28
                                          -25-

*September 24, 2007 Phone Call*

Plaintiff alleges a September 24, 2007 conference call between MVPAM's principal, Michael Stratford, Dino Coppola, and Steven Vestbirk.  According to Plaintiff, on this call Vestbirk allegedly discussed a potential future fund, Ark Discovery (Offshore), Vestbirk's experience in this type of investment, the established history of the underlying company (Petters), the expected safety of the investment, and the due diligence to be conducted.  (FAC, ¶ 37(G)).

Only Vestbirk is alleged to have been involved in this call; Moving Defendants Balliet, Hanslik, and the Ark Entity (US) defendants are not alleged to have had any role whatsoever.  (*Id.*, ¶ 37.)  In addition, the connection between this call and any later MVP investment is absent.  Vestbirk and Stratford were allegedly discussing a future, merely contemplated opportunity at the time; the statements were forward looking.  (FAC, ¶ 37(A), [Vestbirk] "explained the Ark Discovery Fund was being set up . . . .")[15]

*Ark Discovery Summary Sheet*

No misrepresentations are alleged to have been made for the next six months.  Plaintiff instead alleges that on an unspecified date sometime between December 2007 and February 2008, Vestbirk called Stratford to request that MVP invest in Ark Discovery (Offshore).  Stratford refused, however, thereby wholly severing the causal link between the alleged September 24, 2007, and any subsequent investment. (FAC, ¶ 37.)

Next, on February 7, 2008, and again on February 26, 2008, Plaintiff alleges that Coppola emailed Stratford a one-page summary describing the Ark Discovery investment.  (FAC, ¶¶ 42, 43.)  Plaintiff quotes extensively from but does not attach this document to the FAC, and it has

---

[15]     Further, these allegations also establish that MVPAM's principal, Michael Stratford, knew at the time of the call, that is, *over six months before* the first alleged investment by MVP, that the Petters Companies were expected to be involved.  (*Id.*, ¶ 37, at 18:17-18.)  Plaintiff, an experienced hedge fund manager, had previously placed MVP in other Petters investments, including the Palm Beach Promissory Fund, well *before* Ark Discovery (Offshore) was even proposed as a potential future investment.  (*See* FAC, ¶ 40 31 (citing to November 7, 2007, email Coppola/Stratford email); *see also* Defendants' Request for Judicial Notice in Support of Motion to Dismiss Original Complaint, Ex. F, filed February 24, 2011, Dkt. No. 21-6) (attaching November 7, 2007 email).  Plaintiff therefore had ample time to conduct whatever due diligence it wished on this contemplated investment.

-26-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   instead been supplied by Moving Defendants as part of the Request for Judicial Notice.  Plaintiff

2   alleges that this Summary includes misstatements concerning the investment's structure, expected

3   due diligence, and the experience of fund management.  (*Id.*, ¶ 42-43; *see* RJN, Ex. E.)

4          Plaintiff also alleges in conclusory fashion that this fact sheet constitutes "group-

5   published" information.  Plaintiff alleges no specific facts showing any particular defendant's

6   supposed direct or even indirect role in the preparation or dissemination of this fact sheet, or that

7   any particular defendant had ultimate authority over the content of the statement or whether it was

8   to be made, however.  Instead, Plaintiff relies solely upon the alleged positions of the individual

9   defendants as "high ranking management" officials to establish the purported link between them

10  and the statements.  Plaintiff alleges nothing at all with respect to the supposed involvement of

11  the Ark Entities (US) in this publication.  (FAC, ¶ 42.)

12         Plaintiff also fails to disclose, but the Court may properly take judicial notice of, the fact

13  that the information sheet included substantial disclaimers and made express reference up at the

14  top of the sheet to a more complete offering memorandum.  (*E.g.*, RJN, Ex. E ("Other terms

15  apply.  Investors should carefully review the Fund Information Memorandum."))  Moreover, the

16  one-page summary sheet concluded with the following express disclaimer:  "*This is neither an*

17  *offer to sell nor a subscription of an offer to purchase* interests in Ark Discovery II, LP or Ark

18  Discovery Fund (Offshore) Limited (the "Funds")."  (*Id.* (emphasis added).)  By its very terms,

19  this one-page sheet is *not* an offer to sell, and Plaintiff alleges no facts establishing to the

20  contrary.

21         *First Two Alleged Investments*

22         Plaintiff alleges the first investment of $1 million in Ark Discovery (Offshore) was made

23  by Citco Global on April 1, 2008, and a second for $500,000 on July 1, 2008.  (FAC, ¶¶ 51, 59.)

24  Plaintiff alleges that the purchases of the investments in Ark Discovery (Offshore) were made by

25  Citco Global, and that "[a]ll of MVP's investments in the Ark Discovery Fund alleged herein are

26  held, and have been held at all times since they were purchased, for the benefit of MVP in VP

27

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   Bank Account Number 190023 with Citco." (*Id.*)  Plaintiff alleges that further performance

2   reports followed the investments.  (*Id.*, ¶ 60-62.)

3          *Ark Discovery Fund Presentation*

4          Plaintiff alleges that soon after the second investment, MVPAM received a presentation

5   entitled "Ark Discovery Fund."  (FAC, ¶ 63.)  This presentation included an express and detailed

6   "Disclaimer" that provided, among other things, that the presentation was not an offer to sell any

7   security, and that no such offer would be made except through the formal offering materials.

8   (RJN, Ex. F, at 1.)  Similarly, it stated that potential investors should "refer to the fund offering

9   memorandum for a full explanation of the risk factors associated with this investment."  (*Id.* at

10   19.)

11          Again, rather than allege specific facts demonstrating that any Moving Defendant made

12   the statements in the Presentation, Plaintiff instead relies upon a conclusory allegation that the

13   document was "group published," and that Moving Defendants should be deemed to have been

14   involved solely by virtue of their alleged positions within Ark Discovery (Offshore) Ltd.  (FAC

15   ¶ 63.)

16          *Remaining Investment*

17          Plaintiff alleges that subsequent to receiving this Presentation, he received two more

18   monthly performance reports.  (FAC, ¶¶ 69, 70.)  Plaintiff alleges that he directed the final

19   $500,000 investment to be made by MVP on August 1, 2008, again by Citco Global.  (*Id.*, ¶ 71.)

20   Plaintiff alleges several more performance reports follow between August 5 and September 22.

21   (*Id.*, ¶¶ 72-79, 82.)

22                  **d.      Plaintiff's Allegations Concerning Defendants' Alleged Knowledge Of
                            The Falsity Of The Alleged Misrepresentations.**
23

24          There are no allegations of fact demonstrating any actual knowledge by any Moving

25   Defendant of the ongoing Petters Ponzi Scheme before it was exposed in September 2008.

26   Plaintiff's contention, therefore, is that Moving Defendants should have known that Petters was

27   engaged in a massive fraud.  Plaintiff, however, has not alleged any specific facts plausibly

28
                                                    -28-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
                        AMENDED COMPLAINT PURSUANT TO RULE 12(B)
                        Case No. 210-CV-02483-GEB-CMK

1  demonstrating that any Moving Defendant knew of, or was acting in reckless disregard of, the

2  Petters' fraud.

3          **(1)     Knowledge Purportedly Gained From Steven Vestbirk's**
              **Background At Arrowhead.**

4

5          Plaintiff speculates that Vestbirk gained "direct or indirect" experience with Petters loan

6  transactions because he was a director of the Arrowhead hedge fund "during at least the first six

7  months of 2003." (FAC, ¶ 32.)  Plaintiff alleges that in December 2008, he spoke with Dino

8  Coppolla, who allegedly had been associated with ARAM, and Coppola told Plaintiff of

9  Vestbirk's alleged prior position with Arrowhead, and that Vestbirk allegedly "boasted" of his

10 connection to Petters and knowledge of the Petters trade.  (*Id.*)  Plaintiff alleges no facts that

11 support the inference that Vestbirk gained knowledge of any potential wrongdoing by reason of

12 this alleged short involvement with Arrowhead five years before Plaintiff's alleged investments.

13         Next, and in lieu of actual facts showing wrongdoing by any Moving Defendant, Plaintiff

14 includes allegations regarding unrelated criminal proceedings against two non-parties, with no

15 showing of any connection between these non-parties and any Moving Defendant.  (FAC, ¶ 32.

16 Plaintiff speculates that Vestbirk somehow supposedly knew that of the wrongdoing by these two

17 individuals at Arrowhead, and that Vestbirk also supposedly "shared his knowledge of the Petters

18 trade, acquired as a result of his association with Arrowhead" with Moving Defendants Balliet

19 and Hanslik.  (*Id.*)  While Plaintiff seeks to tar Vestbirk through remote association, it is more

20 telling, given these other prosecutions, that *no* criminal action is alleged to have been initiated

21 against Vestbirk in connection with Arrowhead.  Further, no facts are alleged to support these

22 conclusory allegations of Vestbirk's supposedly imputed knowledge, or of the supposed

23 communication of this imputed knowledge from Vestbirk to Balliet or Hanslik.  The speculation

24 is instead solely based on "information and belief," without the required supporting specific

25 factual allegations required under the Private Securities Litigation Reform Act ("PSLRA").

26

27

28

DLA Piper LLP (US)
Sacramento

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

(2)     **Prior Investment Experience With Ark Diversified Fund And Ark Royal Fund.**

Plaintiff next alleges that by reason of an alleged association with the separate Ark Diversified and Ark Royal Funds, Vestbirk, Balliet, and Hanslik allegedly gained knowledge that Petters-supervised transactions were not repaid by retailers, and that Petters never allowed lenders to verify transactions with the suppliers, the existence of the goods at warehouses, or the existence of accounts receivable directly with the retailers.  (FAC, ¶ 33.)  No facts whatsoever are alleged concerning the nature of the investments made by these other funds, how they were structured, what their level of involvement in Petters transactions was supposed to have been, whether their involvement was the same as Ark Discovery (Offshore) or Ark Discovery II, LP's is alleged to have been, or what specific red-flags were known to these defendants as a result of their alleged association with these prior investment funds.  (*Id.*)

(3)     **Information Allegedly Obtained From Jim Granat**

Plaintiff alleges that defendant Jim Granat (who is not a moving party and who has not appeared in this action), was an officer with an investment company known as Edge One Capital LLC.[16]  Plaintiff alleges that Granat officially joined ARAM in March 2008, but was purportedly acting as a member of Senior Management and a Portfolio Manager for Ark Discovery (plaintiff does not specify which entity – Ark Discovery (Offshore) or Ark Discovery II, LP) as early as September 2007.  (FAC, ¶ 36.)  As Plaintiff notes in the very next paragraph, however, Ark Discovery was only a contemplated fund in September 2007.  (*Id.*, ¶ 37(A) (Vestbirk allegedly explains on September 24, 2007 call that "Ark Discovery Fund was being set up . . . ."))

Plaintiff reviews testimony provided by Granat in the criminal prosecution of Tom Petters.  (*See id.*, ¶ 41.)  According to Plaintiff, Granat supposedly "admitted under oath" that ARAM (1) never spoke with the alleged retailers or suppliers in the Petters transactions; (2) never visited any

---

[16]     A different company, Edge One LLC, was one of the "special purpose vehicles" involved with the Petters' transactions.  (FAC, ¶ 36.)  Although the names are similar, Granat's Edge One Capital, which allegedly became Ark Discovery II, LP, is an entirely different company from the Petters' controlled entity, Edge One LLC.  (*Id.*)

-30-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    warehouses purportedly containing the collateral; (3) knew by September 2007 that the alleged

2    insurers had not been able to gain access to warehouses and confirm the existence of collateral;

3    (4) knew by September 2007 that Petters "never allowed" access to the supply chain; and (5)

4    ARAM caused Ark Discovery to loan money to Petters entities despite knowing the foregoing

5    and knowing that ARAM had done nothing to independently verify the transactions or collateral.

6    (*Id.*)  Plaintiff alleges that Granat's knowledge should be imputed to ARAM, and that Plaintiff is

7    "informed and believes" that Granat "shared his knowledge of the foregoing with his superiors

8    and partners, Vestbirk, Balliet and his colleague Hanslik."  (*Id.*)

9         No specific facts are alleged to support these speculative and conclusory allegations.

10   Moreover, Plaintiff has misleadingly summarized the underlying Granat's testimony upon which

11   these allegations rely.  Granat's testimony is attached to the Request for Judicial Notice as

12   Exhibit J.  Granat testified that he was initially employed by a company (Edge One Capital) that

13   invested in the Petters' Group and that ultimately became affiliated with Ark Discovery II.  (RT,

14   at 1634, 1639, 1640.)  Granat did not testify that he was speaking for ARAM, any Moving

15   Defendant, or anyone apart from himself.  (*E.g.* RT, at 1654.)

16        In his testimony, Granat reviewed his company's early investment history in the Petters

17   entities, the representations made to him by Petters representatives, as well as the obstacles that

18   began to be raised to Granat's efforts to conduct due diligence on the underlying transactions.

19   (RT, at 1635-36; 1649-50.)  Granat stated that he understood that the insurance companies had in

20   fact been making efforts to inspect warehouses.  (RT, at 1651.)  Granat also described how

21   Petters' background and reputation as a successful businessman was important to his decision to

22   do business with him.  (RT, at 1636-37.)  Granat reviewed how Petters' acquisition of well-

23   known, legitimate companies such as Polaroid, Sun Country Airlines, and Fingerhut gave validity

24   to Petters' business dealings.  (RT, at 1636-37.)  All of these early representations took place

25   months before Granat became associated with ARAM.

26        Granat noted that incoming payments from the Petters' investment were monitored and

27   timely received.  (RT, at 1637, 1656, 1660.)  No problems with incoming payments were seen

28

-31-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    through late 2007 or into 2008.  (RT, at 1640, 1642.)  Granat also described the extensive

2    documentation supplied by the Petters' team, including purchase orders, invoices, loan

3    documentation – documentation that was reviewed by outside counsel prior to execution – as well

4    as UCC filings.  (RT, at 1641-42; 1653-54; 1655.)  Granat stated that this documentation

5    convinced him that the underlying transactions had in fact occurred.  (RT, at 1654.)

6         Granat testified that he first noticed a delay in payments in mid-summer 2008.  Granat

7    stated that he followed up on this delay by contacting Petters' representatives, who assured him,

8    repeatedly, that the delays were temporary, resulting from the slowing economy, and that

9    payments would be made.  (RT, at 1644-45; 1656.)  Granat also stated that when news of the

10   search warrant broke in September 2008, the owners of Ark Royal requested that he immediately

11   return from a business trip in Switzerland to investigate.  He did so that very day.  (RT, at 1645.)

12   Upon his return, Granat managed to speak with Petters, who again reiterated that all was fine and

13   that "everything would be cleared up."  (RT, at 1646.)[17]

14        Granat testified that had he had been repeatedly lied to concerning these transactions, and

15   that if he had known of any problem, he would have immediately alerted Ark Fund to make no

16   further investments.  (RT, at 1658-59.)  Granat further disclosed that the Ark Fund investors lost

17   approximately $125 million and that he personally lost $250,000 as a result of Petters' fraud.

18   (RT, at 1646.)

19

20   _____

[17]      Granat also testified about one early instance in 2007 when a Petters representative
21   rebuffed an effort to inspect merchandise at supplier warehouses in part because of logistical
     concerns.  (RT, at 1635-36, 1650.)  Granat noted that Petters representatives informed him that
22   they did not want investors speaking to the retailers.  (RT, at 1651.)  Granat further testified,
     however, that he believed the insurance companies were still involved in trying to check the
23   warehouses, RT, at 1650-51, and Granat did not conclude prior to the disclosure of the search
     warrant in September 2008 that the transactions were not legitimate.  (RT, at 1645.)  Further,
24   Granat did not testify that he conveyed the information concerning access to the warehouses or
     retailers to any Moving Defendant at any time period relevant to this lawsuit.  And the contacts
25   with Petters that involved certain Moving Defendants were all ones in which Petters'
     representatives provided assurances.  These contacts were not "red flags" of ongoing fraud.  (RT.
26   at 1645, 1659.)  In any event, there are no facts alleged that Granat passed on information
     concerning his other interactions with the Petters' group to any Moving Defendant, apart from
27   Plaintiff's mere speculation that this happened.  (See FAC, ¶ 41.)

28

-32-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

### (4)   Alleged Loans To The Petters Entity, Edge One, LLC.

Plaintiff alleges in vague fashion that Ark Discovery made prior loans to the Petters' entity, Edge One, from which Moving Defendants allegedly should have known that the repayment flow was not as represented.  (FAC, ¶¶ 47-49.)  Plaintiff alleges that Ark Discovery II made six loans to Edge One with principal amounts of $57 million.  Plaintiff alleges that this $57 million was repaid to Ark Discovery II, but that it was repaid with interest by a Petters entity and not by the retailers.  (*Id.*, ¶ 47.)  While Plaintiff alleges in conclusory fashion that Moving Defendants knew or were reckless in not knowing the actual source of the repayment funds, Plaintiff does not allege any fact demonstrating that any Moving Defendant knew of, or was advised of, the source of the repayment funds, or reviewed any documentation concerning the source of the repayment funds, during this relevant time period.  (*See id.*)

Next, Plaintiff alleges that Ark Discovery II made a series of loans on March 5, 10, and 12, 2008.  These loans allegedly had maturity dates of June 23, 2008.  Plaintiff alleges that Ark Discovery II was repaid over $3 million on these loans, but that after June 23, 2008, Ark Discovery II did not receive further principal payments, and that the loans were technically in default after June 30, 2008.  Plaintiff alleges that Ark Discovery (Offshore) was the source of the funds for these loans by Ark Discovery II.  (*Id.* at 48, 49.)[18]

Again, Plaintiff does not allege any fact demonstrating that any Moving Defendant knew of the source of the repayment funds, or reviewed any documentation concerning the source of the repayment funds, during this relevant time period.  (*See id.*)  Instead, the timing of the loans, which did not even come due until summer 2008, simply corroborates the fact that the delays in payment, once experienced, led to immediate follow-up and investigation by Moving Defendants (as the prior loans, per Plaintiff, had in fact been paid).  (*See* FAC, ¶¶ 47, 81.)

---

[18]   Plaintiff alleges another series of loans between June 30 and September 3, 2008, that were also not repaid.  (FAC, ¶ 58.)  Plaintiff alleges no specific facts demonstrating that these loans were made with knowledge of the existence of the Petters' scheme.

-33-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

(5)     **Moving Defendants' Investigation In Response To The Delays In Payment.**

Per Plaintiff's own allegations, Moving Defendants did not sit idly by once they learned of the delays in payment. Instead, they made requests to access supply warehouses, for example, to confirm the underlying collateral. (FAC, ¶ 80.) If, in fact, Moving Defendants had been aware of the Petters Ponzi Scheme, complicit in it, or even recklessly blind to it with the hope of having their loans paid off, such requests would *not* have been made. The only result that could come from such an inspection would be to prove or disprove the validity of the transaction. It is not an inquiry that would be made by someone who already knew the facts.

And, indeed, as Plaintiff is forced to concede, Defendants continued to press for more information. (*Id.,* ¶ 80.) Plaintiff expressly identifies a September 2008 call from Balliet and Granat to Petters confederates Coleman and White. (*Id.*, ¶ 81.) Plaintiff alleges that on that call, Balliet demanded third-party confirmation from the retailers, and disclosed that ARAM had just learned that payments on the loans were not being paid by the retailers but were instead from Petters. *Id.* Balliet expressed concern that this fact could jeopardize the insurance that had been expected to protect the investment. (*Id.*)[19]

These allegations support only one plausible inference: Vestbirk, Balliet, and the rest of the Moving Defendants had no idea that Petters was running a massive Ponzi scheme and did not know any of the statements concerning the structure of the transactions were inaccurate when made.[20] As with the Granat testimony, this allegations show only an immediate investigation by

---

[19]     Plaintiff alleges that notwithstanding the foregoing, Granat tried to end the call on an optimistic note, with reference to future investments in the fund. (FAC, ¶ 81.) Plaintiff alleges in conclusory fashion that this statement by Granat means that the Moving Defendants knew this was a Ponzi scheme, and were motivated to keep it going so as to be repaid. (*Id.*) Balliet is not alleged to have authorized this statement by Granat. Moreover, and as discussed further below, this is not a plausible inference. If Moving Defendant were motivated to keep the scheme going, they would have kept quiet, not pressed for further confirmation on the underlying transactions.

[20]     Plaintiff alleges that Balliet and Hanslik are Certified Public Accountants in Texas, and that therefore should have been aware of the alleged dangers of related-party transactions, the need for third-party confirmations, and the need for valid transactions to ensure insurance coverage. (FAC, ¶ 33.) As alleged by Plaintiff, Defendants were trying to get to the bottom of the issues and confirm the legitimacy of the transactions, and it was Balliet, who, upon

-34-

1   ARAM, Vestbirk and Balliet upon the "red flag" of a delay of payment, and not a defendant

2   ignoring such red flags while making contrary public statements.

3                    **(6)      Subsequent Alleged Emails With Vestbirk**

4            Plaintiff closes by citing two emails between Vestbirk and Stratford that post-date the

5   exposure of the fraud.  Plaintiff fails to attach copies of either email to the Fourth Amended

6   Complaint.  In the first, a December 3, 2008 email from Vestbirk to Stratford, Vestbirk

7   purportedly "admits" that he was "unaware" of any transaction financed by Ark Discovery Fund

8   that was "real." (FAC, ¶ 85.)  This email was sent months after Petters was exposed as a fraud.  It

9   amounts to nothing more than an acknowledgement of what was by then public knowledge, as

10  well as the plain reality that Ark Discovery (Offshore) had been victimized by Petters.  It proves

11  nothing as to any of the Moving Defendants' state of mind *prior* to the exposure of the fraud.

12          The second, dated January 6, 2009, is of the same ilk.  It demonstrates only that upon

13  identifying discrepancies and delays for the first time, Moving Defendants did not sit by quietly,

14  but instead sought to confirm that the transactions were in fact legitimate and stated that no more

15  monies would be loaned until the issues were clarified.  (*Id.*, ¶ 86.)  Again, this allegation only

16  corroborates that Moving Defendants did not have the requisite scienter at the time the alleged

17  misrepresentations were made.

18          **2.      Plaintiff Has Failed To Adequately Allege Scienter As To Each Named
                Moving Defendant.**

19

20          Plaintiff, in cut and paste fashion, repeatedly identifies the above facts to attempt to

21  establish that that Moving Defendants knew or were reckless in not knowing the falsity of the

22  statements concerning the investments' structure and performance, and that Moving Defendant's

23  acts therefore constituted an extreme departure from the customary standard of care.  (*See* FAC,

24

25

26  learning of the related-party issue, the inability to confirm transactions, and the payment delays,
    aggressively pushed Petters' representatives for answers.  (*See id,* at ¶¶ 80, 81.)  For all of its
27  length and repetition, all that Plaintiff has established through its complaint is to demonstrate that
    Moving Defendants acted immediately when apprised of "red-flags" concerning this investment.
28
                                                    -35-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    ¶¶ 39, 45, 46, 65-68, 83, 90, 101, 108.)  However, these conclusory and speculative facts do not

2    satisfy the strict pleading burden imposed by the PSLRA.

3          Under the PSLRA, a plaintiff must, "with respect to *each* act or omission alleged to

4    violate this chapter state *with particularity* facts giving rise to a *strong inference* that *the*

5    *defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis

6    added); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 334 (2007).  The

7    required state of mind is the making of the false or misleading statements either intentionally or

8    with "deliberate recklessness." *Silicon Graphics,* 183 F.3d at 974 ("We hold that a private

9    securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute

10   strong circumstantial evidence of deliberately reckless or conscious misconduct").  Deliberate

11   recklessness is "a form of intentional or knowing misconduct."  *Id.* at 976.  "To allege a 'strong

12   inference of deliberate recklessness,' [the plaintiff] 'must state facts that come closer to

13   demonstrating intent, as opposed to mere motive and opportunity.'"  *DSAM Global Value*

14   *Fund,* 288 F.3d at 388-89, *quoting Silicon Graphics,* 183 F.3d at 974).  "[A]lthough facts

15   showing mere recklessness or a motive to commit fraud and opportunity to do so may provide

16   some reasonable inference of intent, they are not sufficient to establish a strong inference of

17   deliberate recklessness." *Silicon Graphics*, 183 F.3d at 974.

18         To qualify as "strong" within the meaning of the statute, the inference of scienter must be

19   more than merely plausible or reasonable.  The inference must be cogent and at least as

20   compelling to a reasonable person as any opposing inference of non-fraudulent intent. *Tellabs*,

21   551 U.S. at 314, 322-25.  When assessing a complaint for compliance with this standard, "courts

22   must consider the complaint in its entirety . . . [and inquire] whether *all* of the facts alleged, taken

23   collectively, give rise to a strong inference of scienter, not whether any individual allegation,

24   scrutinized in isolation, meets that standard." *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540

25   F.3d 1049, 1066 (9th Cir. 2008) (internal citation omitted); *see also Gompper v. VISX, Inc.*, 298

26   F.3d 893, 897 (9th Cir. 2002) ("[T]he court must consider *all* reasonable inferences to be drawn

27   from the allegations, including inferences unfavorable to the plaintiffs.").

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

Lastly, Plaintiff must direct its scienter allegations not only to each misstatement, but to each Moving Defendant. So called group pleading, whereby scienter may be implied for one or more defendants based upon the actions of another, is no longer a viable doctrine given the enactment of the PSLRA. 15 U.S.C. § 78u-4(b)(2) (requiring plaintiff, with respect to *each* act or omission, to allege with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind); *Petrie v Elect. Game Card Inc.*, 2011 WL 165402, *3 (C.D. Cal. Jan. 12, 2011), *citing In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) (holding that "the group pleading doctrine can no longer be used in pleading cases under the PSLRA" and noting that "[t]his view is shared by numerous district courts within this circuit."); *In re New Century,* 588 F. Supp. 2d 1206, 1223 (C.D. Cal. 2008) ("All of the Circuit courts that have expressly considered whether group pleading is compatible with the PSLRA have concluded that it is not."); *see also Tellabs*, 551 U.S. at 326 n.6 ("The Seventh Circuit held that allegations of scienter made against one defendant cannot be imputed to all other individual defendants. . . .  the Shareholders do not contest the Seventh Circuit's determination, and we do not disturb it.").[21]

Accordingly, as to *each* Moving Defendant and *each* alleged misrepresentation, Plaintiff must allege specific facts that give rise to a strong inference of scienter. Plaintiff does not meet this standard. There are no allegations of fact demonstrating any actual knowledge by any Moving Defendant of the ongoing Petters Ponzi Scheme before it was exposed in September 2008. Plaintiff's contention, therefore, is that Moving Defendants should have known that Petters was engaged in a massive fraud. Plaintiff, however, has not alleged specific facts demonstrating that any Moving Defendant knew of, or was acting in reckless disregard of, the Petters' fraud.

---

[21] Similarly, *"*Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Cisneros v. Instant Capital Funding Grp., Inc.,* 263 F.R.D. 595, 606-07 (E.D. Cal. 2009), *citing Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

-37-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

**a.     Plaintiff Has Not Alleged The Requisite Facts, As Compared To Conclusions, To Establish That Each Defendant Act With Scienter As To Each Alleged Misrepresentation.**

Plaintiff has not identified any specific "red-flag" of which Moving Defendants were aware, apart from the delay in payment, and that delay in payment led to prompt action by the Moving Defendants to investigate.  Apart from that delay in payment, not even suffered until the summer of 2008, Plaintiff offers only mere conclusions, unfounded inferences and suppositions. Plaintiff does not plead any fact showing that any Moving Defendant knew of Petters' fraud, or knew, specifically, that payments were being made by Petters' entities and not by the retailers as had been expected.

Plaintiff admits, for example, that the Moving Defendants were pressing to gain access to the warehouses to confirm the legitimacy of the transaction.  (FAC, ¶ 80.)  This investigation led to additional ones, such as the alleged call by Balliet, FAC, ¶ 81, that reflected searching inquiries – inquiries that were entirely *inconsistent* with Moving Defendants already having known that Petters was operating a scam.  Further, while Plaintiff also relies on a mischaracterization of Granat's testimony, it fails to tie to this testimony to the contemporaneous state of mind of any – let alone *each* – of the Moving Defendants.  In his testimony, Granat did not purport to speak for any of the Moving Defendants, and there are no *facts* – dates, times places, method of communication, what was said, etc. – alleged to support Plaintiff's speculation that Granat must have shared his supposed knowledge with the Moving Defendants.

Moreover, Granat's testimony, to the extent it suggests anything, suggests only that he, like hundreds of others, was victimized by a sophisticated, multi-billion dollar scheme to defraud. (RJN, Exs. D (Transcript), A (Indictment).)  Prior to his exposure as a fraud, Petters' was a well-known businessman who had acquired several, large legitimate companies.  His investment structure had a successful history spanning years.  The hallmark of Petters' scheme was the use of seemingly legitimate but in fact collusive third parties and the provision of extensive documentation to make the transactions appear genuine.  (*Id.*)  As set forth in the Granat testimony, this documentation was also vetted by outside lawyers prior to Ark Discovery II's provision of loans to the Petters' entities.  Further, as with the alleged Balliet telephone

-38-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   conference, the Granat testimony reveals a rapid follow up to investigate at the first "red flag."

2   The delays in payments, once experienced for the first time, were not ignored; they were

3   aggressively run down, a pursuit, in fact, which likely contributed to the downfall of the scheme.

4   (RJN, Ex. J (Granat Testimony); *see also* FAC, ¶ 80, 81.)

5        These facts do not even suffice to demonstrate mere negligence, never mind intentional or

6   deliberately reckless conduct.

7        **b.    Plaintiff May Not Rely Upon Moving Defendants' Alleged Positions
            Within Ark Royal Asset Management as a Substitute for Pleading**

8        **Specific Facts that Establish that Each Defendant Acted with Scienter.**

9        Bereft of facts showing that Moving Defendants intended to defraud MVP, Plaintiff

10  instead tries to tie them to the alleged fraud merely by association.  Allegations of this type, to the

11  effect that a defendant who is part of a company's "core operations" can be held to have the same

12  state of mind and knowledge of the same facts as the company itself, do not suffice:

13           A question remains, however, about reliance on the core-operations
             inference when it is the only basis for scienter in the complaint.
14           Where a complaint relies on allegations that management had an
             important role in the company but does not contain additional
15           detailed allegations about the defendants' actual exposure to
             information, it will usually fall short of the PSLRA standard.  In
16           such cases the inference that defendants had knowledge of the
             relevant facts will not be much stronger, if at all, than the inference
17           that defendants remained unaware.  *As a general matter,*
             *"corporate management's general awareness of the day-to-day*
18           *workings of the company's business does not establish scienter – at*
             *least absent some additional allegation of specific information*
19           *conveyed to management and related to the fraud" or other*
             *allegations supporting scienter.*

20

21  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) (emphasis added).

22  Plaintiff's allegations here offer nothing more than a potential "general awareness" of the

23  company's activities.  Plaintiff does not include additional allegations of specific information

24  conveyed to management related to the fraud or otherwise supporting scienter.  These allegations,

25  in other words, do not suffice under the PSLRA.

26       Similar in effect is *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008).

27  In *Glazer,* the Ninth Circuit affirmed a district court's dismissal of a securities claim.  In so doing,

28

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    it confirmed the necessity of pleading scienter on an individual basis and underscored the need for

2    specific facts even when a plaintiff elects to rely upon the core operations inference.  *Id.* at

3    742-49.  As here, the plaintiff in *Glazer* had not pled any facts demonstrating personal knowledge

4    of the allegedly improper underlying transactions.  The plaintiff, however, sought to establish an

5    inference of scienter through factors such as the defendant's role as CEO in what was a small

6    company, the financial incentives allegedly accruing to the defendant from ignoring the fraud,

7    and the fact that the fraud was quickly discovered later by a third party during due diligence

8    preceding an acquisition.  *Id.* at 745.

9         The Ninth Circuit rejected each of the plaintiff's asserted grounds – grounds that, it should

10   be noted, were far more substantial than the mere conclusions and speculation offered by Plaintiff

11   in this case.  *See id.* at 745-49.  The Ninth Circuit held that, absent "specific admissions" from

12   officers that they were involved in "every detail of the company," general allegations that an

13   officer "must have known" of the fraud as a result of his position in the company or "hands-on

14   management style" are not sufficient.  *Id.*  Similarly, responsibility for "day-to-day operations"

15   was not enough to establish scienter, absent additional specific factual allegations showing that

16   the improper activities were of such prominence that it would be "absurd" to suggest that top

17   management could have been unaware.  *Glazer*, 549 F.3d at 746.

18        Despite the company's small size, and the defendant's prominent role as CEO, the illegal

19   payments at issue were not of the nature that awareness of them by senior management could be

20   assumed.  *Id.* at 746-747.  "To the contrary, the surreptitious nature of the transactions creates an

21   equally strong inference that the payments would have deliberately been kept secret – even within

22   the company."  *Id.*  Similarly, the fact that a third party (which evaluated the company as part of

23   due diligence leading up to an acquisition) discovered the fraud early on in its due diligence, did

24   not support a strong inference of scienter.  *Id.* at 748 ("The mere fact that GE was able to discover

25   the FCPA violations does not create a direct inference that Magistri personally knew about the

26   violations.").

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    *South Ferry* and *Glazer* confirm the inadequacy of Plaintiff's scienter allegations under

2    the PSLRA.  *See also Lapiner v. Camtek, Ltd.*, 2011 WL 445849, *8 (N.D. Cal., February 2,

3    2011).  Plaintiff's Fourth Amended Complaint makes only generic references to the individual

4    Defendants' alleged management positions.  (FAC, ¶¶ 5, 6, 31.)  And Plaintiff relies solely upon

5    speculation about what Moving Defendants were supposed to have known.  Plaintiff alleges no

6    specific, contemporaneous facts that were actually known to any defendant at the time of the

7    alleged statements, and under the PSLRA, one defendant cannot be equated with another.[22]

8        Boiled down to its essence, the complaint is that Moving Defendants defrauded Plaintiff

9    by not discovering sooner that they themselves were being victimized by Petters.  Such is not the

10   stuff of which securities fraud claims are made.  *See S.E.C. v. Cohmad Sec. Corp.,* 2010 WL

11   363844, *2 (S.D.N.Y. Feb. 2, 2010) (rejecting scienter allegations because "the complaint

12   supports the reasonable inference that Madoff fooled the defendants as he did individual

13   investors, financial institutions, and regulators").  Plaintiff's allegations that Moving Defendants

14   did not conduct the level of due diligence allegedly represented does not mean that they intended

15   to defraud Plaintiff.  *South Cherry St., LLC v. Hennesee Grp. LLC,* 573 F.3d 98, 111-13 (2d Cir.

16   2009) (terming allegation that defendant's due diligence fell short of what was represented to be

17   "hardly a cogent or compelling suggestion" of scienter in a case also involving an investment

18   fund victimized by a Ponzi scheme).[23]

19

20   [22]    Plaintiff's allegations push the core operations inference to a whole new level of
     attenuation.  Plaintiff imputes to Vestbirk supposed knowledge of fraudulent transactions at a

21   different hedge fund, Arrowhead, based solely upon Vestbirk's alleged short time as an outside
     director many years before the events in question.  This allegation falls well short under Ninth

22   Circuit authority limiting use of the core operations inference.  Yet Plaintiff then improperly
     *imputes* Vestbirk's imputed knowledge to Balliet and Hanslik and the other Moving Defendants,

23   who are not alleged to even have been involved with Arrowhead in any capacity.  Plaintiff's
     improper reliance on such rank speculation and conclusions demonstrates that it cannot plead the

24   specific, hard facts necessary to establish scienter.

25   [23]    As for motive, Plaintiff alleges nothing more than a supposed intent to increase assets
     under management.  If such a motive sufficed, merely being an investment manager would

26   establish scienter. The law is clear, however, that simply demonstrating a profit motive is not
     enough.  *E.g., Zucco Partners*, 552 F.3d at 1005 (simple allegations of pecuniary motive do not

27   suffice); *Glazer,* 549 F.3d at 748 (merely establishing a profit motive does not suffice to create a
     strong inference of scienter); *In re AstraZeneca Sec. Litig.,* 559 F. Supp. 2d 453, 468

28

-41-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    Plaintiff's pleading burden in a securities fraud case is a high one, and Plaintiff does not

2    come close to meeting it.  Plaintiff's allegations fail to suggest any complicity by Moving

3    Defendants in Petters' fraud.  Plaintiff's federal securities claims should be dismissed.

4        **3.      Plaintiff Has Also Failed To Adequately Allege A Primary Violation By Each
                   Moving Defendant.**

5

6        Plaintiff is required to allege specific misrepresentations by *each* Moving Defendant.

7    Aiding and abetting liability, group or collective action liability, and alter ego liability are not

8    viable doctrines for establishing a federal securities claim.  *E.g. Cent. Bank of Denver, N.A. v.*

9    *First Interstate Bank of Denver*, 511 U.S. 164, 171-78, 191 (1994); *Stoneridge Inv. Partners, LLC*

10   *v. Scientific-Atlanta*, 552 U.S. 148, 156, 162 (2008).  Through what it terms "group published

11   information," Plaintiff seeks to bypass these United States Supreme Court holdings to impose

12   liability on Moving Defendants who are not alleged to have actually made the statements relied

13   upon by Plaintiff in the FAC.  (FAC, ¶¶ 42, 43, 63.)[24]

14       The group publication or group pleading doctrine, however, did not survive the enactment

15   of the PSLRA, as made clear by the United States Supreme Court in its recent decision in *Janus*

16   *Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011).  The Supreme Court in

17   *Janus* addressed the issue of who is the "maker" of a statement for purposes of potential liability

18   under Section 10(b).  Plaintiffs were shareholders in an asset management firm, Janus Capital

19   Group, Inc., a publicly traded company that created the Janus family of mutual funds, including

20   the Janus Investment Fund (the "Fund") (JCG).  *Id.* at 2299.  JCG retained Janus Capital

21

22

23   (S.D.N.Y.2008) (holding that in pleading scienter, "arguing that the motive for defrauding
     investors was to increase the company's profits or to increase officer compensation is not

24   sufficient"); *Stephenson v. Citco Grp. Ltd.,* 700 F. Supp. 2d 599, 620-21 (S.D.N.Y. 2010)
     (economic interest in retaining clients not probative of motive to ignore Madoff's fraud).

25   Moreover, Moving Defendants' prompt action to investigate the delays in payment belies the
     existence of any motive to play along with Petters to make money from his fraud.

26

27   [24]     Plaintiff does not allege Vestbirk's call was "group published," and there are no facts
     tying any Moving Defendant to it.  Balliet and Hanslik, for example, were not participants in the

28   call.  (FAC, ¶ 37.)

-42-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   Management ("JCM"), its wholly-owned subsidiary, as the investment advisor for the Fund.  *Id.*

2   JCM provided the Fund with investment advisory services.  *Id.*

3       The Fund issued a prospectus that plaintiff alleged was misleading.  The plaintiff further

4   alleged that when the true information came out, this disclosure led investors to withdraw money

5   from the Fund, negatively affecting the net asset value of the Fund.  *Id.* at 2300.  This drop in

6   value in turn led to a decrease in JCM's management fees that hurt the earnings of JCM's parent,

7   JCG.  This earnings drop led to a decline in the share price of JCG, which was the company in

8   which plaintiff had invested.  *Id.*

9       In asserting Rule 10b-5 liability, the plaintiff alleged that JCG and JCM "caused mutual

10   fund prospectuses to be issued for the Janus mutual funds and made them available to the

11   investing public, . . . ."  *Id.*  The District Court, however, dismissed the claim under Rule 12(b)(6)

12   for failure to state a claim.  The Fourth Circuit reversed, holding that the plaintiff had sufficiently

13   alleged that "JCG and JCM, by participating in the writing and dissemination of the prospectuses,

14   *made* the misleading statements contained in the documents."  *Id.* at 2301.

15       The Supreme Court granted certiorari to address whether JCM could be held liable as the

16   maker of the statements in the prospectus, and then reversed the Fourth Circuit.[25]  The Supreme

17   Court held that JCM was not the maker of the statement because it was not the person "with

18   ultimate authority over the statement, including its content and whether and how to communicate

19   it."  *Id.* at 2302.  That person was the Fund.  *Id.* at 2304-05.  In reaching this holding, the Court

20   held that "one who prepares or publishes a statement on behalf of another is not its maker."  *Id.* at

21   2302.  Analogizing to a speechwriter, the Court stated that "[e]ven when a speechwriter drafts a

22   speech, the content is entirely within the control of the person who delivers it.  And it is the

23   speaker who takes credit – or blame – for what is ultimately said."  *Id.*  The Court held that any

24   other result would undermine its decision in *Cent. Bank of Denver, N.A. v. First Interstate Bank*

25

26   _____

27   [25]      Plaintiffs dropped their argument that JCG should be held liable as the maker of the
    statements by the time the case reached the Supreme Court, and sought only to hold JCM liable as
28   a primary violator.  *Id.* at 2301 n.5.

-43-

1    *of Denver, N.A.*, 511 U.S. 164, 180 (1994), which held that the Rule 10b-5 private right of action

2    does not extend to suits against aiders and abettors.  *Id.*

3        The Court held the governing rule to be as follows:  ". . . [T]he maker of a statement is the

4    person or entity with ultimate authority over the statement, including its content and whether and

5    how to communicate it."  *Id.*  Notably, such an entity did not include JCM, the investment

6    advisor, despite the close relationship between it and the Fund, as it was the Fund, not JCM, that

7    was the maker of the statement.  *Id.* at 2304-05.  The Court reached this holding notwithstanding

8    the allegation that JCM was significantly involved in preparing the prospectus that contained the

9    alleged misrepresentation, as such assistance did not transform JCM into the maker of this

10   statement.  *Id.* at 2305.

11       The application of *Janus Capital* to Plaintiff's Fourth Amended Complaint is

12   straightforward:  There are no facts alleged that establish any specific Moving Defendant as the

13   "maker" of the allegedly misleading statements in the one-page fact sheet or the later

14   Presentation, for example.  Plaintiff just relies on the "group-publication" inference.  As to the

15   September 24, 2007 call, Plaintiff identifies only Vestbirk, and not any other Defendant, and, as

16   noted, the connection between that call and the subsequent investments is entirely absent, not

17   only because of the passage of time, but also because of the facts that (1) Plaintiff alleges that it

18   rejected alleged invitations to purchase in the period following this alleged statement (FAC, ¶ 37),

19   and (2) because of the intermediary provision of actual offering materials, through which Plaintiff

20   *expressly disclaimed* reliance on any early oral statement.  (RJN, Ex. A.)  In addition, Plaintiff

21   does not allege that any Ark Entity (US) was a maker of any statement.

22       Plaintiff's aggregation of defendants, and its reliance on the "group published

23   information" and "collective action" theories in an effort to establish a primary violation against

24   these Moving Defendants (*see, e.g.,* FAC, ¶¶ , 42, 43, 63) is improper; such doctrines did not

25   survive the enactment of the PSLRA and have no validity particularly given the Supreme Court's

26   decision *Janus Capital*.  *See also In re Marvell Tech. Grp. Ltd. Secur. Litig.*, 2008 WL 4544439,

27   *3-4 (N.D. Cal. Sep. 29, 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1        DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

326 n. 6, (2007), and rejecting group pleading doctrine under PSLRA).  Accordingly, Plaintiff's

Section 10(b) claim must be dismissed.

**D.      Plaintiff Has Failed To Adequately Plead Its California Securities Fraud, Fraud, Negligent Misrepresentation, and Negligence Claims.**

**1.      Plaintiff Has Failed to Satisfy Rule 9(b) For These State Claims.**

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule

9(b)'s particularity requirements."  *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803, *14

(E.D. Cal. Jan. 27, 2011); *Cisneros v. Instant Capital Funding Grp., Inc.*, 263 F.R.D. 595, 606

(E.D. Cal. 2009).[26]  Similarly, Rule 9(b) governs plaintiff's state law securities fraud claim.

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *12-13 (N.D. Cal. Sept. 14,

1998).

Further, as an overarching matter, where a complaint alleges a unified course of fraudulent

conduct and relies entirely on that course of conduct as the basis of that claim, the claim is said to

be "grounded in fraud" or to "sound in fraud."  In such cases, the pleading as a whole must satisfy

the particularity requirement of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

Cir. 2009).  Here, Plaintiff's California securities fraud claim, as well as the common law fraud

and negligent misrepresentation claims, are all directly premised upon the same allegedly

fraudulent conduct as his federal securities fraud claim.  (*See* FAC, ¶¶ 99-103; 106-110; 117-119;

120-122 (incorporating all prior allegations to support claims for fraud, negligent

misrepresentation and securities fraud)).

Accordingly, Rule 9(b) applies to each of these three state law claims.  Rule 9(b) requires

particularized allegations of the circumstances constituting fraud.  *Cisneros,* 263 F.R.D. at

606-07; *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be

accompanied by "the who, what, when, where, and how" of the misconduct charged);

*Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as

---

[26]      Under California law, both fraud and negligent misrepresentation are forms of deceit.
*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008).

-45-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    the times, dates, places, benefits received and other details of the alleged fraudulent activity.").

2    Further, when there are multiple defendants, a plaintiff must provide *each* defendant with enough

3    information to enable them to know which misrepresentations are attributable to them and their

4    specific fraudulent conduct.  *Cisneros*, 263 F.R.D. at 606-07 (*"Rule 9(b) does not allow a

5    complaint to merely lump multiple defendants together . . . ."*).  The role of each defendant in the

6    fraudulent scheme must be alleged with specificity.  *Id.*

7        As set forth above, Plaintiff fails to allege fraud with the requisite particularity.  Plaintiff

8    has not alleged facts linking each Moving Defendant to each statement claimed to be false, and

9    has not sufficiently pleaded that each Moving Defendant acted with scienter with respect to each

10   statement claimed to be false.  Accordingly, for these reasons, Plaintiff's claims for fraud,

11   negligent misrepresentation, and state securities fraud must be dismissed.

12        **2.        Plaintiff Fails to State a State Law Securities Law Claim.**

13            **a.        Plaintiff Has Not and Cannot Allege An Offer Made In California.**

14        Plaintiff asserts violations of Corporations Code section 25504.1, which imposes joint and

15   several liability on any person who materially assists in a violation of Corporations Code section

16   25401, and Corporations Code section 25504, which imposes joint and several liability on certain

17   persons who control a person that violates Section 25401.  Section 25401 makes it unlawful for

18   any person to offer or sell a security *in this state* by means of any written or oral communication

19   that includes an untrue statement of material fact or omission.[27]

20        Plaintiff's California securities law claims fail for a straightforward reason:  There has

21   been no offer to sell or sale of a security "in this state."  There was no California seller, no

22   California buyer, no offer to a California investor, no sale to or purchase by a California investor,

23   and no offer to sell any share of Ark Discovery (Offshore) in California, and no delivery of any

24   share to California.

25        Corporations Code Section 25008 defines an Offer or Sale of Security "in this state" as

26   follows:

27   _____

     [27]      Plaintiff alleges no facts demonstrating that any Moving Defendant "materially assisted"

28   the sale of Ark Discovery (Offshore) to Citco Global (or MVP).

-46-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

(a)     An offer or sale of a security is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or (if both the seller and the purchasers are domiciled in this state) the security is delivered to the purchaser in this state. . . .

(b)     An offer to sell or to buy is made in this state when the offer either originates from this state or is directed by the offeror to this state and received at the place to which it is directed.  An offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state; and acceptance is communicated to the offeror in this state when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed.

. . . .

Cal. Corp. Code § 25008.

Here, the only offer was by Citco to purchase, and was made through the Subscription and Offering materials, and Plaintiff does not allege that those were sent to or directed at any investor in this State.  Moreover, Citco Global was a non-US investor, and it made its offer to purchase from out of the United States and directed it to Bermuda.  (RJN, Ex. A.)  Vestbirk's telephone conference with Stratford, made six months before any purchase by Citco Global and prior to any fund activity, was not an offer of sale.  (FAC, ¶ 37.)  As for the one-page fact sheet and presentation, neither contains an offer of sale.  In fact, both documents expressly *disclaim* that they are offers of sale.  (RJN, Exs. E, F.)  As for the alleged call from Vestbirk to Stratford sometime between December 2007 and February 2008, it too cannot be considered an actionable offer to sell.  Citco Global foreclosed Plaintiff from making such an allegation through its entry into the Subscription Agreement.  (RJN, Ex. A ("The Investor(s) has received no offering material except the Offering Memorandum, which may be amended."))  The only offer was the offer to purchase, emanating from the Netherlands from Citco Global.

Moreover, as has been reviewed, this was an offshore transaction, and there is no basis for California to seek to regulate this transaction involving two British Virgin Island hedge funds and two foreign banks.  Not only does the plain statutory language of the Corporations Code make clear that California securities law does not extend offshore, the California Supreme Court has

-47-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    confirmed this express limitation.  In *Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036,

2    1053 (1999), the California Supreme Court contrasted Sections 25400 and 25401 of the

3    California Securities Code with respect to whether the provisions reached conduct occurring out

4    of state.  Section 25400, which is *not* at issue in this case, outlaws certain conduct intended to

5    manipulate the price of a stock.  There, the California Supreme Court held that not only purely

6    intra-state transactions were subject to regulation because the Legislature had not included the

7    words "in this state" with respect to the purchase or sale, and intended to reach any purchase or

8    sale when the allegedly wrongful conduct had occurred in California.  *Id.* at 1049-69.

9        The California Supreme Court contrasted Section 25400 with Section 25401, the

10   provision upon which Plaintiff relies in this case, and which does expressly include the "in this

11   state" limiter.  *Id.* at 1053.  ("When the Legislature intended that a purchase or sale of a stock

12   must occur in California if the buyer or seller is to be subject to civil, criminal, or administrative

13   penalties, it said so . . . [I]n section 25401, the Legislature expressly limited the scope of the

14   prohibition of false or misleading statements in an offer to buy or sell" to offers to buy or sell "in

15   this state"; further holding that the Corporate Securities Act is "quite specific in describing those

16   unlawful practices in which a purchase or sale must occur in California") (emphasis added); *Los*

17   *Angeles Fisheries, Inc. v. Crook*, 47 F.2d 1031, 1034-35 (9th Cir. 1931) (where California

18   purchaser requested that Nevada bank acquire stock of Nevada company on his behalf, no offer

19   for sale was made in California for purposes of application of California securities laws);

20   *Robinson v. Cupples Container Co.*, 316 F. Supp. 1362, 1368 (N.D. Cal. 1970) (purchase of stock

21   not subject to California securities laws, despite presence of California purchaser and negotiations

22   in California, where contract for sale and exchange of stock took place in Missouri).

23       In addition, state statutes are presumed *not* to have extraterritorial reach.  *Diamond*

24   *Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1059 (1999); *Norwest Mortgage, Inc. v.*

25   *Superior Court*, 72 Cal. App. 4th 214, 222 (1999), both citing *North Alaska Salmon Co. v.*

26   *Pillsbury*, 174 Cal. 1 (1916); *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)

27   (citing *Diamond,* and examining presumption against extraterritorial application of statutes in

28

-48-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   holding that California's Unfair Competition Law cannot reach conduct occurring out of state).

2   Plaintiff also fails to confront the fact that the broad reach of California securities law it advocates

3   would not survive scrutiny under the Due Process Clause or the Commerce Clause.  *See Diamond*

4   *Multimedia*, 19 Cal. 4th at 1063-64 (rejecting commerce clause arguments in that case because

5   issuer and maker of statements was located in California, and thus application of statute was not

6   purporting to regulate any transaction in securities occurring outside of California), citing *Healy*

7   *v. The Beer Institute,* 491 U.S. 324, 336 (1989) (Commerce Clause precludes application of state

8   statute to commerce that takes place wholly outside state's borders, whether or not commerce has

9   effects within state), and *Edgar v. MITE Corp.*, 457 U.S. 624, 641-44 (1982) (invalidating Illinois

10  law that purported to regulate transactions outside of state lines); s*ee also Sullivan,* 51 Cal. 4th at

11  1207 n.9 (noting that Due Process clause places additional restrictions on extraterritorial

12  application of state statutes); *Morrison*, 130 S.Ct. at 2883-88.

13          Here, Plaintiff, an uninjured alleged assignee, is the only alleged connection to California.

14  There is no allegation that the investments were to be marketed or sold to Californians, and the

15  purchaser, seller, and every alleged maker of any alleged false statement, all reside outside of

16  California and have no connection to this State.  In such circumstances, the California securities

17  claims must be dismissed.

18                    **b.      Neither The Remedy Of Damages Nor Rescission Is Available To
                              Plaintiff, Barring It From Stating a Claim Under the California**
19                          **Securities Laws.**

20          Section 25501 provides the remedies available to a purchaser of securities:

21              Any person who violates Section 25401 shall be liable to the person
                who purchases a security from him or sells a security to him, who
22              may sue either for rescission or for damages (if the plaintiff or the
                defendant, as the case may be, no longer owns the security) . . . .
23

24  Cal. Corp. § 25501 (parenthetical in statute as enacted).

25          MVP has not sold and still holds (allegedly through VP Bank and Citgo Global) the shares

26  of Ark Discovery (Offshore).  (*See* FAC, ¶ 119 (offering to tender the shares).)  As such, and

27

28                                                          -49-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    under the plain language of the statute, Plaintiff, as MVP's alleged assignee, is not eligible to

2    recover damages.  Cal. Corp. § 25501; *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011).

3          With respect to the potential remedy of rescission, Plaintiff has also failed to join as a

4    party defendant the actual issuer of the shares, Ark Discovery (Offshore).  Only the issuer may be

5    liable on a claim for rescission brought under the California Securities Act.  *Viterbi*, 191 Cal.

6    App. 4th at 935-44 (non-seller defendants not liable as "control persons" or "aiders and abettors"

7    for claim for rescission under Sections 25504 or 25504.1; only direct seller can place buyer in

8    original position); *cf. Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No

9    procedural principle is more deeply imbedded in the common law than that, in an action to set

10   aside a lease or a contract, all parties who may be affected by the determination of the action are

11   indispensable."); *Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949, 959

12   (2005) ("We have found no cases specifically holding the rescission remedy unavailable to a third

13   party beneficiary, but the proposition is self-evident to a degree that might well explain the

14   absence of precedent."); *but see Moss v. Kroner*, 197 Cal. App. 4th 860 (2011) (disagreeing with

15   *Viterbi* and finding that remedy of rescission remains available as to non-issuer defendants).

16         Accordingly, on these independent grounds, this claim should be dismissed.

17         **3.**      **Plaintiff Has Failed to State a Claim for Negligence.**

18         Plaintiff's Fifth Claim for Relief is for negligence.  Plaintiff alleges that *each* Moving

19   Defendant had a duty to (a) make careful investment decisions; (b) conduct adequate due

20   diligence; (c) report accurately to Plaintiff on the results of the due diligence; (d) ensure that Ark

21   Discovery Fund loans were structured so that the loan repayments were made directly to Ark

22   Discovery Fund; (e) take reasonable steps to perfect security interests and insurance on the

23   collateral and accounts receivable; and (f) accurately report on the value of shares in the Fund and

24   returns and losses therein.  (FAC, ¶ 114.)

25         These claims must be dismissed for two reasons.  First, this common law claim is one that

26   arises from duties allegedly owing from the fund manager, ARAM, to the fund, Ark Discovery

27   (Offshore), and not from any Moving Defendant to Plaintiff.  The claim, in other words, is a

28

1   derivative one that cannot be pursued directly by Plaintiff.  Second, Plaintiff has failed to allege

2   facts establishing any independent duty running from any Moving Defendant to Plaintiff.

3           **a.      Plaintiff Lacks Standing To Assert This Negligence Claim Because It
                      Is A Derivative Claim That Must Be Advanced On Behalf Of Ark
4                     Discovery (Offshore) Against ARAM.**

5           The gravamen of Plaintiff's negligence claim is that Moving Defendants failed to properly

6   supervise and manage Ark Discovery (Offshore)'s investments.  (FAC, ¶ 114.)  Moving

7   Defendants' duties with respect to their alleged actions and inactions, however, if such duties

8   were owed, would run to Ark Discovery (Offshore), and not to its shareholders.

9           MVP's potential claim as a shareholder, therefore, is no different from any other

10  shareholder claiming that the directors or officers of a company mismanaged its affairs, causing a

11  diminution in share value.  Such claims *cannot* be asserted directly by the shareholder, but instead

12  must be brought as a derivative action on behalf of the corporation.  *E.g. Schuster v. Gardner*,

13  127 Cal. App. 4th 305, 312 (2005) (shareholder cannot bring a direct action for damages against

14  management on the theory their alleged wrongdoing decreased the value of his or her stock); *In re*

15  *Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 365-366 (S.D.N.Y. 2011) (dismissing on grounds that

16  plaintiffs lacked shareholder standing because gross negligence claim was based on alleged

17  mismanagement of fund, including failure to conduct adequate due diligence, and was therefore

18  claim that had to be pursued derivatively).  Similarly, a shareholder cannot use the diminution of

19  share value as the basis for bringing an action against a third party for harm to the corporation.

20  *E.g. U.S. v. Stonehill*, 83 F.3d 1156, 1160-61 (9th Cir. 1996); *Vinci v. Waste Mgmt. Inc.*, 80 F.3d

21  1372, 1375 (9th Cir. 1996).[28]

22  _____

23  [28]      This doctrine is rooted in standing and real party in interest requirements.  A shareholder
    cannot directly initiate actions to enforce the rights of a corporation.  *Franchise Tax Bd. of Calif.*
    *v. Alcan Aluminum, Ltd.,* 493 U.S. 331, 335-36 (1990).  Furthermore, the company at issue,

24  Ark Discovery (Offshore), is a British Virgin Islands company.  Under the "internal affairs" doctrine,
    the rights of shareholders in a foreign company, including the right to sue derivatively, are

25  determined by the law of the place where the company is incorporated.  *Batchelder v. Kawamoto*,
    147 F.3d 915, 920 (9th Cir. 1998).  Plaintiff alleges no compliance with the requirements of

26  British Virgin Islands law in asserting this derivative claim, which must be dismissed.  *See*
    *Eshelman v. Orthoclear Holdings, Inc.*, 2009 WL 506864, at *9, *14 (N.D. Cal. Feb. 27, 2009)

27  (dismissing claims for failure to adhere to law of British Virgin Islands governing derivative
    claims).

28

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1

      **b.**      **Plaintiff Has Failed To Allege Facts Establishing An Independent Duty Running From Any Moving Defendant to Plaintiff, And Its Claim Is Also Barred By The Economic Loss Rule.**

2

3        Plaintiff also does not allege the facts necessary to establish a duty running directly from

4  any Moving Defendant to Plaintiff.  No facts are alleged to suggest that Moving Defendants

5  entered into any agreement with Plaintiff, or agreed to take any steps whatsoever on its specific

6  behalf.  Indeed, there is no indication that any Moving Defendant (apart perhaps from ARAM,

7  through non-moving party Vestbirk) was even aware of MVP or its potential purchase of shares,

8  and Plaintiff alleges no facts establishing that individual defendants such as Jeff Balliet or Allison

9  Hanslik or the Ark Entities (US) owed any duty to Plaintiff.  Plaintiff's allegations do not

10  establish an investment advisor-client relationship between MVPAM or MVP and any Moving

11  Defendant.

12        Moreover, Plaintiff's only alleged losses are economic.  No personal injury is alleged.  In

13  such circumstances, and absent a "special relationship," the general rule in California is that there

14  is no duty to prevent economic loss to third parties in negligence actions at common law, and the

15  courts are reluctant to impose such duties.  *Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88

16  Cal. App. 4th 595, 605 (2001); *see also Quelimine Co., Inc. v. Stewart Title Guaranty Co.*, 19

17  Cal. 4th 26, 57 (1998); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196-99 (9th Cir. 2001).

18  Plaintiff also alleges no facts establishing why any Moving Defendant – including, for example,

19  individuals such as Vestbirk, Balliet or Hanslik or the Ark Entities (US), for example, had a

20  "special relationship" with Plaintiff.  And, given the economic loss rule , it is clear that no such

21  duty exists.  *See Ratcliff Architects*, 88 Cal. App. 4th at 605.  Accordingly, this claim should be

22  dismissed with prejudice.

23  **E.**      **Plaintiff's Action Should Be Dismissed Under Rule 12(b)(2) Because Plaintiff Has Failed to Allege Facts to Establish Personal Jurisdiction Over Any Defendant.**

24

25        Moving Defendants also move to dismiss Plaintiff's Complaint for lack of personal

26  jurisdiction.[29]  Where a federal statute authorizes nationwide service of process, that forum is the

27

28    [29]    Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction.  The plaintiff then bears the burden of demonstrating that

-52-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    United States as a whole. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180

2    (2004), citing *Securities In. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir. 1985).[30]

3    However, the Ninth Circuit has made clear that a court should not automatically continue to

4    exercise personal jurisdiction over defendants if the "anchor claims," that is the federal claims

5    that provide a wider basis for personal jurisdiction, are dismissed.

6         Instead, under a doctrine referred to as "pendent personal jurisdiction," a District Court is

7    vested with discretion upon dismissal of the anchor claims to determine whether to continue to

8    exercise personal jurisdiction over the defendants on the remaining claims.  When the federal

9    claims are dismissed before trial, a court should typically decline to exercise personal jurisdiction,

10   unless there is an independent basis outside of the dismissed claims to establish such jurisdiction.

11   *U.S. v. Botefuhr,* 309 F.3d 1263, 1273-74 (10th Cir. 2002); *Action Embroidery Corp. v. Atl.*

12   *Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).[31]  Accordingly, with the dismissal of

13

14   jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.
     2004).

15   [30]    Defendant Vestbirk raises, for purposes of preservation only, the argument that
     examination of national contacts, rather than forum specific contacts, constitutes a *per se*

16   violation of his rights of Due Process.  *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S.
     102, 113 fn* (1987) (Supreme Court has not yet assessed whether application of national contacts

17   test violates rights of Due Process).

18   [31]    Moving Defendants apprise the Court that in researching this issue, they located one

19   ruling from this Court, *Tolentino v. Mossman*, 2007 WL 4404447 (E.D. Cal., Dec. 13, 2007), in
     which a party moving to dismiss argued that the Court should not exercise personal jurisdiction

20   over a defendant once a federal claim is dismissed.  Citing to an Oregon district court case*,
     Poindexter v. Wedbush, Noble, Cooke, Inc.*, 1983 WL 1279 (D. Or. Jan. 24, 1983), the Court held

21   that it could continue to exercise personal jurisdiction over defendants on the state claims even if
     the federal securities law claims were dismissed *without prejudice.  Tolentino*, 2007 WL

22   4404447, at *3.  Here, of course, the dismissal should be *with prejudice*.  Furthermore, none of
     the parties in *Tolentino* appear to have identified for the Court the *Botefur* or *Action Embroidery*

23   cases cited herein, or to the doctrine of pendent personal jurisdiction more generally.  In addition,
     *Poindexter* did not involve the issue of personal jurisdiction with respect to state law claims

24   remaining after the dismissal of a federal claim.  Instead, only a federal securities claim was

25   involved, and the court concluded that its dismissal of that claim under Rule 12(b)(6) did not, in
     and of itself, mean that there was no personal jurisdiction under 15 U.S.C. § 78aa on that *same*

26   federal claim.  *Poindexter*, 1983 WL 1279, at *3.  Moving Defendants do not argue that

27   Plaintiff's failure to state a federal securities claim in and of itself means that there is no personal
     jurisdiction over defendants on that federal claim.  Instead, Moving Defendants are relying upon

28   the doctrine of pendent personal jurisdiction as to the separate state claims once the federal claims

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   the federal "anchor claims" in this case, the Court should assess whether there remains any basis,

2   under traditional forum-specific standards, for maintaining personal jurisdiction over the Moving

3   Defendants on the remaining California state law claims.  *See Yen v. Buchholz*, 2010 WL

4   1758623, *1, *5 (N.D. Cal., April 30, 2010) (holding that where plaintiff had failed to state a

5   claim for federal securities fraud, they could not rely upon the nationwide service provisions of

6   the securities fraud statutes to establish personal jurisdiction); *see also* 4A Wright & Miller,

7   Federal Practice & Procedure (3d ed.), § 1069.7 ("Of course, if the only jurisdictionally sufficient

8   claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim

9   should be dismissed as well").[32]

10      There is not.  As a starting point, Plaintiff's own allegations demonstrate that each of the

11   Moving Defendants is a non-resident of California.  (FAC, ¶¶ 4-19.)  The exercise of jurisdiction

12   over a non-resident defendant violates the protections created by the due process clause unless the

13   defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does

14   not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326

15   U.S. 310, 316 (1945).

16      A defendant's contacts with a state may be evaluated under the separate doctrines of

17   general or specific jurisdiction.  In order to establish general jurisdiction, a plaintiff must establish

18   that *each* defendant has "continuous and systematic general business contacts" with California,

19   such that the exercise of jurisdiction is "reasonable and just."  *Helicopteros Nacionales de*

20   *Columbia v. Hall*, 466 U.S. 408, 415 (1984).  The standard for establishing general jurisdiction is

21   are dismissed.  Lastly, the *Poindexter* case well predates *Action Embroidery* and *Botefur*.  Moving

22   Defendants respectfully suggest, therefore, that the Court's analysis in *Tolentino* is not controlling
    here.

23   [32]    In addition, venue must be established by Plaintiff as to each Moving Defendant and as to

24   each claim.  *E.g., Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir.
    1996).  Much as with personal jurisdiction, Plaintiff's choice of venue in the Eastern District

25   appears based upon its invalid federal securities law claims and its purported status as a plaintiff.
    Moving Defendants have requested the dismissal of this action with prejudice.  Should an amended

26   pleading be filed, however, that asserts only state law claims or that includes MVP as a
    plaintiff, Moving Defendants reserve the right to move to dismiss for improper venue as well.

27    F.R.Civ.Proc. 12(b)(3).  MVPAM's status as an uninjured investment advisor does not provide a
    sufficient link to this District for venue purposes.

28

-54-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   high:  A plaintiff must demonstrate that the defendant's contacts approximate physical presence in

2   the forum.  *Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086 (9th Cir.

3   2000).  "This is an exacting standard, as it should be, because a finding of general jurisdiction

4   permits a defendant to be haled into court in the forum state to answer for any of its activities

5   anywhere in the world."  *Schwarzenegger*, 374 F.3d at 800.

6        Plaintiff's Fourth Amended Complaint alleges no facts whatsoever to establish that any

7   Moving Defendant should be subject to general jurisdiction within California.  Accordingly, if the

8   Court is to find that it may constitutionally exercise personal jurisdiction over any of the Moving

9   Defendants, it must be through the alternative doctrine of specific jurisdiction.  Establishing

10  specific jurisdiction requires a showing of sufficient contacts with the forum state in relation to

11  the remaining state causes of action.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The

12  Ninth Circuit has established a three-prong test to analyze whether a defendant should be subject

13  to specific personal jurisdiction:

14        (1) The non-resident defendant must purposefully direct his activities or
            consummate some transaction with the forum or resident thereof; or perform some
15        act by which he purposefully avails himself of the privilege of conducting
            activities in the forum, thereby invoking the benefits and protections of its laws;
16

17        (2) the claim must be one which arises out of or relates to the defendant's forum-
            related activities; and
18

19        (3) the exercise of jurisdiction must comport with fair play and substantial justice,
            i.e. it must be reasonable.
20   *Schwarzenegger*, 374 F.3d at 802.

21        A showing that a defendant "purposefully availed" himself of the privilege of doing

22  business in a forum state typically consists of evidence of the defendant's actions in the forum,

23  such as executing or performing a contract there.  By taking such actions, a defendant

24  "purposefully avails itself of the privilege of conducting activities within the forum State, thus

25  invoking the benefits and protections of its laws."  *Id., citing Hanson v. Denckla,* 357 U.S. 235,

26  253 (1958).  A showing that a defendant "purposefully directed" his conduct toward a forum state

27  usually consists of evidence of the defendant's actions outside the forum state that are directed at

28

-55-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1    the forum.  *Id.* at 803.  Purposeful direction is evaluated under a separate three part test, with the

2    court examining whether the defendant have (1) committed an intentional act, (2) expressly aimed

3    at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

4    state.  *Id.*, citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir 2002).

5            In this case, the Plaintiff cannot even meet the first element required to establish personal

6    jurisdiction.  Plaintiff does not, and cannot, allege any facts to establish purposeful availment or

7    purposeful direction by any Moving Defendant.  As a starting point, Plaintiff does not allege any

8    facts whatsoever as to moving defendants Balliet, Hanslik, or any of the Ark Entities (US) that

9    show purposeful availment or purposeful direction toward California.  As to defendants Vestbirk

10   and ARAM, Plaintiff alleges a couple of phone calls by defendant Steven Vestbirk and a number

11   of emails from other nonparties alleged to be agents of ARAM, received by Plaintiff, who alleges

12   he resides within California (either in Tahoe City or San Francisco).  A couple of phone call to

13   the state does not suffice.  *See Peterson v. Kennedy*, 771 F.2d 1244, 1261-62 (9th Cir. 1985)

14   (holding that "use of the mails, telephone, or other international communications simply do not

15   qualify as purposeful activity invoking the benefits and protection of the [forum] state").[33]

16           In addition, MVPAM is neither the underlying investor nor the alleged injured party.  The

17   actual alleged investor in Ark Discovery (Offshore) is a completely different entity – allegedly

18   MVP or Citco Global.  None of these entities are alleged to be California residents.  MVP, for

19   example, is alleged to be a British Virgin Islands company, Citco Global is a Netherlands-based

20   bank and VP Bank is in Lichtenstein.  Plaintiff does not allege that any purchase or sale of

---

[33]      In analogous circumstances, when the contemplated transaction had nothing to do with California, the Ninth Circuit has held that the exercise of personal jurisdiction is inappropriate. *See, e.g., Sarkis v. Lajcak*, 425 Fed. Appx. 557, 2011 WL 1118471, *1-2 (9th Cir., March 28, 2011) (no personal jurisdiction in California for claims arising from employment contract: Despite fact that plaintiff was in California and negotiated contract through phone and email contracts, the contract itself was for employment in Bosnia, and bore no relation to California); *Applied Underwriters, Inc. v. Combined Management, Inc.*, 371 Fed. Appx. 834, 2010 WL 1141528, *1-2 (9th Cir., March 24, 2010) (no personal jurisdiction in California for Maine resident in case arising out of insurance contract, despite fact that plaintiff had some negotiations with employees of defendant insurer in California).  While these two cases are "unpublished," pursuant to the 2006 amendments to the Federal Rules of Appellate Procedure, they may be cited because they were issued after January 1, 2007.  *See* F.R.App.Proc. 32.1(a).

-56-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK

1   securities occurred within California, or that any California resident invested in Ark Discovery

2   (Offshore).  In addition, Plaintiff is itself a Delaware, not California, company.  (FAC, ¶ 3.)

3          Plaintiff, in other words, has not and cannot allege activity by any Moving Defendant that

4   was "expressly aimed" at California, and random, fortuitous, or attenuated contacts do not suffice

5   to establish jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  This was

6   not an investment targeted at residents of California, and there is no allegation that MVP is a

7   California resident.  Instead, Plaintiff concedes MVP is a resident of the British Virgin Islands.

8   Plaintiff, therefore, cannot establish either conduct "expressly aimed" at the forum state or harm

9   suffered within the forum state, never mind conduct causing harm that any Moving Defendant

10  *knew* would likely to be suffered in California.  *See Schwarzenegger*, 374 F.3d at 802-03.  To the

11  contrary, this was, and was always intended to be, an entirely offshore transaction.

12         Random, fortuitous, or attenuated contacts do not suffice to establish jurisdiction.  *Burger

13  King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Yet, Plaintiff has alleged nothing more than

14  such random contacts here.  Plaintiff's Fourth Amended Complaint establishes no basis for the

15  exercise of personal jurisdiction over any of the Moving Defendants.[34]  Accordingly it should be

16  dismissed on this ground as well.

17                                        **IV.**
                                   **CONCLUSION**

18         Accordingly, for the reasons set forth above, Moving Defendants respectfully request the

19  dismissal of this action with prejudice.

20  Dated:  August 27, 2012                    DLA PIPER LLP (US)

21

22

23                                  By:   /s/ TODD M. NOONAN
                                         Todd M. Noonan

24                                       Attorneys for Defendants

25  [34]      Moreover, Mr. Vestbirk is not a resident or citizen of the United States.  The showing
    required to establish personal jurisdiction is heightened for foreign domiciles.  *Rano v. Sipa*

26  *Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) ("litigation against an alien defendant requires a
    higher jurisdictional barrier than litigation against a citizen from a sister state");  *Asahi Metal*

27  *Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987) ("[g]reat care and reserve should be
    exercised when extending our notions of personal jurisdiction into the international field").

28
                                        -57-

DLA PIPER LLP (US)
SACRAMENTO

WEST\238084604.1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH
AMENDED COMPLAINT PURSUANT TO RULE 12(B)
Case No. 210-CV-02483-GEB-CMK