IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MVP ASSET MANAGEMENT (USA) LLC, a Delaware Limited Liability Company,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN VESTBIRK; JEFF BALLIET; ALLISON HANSLIK; JIM GRANT; ARK ROYAL ASSET MANAGEMENT, LTD., a Bermuda Limited Company; VESTBIRK CAPITAL MANAGEMENT, LTD., a Bermuda Limited Company; ARK ROYAL ASSET MANAGEMENT, LLC, a Nevada Limited-Liability Company; ARK DISCOVERY, LLC, a Business Entity of Unknown Form; ARK ROYAL HOLDINGS, LLC, a Nevada Limited-Liability Company; ARK ROYAL SERVICES, LLC, a Nevada Limited-Liability Company; ARK ROYAL CAPITAL, LLC, a Nevada Limited-Liability Company; ARK ROYAL CAPITAL FUNDING, LLC, a Nevada Limited-Liability Company; ARK ROYAL CAPITAL, INC., a Nevada Corporation; ARK ROYAL RESOURCES, LLC, a Nevada Limited-Liability Company; ARK ROYAL ASSURANCE LLC, a Nevada Limited-Liability Company; and ARK ROYAL INVESTMENTS, LLC, a Nevada Limited-Liability Company;<br><br>        Defendants.<br>_____ | 2:10-cv-02483-GEB-CKD<br><br>ORDER |

1

1   Defendants filed a motion to dismiss Plaintiff's Fourth
2  Amended Complaint ("FAC") under Federal Rule of Civil Procedure ("Rule")
3  12(b)(6), 12(b)(1), and 12(b)(2). Defendants argue, *inter alia*, that
4  Plaintiff has failed to state federal securities fraud claims, the Court
5  lacks diversity jurisdiction over Plaintiff's state claims, "Plaintiff
6  . . . has failed to comply with the strict pleading requirements of the
7  Private Securities Litigation Reform Act ("PSLRA") . . . and Rule 9(b),"
8  and "Plaintiff fails to allege the facts necessary to establish personal
9  jurisdiction over Moving Defendants in California." (Defs.' Notice of
10 Mot. and Mot. to Dismiss FAC Pursuant to Rule 12(b)(6), 12(b)(1), and
11 12(b)(2) ("Defs.' Mot.") 2:22-23, 2:25-3:2, 3:4-6, 4:8-9; ECF No. 128.)
12 Defendants argue dismissal should be with prejudice since "no possible
13 curative allegation remains" by which the Plaintiff could cure the FAC's
14 deficiencies. (Id. 2:23.) Plaintiff opposes the motion. (Pl.'s Opp'n to
15 Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 134.)

## I. REQUESTS FOR JUDICIAL NOTICE

17   Defendants support their dismissal motions with a request
18 "that the Court incorporate by reference into Plaintiff's Complaint and
19 take judicial notice of for purposes of ruling on Defendants' Motion to
20 Dismiss several . . . documents," including a Subscription Agreement.
21 (Defs.' Request for Judicial Notice ("Defs.' RJN") 2:2-4, ECF No. 129.)
22 "[A] court may consider a writing referenced in a complaint but not
23 explicitly incorporated therein if the complaint relies on the document
24 and its authenticity is unquestioned." Swartz v. KPMG LLP, 476 F.3d 756,
25 763 (9th Cir. 2007). Since Plaintiff does not dispute the authenticity
26 of the referenced Subscription Agreement, and references and quotes from
27 the Subscription Agreement in the FAC, (FAC ¶¶ 51, 59, 71), the
28

2

Subscription Agreement is considered under the incorporation-by-reference principle.

Defendants also request that the Court take judicial notice of and incorporate into the FAC by reference a Confidential Information Memorandum dated February 2008. (Defs.' RJN 2:11-13.) Plaintiff filed an objection to this request. However, the Confidential Information Memorandum is not necessary to the decision on the motion issued below. Therefore, this document is not considered, and the request for judicial notice is denied.

Defendants further request judicial notice of additional documents, to which Plaintiff does not object. (Defs.' RJN 2:14-4:9.) Plaintiff also requested judicial notice of documents, to which Defendants do not object. (Pl.'s Request for Judicial Notice, ECF No. 136.) However, since these documents are neither necessary to nor considered in the decision on the motion, these documents are not considered, and these requests for judicial notice are therefore denied.

## II. FEDERAL CLAIMS

**A. Legal Standards**

Decision on Defendants' Rule 12(b)(6) motion requires determining "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

1 When determining a claim's sufficiency, the court "accept[s]
2 factual allegations in the complaint as true and construe[s] the
3 pleadings in the light most favorable to the non-moving party." Fayer v.
4 Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citing Manzarek v. St. Paul
5 Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008)). However,
6 this tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at
7 678. Further, "[a] pleading that offers 'labels and conclusions' or 'a
8 formulaic recitation of the elements of a cause of action will not do.'
9 Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid
10 of 'further factual enhancement.'" Id. (quoting Bell Atl. Corp. v.
11 Twombly, 550 U.S. 544, 555, 557 (2007)). "In sum, for a complaint to
12 survive a motion to dismiss, the nonconclusory 'factual content,' and
13 reasonable inferences from that content, must be plausibly suggestive of
14 a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv.,
15 572 F.3d 962, 969 (9th Cir. 2009).

16 "To state a claim under § 10(b) . . . , a plaintiff must show
17 that the securities transaction at issue was a securities transaction
18 that is covered by the Exchange Act [the Securities Exchange Act of
19 1934]." Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd., No.
20 08-cv-01381-MSK-CBS, 2011 WL 1211511, at *3 (D. Colo. Mar. 31, 2011)
21 (citing Morrison v. Nat'l Austl. Bank Ltd., 558 U.S. ---, 130 S. Ct.
22 2869, 2884 (2010)). "Section 10(b) reaches the use of a manipulative or
23 deceptive device or contrivance only in connection with the purchase or
24 sale of a security listed on an American stock exchange, and the
25 purchase or sale of any other security in the United States." Morrison,
26 130 S. Ct. at 2888. Therefore, "the focus of the Exchange Act is not
27 upon the place where the deception originated, but upon purchases and
28 sales of securities in the United States. . . . [I]t is parties or

4

prospective parties to those transactions that the statute seeks to 'protec[t].'" Id. at 2884 (quoting Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 10 (1971)). First, "the plaintiff [must] meet[] the threshold inquiry" that the Exchange Act covers the securities transaction. Cascade Fund, LLP, 2011 WL 1211511, at *3 (citing Dura Pharms., Inc. v. Bruoudo, 544 U.S. 336 341 (2005); Sec. & Exch. Comm'n v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008); Adams v. Kinder-Morgan, Inc., 340 F.3d 1038, 1095 (10th Cir. 2003)). Then the "securities fraud complaint under § 10(b) . . . must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the PSLRA." In re VeriFone Holdings, Inc. Sec. Litig., 2012 WL 6634351, at *3 (citing Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990-91 (9th Cir. 2009)).

**B. Discussion**

Defendants seek dismissal of Plaintiff's Exchange Act claims under Rule 12(b)(6). Plaintiff alleges in its first claim a violation of Section 10(b), and in its second claim control person liability under Section 20(a). (FAC ¶¶ 88-98.) Defendants argue that Plaintiff's allegations do not cure the deficiencies in Plaintiff's prior complaint, which was dismissed in a prior Order. (Order 15:27-16:1, ECF No. 126.) Defendants argue: "As set forth in [the dismissal] Order, '[t]o state a claim under § 10(b) . . . , a plaintiff must show that the securities transaction at issue was a securities transaction that is covered by the Exchange Act.'" (Defs.' Mot. 14:16-18 (quoting Order 9:26-28 (quoting Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd., 2011 WL 1211511, at *3 (D. Colo. Mar. 31, 2011))).)

> "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or

5

1  sale of any other security in the United States.
2  . . . [T]he focus of the Exchange Act is not upon
   the place where the deception originated, but upon
   purchases and sales of securities in the United
3  States."

4 (Id. 14:20-25 (quoting Order at 10 (quoting Morrison, 130 S. Ct. at

5 2888, 2884 (citation omitted))).) Further, Defendants argue that "[a]

6 Section 20(b) claim may be dismissed summarily if a plaintiff fails to

7 establish a primary violation of Section 10(b)." (Id. 21:4-5 (citing

8 Order at 12 (citing In re Societe Generale Sec. Litig., No. 08 Civ.

9 2495(RMB), 2010 WL 3910286, at *9 (S.D.N.Y. Sept. 29, 2010); Morrison,

10 130 S. Ct. at 2876 n.2; see also In re Verifone Sec. Litig., 11 F.3d

11 865, 872 (9th Cir. 1993))).)

12  Plaintiff counters that under Absolute Activist Value Master

13 Fund Ltd. v. Ficeto, 677 F.3d 60 (2d Cir. 2012), the relevant inquiry

14 involved with determining whether a plaintiff has sufficiently alleged

15 that a domestic transaction exists focuses on whether the plaintiff has

16  allege[d] facts leading to the plausible inference
    that the parties incurred irrevocable liability
17  within the United States: that is, that the
    purchaser incurred irrevocable liability within the
18  United States to take and pay for a security, or
    that the seller incurred irrevocable liability
19  within the United States to deliver a security.

20 (Pl.'s Opp'n 2:14-16 (quoting Absolute Activist, 677 F.3d at 68

21 (internal quotation marks omitted)).) Plaintiff argues that it "became

22 irrevocably bound upon the exchange of the purchase funds in New York."

23 (Id. 3:1-2.)

24  Plaintiff alleges in the FAC that it engaged with Defendants

25 in domestic transactions of securities that are not listed on an

26 American stock exchange. Plaintiff's FAC contains the following

27 allegations concerning the alleged transactions:

28  At all times relevant hereto Verwaltungs- und
    Privat-Bank Aktiengesellschaft ("VP Bank") served

6

as the Custodian Bank for MVP. Citco Global Custody NV ("Citco") is a custodial service based in the Netherlands. VP Bank maintains with Citco Account Number 190023 in which, as MVP's Custodian Bank, VP Bank holds on behalf of MVP the assets of MVP. All of MVP's investments in the Ark Discovery Fund alleged herein are held, and have been held at all times since they were purchased, for the benefit of MVP in VP Bank's Account Number 190023 with Citco. Pursuant to its power of attorney for MVP, MVPAM caused MVP to make the investments in the Ark Discovery Fund alleged herein through MVP's custodian, Citco. On or about March 26, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million with a value date of April 1, 2008. The Subscription Agreement for the purchase of these shares instructed MVP to wire the purchase funds to the Ark Discovery Fund's New York bank account. MVP complied with Ark Discovery Fund's instructions and consummated its subscription when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York which, in turn, wired the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. The Subscription Agreement provides that upon the wiring of MVP's purchase funds "[t]his subscription is irrevocable by the Investor . . ." and, therefore, when MVP wired its purchase funds to Ark Discovery Fund's New York bank account MVP incurred irrevocable liability within the United States to take and pay for the Ark Discovery Fund shares. Plaintiff is informed and believes, and thereupon alleges, that the $1 million purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

. . .

On or about July 1, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 [sic] shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million [sic] with a value date of July 1, 2008.[1] The Subscription

---

[1] Plaintiff alleges that the second (July 1 value date) and third (August 1 value date) purchases were for 10,000 shares each and valued at $1 million each, but as this is inconsistent with all prior complaints—which each allege purchases of 5,000 shares for $500,000—the
(continued...)

7

> Agreement for the purchase of these shares instructed MVP to wire the purchase funds to the Ark Discovery Fund's New York bank account. MVP complied with Ark Discovery Fund's instructions and consummated its subscription when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York which, in turn, wired the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. Plaintiff is informed and believes, and thereupon alleges, that the Subscription Agreement provides that upon the wiring of MVP's purchase funds "[t]his subscription is irrevocable by the Investor . . ." and, therefore, when MVP wired its purchase funds to Ark Discovery Fund's New York bank account MVP incurred irrevocable liability within the United States to take and pay for the Ark Discovery Fund shares. Plaintiff is informed and believes, and thereupon alleges, that the $500,000 purchase funds never left the United States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.
>
> . . .
>
> On or about July 28, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 [sic] shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million [sic] with a value date of August 1, 2008. The Subscription Agreement for the purchase of these shares instructed MVP to wire the purchase funds to the Ark Discovery Fund's New York bank account. MVP complied with Ark Discovery Fund's instructions and consummated its subscription when MVP's purchase funds were wired by Citco from its bank account at HSBC Bank in New York which, in turn, wired the funds to the Ark Discovery Fund's account at JP Morgan Chase in New York. The Subscription Agreement provides that upon the wiring of MVP's purchase funds "[t]his subscription is irrevocable by the Investor . . ." and, therefore, when MVP wired its purchase funds to Ark Discovery Fund's New York bank account MVP incurred irrevocable liability within the United States to take and pay for the Ark Discovery Fund shares. Plaintiff is informed and believes, and thereupon alleges, that the $500,000 purchase funds never left the United

---

[1](...continued)
Court assumes these were each intended to refer to purchases of 5,000 shares for $500,000.

8

1
2
3
     States but, instead, were held in New York on Ark Discovery Fund's account at JP Morgan Chase in New York until disbursed in the United States to make the loans to Petters which constituted Ark Discovery Fund's asset portfolio.

4 (FAC ¶¶ 51, 59, 71.) The gravamen of Plaintiff's allegations is that
5 once Plaintiff wired money from its New York-based bank account into
6 Defendants' New York-based bank account, Plaintiff "incurred irrevocable
7 liability within the United States." (Id.)

8   Plaintiff states these allegations are based on language taken
9 from the Subscription Agreement. (Pl.'s Opp'n 19:23-20:4; see Defs.'
10 RJN, Ex. A.) Plaintiff alleges that "[t]he Subscription Agreement
11 provides that upon the wiring of MVP's purchase funds '[t]his
12 subscription is irrevocable by the Investor . . .' and, therefore, when
13 MVP wired its purchase funds to Ark Discovery Fund's New York bank
14 account MVP incurred irrevocable liability within the United States."
15 (FAC ¶¶ 51, 59, 71 (quoting Defs.' RJN, Ex. A).)

16   This allegation conveys that Plaintiff incurred irrevocable
17 liability within the United States. However, Defendants argue that
18 either "it is the submission of the Subscription Agreement that renders
19 the obligation binding," or, "[a]lternatively, . . . the agreement
20 became irrevocable once the Subscription Agreement was accepted by the
21 Fund, as only then would there be an offer *and* acceptance." (Defs.' Mot.
22 17:16-20.) The Subscription Agreement, which has been incorporated into
23 the FAC by reference, supports Defendants' argument rather than
24 Plaintiff's allegation. See Steckman v. Hart Brewing Inc., 143 F.3d
25 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true
26 conclusory allegations which are contradicted by documents referred to
27 in the complaint."). Consideration of the text of the Subscription
28 Agreement from which both parties quote shows that, under the terms of

9

1 the Subscription Agreement, Plaintiff did not actually "incur[]
2 irrevocable liability within the United States" upon wiring money into
3 Defendants' New York–based bank account.

4     The relevant portion of the Subscription Agreement states:

> Payment of the total purchase price in the amount of USD 1,000,000 is enclosed herewith/has been wired to the Fund's [(referencing Defendants)] Custodian in accordance with the above wire instructions. This subscription is irrevocable by the Investor [Plaintiff] except under the terms of the Offering Memorandum Amended and Restated 14 November 2006 and may be accepted if, as and when received. The Fund reserves the right to reject without cause all subscriptions up to the time the shares are issued.

(Defs.' RJN, Ex. A, at 38.) Although the Subscription Agreement states that Plaintiff cannot revoke its subscription, it does not state that the subscription's irrevocability hinges on the transfer of funds.

    Plaintiff alleges the following in the FAC with respect to entering into the Subscription Agreement:

> At all times relevant hereto Verwaltungs- und Privat-Bank Aktiengesellschaft ("VP Bank") served as the Custodian Bank for MVP. Citco Global Custody NV ("Citco") is a custodial service based in the Netherlands. VP Bank maintains with Citco Account Number 190023 in which, as MVP's Custodian Bank, VP Bank holds on behalf of MVP the assets of MVP. . . . Pursuant to its power of attorney for MVP, MVPAM caused MVP to make the investments in the Ark Discovery Fund alleged herein through MVP's custodian, Citco. On or about March 26, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million with a value date of April 1, 2008.
>
> . . .
>
> On or about July 1, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 [sic] shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million [sic] with a value date of July 1, 2008.
>
> . . .

10

>On or about July 28, 2008, Plaintiff caused MVP, through Citco, to enter into a subscription for the purchase [of] 10,000 [sic] shares of the Ark Discovery Fund (Offshore) Ltd. for $1 million [sic] with a value date of August 1, 2008.

(FAC ¶¶ 51, 59, 71.) No locations are alleged for VP Bank, Citco, MVP, or the Ark Discovery Fund (Offshore) Ltd. ("Ark Discovery Fund"), nor is it clear where parties were located when they "enter[ed] into . . . subscription[s] for the purchase [of] . . . shares of the Ark Discovery Fund," (id.), which is the relevant information required to determine when and where the parties incurred irrevocable liability. See Absolute Activist, 677 F.3d at 68 (stating "the point of irrevocable liability can be used to determine the locus of a securities purchase or sale."); In re Vivendi Universal, S.A. Sec. Litig., 284 F.R.D. 144, 150 (S.D.N.Y. 2012) ("'[T]he "purchase" and "sale" take place when the parties become bound to effectuate the transaction,' thereby equating 'irrevocable liability' with entering into a binding contract." (quoting Absolute Activist, 677 F.3d at 68) (footnote omitted)).

Plaintiff alleges that MVPAM "is a Limited Liability Company organized and existing under the laws of the State of Delaware with its principal place of business until August 2009 in Tahoe City, California and since September 2009 in San Francisco, California." (FAC ¶ 3.) Plaintiff does not allege MVP's location but alleges that MVP is "an Investment Company organized and existing under the laws of the British Virgin Islands." (Id.) Plaintiff does not allege a location for VP Bank. (See id.) Plaintiff alleges that Citco "is a custodial service based in the Netherlands." (Id. ¶ 51.) Plaintiff alleges that Ark Discovery Fund is "a British Virgin Islands Limited Liability Company." (Id. ¶ 23.) The administrator of Ark Discovery Fund is Beacon Management Limited, with an address, phone number, and fax number in Bermuda. (Defs.' RJN, Ex. A,

11

at 38.) Although Plaintiff has alleged some connection to the United States for some of the entities, Plaintiff has not alleged the locations of the relevant parties when the parties entered into the Subscription Agreement.

Instead, Plaintiff alleges that it "complied with Ark Discovery Fund's instructions" regarding the Subscription Agreement. (FAC ¶¶ 51, 59, 71.) The instructions in the Subscription Agreement state: "To Subscribe carefully read this Agreement and then complete and fax this form to the Administrator." These instructions are followed by the contact information for Beacon Management Limited in Bermuda. (Defs.' RJN, Ex. A, at 38.) The next page of the Subscription Agreement includes the statement, "THE INVESTOR REQUESTS THAT ALL CORRESPONDENCE BE SENT / TRANSMITTED TO:," which is then followed by Citco addresses and contact information in the Netherlands and Ireland. (<u>Id.</u> at 39.) Two signatures and a stamp that appear to correspond to Citco are also on this page. (<u>Id.</u>)

The execution of the Subscription Agreement bound Citco (on Plaintiff's behalf) to the following terms:

> 2. The Investor(s) agrees that the Investor may not cancel, terminate or revoke this Subscription Agreement or any agreement of the Investor(s) made hereunder and that this Subscription Agreement shall survive the death or disability or [sic] the Investor(s) and shall be binding upon the Investor(s)'s heirs, executors, administrators, successors and permitted assigns.
> 3. This Subscription Agreement has been duly and validly authorised, executed and delivered by the Investor(s) and, <u>upon acceptance by the Fund, will constitute the valid, binding and enforceable agreement of the Investor(s)</u>.
> 4. This Subscription Agreement and the documents referred to herein constitute the entire agreement between the parties hereto with respect to the subject matter

12

hereof.

(Defs.' RJN, Ex. A, at 46 (emphasis added).) Plaintiff has not alleged where Defendants were located when they accepted the Subscription Agreement, (see FAC), which, under the Subscription Agreement, dictates the point at which (and where) the Plaintiff and Defendants would have made a "valid, binding and enforceable agreement." (Defs.' RJN, Ex. A, at 46.) This location therefore determines whether the alleged agreement is a "domestic transaction" for purposes of Section 10(b). However, Plaintiff's allegations concerning the Subscription Agreement coupled with the relevant portions of the Subscription Agreement are insufficient to establish the existence of a domestic transaction, which Section 10(b) requires.[2] Accordingly, Plaintiff's Section 10(b) claim is dismissed.

Further, Defendants seek dismissal of Plaintiff's Section 20(a) control person liability claim, arguing that "[a] Section 20(a) claim may be dismissed summarily if a plaintiff fails to establish a primary violation of Section 10(b)." (Defs.' Mot. 21:4-5.) "Congress has established liability in Section 20(a) for every person who, directly or indirectly, controls any person liable for violations of the securities laws." Janus Capital Grp. v. First Derivative Traders, 564 U.S. ---, 131 S. Ct. 2296, 2304 (2011). Therefore, Plaintiff's "control person claims under Section 20(a) are 'necessarily predicated on a primary violation of securities law.' . . . Because Plaintiff['s] primary claim[] under Section 10(b) . . . [is] dismissed, 'these secondary claims must also be

---

[2] Since Plaintiff has not met its "threshold inquiry" that the securities transaction is covered by the Exchange Act, whether Plaintiff has met the elements of a Section 10(b) claim under the heightened Rule 9(b) and PSLRA pleading standards is not considered in this order. Cascade Fund, LLP, 2011 WL 1211511, at *3.

1  dismissed.'" In re Societe Generale Sec. Litig., No. 08 Civ. 2495, 2010
2  WL 3910286, at *9 (S.D.N.Y. Sept. 29, 2010); see also Morrison, 130 S.
3  Ct. at 2876 n.2. ("Liability under § 20(a) is obviously derivative of
4  liability under some other provision of the Exchange Act.").

### III. SUPPLEMENTAL JURISDICTION

6           Defendants further argue since Plaintiff has not shown a basis
7  for federal subject matter jurisdiction, Plaintiff's state claims should
8  be dismissed under 28 U.S.C. § 1367(c)(3). "[T]he district court [has]
9  discretionary authority to retain jurisdiction over state-law claims
10 where it has dismissed on the merits federal claims over which it did
11 have original jurisdiction." Herman Family Revocable Trust v. Teddy
12 Bear, 254 F.3d 802, 806 (9th Cir. 2001). "Pursuant to the supplemental
13 jurisdiction statute, when a district court dismisses on the merits a
14 federal claim over which it had original jurisdiction, it may then
15 decline to exercise supplemental jurisdiction over the remaining state
16 claims . . . ." Id. "Under [United Mine Workers of America v.] Gibbs, a
17 federal court should consider and weigh in each case . . . the values of
18 judicial economy, convenience, fairness, and comity in order to decide
19 whether to exercise jurisdiction over . . . pendent state-law claims."
20 Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing United
21 Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966)).

22          Since it is unclear whether Plaintiff will be able to allege
23 a viable federal question, Plaintiff's state claims will not be
24 dismissed under 28 U.S.C. § 1367(c). However, in the interest of
25 judicial economy the portion of the motion challenging Plaintiff's state
26 claims is deemed withdrawn since it is unclear whether a federal
27 question could be alleged. See generally EcoDisc Tech. AG v. DVD
28 Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010)

1  ("The Court declines to address the merits of the state law claims until
2  Plaintiff has pleaded a viable federal cause of action."); Jones v. Cal.
3  Dep't of Corr., No. 1:08-CV-01383-LJO, 2011 WL 902103, at *7 (E.D. Cal.
4  Mar. 15, 2011) ("Since Plaintiff has failed to allege a cognizable claim
5  for a violation of her federal rights, the Court declines to address her
6  supplemental state law claims."), aff'd, 473 F. App'x 741 (9th Cir.
7  2012); Carnero v. Wash. Mut., No. C-09-5330 JF PVT, 2010 WL 1136384, at
8  *3 (N.D. Cal. Mar. 22, 2010) ("Unless and until [Plaintiff] alleges a
9  viable claim under federal law, the Court will decline to address her
10 state law claims."); Coleman v. Adams, No. 1:06-CV-00836-AWI-WMW-PC,
11 2009 WL 900719, at *1 n.1 (E.D. Cal. Mar. 31, 2009) ("As it is not yet
12 clear whether Plaintiff's federal claims will go to trial, the court
13 declines to address the sufficiency of Plaintiff's state law claims, or
14 whether the court will exercise supplemental jurisdiction over them.").

15          Although the merits of Plaintiff's state claims are not
16 addressed in this order, "Defendant raise[s] several arguments regarding
17 the deficiencies in Plaintiff's state law claims" that Plaintiff should
18 consider to avoid dismissal with prejudice. Grangetto v. Minn, No. 1:10-
19 CV-00701-AWI, 2010 WL 4810726, at *9 (E.D. Cal. Nov. 12, 2010), report
20 and recommendation adopted, No. 1:10-CV-0701, 2011 WL 386855 (E.D. Cal.
21 Feb. 3, 2011). "[P]laintiff [i]s counseled to consider the arguments
22 raised by [D]efendants respecting the [state claims'] pleading defects
23 asserted." Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.,
24 Inc., 711 F. Supp. 1016, 1018 (E.D. Cal. 1989). Therefore, "if
25 Plaintiff[] choose[s] to file an amended complaint, Plaintiff[] should
26 re-evaluate the arguments raised by Defendants in support of their
27 motions to dismiss the state law claims." Manuel v. Discovery Home
28 Loans, LLC, No. C 10-01185 JSW, 2010 WL 2889510, at *5 (N.D. Cal. July

22, 2010).

## IV. CONCLUSION

For the stated reasons, Defendants' 12(b)(6) dismissal motion challenging the federal claims is granted, Defendants' 12(b)(6) motion challenging the state claims is deemed withdrawn, and Defendants' 12(b)(2) dismissal motion is denied as moot because of this ruling. Defendants' 12(b)(1) motion is denied because it is based on a challenge that is moot.

Plaintiff is granted ten (10) days from the date on which this order is filed to file a Fifth Amended Complaint addressing the deficiencies of Plaintiff's pleading discussed in this order. Further, Plaintiff is notified that this action may be dismissed with prejudice under Rule 41(b) if Plaintiff fails to file an amended complaint within the prescribed time period.

Dated:  March 21, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge